Miscellaneous Docket No. _____

# United States Court of Appeals for the Federal Circuit

IN RE TWITTER, INC., APPLE INC., MOTOROLA MOBILITY LLC, HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., and LG ELECTRONICS MOBILECOMM U.S.A., INC.,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District Court for the Northern District of Texas, Wichita Falls Division Case Nos. 7:14-cv-00014-O and 7:14-cv-00106-O Honorable Reed O'Connor*

## PETITION FOR WRIT OF MANDAMUS

DAVID J. SILBERT
LEO L. LAM
JULIE A. DUNCAN
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
dsilbert@kvn.com
llam@kvn.com
jduncan@kvn.com

*Attorneys for Petitioner Twitter, Inc.*

WILLIAM C. ROOKLIDGE
MARK A. FINKELSTEIN
FRANK P. COTE
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612
Telephone: (949) 553-7502
Facsimile: (949) 553-7539
wrooklidge@jonesday.com
mafinkelstein@jonesday.com
fcote@jonesday.com

*Attorneys for Petitioner Apple Inc.*

*(Counsel Continued Inside)*

*(Counsel Continued)*

STEVEN D. MOORE
BONNIE M. GRANT
KILPATRICK TOWNSEND
STOCKTON LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
bgrant@kilpatricktownsend.com
smoore@kilpatricktownsend.com

D. CLAY HOLLOWAY
KILPATRICK TOWNSEND
STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
cholloway@kilpatricktownsend.com

*Attorneys for Petitioner Motorola Mobility LLC*

STEVEN J. ROUTH
ORRICK HERRINGTON
& SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel.: (202) 339-8400
Fax: (202) 339-8500

STACEY E. STILLMAN
ORRICK HERRINGTON
& SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
Fax: (650) 614-7401

ROBERT M. ISACKSON
ORRICK HERRINGTON
& SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel.: (212) 506-5000
Fax: (212) 506-5151

HSIWEN LO
ORRICK HERRINGTON
& SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
Telephone: (949) 567-6700
hlo@orrick.com

*Attorneys for Petitioners LG Electronics, Inc., LG Electronics U.S.A., Inc.,
and LG Electronics MobileComm U.S.A., Inc.*

YAR R. CHAIKOVSKY
PHILIP OU
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road
Suite 100
Menlo Park, CA 94025-4004
Telephone: (650) 815-7400
ychaikovsky@mwe.com
pou@mwe.com

*Attorneys for Petitioners HTC Corporation and HTC America Inc.*

## CERTIFICATE OF INTEREST

Counsel for Petitioner Twitter, Inc. certifies the following:

1.    The full name of every party we represent (which is the real party in interest) is:

Twitter, Inc.

2.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party we represent are:

None.

3.    The name of all law firms and the partners or associates that appeared in the trial court for the party we now represent or are appearing in this Court are:

KEKER & VAN NEST LLP
David J. Silbert, Leo L. Lam, and Julie A. Duncan

NORTON ROSE FULBRIGHT
Brett C. Govett

Dated:  October 22, 2014          KEKER & VAN NEST LLP


By: */s/ David J. Silbert*
          DAVID J. SILBERT
          LEO L. LAM
          JULIE A. DUNCAN
          Attorneys for Petitioner
          TWITTER, INC.

i

## CERTIFICATE OF INTEREST

Counsel for Petitioner Apple Inc. certifies the following:

1.      The full name of every party we represent (which is the real party in interest) is:

    Apple Inc.

2.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party we represent are:

    None.

3.      The name of all law firms and the partners or associates that appeared in the trial court for the party we now represent or are appearing in this Court are:

    JONES DAY
    William C. Rooklidge, Hilda C. Galvan, Mark A. Finkelstein,
    Frank P. Cote, Douglas L. Clark, and Michelle Stover

Dated:  October 22, 2014                    JONES DAY


                                    By: /s/ William C. Rooklidge
                                        WILLIAM C. ROOKLIDGE
                                        MARK FINKELSTEIN
                                        FRANK COTE
                                        Attorneys for Petitioner APPLE
                                        INC.

## CERTIFICATE OF INTEREST

Counsel for Petitioner Motorola Mobility LLC certifies the following:

1.    The full name of every party we represent (which is the real party in interest) is:

Motorola Mobility LLC

2.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party we represent are:

Google Inc.

3.    The name of all law firms and the partners or associates that appeared in the trial court for the party we now represent or are appearing in this Court are:

KILPATRICK TOWNSEND & STOCKTON LLC
Steven Moore, D. Clay Holloway, Bonnie Grant, Shayne O'Reilly, Akarsh Belagodu

GRUBER HURST JOHANSEN HAIL SHANK:
Michael Hurst, Joshua Sandler

Dated:  October 22, 2014                KILPATRICK TOWNSEND &
                                        STOCKTON LLP


By: /s/ *Steven Moore*
    STEVEN MOORE
    D. CLAY HOLLOWAY
    BONNIE GRANT
    Attorneys for Petitioner
    MOTOROLA MOBILITY LLC

## CERTIFICATE OF INTEREST

Counsel for Petitioners HTC Corporation and HTC America, Inc. certifies the following:

1.    The full names of every party we represent (which are the real parties in interest) are:

HTC Corporation; HTC America, Inc.

2.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties we represent are:

HTC Corporation is the parent corporation of HTC America, Inc.

3.    The name of all law firms and the partners or associates that appeared in the trial court for the party we now represent or are appearing in this Court are:

MCDERMOTT WILL & EMERY LLP:
Yar R. Chaikovsky, Philip Ou, Bryan K. James, Mashhood Rassam, Darryl J. Ong

CARTER SCHOLER ARNETT HAMADA & MOCKLER PLLC:
E Leon Carter, Linda R. Stahl

Dated:  October 22, 2014             McDERMOTT WILL & EMERY


By: /s/ *Yar Chaikovsky*
     YAR CHAIKOVSKY
     PHILIP OU
     Attorneys for Petitioners HTC
     CORPORATION and HTC
     AMERICA, INC.

iv

# CERTIFICATE OF INTEREST

Counsel for Petitioners LG Electronics, Inc., LG Electronics U.S.A., Inc.,

and LG Electronics MobileComm U.S.A., Inc. certifies the following:

1.    The full names of every party we represent (which are the real parties

in interest) are:

LG Electronics, Inc. ("LGE, Inc."), LG Electronics U.S.A., Inc. ("LGEUS"),
LG Electronics MobileCOMM U.S.A., Inc. ("LGEMU")

2.    All parent corporations and any publicly held companies that own 10

percent or more of the stock of the parties we represent are:

LGEMU is a wholly-owned subsidiary of LGEUS; LGEUS is a
wholly-owned subsidiary of LGE, Inc., a publicly held company; LG Corporation,
also a publicly held company, owns 10% or more of LGE, Inc.'s stock.

3.    The name of all law firms and the partners or associates that appeared

in the trial court for the party we now represent or are appearing in this Court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP
Robert M. Isackson, Stacey E. Stillman, Steven J. Routh, Hsiwen Lo
QUILLING SELANDER LOWNDS WINSLETT & MOSER, P.C.
Deborah L. Sterling

Dated:  October 22, 2014          ORRICK, HERRINGTON, & SUTCLIFFE LLP


By: */s/ Steve J. Routh*_____
    STEVE J. ROUTH
    Attorneys for Petitioners LG ELECTRONICS,
    INC., LG ELECTRONICS U.S.A., INC., and
    LG ELECTRONICS MOBILECOMM U.S.A.,
    INC.

# TABLE OF CONTENTS

Page

RELIEF SOUGHT ........................................................................1

INTRODUCTION .........................................................................1

ISSUE PRESENTED ....................................................................5

JURISDICTIONAL STATEMENT ...............................................6

STANDARD OF REVIEW ...........................................................6

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......7

    I.    The development of the claimed inventions in NDCA. ...........7

    II.    Summit 6's continued presence in NDCA and lack of non-fabricated connections to NDTX. ...........................9

    III.    Petitioners' extensive connections to NDCA and lack of relevant connections to NDTX. ...................................9

    IV.    Prior Litigation ...............................................................12

    V.    Procedural Posture of the Litigation .............................13

REASONS FOR ISSUING THE WRIT ......................................14

I.    THE PRIVATE- AND PUBLIC- INTEREST FACTORS OVERWHELMINGLY FAVOR TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA. .......................15

    A.    The "witness convenience" factor weighs strongly in favor of transfer—not just "slightly." ...........................15

    B.    The "availability of compulsory process" strongly favors transfer. ...........................................................18

    C.    "Relative ease of access to sources of evidence" strongly favors transfer. ...............................................21

    D.    The "local interest" factor strongly favors transfer. ...........24

II.    JUDICIAL ECONOMY AND COURT CONGESTION DO
       NOT JUSTIFY KEEPING THIS CASE IN TEXAS. ...........................28

CONCLUSION ...................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Canine Caviar Pet Foods v. Pied Piper Pet*
  No. 3:09-CV-00677-L, 2009 U.S. Dist. LEXIS 73743 (N.D. Tex.
  Aug. 19, 2009)..................................................................................................18

*In re Apple, Inc.*
  2014 U.S. App. LEXIS 17664 (Fed. Cir. Sept. 11, 2014) .................18, 19, 20, 29

*In re Genentech, Inc.*
  566 F.3d 1338 (Fed. Cir. 2009)....................................................................*passim*

*In re Hoffman-La Roche Inc.*
  587 F.3d 1333 (Fed. Cir. 2009)....................................................................*passim*

*In re Microsoft Corp.*
  630 F.3d 1361 (Fed. Cir. 2011)...........................................................................28

*In re Morgan Stanley*
  417 F. App'x 947 (Fed. Cir. 2011) ..................................................................4, 29

*In re Nintendo Co.*
  589 F.3d 1194 (Fed. Cir. 2009)............................................................................1

*In re Radmax, Ltd.*
  720 F.3d 285 (5th Cir. 2013)...............................................................................17

*In re TS Tech. U.S. Corp.*
  551 F.3d 1315 (Fed. Cir. 2008)...................................................................6, 7, 25

*In re Verizon Bus. Network Servs. Inc.*
  635 F.3d 559 (Fed. Cir. 2011)....................................................................4, 23, 29

*In re Volkswagen AG*
  371 F.3d 201 (5th Cir. 2004).........................................................................7, 17

*In re Volkswagen of Am., Inc.*
  545 F.3d 304 (5th Cir. 2008) ............................................................................6, 7

*In re Zimmer Holdings, Inc.*
609 F.3d 1378 (Fed. Cir. 2010)............................................................4, 28

*Neil Bros. Ltd. v. World Wide Lines, Inc.*
425 F. Supp. 2d 325 (E.D.N.Y. 2006) .............................................15

*QR Spex, Inc. v. Motorola, Inc*.
507 F. Supp. 2d 650 (E.D. Tex. 2007)..............................................15

*Summit 6 LLC v. Research in Motion Corp.*
No. 3:11-cv-367-O, 2013 U.S. Dist. LEXIS 95164 (N.D. Tex. June
26, 2013) .................................................................................*passim*

## Federal Statutes

28 U.S.C. § 1295............................................................................6

28 U.S.C. § 1331............................................................................6

28 U.S.C. § 1338(a) ........................................................................6

28 U.S.C. § 1404(a) ............................................................5, 7, 14, 17, 29

35 U.S.C. § 299 ........................................................................13, 19

## Federal Rules

Fed. R. Civ. P. 20 ..........................................................................13

**RELIEF SOUGHT**

Twitter, Inc., Apple Inc., Motorola Mobility LLC, HTC Corporation, HTC America, Inc., LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics MobileComm U.S.A., Inc. (collectively, "Petitioners"), defendants in Case Nos. 7:14-cv-00014-O and 7:14-cv-00106-O—captioned as Summit 6 LLC, plaintiff, vs. HTC Corp. *et al*, defendants, and Summit 6 LLC, plaintiff, vs. Apple Inc., defendant, respectively—petition this Court to issue a writ of mandamus directing the U.S. District Court Judge presiding in these cases to vacate the September 10, 2014 Order to the extent it denies Petitioners' transfer motion and to transfer the cases to the U.S. District Court for the Northern District of California.

**INTRODUCTION**

Like other cases in which this Court has granted mandamus relief to defendants wrongly denied a transfer, this case "features a stark contrast in relevance, convenience, and fairness between the two venues." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The Northern District of California ("NDCA") is where the alleged inventions claimed by the patents-in-suit were developed; where four of the five Petitioners[1] are headquartered or keep relevant offices; where over ***twenty*** identified party and non-party witnesses reside; and where the vast majority of evidence is located.

The Northern District of Texas ("NDTX"), on the other hand, has no

---

[1] For purposes of this petition, and in accordance with the underlying motion to transfer, Petitioners count the affiliated HTC petitioners and the affiliated LG petitioners as one Petitioner each, referred to as "HTC" and "LGE".

1

relevant connection to the actions giving rise to this case, or to the parties. Even Respondent Summit 6 LLC ("Summit 6") has no legitimate connection to NDTX. Summit 6 is a non-practicing entity whose employees reside not in Texas, but in California (in NDCA) and Utah.

In denying transfer, the district court failed to consider (or gave insufficient weight to) this case's extensive ties to NDCA, which stand in stark contrast to its lack of any meaningful connection with NDTX. In so ruling, the district court clearly erred under this Court's case law in at least four ways. These errors then inevitably led the district court to commit a fifth clear error: concluding that judicial economy justified keeping this case in NDTX.

*First*, the district court undervalued California's superior convenience for the witnesses—the consideration that this Court has said "is probably the single most important factor in the transfer analysis." *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citation and quotation marks omitted). Defendants identified over **twenty** witnesses who reside in NDCA, including one of the named inventors and one of Summit 6's two employees. By contrast, Summit 6 identified **no** witness who resides in NDTX, or for that matter anywhere in Texas. Nevertheless, in direct contradiction of this Court's holding in *Genentech*, the district court found that this factor weighed only "slightly" in favor of transfer. *See In re Genentech*, 566 F.3d at 1345.

*Second*, the district court failed to follow this Court's holding that, when the transferee venue enjoys absolute subpoena power over "a substantial number of witnesses" and the plaintiff's chosen venue holds that power over no witness, then

the availability of compulsory process weighs substantially in favor of transfer, "***and not only slightly***." *Id.* (emphasis added). Petitioners identified four third-party witnesses subject to absolute subpoena power in NDCA—including one of the named inventors on the patents-in-suit—while Summit 6 identified no witness subject to that power in NDTX. Yet, in direct contradiction of this Court's case law, the district court held that the compulsory-process factor was neutral.

*Third*, the district court erroneously concluded that the "relative ease of access to sources of proof" factor was neutral, when in fact it strongly favors transfer. Four of the five Petitioners are headquartered or have relevant offices in NDCA, and NDCA has significantly easier access to the fifth Petitioner's evidence, which is located in the State of Washington or in Asia. By contrast, no Petitioner keeps any relevant evidence in NDTX, and the relatively miniscule amount of evidence Summit 6 keeps in that District—some "30 boxes" of documents—was brought there in anticipation of litigation, and thus is entitled to no weight in the transfer analysis. Accordingly, the district court clearly erred when it determined that the "relative ease of access to sources of proof" factor was neutral.

*Fourth*, the district court failed to follow this Court's holding in *Hoffman-La Roche* that a judicial district's local interest in a case is "strong" where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). NDCA's local interest in this case is self-evident. The development work that spawned the

3

patents-in-suit occurred in NDCA while all three named inventors resided there and worked for a company headquartered there.  In addition, four of the five Petitioners are either headquartered in NDCA or have relevant offices in that District, where they collectively employ nearly 20,000 people, and where they developed many of the accused products and services.

Texas, on the other hand, has no meaningful factual connection to this dispute.  Although Summit 6 purports to have its principal place of business in Dallas, it has never had any employees or operations in Texas and is not even registered with the Secretary of State to do business there.  Instead, Summit 6 rents a mail-drop "virtual office" that, for a monthly fee of $75, allows customers to use its "local professional business address" and forwards their mail to them.  In fact, over 140 companies list Summit 6's purported Dallas address as their principal place of business.  Nevertheless, despite this case's lack of any connection to NDTX, and despite clear evidence of venue manipulation, the district court erroneously determined that the local-interest factor was neutral.

*Fifth*, the district court erred in concluding that judicial economy justified keeping this case in NDTX.[2]  As this Court has repeatedly held, however—and as the district court acknowledged—judicial economy concerns cannot overcome a compelling case for transfer.  *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011); *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).  Were

---

[2] As described in more detail below, the district court judge had presided over a prior case involving two of the three patents-in-suit.

the rule otherwise, a plaintiff could effectively nullify § 1404(a) by filing in its favored jurisdiction against a local defendant and then using that prior experience to bind all future defendants to that jurisdiction—just as Summit 6 has attempted to do here.  But, having erroneously held that the other factors did not weigh strongly in favor of transfer, the district court concluded that judicial economy was the ***deciding*** factor that justified keeping the case in NDTX.  This, too, was clear error.

For these and other reasons, as explained more fully below, the district court abused its discretion and reached a patently erroneous result when it refused to transfer this case to NDCA.  This Court should therefore grant the requested writ of mandamus.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion by denying Petitioners' motion to transfer to the Northern District of California under 28 U.S.C. § 1404(a) where the record discloses the following facts:

- Twenty-one known witnesses reside in NDCA, while no known witness resides in NDTX.

- NDCA enjoys absolute subpoena power over at least four non-party witnesses, while NDTX does not enjoy that power over any known witness.

- The patents-in-suit concern inventions allegedly conceived and developed in NDCA, which is where one of the named inventors still resides, where four of the five Petitioners are headquartered or keep relevant offices, where many of the accused products and services were

developed, where relevant witnesses and documents are located, and where acts relevant to Petitioners' inequitable-conduct defense occurred; while the case has no factual connection to Texas whatsoever.

- Respondent Summit 6 has no employees in NDTX, or anywhere in Texas; its purported Dallas office is a mail-drop "virtual office" that, for $75 per month, forwards Respondent's mail; and the "30 boxes" of documents Respondent keeps in NDTX were sent there for purposes of litigation.

- The only factors that could conceivably weigh against transfer are court congestion and judicial economy.

## JURISDICTIONAL STATEMENT

The Federal Circuit has jurisdiction over this petition because the underlying action is a patent case. *See* 28 U.S.C. § 1295; *id.* §§ 1331, 1338(a). Mandamus is available to correct a clear abuse of discretion. *See In re TS Tech. U.S. Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). A court clearly abuses its discretion if it "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts," and if "such error[] produce[s] a patently erroneous result." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) ("*Volkswagen II*") (citations and internal quotation marks omitted).

## STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

6

might have been brought . . . ."[3]  28 U.S.C. § 1404(a); *see also In re Volkswagen AG*, 371 F.3d 201, 202 (5th Cir. 2004) (per curiam) ("*Volkswagen I*").  In reviewing a ruling on a § 1404(a) transfer motion, the Federal Circuit applies regional circuit law—here, the Fifth Circuit's.  *See In re TS Tech*, 551 F.3d at 1319.  In the Fifth Circuit, a district court must grant a transfer motion if the movant shows that the transferee venue is clearly more convenient than the transferor venue.  *See Volkswagen II*, 545 F.3d at 315.  To make this determination, the district court must assess and balance a number of private- and public-interest factors.  The private-interest factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* (internal citation and quotation marks omitted).  The public-interest factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* (alteration in original) (internal quotation marks omitted).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    The development of the claimed inventions in NDCA.

The patents-in-suit are U.S. Patents Nos. 6,895,557 ("the '557 patent"), 7,765,482 ("the '482 patent"), and 8,612,515 ("the '515 patent").  All three purport

---

[3] It is undisputed that this case could have been brought in NDCA.  (A9.)

to relate to processing digital images.  (A147-A159, A161-A175, A177-194.[4])

When the application for the '557 patent was filed, the three named inventors—Lisa Wood, Scott Lewis, and Robin Fried—were employees of Northern California-based PictureWorks Technology, Inc.  (A62-63, A256-60.) All three resided in NDCA.  (A147, A161, A177.)

In 2000, PictureWorks was acquired by iPIX, an imaging technology company with a principal place of business in NDCA.  (A263-66.)  Five years later, Sarah Pate, general manager of iPIX, led a management buyout that formed AdMission Corporation.  (A273.)  As part of the buyout, AdMission acquired the '557 patent and iPIX's interest in a pending continuation application that eventually led to the '482 patent.  (A270, A275.)  The assignments filed with the PTO listed AdMission's address as San Ramon, California, which is in NDCA. (*Id.*)  AdMission—still operating in NDCA—then tried for three years to commercialize the technology claimed in the patents-in-suit.

In May of 2008, AdMission sold its entire operating business to The Cobalt Group.  (A273, A278.)  But AdMission's intellectual property—including the patents-in-suit—remained with its licensing arm, AdMission Licensing LLC.  (*Id.*; A281.)  AdMission Licensing LLC then changed its name to "Summit 6 LLC." (A281.)  The assignments filed with the PTO listed Summit 6's address as San Ramon, California.  (A270, A276.)

---

[4] Citations preceded by an "A" refer to the appendix attached to this Petition.

## II.    Summit 6's continued presence in NDCA and lack of non-fabricated connections to NDTX.

As successor to AdMission's licensing arm, Summit 6 makes no products; its only business is litigation and licensing.  (A576.)  It has just two employees, Sarah Pate and Scott Lewis, neither of whom lives in Texas.  (A766-67.)   Ms. Pate resides in NDCA.  (A283, A285.)  And Mr. Lewis lived in NDCA until the fall of 2013, moving to Utah just months before this action was filed.  (A401.)

Despite having no employees in Texas, Summit 6 purports to have its principal place of business in Dallas (not Wichita Falls, where it filed the Complaint).  (A63 ¶ 4.)  But its alleged office at 4925 Greenville Ave., Suite 200, is a mail-stop "virtual office" that, for a monthly fee, allows customers to use its "local professional business address" and forwards any mail it receives for them.  (A295, A298.)  Indeed, over 140 other businesses list 4925 Greenville Ave., Suite 200, as their principal place of business.  (A741-57.)  There is no evidence that Summit 6 has any operations in Dallas, or anywhere in Texas.

## III.    Petitioners' extensive connections to NDCA and lack of relevant connections to NDTX.

Twitter is a Delaware corporation headquartered in San Francisco, which is in NDCA.  As of the date on which Petitioners moved for transfer, Twitter employed approximately 1,960 employees in NDCA.  (A483 ¶ 7.)  Twitter's senior executive team is based in San Francisco, and decisions related to Twitter's overall business—including the most significant engineering, sales, and marketing decisions related to Twitter's products—are made there.  (A484 ¶ 8.)  Furthermore, the vast majority, if not all, of Twitter's employees with knowledge of the

9

development, implementation, and operation of accused products—including two likely witnesses who were identified in Petitioners' moving papers—work at Twitter's headquarters in San Francisco. (A219, A484 ¶¶ 8-10.) Twitter's multimedia messaging services are developed by the Mobile Messaging Team, and Twitter's photo features are developed by the Photos Team, both of which are based entirely in San Francisco. (A484 ¶ 10.) Moreover, most or all of Twitter's sources of proof are located at, or accessed and managed from, Twitter's San Francisco headquarters. (*Id.*) Twitter does not own or lease any real property, employ any individual, or maintain any documents in NDTX. (*Id* ¶ 11.)

Apple is a California corporation with its principal place of business in Cupertino, California, which is in NDCA. (A486 ¶ 5.) Apple's management, research and development, and marketing are primarily based in or near Cupertino, which is also where the bulk of its decision making takes place. (*Id.*) As of March 29, 2014, Apple had more than 17,400 employees who worked in or near Cupertino—including the four likely witnesses identified in Petitioners' moving papers. (A486-87 ¶¶ 5-7.) The vast majority, if not all, of Apple's design, development, and marketing efforts relevant to this action occurred or are occurring in or near Cupertino, California. (A486 ¶ 6.) Likewise, the vast majority, if not all, of the sources of proof, including the electronic and paper records of the likely witnesses' work, relevant technical documents and source code, and relevant financial documents, are located in or near Cupertino. (A486-A487 ¶ 7.)

Motorola's principal place of business is in Chicago, Illinois, but it operates

a large office in Sunnyvale, California, which is in NDCA. (A490-91 ¶¶ 3, 6.) As of the date Petitioners moved for transfer, Motorola employed approximately 500 people in its Sunnyvale office, including the three likely witnesses identified in Petitioners' moving papers. (A491 ¶ 7.) Documents related to the design, development, and sales of Motorola's accused products are located in Sunnyvale, and some of the design and development work on those products occurred there. (A492 ¶ 13.) Although Motorola currently leases real property in Fort Worth, no activities related to the research, design, sales, or marketing of Motorola's accused products occurred there. (A493 ¶¶ 17-19.) Instead, the design and development of Motorola's products occurred either in Sunnyvale, California, or in Chicago, Illinois, and Motorola's relevant witnesses and evidence are located in those cities. (A492 ¶ 13.)

Although Summit 6 has sued three LGE entities—LG Electronics, Inc. ("LGE Inc."), LG Electronics U.S.A., Inc. ("LGE USA"), and LG Electronics MobileComm U.S.A., Inc. ("LGE MobileComm")—LGE MobileComm is the only LGE entity that imports, markets, sells, and offers for sale LG-branded mobile products (including the accused smartphones and related accessories) in the U.S. (A543 ¶ 6.) LGE MobileComm is a California corporation with its principal place of business in San Diego, California, and also leases a 25,000-square-foot office in San Jose, California, which is in NDCA. (A544 ¶ 11.) As of the date Petitioners moved for transfer, the San Jose office was staffed with one LGE MobileComm sales employee and 56 employees of a wholly-owned subsidiary, LG Electronics Mobile Research U.S.A., LLC. (*Id.*) LGE Inc., which manufactures the accused

LGE devices, is a Korean company with its headquarters, relevant employees, and documents in Seoul, South Korea.  (A543 ¶ 5.)  And although LGE USA is a wholly-owned subsidiary of LGE Inc., it has no role in the importation, design, development, manufacture, or sale of the accused LGE products.  (A545 ¶ 21.)  For these reasons, and as explained in more detail below, LGE's relevant U.S. presence is in San Jose, California (within NDCA) and in San Diego, California.

Finally, Summit 6 has sued two HTC entities:  HTC Corporation, a Taiwanese parent company; and its subsidiary and U.S. operating company HTC America, Inc., headquartered in Bellevue, Washington.  (A495-96 ¶¶ 2, 8.)  Although witnesses knowledgeable about the design, development, and functionality of HTC's mobile devices are located in Taiwan, the majority of HTC witnesses knowledgeable about the marketing, sales, and distribution of the accused devices are located at HTC America's headquarters in Bellevue, which is over 1,000 miles closer to NDCA than to NDTX.  (A322, A324, A495-96 ¶¶ 2, 8.)  Likewise, sources of proof regarding the design, development, and operation of HTC devices are located in Taiwan, while sources of proof regarding the marketing and sale of those devices in the U.S. are located in Bellevue.  (A497 ¶ 10.)

## IV.    Prior Litigation

In 2011, Summit 6 filed suit against seven companies in the Dallas Division of NDTX, alleging infringement of the '557 and '482 patents (two of the three patents asserted here).  One of the defendants in that case—Samsung Telecommunications America LLC—is headquartered in Dallas, Texas, and

another defendant—Research in Motion Ltd.—has its U.S. headquarters in Irving, Texas. (A474, A476.) Presumably for this reason, the defendants in that case—which was filed prior to the effective date of the America Invents Act ("AIA")[5]—never moved to transfer venue. Only the Samsung defendants proceeded to trial, where claims 40, 44-46, and 49 of the '482 patent were litigated. *See Summit 6 LLC v. Research in Motion Corp.*, No. 3:11-cv-367-O, 2013 U.S. Dist. LEXIS 95164, at *6 (N.D. Tex. June 26, 2013) ("*Samsung*"). The jury found infringement and awarded Summit 6 $15 million in damages. The case is currently on appeal. *See Summit 6, LLC v. Samsung Electronics Co., Ltd.*, Federal Circuit Appeal No. 13-648. The Court heard oral argument on September 10, 2014. *Id.* at Dkt. 61.

## V.    Procedural Posture of the Litigation

On February 18, 2014, Summit 6 filed a single complaint against all five Petitioners, alleging infringement against Twitter based on the photo-upload capabilities of its "applications, APIs, and/or functionality added to the native content sharing options for devices from co-defendants HTC Corp., HTC America, LGE Inc., LGE USA, LGE MobileComm, Motorola, and Apple"; and alleging infringement against the remaining Petitioners based on their devices' messaging technology and use of "the integrated Twitter content upload functionality" and "MMS-to-Twitter functionality." (A62-A145.)

Because Summit 6 filed suit in a forum with no connection to the dispute,

---

[5] The AIA modified the standard for joinder in patent-infringement suits. While actions filed prior to the AIA's effective date remain governed by Rule 20, infringement suits filed after the AIA's effective date are subject to the higher joinder standard provided by Section 299 of the AIA, codified at 35 U.S.C. § 299.

13

and in light of the clear evidence of greater convenience in NDCA, Petitioners filed a motion to transfer this action under § 1404(a) on June 10, 2014. (A195-A202, A209.) On June 25, 2014, Defendant Apple moved for severance and requested that, if the Court did not grant Petitioners' joint motion to transfer, it at least transfer the severed action against Apple to NDCA.[6] (A552-565.)

On September 10, 2014, the district court denied Petitioners' motion to transfer, finding that the witness-convenience factor weighed "slightly" in favor of transfer, the court-congestion factor weighed "slightly" against transfer, judicial-economy concerns weighed against transfer, and all other factors were neutral. (A23.) In the same Order, the district court granted Apple's motion to sever but denied its contingent motion to transfer. (A29.)

## REASONS FOR ISSUING THE WRIT

Summit 6's claims against Petitioners have no meaningful connection to NDTX. The events allegedly giving rise to this lawsuit did not occur in Texas, no witness resides in Texas, and the only relevant documents in Texas are entitled to no weight in the transfer analysis because Summit 6 brought them there in preparation for litigation. The appropriate forum for this action is NDCA, where the alleged inventions were developed; where four of the five Petitioners are headquartered or have relevant offices; where more than twenty identified witnesses—including one of the named inventors—reside; where there is far greater local interest; and where it is overwhelmingly more convenient for the

---

[6] The remaining Defendants have reserved their right to sever under the AIA.

parties to litigate.  In refusing to transfer this case, the district court made clearly erroneous factual findings and misapplied the governing standards.  These errors led the court to overemphasize purported judicial economy benefits and to undervalue other more important transfer factors, producing a patently erroneous result.

## I.    The private- and public- interest factors overwhelmingly favor transfer to the Northern District of California.

### A.    The "witness convenience" factor weighs strongly in favor of transfer—not just "slightly."

The district court clearly erred in holding that the "witness convenience" factor weighs only "slightly" in favor of transfer.  Properly analyzed, this factor weighs **strongly** in favor of transfer.

Convenience to witnesses is commonly acknowledged as "'the single most important factor in transfer analysis.'" *In re Genentech*, 566 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  And the convenience of non-party witnesses is deemed especially pertinent, as they have no stake in the outcome and are under no contractual compulsion to appear for deposition or trial.  *See QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 666 (E.D. Tex. 2007); *see also In re Hoffman-La Roche*, 587 F.3d at 1337 n.3 (observing that four non-party witnesses not "contractually obligated to attend trial in Texas" were unlikely likely to attend trial there).

The record shows that at least **twenty-one** likely witnesses reside in NDCA. (A219-20, A716, A766-68, A779, A813, A825.)  Among these are third-party

witness Lisa Wood, one of the named inventors on the patents-in-suit; Sarah Pate, one of Summit 6's two employees; and numerous employees of each Petitioner who have relevant knowledge of the accused products and services. (*Id.*) The record further shows that the parties will likely identify even more witnesses in NDCA during discovery because (1) the vast majority, if not all, of Twitter's employees with relevant knowledge of the accused products and services reside near its San Francisco headquarters (A483-A484 ¶¶ 5-10); (2) the vast majority, if not all, of Apple's employees with relevant knowledge of the accused products and services reside near its Cupertino headquarters (A486-487 ¶¶ 5-8); (3) two other Petitioners have relevant offices in NDCA (A491 ¶ 6, A542 ¶ 3); (4) the alleged inventions claimed in the patents-in-suit were developed in NDCA (A62-63 ¶ 1, A256-60); (5) the three previous owners of the patents-in-suit, PictureWorks, iPIX, and AdMission, were based in NDCA, and their former employees most likely reside there (*Id.*; A263-66, A270, A275); (6) key events underlying Petitioners' inequitable-conduct defense occurred in NDCA (A221 n.10, A329-30, A332-44, A346-47); and (7) Petitioners developed a number of the accused products and services there (A483-84 ¶¶ 3-10, A486 ¶ 6.).

Petitioners also identified five witnesses who reside in other parts of California or the State of Washington, and for whom NDCA would also be a clearly more convenient venue than NDTX. (A222.) For example, Bellevue/Seattle, where most or all of HTC America's witnesses reside, is approximately 1,000 miles closer to NDCA than NDTX. *See In re Radmax, Ltd.*, 720 F.3d 285, 288-89 (5th Cir. 2013) (explaining that "when the distance between

an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"); *In re Genentech*, 566 F.3d at 1345 (holding that a defendant's research-and-development facilities in the Southern District of California weighed in favor of transfer to the Northern District of California because "at least some of [the defendant's] employees and managers would have to travel approximately half the distance to attend trial in Northern District of California than in the Eastern District of Texas").

Furthermore, while NDCA's San Francisco, Oakland, and San Jose Divisions are all home to international airports, to reach Wichita Falls—which does not have a major airport—*all* witnesses would have to connect through Dallas/Fort Worth or drive 123 miles from that airport to Wichita Falls.[7] (A479, A518.) Litigating in Wichita Falls would be particularly inconvenient for HTC's Taiwan-based witnesses, such as Minfeng Hong,[8] who would have to take a minimum of three flights to reach Wichita Falls due to the lack of direct flights between Taiwan and Dallas-Fort Worth. *See Volkswagen I*, 371 F.3d at 204 n.3 (noting that the lack of direct flights to a proposed venue increases the inconvenience to witnesses); *Canine Caviar Pet Foods v. Pied Piper Pet*, No. 3:09-CV-00677-L, 2009 U.S. Dist. LEXIS 73743, at *13-14 (N.D. Tex. Aug. 19, 2009)

---

[7] The Wichita Falls Municipal Airport only offers four daily flights to and from the Dallas/Fort Worth airport. (A479.)

[8] Minfeng Hong is the manager of the research-and-development team responsible for HTC's MMS application. (A495 ¶ 4.)

(finding that this factor weighed in favor of transfer in part "because [witnesses] can catch a direct flight . . . , as opposed to having to catch a connecting flight").

By contrast with the over twenty identified witnesses in NDCA and the additional witnesses in California and the State of Washington, the parties identified no witness who resides in NDTX, or anywhere in Texas.

As this Court held in *Genentech*, a district court clearly errs in not finding the witness-convenience factor to weigh "***substantially*** in favor of transfer" where, as here, a substantial number of witnesses reside in the transferee district and none reside in the plaintiff's chosen venue. *In re Genentech*, 566 F.3d at 1345 (emphasis added); *see also In re Apple, Inc.*, 2014 U.S. App. LEXIS 17664, at *9 (Fed. Cir. Sept. 11, 2014) (holding that this factor weighed "***heavily***" in favor of transfer where the parties identified eight witnesses in the transferee venue and none in the transferor venue (emphasis added)).  In direct contradiction of this Court's precedent, however, the district court held that this factor weighed only "slightly" in favor of transfer.  (A23.)  This was clear error.

**B.    The "availability of compulsory process" strongly favors transfer.**

The district court's finding that the "compulsory process" factor was neutral was also incorrect.  Properly analyzed, this factor, too, weighs strongly in favor of transfer.

The compulsory-process factor "weigh[s] '***heavily***' in favor of transfer when more third-party witnesses reside within the transferee venue than the transferor venue." *In re Apple*, 2014 U.S. App. LEXIS 17664, at *7-8 (emphasis added) (citing *In re Genentech*, 566 F.3d at 1345).

18

In this case, the record shows that at least *four* third-party witnesses reside in NDCA, while none resides in NDTX.  Specifically, Lisa Wood, a former employee of PictureWorks and iPIX, and a named inventor on all three patents-in-suit, resides in NDCA.  (A716, A688.)  So does Terrell Anderson, a former employee and Vice President of PictureWorks.  (A716.)  And although Marcus Hanson and Matt Lewis are Twitter employees, they are third-party witnesses as to Summit 6's separate action against Apple.  (A219-20.)  Indeed, as Petitioners pointed out in their moving papers, Hanson and Lewis will be third-party witnesses as to all non-Twitter Petitioners granted severance—a remedy to which each is plainly entitled under this Court's precedent, and the district court's own reasoning.[9]  (A220, A224.)  The record further shows that two relevant non-party companies reside in NDCA: Google, whose employees have knowledge of the Android operating system on which some of Motorola's, LGE's, and HTC's accused devices run; and Fenwick & West, the San Francisco-based law firm that investigated a piece of prior art central to Petitioners' inequitable conduct defense.  (A220-21.)  All of these third-party witnesses would be subject to absolute subpoena power in NDCA, but not in NDTX.

By contrast, the parties identified *no witnesses* for whom compulsory process is available in NDTX.  But the district court erroneously held that this factor was neutral.

_____

[9]  As noted, the remaining Defendants have reserved their right to seek severance under 35 U.S.C. § 299.  Hanson and Lewis would also be third-party witnesses as to any other Defendant if Twitter were to settle, as did three of the four defendants in the prior *Samsung* litigation.

*First*, the district court ignored the third-party witnesses residing in NDCA. Although elsewhere in its order the district court acknowledged that Lisa Wood was a third-party witness (A13), it did not mention her or of any of the other named witnesses in its analysis of the "compulsory process" factor. (A14-15); *see also In re Hoffmann-La Roche*, 587 F.3d at 1338 (criticizing the district court's failure to "assess convenience and fairness" to the potential third-party witnesses).

*Second*, the district court erroneously asserted that this factor would weigh in favor of transfer if "the majority" of *all* third-party witnesses resided in NDCA, as opposed to elsewhere in the United States or abroad. (A14.) Then, noting that some third-party witnesses reside outside of NDCA, the district court concluded that this factor was neutral. (*Id.*) As this Court has repeatedly held, however, the relevant inquiry is not whether the majority of *all* possible third-party witnesses are subject to subpoena power in the transferee venue, but whether the transferee venue has that subpoena power over *more third-party witnesses than the transferor venue*. *See In re Apple*, 2014 U.S. App. LEXIS 17664, at *7-8; *In re Hoffmann-La Roche*, 587 F.3d at 1338. The district court failed to apply this rule, and thus failed to perform the proper analysis.

*Third*, the district court erred by concluding that neither NDCA nor NDTX had "absolute subpoena power" because some third-party witnesses lived "elsewhere in the United States and in foreign countries"—precisely the argument this Court rejected in *Hoffman-La Roche*. *See In re Hoffmann-La Roche*, 587 F.3d at 1337-38 (holding that the district court erred in holding "that there is 'absolute subpoena power' only when 'all relevant and material non-party witnesses reside

within the subpoena power of a particular court'"). (A14.) As this Court has explained, "absolute subpoena power" is subpoena power "for both depositions and trial." *Id.* (citing *Volkswagen II*, 545 F.3d at 316). And where, as here, the transferee venue enjoys absolute subpoena power over "a substantial number of witnesses" and the transferor venue holds that power over no witness, the availability of compulsory process weighs in favor of transfer, "***and not only slightly***." *In re Genentech,* 566 F.3d at 1345 (emphasis added).

Accordingly, the district court clearly erred in holding that the "compulsory process" factor was neutral. Had the court analyzed this factor properly, it would have found that this factor weighed strongly in favor of transfer.

## C. "Relative ease of access to sources of evidence" strongly favors transfer.

This Court has noted that, "'[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'" *Id.* This case is no different. In support of their motion, Petitioners submitted affidavits showing that (1) most, if not all, of Twitter's relevant evidence is located in NDCA, because its general software operations—and, more specifically, its entire Mobile Messaging Team and Photos Team—are based at its San Francisco headquarters, which is also where its relevant documents are (A483-A484 ¶¶ 5-10); (2) the vast majority, if not all, of Apple's relevant design, development, and marketing efforts occurred or are occurring in or near Cupertino, California, which is also where the vast majority, if not all, of the sources of proof, including the electronic and paper records of the witnesses' work, relevant technical documents and source code, and relevant

financial documents are (A486-487 ¶¶ 5-8); (3) many of Motorola's relevant documents are located in NDCA, where the two Motorola engineers identified in Petitioners' moving papers are employed, and where those engineers (and their teams) perform work relating to mobile messaging services and the Android operating system (A491-92 ¶¶ 8-10); (4) most of LGE's relevant documents are in California, whether at LGE MobileComm's office in NDCA, or at LGE MobileComm's principal place of business in San Diego (A544-45 ¶¶ 13-16); and (5) NDCA provides easier access to HTC's relevant documents, which are located in Bellevue, Washington, or in Taiwan (A495 ¶ 5, A497 ¶ 10).  Petitioners further attested that *no* relevant documents are located in NDTX.  (A484 ¶ 11, A488 ¶ 11, A492 ¶¶ 13-14, A495 ¶ 5, A497 ¶ 10, A545-46 ¶¶ 16-22.)

In response, Summit 6 asserted only that it "possesses over 30 boxes of hard-copy work documents, software packages, and other business materials" in NDTX.  (A611 ¶ 19.)  Notably, Summit 6 did not contradict Petitioners' assertion that these documents had been brought to NDTX for purposes of litigation, prior to the *Samsung* case.  (*Compare* A227 *with* A611 ¶ 19.)

Nevertheless, the district court found that the access-to-proof factor was neutral.  (A12.)  This conclusion was clearly erroneous for three reasons.

*First*, the district court gave significant weight to the thirty boxes of documents Summit 6 brought to NDTX in preparation for litigation.  (A10, A11.)  But this Court has made clear that such "artifacts . . . of litigation" are entitled to ***no weight*** in the transfer analysis.  *See In re Verizon*, 635 F.3d at 561-62.  This is true even where the plaintiff brought the documents to the chosen venue in

anticipation of prior litigation—here, prior to the *Samsung* case. *See id.* (rejecting the argument that this factor weighed against transfer because plaintiff had "maintained sources of proof in Marshall, Texas[,] from its prior litigation"; those documents were "artifacts of its prior litigation"). The district court therefore clearly erred in giving any weight to Summit 6's "30 boxes" of documents in NDTX—let alone enough weight to offset the extensive evidence in NDCA.

*Second*, the district court made clearly erroneous factual findings regarding the amount of evidence located in each venue. Even if Summit 6's documents in NDTX were entitled to some weight—which they are not—the quantity of documents that could possibly fit in "30 boxes" is trivial in comparison to the amount of relevant documents Twitter, Apple, Motorola, and LGE keep in NDCA, where they have their headquarters or major offices and collectively employ nearly 20,000 people. But the district court repeatedly emphasized that Summit 6's documents were in NDTX (A10, A11), and made no mention of the fact that ***none*** of the Petitioners—from whom "the bulk of the relevant evidence usually comes," *In re Genentech*, 566 F.3d at 1345—keeps any relevant evidence there. In fact, the district court never compared the amount of evidence in NDCA to the amount in NDTX, focusing instead on evidence that it thought might be outside either venue. (A11.)

*Third*, the district court clearly erred by placing substantial weight on evidence located outside of both NDCA and NDTX, without assessing the relative access to proof between these two venues. For example, the district court noted that some of HTC's evidence was likely to be in Bellevue, Washington. (A10.)

But it ignored the fact that Bellevue is over 1,000 miles closer to NDCA than to NDTX, and that there are direct flights to NDCA (but not to Wichita Falls), giving NDCA relatively easier access to documents in Bellevue. *See In re Genentech*, 566 F.3d at 1348 (holding that this factor favored transfer in part because litigating in NDCA "would reduce significantly any transportation of documents" from facilities in San Diego). The district court concluded that "where sources of proof originate from varied locations, . . . this factor is neutral." (A11.) That is, the district court did not analyze whether more evidence was located in NDCA or NDTX, but instead whether more evidence was located in NDCA or *the rest of the world*. This was clear error.

For these reasons, the district court clearly erred in concluding that access to sources of evidence was neutral. A correct analysis of this factor reveals that it weighs significantly in favor of transfer.

### D. The "local interest" factor strongly favors transfer.

The district court's finding that the "local interest" factor is neutral, favoring neither a grant nor a denial of transfer, is clearly erroneous. Properly analyzed, this factor weighs strongly in favor of transfer.

A judicial district's "local interest" in a case is "***strong***" where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffman-La Roche*, 587 F.3d at 1337 (emphasis added). NDCA therefore has a strong local interest in seeing this dispute resolved within its borders. The alleged inventions claimed by the patents-in-suit were developed in NDCA by companies

based there.  Respondent Summit 6 is a company with two employees, both of whom lived in NDCA until shortly before the Complaint was filed, and one of whom still does.  (A212-13, A283, A285, A401.)  Petitioners' inequitable-conduct defense will focus heavily on deception and other misconduct by residents of NDCA (Sarah Pate, Scott Lewis, and Lisa Wood, among others), and on factual disputes among NDCA witnesses about events that occurred in NDCA. (A221-22, A224, A230.)  The parties identified twenty-one witnesses who reside in NDCA— which is not surprising, because that is where the alleged inventions claimed in the patents-in-suit were developed, where four of the five Petitioners are headquartered or have major offices, and where they collectively employ nearly 20,000 people. Therefore, this case undoubtedly "calls into question the work and reputation of" individuals who reside in or near NDCA and who conduct business in that community.

In contrast, NDTX has "no relevant connection to the actions giving rise to this case"—because no facts giving rise to Summit 6's infringement claims or to Petitioners' inequitable-conduct defense occurred there.  *In re TS Tech*, 551 F.3d at 1321.  That is why Summit 6 found it necessary to manufacture the appearance of a connection by setting up a sham office in Dallas and sending "30 boxes" of documents to NDTX.[10]

The district court, however, relied on several clearly erroneous factual

---

[10] It is not clear where Summit 6 keeps its "30 boxes" of documents; it shares the "virtual office" it rents in Dallas with at least 145 other companies.  (A732, A742-56.)

findings and overlooked this Court's case law to conclude that this factor was neutral.

*First*, the district court found that "Summit 6 has been a Dallas-based company . . . for almost ten years." (A18.)  In fact, the record shows that Summit 6 has not even been in existence for 10 years: AdMission Licensing LLC—formed in November of 2006—changed its name to Summit 6 in December of 2008, after AdMission sold its operating business to The Cobalt Group.  (A281.)  Nor could Summit 6, a Delaware LLC, legitimately be considered a "Dallas-based company" upon formation, or at any time thereafter:  It listed its address as "San Ramon, California" (a city within NDCA) on the change-of-name papers it filed with the PTO in December of 2008; it has **never** had any Texas employees; and it is not even registered with the Secretary of State to do business in Texas.  (A270, A276, A735-40.)

*Second*, the district court found that Summit 6 had been "paying property taxes" in Texas "for almost ten years." (A18.)  But the record shows that Summit 6 only began paying property taxes in Texas in 2012—*after* it filed its patent-infringement lawsuit against the *Samsung* defendants.  (A732 ¶ 7, A759-63.)  Moreover, these property taxes amounted to just $21.04 in 2012, 2013, and 2014 for maintaining a virtual office.  (*Id.*)

*Third*, the district court found that Summit 6 had been "working with Dallas-based Sell.com for almost ten years." (A18.)  But Summit 6—which, again, has not even been in existence for ten years—alleged only a loose connection with Sell.com, with which it claims to have met to discuss unidentified "strategy and

business opportunities." (A611 ¶ 15.)  Those discussions have apparently never developed into any actual business venture, and Summit 6 did not identify any Sell.com witnesses in its opposition or initial disclosures, or explain Sell.com's relevance to this case.  Notably, Summit 6 called no witnesses from Sell.com during the prior *Samsung* case.  (A733 ¶ 15.)  In fact, the only Texas witnesses on Summit 6's *Samsung* witness list were four Samsung employees with no connection to this case and an expert witness under Summit 6's control.  (*Id.*)[11]

*Fourth*, the district court found that Petitioners had "failed to marshal any evidence of forum manipulation . . . ."  (A18.)  In fact, the record shows all the hallmarks of a venue-manipulation scheme.  Summit 6 has no employees in Texas, and never has.  Instead, one of its two employees lives in NDCA and the other lived in NDCA until shortly before the Complaint was filed.  (He now lives in Utah.)  (A212-13, A283, A285, A401.)  As is to be expected of a purported Texas company with no Texas employees and no business other than litigation, Summit 6 has no real office in Texas either.  Instead, it rents a mail-stop "virtual office" office in Dallas—one that, for $75 per month, allows customers to use its "local professional business address" and forwards their mail.  (A213, A295, A298, A300-14, A732 ¶ 6.)  Finally, Summit 6 does not deny that it shipped its "30 boxes" of documents to NDTX prior to the *Samsung* litigation.  (*Compare* A227 *with* A611 ¶ 19.)

This Court has expressly condemned each of these venue-manipulation

---

[11] By contrast, Summit 6 listed **seventeen** NDCA residents on its witness list in the *Samsung* case.  (A733 ¶ 15.)

tactics. *See, e.g.*, *In re Zimmer*, 609 F.3d at 1381 (condemning the plaintiff's attempt to artificially establish venue by setting up a sham office; the plaintiff had no employees in Texas and therefore had "no presence in Texas that should be given any weight in the transfer analysis"); *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (giving as an example of forum manipulation a party's assertion that a mere "mail drop box" is its "nerve center"); *In re Hoffman-La Roche*, 587 F.3d at 1336-37 (holding that the assertion that documents sent to Texas in anticipation of litigation were "Texas" documents was a "fiction" created to manipulate venue). But the district court overlooked this case law.

As shown, the district court failed to apply governing law and overlooked facts of record in holding that the "local interest" factor was neutral. Had the court analyzed this factor properly, it would have found that this factor weighed ***strongly*** in favor of transfer.

## II. Judicial economy and court congestion do not justify keeping this case in Texas.

The district court erroneously concluded that judicial economy justified keeping this case in NDTX. (A23.) As noted, the district judge presided over a prior case involving two of the three patents-in-suit. But this Court has made clear that judicial-economy concerns do not control the transfer analysis when another venue is clearly more convenient. *In re Zimmer*, 609 F.3d at 1382 (explaining that "the fact that [plaintiff] had also filed suit against another defendant in the same forum" did not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor").

Indeed, "[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)." *In re Verizon*, 635 F.3d at 562. Were the law otherwise, a plaintiff could simply file in its favored venue against a local defendant and then use that prior experience to bind all future defendants to that venue—regardless of inconvenience, local interest, and the interests of justice.

The district court acknowledged that "judicial economy concerns generally do not overcome an otherwise compelling case for transfer." (A22 n.4 (citing *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011)).) But the district court found that this rule was inapplicable here because "the majority of the public and private interest factors are neutral"; accordingly, it found that judicial economy was the deciding factor.[12] (A22-23.)

As shown above, however, the district court clearly erred in its analysis of the "witness convenience," "compulsory process," "relative ease of access to sources of evidence," and "local interest" factors—all of which ***strongly*** favor transfer. These errors infected the rest of the district court's analysis, leading it to conclude that judicial economy justified keeping the case in NDTX. *See In re Apple*, 2014 U.S. App. LEXIS 17664, at *10-11 (granting petition for writ of mandamus and noting that "[t]he effect of [the district court's] combined errors . . . inevitably led the district court to err in balancing the relative convenience factors

---

[12] Specifically, the district court concluded that witness convenience weighed "slightly" in favor of transfer, court congestion weighed "slightly" against transfer, judicial economy weighed against transfer, and the rest of the factors were neutral.

with the interests of justice, ***regardless of any assigned weight to the judicial efficiency factor***" (emphasis added)).  Because, as explained above, there ***was*** a "compelling case for transfer," judicial-economy concerns did not justify keeping this case in Texas, and the district court clearly erred in concluding otherwise, producing a patently erroneous result.

Likewise, any concerns over court congestion cannot justify keeping this case in Texas.  It is unclear whether this factor even weighs against transfer at all, because the record reveals that the average times to disposition in NDTX and NDCA are approximately equal.  (A319-20.)  But in any event, this Court has held that "court congestion" is the "most speculative" of the factors, and one that cannot outweigh the other convenience factors if they favor transfer.  *In re Genentech*, 566 F.3d at 1347.

## CONCLUSION

For the foregoing reasons, this Court should issue a writ of mandamus directing the district court to vacate its September 10, 2014 Order to the extent it denies Petitioners' transfer motion and to transfer these cases to the U.S. District Court for the Northern District of California.

Dated:  October 22, 2014                    Respectfully submitted,


                                            *s/ David J. Silbert*
                                            DAVID J. SILBERT
                                            LEO L. LAM
                                            JULIE A. DUNCAN
                                            KEKER & VAN NEST LLP
                                            633 Battery Street
                                            San Francisco, CA 94111-1809
                                            Telephone:  415 391 5400
                                            Facsimile:   415 397 7188

                                            *Attorneys for Petitioner TWITTER, INC.*


*s/ William C. Rooklidge*                   *s/ Yar R. Chaikovsky*
WILLIAM C. ROOKLIDGE                        YAR R. CHAIKOVSKY
MARK A. FINKELSTEIN                         PHILIP OU
FRANK P. COTE                               MCDERMOTT WILL & EMERY LLP
JONES DAY                                   275 Middlefield Road
3161 Michelson Drive, Suite 800             Suite 100
Irvine, CA 92612                            Menlo Park, CA 94025-4004
Telephone: (949) 553-7502                   Telephone: (650) 815-7400
Facsimile:  (949) 553-7539                  ychaikovsky@mwe.com
wrooklidge@jonesday.com                     pou@mwe.com
mafinkelstein@jonesday.com
fcote@jonesday.com
                                            *Attorneys for Petitioners HTC*
                                            *Corporation and HTC America Inc.*
*Attorneys for Petitioner Apple Inc.*


*s/ Steven D. Moore*                        *s/ Steven J. Routh*
STEVEN D. MOORE                             STEVEN J. ROUTH
BONNIE M. GRANT                             ORRICK HERRINGTON &
KILPATRICK TOWNSEND                         SUTCLIFFE LLP
STOCKTON LLP                                Columbia Center
Two Embarcadero Center                      1152 15th Street, N.W.
Eighth Floor                                Washington, D.C. 20005-1706
San Francisco, CA 94111                     Tel.: (202) 339-8400
Telephone: (415) 576-0200                   Fax: (202) 339-8500
bgrant@kilpatricktownsend.com

smoore@kilpatricktownsend.com
D. CLAY HOLLOWAY
KILPATRICK TOWNSEND
STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
cholloway@kilpatricktownsend.com

***Attorneys for Petitioner Motorola Mobility LLC***

ROBERT M. ISACKSON
ORRICK HERRINGTON &
SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel.: (212) 506-5000
Fax: (212) 506-5151

STACEY E. STILLMAN
ORRICK HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
Fax: (650) 614-7401

HSIWEN LO
ORRICK HERRINGTON &
SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614
Telephone: (949) 567-6700
hlo@orrick.com

***Attorneys for Petitioners LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics MobileComm U.S.A., Inc.***

# CERTIFICATE OF SERVICE

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
Misc. No. _____

------------------------------------------------------------------------------

IN RE TWITTER, INC., APPLE INC., MOTOROLA
MOBILITY LLC, HTC CORPORATION, HTC AMERICA, INC.,
LG ELECTRONICS, INC., LG ELECTRONICS USA, INC.,
and  LG ELECTRONICS MOBILECOMM USA, INC.,

------------------------------------------------------------------------------

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Keker & Van Nest LLP, attorneys for Petitioner Twitter, Inc., to print this document.  I am an employee of Counsel Press.

On the **22nd Day of October, 2014**, I served the within **Petition for Writ of Mandamus** upon:

Mike McKool *(via FedEx)*
Ashley N. Moore
Mitchell R. Sibley
Phillip M. Aurentz
Richard A. Kamprath
Theodore Stevenson, III
McKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
mmckool@McKoolSmith.com
amoore@McKoolSmith.com
msibley@@McKoolSmith.com
paurentz@McKoolSmith.com
rkamprath@McKoolSmith.com
tstevenson@McKoolSmith.com

Bradley W. Caldwell
Caldwell Cassady Curry, P.C.
2101 Cedar Springs Road
Suite 1000
Dallas, TX 75201
Telephone: 214-888-4848
Facsimile: 214-888-4849
bcaldwell@caldwellcc.com

<u>Attorneys for Summit 6 LLC</u>

via E-mail and also via Overnight Delivery to the lead counsel indicated above.

Additionally, a copy will be sent to this U.S. District Judge:

Hon. Reed O'Connor
United States District Court Judge
United States District Court for the
Northern District of Texas
501 W. 10th Street
Room 201
Fort Worth, Texas 76102-3673
Telephone: (817) 850-6788

**via Express Mail,** by causing a true copy of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

October 22, 2014

John C. Kruesi, Jr.
Counsel Press