## VOLUME II OF II, PAGES A449 TO A982

Miscellaneous Docket No. _____

# United States Court of Appeals
# for the Federal Circuit

IN RE TWITTER, INC., APPLE INC., MOTOROLA MOBILITY LLC,
HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS, INC.,
LG ELECTRONICS U.S.A., INC., and
LG ELECTRONICS MOBILECOMM U.S.A., INC.,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District Court
for the Northern District of Texas, Wichita Falls Division
Case Nos. 7:14-cv-00014-O and 7:14-cv-00106-O
Honorable Reed O'Connor*

## APPENDIX IN SUPPORT OF PETITION
## FOR WRIT OF MANDAMUS

DAVID J. SILBERT
LEO L. LAM
JULIE A. DUNCAN
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
dsilbert@kvn.com
llam@kvn.com
jduncan@kvn.com

*Attorneys for Petitioner Twitter, Inc.*

WILLIAM C. ROOKLIDGE
MARK A. FINKELSTEIN
FRANK P. COTE
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612
Telephone: (949) 553-7502
Facsimile:  (949) 553-7539
wrooklidge@jonesday.com
mafinkelstein@jonesday.com
fcote@jonesday.com

*Attorneys for Petitioner Apple Inc.*

*(Counsel Continued Inside)*

*(Counsel Continued)*

STEVEN D. MOORE
BONNIE M. GRANT
KILPATRICK TOWNSEND
STOCKTON LLP
Two Embarcadero Center
Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
bgrant@kilpatricktownsend.com
smoore@kilpatricktownsend.com

D. CLAY HOLLOWAY
KILPATRICK TOWNSEND
STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
cholloway@kilpatricktownsend.com

*Attorneys for Petitioner Motorola Mobility LLC*

STEVEN J. ROUTH
ORRICK HERRINGTON
& SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel.: (202) 339-8400
Fax: (202) 339-8500

STACEY E. STILLMAN
ORRICK HERRINGTON
& SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
Fax: (650) 614-7401

ROBERT M. ISACKSON
ORRICK HERRINGTON
& SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel.: (212) 506-5000
Fax: (212) 506-5151

HSIWEN LO
ORRICK HERRINGTON
& SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
Telephone: (949) 567-6700
hlo@orrick.com

*Attorneys for Petitioners LG Electronics, Inc., LG Electronics U.S.A., Inc.,*
*and LG Electronics MobileComm U.S.A., Inc.*

YAR R. CHAIKOVSKY
PHILIP OU
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road
Suite 100
Menlo Park, CA 94025-4004
Telephone: (650) 815-7400
ychaikovsky@mwe.com
pou@mwe.com

*Attorneys for Petitioners HTC Corporation and HTC America Inc.*

# TABLE OF CONTENTS

| DOCKET NO. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| 143 | 09/10/14 | Memorandum Opinion and Order | A1 |
| -- | -- | Docket Sheets | A31 |
| 6 | 02/19/14 | First Amended Complaint for Patent Infringement | A62 |
| 6-1 | 02/19/14 | Exhibit A: US 6,895,557 Bl | A146 |
| 6-2 | 02/19/14 | Exhibit B: US 7,765,482 B2 | A160 |
| 6-3 | 02/19/14 | Exhibit C: US 8,612,515 B2 | A176 |
| 89 | 06/10/14 | Defendants' Motion to Transfer to the Northern District of California | A195 |
| 90 | 06/10/14 | Defendants' Brief in Support of Their Motion to Transfer to the Northern District of California | A203 |
| 91 | 06/10/14 | Appendix in Support | A238 |
| | | 1. Declaration of Julie Duncan in support of Defendants' Motion to Transfer | A246 |
| | | 2. Combined Declaration and Power of Attorney for Utility Patent Application for U.S. Patent Application No. 09/357,836 (Exhibit A to Declaration of Julie Duncan) | A255 |
| | | 3. Press release jointly issued on March 8, 2000, by iPIX and PictureWorks Technology, Inc. (Exhibit B to Declaration of Julie Duncan) | A262 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | 4. USPTO Patent Assignment Abstract of Title for U.S. Patent No. 6,895,557 to Wood et al. (Exhibit C to Declaration of Julie Duncan) | A267 |
| | | 5. Press release regarding AdMission from Swiftsure Capital LLC (Exhibit D to Declaration of Julie Duncan) | A272 |
| | | 6. USPTO Patent Assignment Abstract of Title for U.S. Patent No. 7,765,482 to Wood et al. (Exhibit E to Declaration of Julie Duncan) | A274 |
| | | 7. AdMission Press Release regarding acquisition by Cobalt (Exhibit F to Declaration of Julie Duncan) | A277 |
| | | 8. Delaware Division of Corporations Entity Details on Summit 6 LLC (Exhibit G to Declaration of Julie Duncan) | A280 |
| | | 9. Wells Fargo Bank, N.A., Substitution of Trustee and Full Reconveyance dated August 30, 2013 (Exhibit H to Declaration of Julie Duncan) | A282 |
| | | 10. LinkedIn profile of Sarah Pate (Exhibit I to Declaration of Julie Duncan) | A284 |
| | | 11. Full Reconveyance recorded with the County Clerk Recorder of Contra Costa County, California, on October 17, 2013 (Exhibit J to Declaration of Julie Duncan) | A288 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | 12. Full Reconveyance recorded with the County Clerk Recorder of Contra Costa County, California, on July 16, 2013 (Exhibit K to Declaration of Julie Duncan) | A290 |
| | | 13. Scott F. Wilson's biography on the website of Swiftsure Capital LLC (Exhibit L to Declaration of Julie Duncan) | A292 |
| | | 14. Davinci Virtual Office Solutions' webpage advertising its virtual office at 4925 Greenville Ave., Dallas, TX 75206 (Exhibit M to Declaration of Julie Duncan) | A294 |
| | | 15. Davinci Virtual Office Solutions' "Contact Us" webpage (Exhibit N to Declaration of Julie Duncan) | A297 |
| | | 16. YP.com webpage advertising a personal injury law firm located at 4925 Greenville Ave., Suite 200, Dallas, TX 75206 (Exhibit O to Declaration of Julie Duncan) | A299 |
| | | 17. LeForce Law, PLLC "Contact Us" webpage (Exhibit P to Declaration of Julie Duncan) | A302 |
| | | 18. Dallas Geological Society "Contact Us" webpage (Exhibit Q to Declaration of Julie Duncan) | A307 |
| | | 19. Law Office of S. Craig Glickman "Locations" webpage (Exhibit R to Declaration of Julie Duncan) | A309 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | 20. The Coles Firm "Contact Us" webpage (Exhibit S to Declaration of Julie Duncan) | A311 |
| | | 21. Rothrock Law Firm PL webpage (Exhibit T to Declaration of Julie Duncan) | A313 |
| | | 22. Table C-5, U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases Terminated (Exhibit U to Declaration of Julie Duncan) | A317 |
| | | 23. Bellevue, Washington, to San Francisco, California - Google Maps (Exhibit V to Declaration of Julie Duncan) | A321 |
| | | 24. Bellevue, Washington, to Wichita Falls, Texas - Google Maps (Exhibit W to Declaration of Julie Duncan) | A323 |
| | | 25. March 29, 2013 trial transcript excerpt from Summit 6 LLC v. Research in Motion Corp. et al., No. 3:11-cv-00367-O (Exhibit X to Declaration of Julie Duncan) | A328 |
| | | 26. April 3, 2013 trial transcript excerpt from Summit 6 LLC v. Research in Motion Corp. et al., No. 3:11-cv-00367-O (Exhibit Y to Declaration of Duncan) | A331 |
| | | 27. Email from Peter Yoakum dated March 14, 2006, which was submitted as Defendants' Exhibit 2128 in Summit 6 LLC v. Research in Motion Corp. et al., No. 3:11-cv-00367-O (Exhibit Z to Declaration of Julie Duncan) | A345 |

| DOCKET NO. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| | | 28. USPTO Final Office Action issued on May 21, 2014, in ex parte Reexamination No. 90/012,987 (Exhibit AA to Declaration of Julie Duncan) | A348 |
| | | 29. Deed of Trust recorded with the Auditor of Kitsap County, Washington, and signed by Peter Yoakum and Julie Yoakum on April 4, 2014 (Exhibit BB to Declaration of Julie Duncan) | A380 |
| | | 30. San Diego, California, to San Francisco, California - Google Maps (Exhibit CC to Declaration of Julie Duncan) | A398 |
| | | 31. Contact report for Scott Lewis from public records search engine PeopleSmart (Exhibit DD to Declaration of Julie Duncan) | A400 |
| | | 32. Gordon Gardiner's biography on Swiftsure Capital LLC's website (Exhibit EE to Declaration of Julie Duncan) | A404 |
| | | 33. Midway, Utah, to San Francisco, California - Google Maps (Exhibit FF to Declaration of Julie Duncan) | A406 |
| | | 34. Midway, Utah, to Wichita Falls, Texas - Google Maps (Exhibit GG to Declaration of Julie Duncan) | A408 |
| | | 35. USPTO Inter Partes Reexamination Filing Data (Exhibit HH to Declaration of Julie Duncan) | A414 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | 36. USPTO Ex Parte Reexamination Filing Data (Exhibit II to Declaration of Julie Duncan) | A421 |
| | | 37. Orbitz estimate of travel times and costs for flights from San Diego Airport ("SAN") to San Francisco International Airport ("SFO") (Exhibit JJ to Declaration of Julie Duncan) | A434 |
| | | 38. Orbitz estimate of travel times and costs for flights from San Diego Airport ("SAN") to Wichita Falls Municipal Airport ("SPS") (Exhibit KK to Declaration of Julie Duncan) | A440 |
| | | 39. Orbitz estimate of travel times and costs for flights from Seoul, South Korea, to San Francisco International Airport ("SFO") (Exhibit LL to Declaration of Julie Duncan) | A449 |
| | | 40. Orbitz estimate of travel times and costs for flights from Seoul, South Korea, to Wichita Falls Municipal Airport ("SPS") (Exhibit MM to Declaration of Julie Duncan) | A455 |
| | | 41. Distance between Seoul, South Korea, and San Francisco, California - Geobytes.com (Exhibit NN to Declaration of Julie Duncan) | A465 |
| | | 42. Distance between Seoul, South Korea, and Wichita Falls, Texas - Geobytes.com (Exhibit OO to Declaration of Julie Duncan) | A467 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | 43. Distance between San Diego, California, and San Francisco, California - Geobytes.com (Exhibit PP to Declaration of Julie Duncan) | A469 |
| | | 44. Distance between San Francisco, California, and Wichita Falls, Texas- Geobytes.com (Exhibit QQ to Declaration of Julie Duncan) | A471 |
| | | 45. Samsung Telecommunications America – "Our Company" webpage (Exhibit RR to Declaration of Julie Duncan) | A473 |
| | | 46. Blackberry – "Contact Information" webpage (Exhibit SS to Declaration of Julie Duncan) | A475 |
| | | 47. Wichita Falls Municipal Airport – "Flights & Reservations" webpage (Exhibit TT to Declaration of Julie Duncan) | A478 |
| | | 48. Declaration of Ed Axelsen in support of Defendants' Motion to Transfer | A482 |
| | | 49. Declaration of Mark Buckley in support of Defendants' Motion to Transfer | A485 |
| | | 50. Declaration of Renee Brown in support of Defendants' Motion to Transfer | A490 |
| | | 51. Declaration of Stephanie Bariault in support of Defendants' Motion to Transfer | A494 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | 52. Orbitz estimate of travel times and costs for flights from Seattle-Tacoma International Airport to San Francisco International Airport (Exhibit 1 to Declaration of Stephanie Bariault) | A501 |
| | | 53. Google Maps: Driving Directions showing distance from San Francisco International Airport to the San Francisco Courthouse. (Exhibit 2 to Declaration of Stephanie Bariault) | A507 |
| | | 54. Orbitz estimate of travel times and costs for flights from Seattle- Tacoma International Airport to Wichita Falls Municipal Airport (Exhibit 3 to Declaration of Stephanie Bariault) | A510 |
| | | 55. Google Directions from Dallas/Fort Worth International Airport ("DFW") to the Wichita Falls Courthouse (Exhibit 4 to Declaration of Stephanie Bariault) | A517 |
| | | 56. Orbitz estimate of travel times from Taiwan Taoyuan International Airport ("TPE") to San Francisco International Airport ("SFO") (Exhibit 5 to Declaration of Stephanie Bariault) | A520 |
| | | 57. Orbitz estimate of travel times from Taiwan Taoyuan International Airport ("TPE") to Wichita Falls Municipal Airport ("SPS") (Exhibit 6 to Declaration of Stephanie Bariault) | A527 |

| DOCKET No. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| | | 58. Directions from Dallas/Fort Worth Airport ("DFW") to Dallas Courthouse – Google Maps (Exhibit 7 to Declaration of Stephanie Bariault) | A535 |
| | | 59. Directions from Dallas/Fort Worth Airport ("DFW") to Fort Worth Courthouse – Google Maps (Exhibit 8 to Declaration of Stephanie Bariault) | A538 |
| | | 60. Declaration of Cecilia Son in support of Defendants' Motion to Transfer | A542 |
| 91-1 | 06/10/14 | Declaration of Julie Duncan In Support of Defendant's Motion to Transfer to the Northern District of California | A246 |
| | | Exhibit A:  Combined Declaration and Power of Attorney for Utility Patent Application for U.S. Patent Application No. 09/357,836 | A255 |
| | | Exhibit B: Press release jointly issued on March 8, 2000, by iPIX and PictureWorks Technology, Inc. | A262 |
| | | Exhibit C: Patent Assignment Abstract of Title for U.S. Patent No. 6,895,557 | A267 |
| | | Exhibit D: Webpage hosted by Swiftsure Capital | A272 |
| | | Exhibit E: Patent Assignment Abstract of Title for U.S. Patent No. 7,765,482 | A274 |
| | | Exhibit F: Press release dated May 7, 2008 | A277 |
| | | Exhibit G: Entity Details on Summit 6 LLC | A280 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | Exhibit H: Substitution of Trustee and Full Reconveyance that Wells Fargo Bank, N.A., recorded with the County Clerk-Recorder of Contra Costa County, California, on August 30, 2013 | A282 |
| | | Exhibit I: Sarah Pate's LinkedIn profile, last accessed on May 27, 2014 | A284 |
| | | Exhibit J: Full Reconveyance recorded with the County Clerk-Recorder of Contra Costa County, California, on October 17, 2013. | A288 |
| | | Exhibit K: Full Reconveyance recorded with the County Clerk-Recorder of Contra Costa County, California, on July 16, 2013. | A290 |
| | | Exhibit L: Scott F. Wilson's biography as hosted on Swiftsure Capital's website, last accessed on May 23, 2014, | A292 |
| | | Exhibit M: Davinci Virtual Office Solutions' webpage advertising its virtual office at 4925 Greenville Ave., Dallas, Texas, last accessed on May 23, 2014 | A294 |
| | | Exhibit N: Davinci Virtual Office Solutions' "Contact Us" webpage, last accessed on April 25, 2014, | A297 |
| | | Exhibit O: Yellowpages.com webpage. | A299 |
| | | Exhibit P: lefocelaw.com/contact-us/ webpage | A302 |
| | | Exhibit Q: dgs.org/memberships/applications web page | A307 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | Exhibit R: craigglickmanlaw.com/map webpage | A309 |
| | | Exhibit S:colesfirm.com/ContactUS.html webpage | A311 |
| | | Exhibit T: www.rothrocklawfirm.com webpage | A313 |
| | | Exhibit U: Table C-5, U.S. District Courts— Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period ending March 31, 2014 | A317 |
| | | Exhibit V: Report from the website http://maps.google.com | A321 |
| | | Exhibit W: Report from the website http://maps.google.com. | A323 |
| | | Exhibit X: Excerpt from the March 29, 2013 trial transcript in *Summit 6 LLC v. Research in Motion Corp. et al.*, Cv. No. 3:11-cv-00367-O | A328 |
| | | Exhibit Y: Excerpt from the April 3, 2013 trial transcript in *Summit 6 LLC v. Research in Motion Corp. et al.*, Cv. No. 3:11-cv-00367-O | A331 |
| | | Exhibit Z: Email from Peter Yoakum dated 04/13/2006, which was submitted as Defendants' Exhibit 2029 in *Summit 6 LLC v. Research in Motion Corp. et al.*, Cv. No. 3:11-cv-00367-O | A345 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| 91-2 | 06/10/14 | Exhibit AA: Final Office Action mailed on May 21, 2014, in *ex parte* reexamination proceeding No. 90/012,987 | A348 |
| | | Exhibit BB: Deed of Trust recorded on April 8, 2014, with the Auditor of Kitsap County, Washington, and signed by Peter Yoakum and Julie Yoakum on April 4, 2014 | A380 |
| | | Exhibit CC: Report from the website http://maps.google.com. | A398 |
| | | Exhibit DD: Report from public records search engine Peoplesmart. | A400 |
| | | Exhibit EE: Gordon Gardiner's biography on Swiftsure Capital's website | A404 |
| | | Exhibit FF: Report from the website http://maps.google.com. | A406 |
| 91-3 | 06/10/14 | Exhibit GG: Report from the website http://maps.google.com. | A408 |
| | | Exhibit HH: "*Inter Parte* [sic] Reexamination Filing Data – Septeber [sic] 30, 2013," published by the United States Patent and Trademark Office. | A414 |
| | | Exhibit II: "*Ex Parte* Reexamination Filing Data – September 30, 2013," published by the U.S. Patent and Trademark Office. | A421 |
| | | Exhibit JJ: Orbitz estimate of travel times and costs for June 9, 2014 flights from San Diego International Airport ("SAN") to San Francisco International Airport ("SFO") | A434 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | Exhibit KK: Orbitz estimate of travel times and costs for June 9, 2014 flights from San Diego International Airport ("SAN") to Wichita Falls Municipal Airport ("SPS") | A440 |
| 91-4 | 06/10/14 | Exhibit LL: Orbitz estimate of June 9, 2014 travel times from Seoul ("ICN" and/or "GMP") to San Francisco International Airport ("SFO") | A449 |
| | | Exhibit MM: Orbitz estimate of June 9, 2014 travel times from Seoul ("ICN" and/or "GMP") to Wichita Falls Municipal Airport ("SPS") | A455 |
| | | Exhibit NN: Printout from Geobytes.com calculating the distance between Seoul, South Korea, and San Francisco, California. | A465 |
| | | Exhibit OO: Printout from Geobytes.com calculating the distance between Seoul, South Korea, and Wichita Falls, Texas. | A467 |
| | | Exhibit PP: printout from Geobytes.com calculating the distance between San Diego, California, and San Francisco, California. | A469 |
| | | Exhibit QQ: Printout from Geobytes.com calculating the distance between San Francisco, California, and Wichita Falls, Texas. | A471 |
| | | Exhibit RR: samsungtelecom.com/life-at-samsung/our-company.asp. | A473 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | Exhibit SS: http://ca.blackberry.com/company/about-us/contact.html | A475 |
| | | Exhibit TT: flywichitafalls.net/flights-reservations/. | A478 |
| 91-5 | 06/10/14 | Declaration of Ed Axelsen in Support of Defendants' Motion to Transfer to the Northern District of California | A482 |
| | | Declaration of Mark Buckley in Support of Defendants' Motion to Transfer Venue | A485 |
| | | Declaration of Renee Brown in Support of Defendant Motorola Mobility LLC's Motion to Transfer | A490 |
| | | Declaration of Stephanie Bariault in Support of Defendants HTC Corporation's and HTC America, Inc's Motion to Transfer Venue | A494 |
| | | Exhibit 1: Orbitz estimate of travel times and costs for flights from Seattle-Tacoma International Airport ("SEA") to San Francisco International Airport ("SFO") sorted by quickest route. | A501 |
| | | Exhibit 2: Google Maps Driving Directions showing distance from San Francisco International Airport ("SFO") to the San Francisco Courthouse (located at 450 Golden Gate Avenue, San Francisco, CA 94102) | A507 |
| | | Exhibit 3: Orbitz estimate of travel times and costs for flights from Seattle-Tacoma International Airport ("SEA") to Wichita Falls Municipal Airport ("SPS"), sorted by | A510 |

| DOCKET NO. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| | | quickest route. | |
| | | Exhibit 4: Google Directions from Dallas/Fort Worth International Airport ("DFW") to the Wichita Falls Courthouse, located at 1000 Lamar Street, Wichita Falls, TX 76301 | A517 |
| | | Exhibit 5: Orbitz estimate of travel times from Taiwan Taoyuan International Airport ("TPE") to San Francisco International Airport ("SFO"), sorted by quickest route. | A520 |
| | | Exhibit 6: Orbitz estimate of travel times from Taiwan Taoyuan International Airport ("TPE") to Wichita Falls Municipal Airport ("SPS"), sorted by quickest route. | A527 |
| | | Exhibit 7: Google Directions from Dallas/Fort Worth Airport ("DFW") to Dallas Courthouse located at 1100 Commerce Street, Dallas, TX 75242 | A535 |
| | | Exhibit 8: Google Directions from Dallas/Fort Worth Airport ("DFW") to Fort Worth Courthouse, located at 501 West 10th Street, Fort Worth, TX 76102. | A538 |
| | | Declaration of Cecilia Son (LG Defendants) in Support of Motion to Transfer | A542 |
| 111 | 06/25/14 | Defendant Apple Inc.'s Motion to Sever | A547 |
| 112 | 06/25/14 | Memorandum in Support of Defendant Apple Inc.'s Motion to Sever | A552 |

| DOCKET NO. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| 118 | 07/01/14 | Plaintiff Summit 6 LLC's Response to Defendants' Motion to Transfer to the Northern District of California | A566 |
| 118-1 | 07/01/14 | Appendix in Support of Plaintiff Summit 6 LLC's Response to Defendants' Motion to Transfer to the Northern District of California | A590 |
| | | Declaration of Richard Kamprath in Suport | A595 |
| | | Exhibit 1 – Jury Trial Transcript excerpts for VirnetX, Inc. v. Apple, Inc., U.S.D.C., Eastern District of Texas, Tyler Division, Civil Action No. 6:10-cv-417, dated Nov. 11, 2012 | A598 |
| | | Exhibit 2 – The Dallas Morning News article, dated Sept. 9, 2013 | A603 |
| | | Exhibit 3 – Tarrant County Appraisal District Business Property Page, dated May 27, 2014 | A606 |
| | | Exhibit 4 – Declaration of S. Pate, dated June 28, 2014 | A608 |
| | | Exhibit 5 – AT&T and Verizon headquarters information, dated July 1, 2014 | A613 |
| | | Exhibit 6 – Internet article from Silicon Valley Business Journal, dated February 5, 2014 | A620 |
| | | Exhibit 7 – U.S. District Courts Chart, dated March 13, 2013 | A625 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| | | Exhibit 8 – Scheduling Order for Summit 6, LLC, v. HTC Corporation, et al., U.S.D.C., Northern District, Wichita Falls Division, Civil Action No.7:14-cv-14-O, dated June 12, 2014 | A629 |
| | | Exhibit 9 – Jury Trial Transcript for Apple, Inc. v. Samsung Electronics Co, et al., U.S.D.C., Northern District of California, San Jose Division, Civil Action No. C-11-01846-LHK, dated July 30, 2012 | A642 |
| | | Exhibit 10 – Order for Kaneka Corporation v. JBS Hair, Inc., et al., U.S.D.C., Northern District of Texas, Dallas Division, Civil Action No. 3:10-cv-1430-P, dated July 5, 2011 | A669 |
| | | Exhibit 11 – Initial Disclosures of Defendant Motorola Mobility LLC for Summit 6, LLC, v. HTC Corporation, et al., U.S.D.C., Northern District, Wichita Falls Division, Civil Action No. 7:14-cv-14-O, dated June 20, 2014 | A685 |
| | | Exhibit 12 – Wichita Falls, Texas Per Diem Rates, dated July 1, 2014 | A694 |
| | | Exhibit 13 – Dallas, Texas Per Diem Rates, dated, July 1, 2014 | A696 |
| | | Exhibit 14 – Sunnyvale, Palo Alto, and San Jose, California Per Diem Rates, dated July 1, 2014 | A698 |
| | | Exhibit 15 – San Francisco, California Per Diem Rates, dated July 1, 2014 | A700 |

| DOCKET NO. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| | | Exhibit 16 – LG Account Marketing Manager Job Information Sheet, dated April 16, 2014 | A702 |
| | | Exhibit 17 – Motorola Mobility Carrier Marketing Consultant Job Information Sheet, dated June 28, 2014 | A705 |
| 119 | 07/15/14 | Defendants' Reply Brief in Support of Their Motion to Transfer to the Northern District of California | A708 |
| 120 | 07/15/14 | Appendix to Defendants' Reply Brief in Support of Their Motion to Transfer to the Northern District of California | A725 |
| | | 1. Declaration of Doulas L. Clark in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) | A731 |
| | | 2. Texas Secretary of State Business Organizations Inquiry Web Page (Exhibit A to Declaration of Douglas L. Clark) | A735 |
| | | 3. Franchise Tax Account Status for Summit 6 (Exhibit B to Declaration of Douglas L. Clark) | A739 |
| | | 4. Dallas County Tax Office Website (Exhibit C to Declaration of Douglas L. Clark) | A741 |
| | | 5. Web Pages from the Dallas County Tax Office Website (Exhibit D to Declaration of Douglas L. Clark) | A758 |

| DOCKET NO. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| | | 6. Summit 6's Initial Disclosures (Exhibit E to Declaration of Douglas L. Clark) | A764 |
| | | 7. Apple Inc.'s Initial Disclosures (Exhibit F to Declaration of Douglas L. Clark) | A773 |
| | | 8. Twitter, Inc.'s Initial Disclosures (Exhibit G to Declaration of Douglas L. Clark) | A785 |
| | | 9. HTC Corporation and HTC America, Inc.'s Initial Disclosures (Exhibit H to Declaration of Douglas L. Clark) | A797 |
| | | 10. Motorola Mobility LLC's Initial Disclosures (Exhibit I to Declaration of Douglas L. Clark) | A808 |
| | | 11. LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics MobileComm USA, Inc.'s Initial Disclosures (Exhibit J to Declaration of Douglas L. Clark) | A817 |
| | | 12. Selected Web Pages from the Tarrant Appraisal District Website (Exhibit K to Declaration of Douglas L. Clark) | A832 |
| | | 13. Supplemental Declaration of Mark Buckley in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) | A839 |
| | | 14. | |
| 122 | 07/16/14 | Plaintiff Summit 6 LLC's Response to Defendant Apple Inc.'s Motion to Sever | A841 |

| DOCKET No. | DATE FILED | DESCRIPTION | APX. NO. |
|---|---|---|---|
| 122.1 | 07/16/14 | Appendix in Support of Plaintiff Summit 6 LLC's Response to Defendant Apple Inc.'s Motion to Sever | A858 |
| | | Exhibit 1 – Memorandum and Opinion Order, *Smartflash LLC v Apple, Inc.,* No. 6:13-cv-447, United States District Court, Eastern District of Texas, Doc. 122, dated Apr. 4, 2014 | A862 |
| | | Exhibit 2 – Summit 6, LLC's Infringement Contentions to Apple, Inc. for U.S. Patent 7,765,482 (Claim 1 only) | A883 |
| | | Exhibit 3 – Twitter Developers website page, *"Get Help/Configuration,"* dated Aug. 25, 2012 | A940 |
| | | Exhibit 4 – Twitter Help Center website article, *"About the Twitter for iOS Integration,"* dated 2014 | A944 |
| | | Exhibit 5 – Apple Support website article, *"iOS: Using Facebook, Twitter, and Other Social Network Accounts,"* dated July 15, 2014 | A949 |
| | | Exhibit 6 - Order (Granting Facebook, Inc.'s Opposed Motion to Sever), *Summit 6, LLC v. Research in Motion,* No. 6:11-cv-367-O, United States District Court, Eastern District of Texas, Doc. 508, dated Feb. 6, 2013 | A953 |
| 123 | 07/30/14 | Defendant Apple Inc.'s Reply Brief Supporting Its Motion to Sever | A959 |

| Docket No. | Date Filed | Description | Apx. No. |
|---|---|---|---|
| 125 | 07/30/14 | Appendix in Support of Defendant Apple Inc.'s Reply Brief Supporting Its Motion to Sever | A974 |
| | | 1. Declaration of Lon Outland in Support of Defendant Apple Inc.'s Reply Supporting its Motion to Sever | A977 |
| | | 2. Excerpts of Plaintiff Summit 6 LLC's First Set Of Common Requests For Production to be Separately Answered by Each Defendant (Exhibit A) | A979 |

# Exhibit LL


Hotels Flights Vacation Packages Cars Cruises Deals Activities New! Welcome Credit Card

Change search Seoul (SEL) to San Francisco, CA (SFO) Mon, Jun 9, 2014

LOWEST PRICE $869.70

Hide Matrix

| | China Eastern Airlines | China Southern Airlines | Multiple Airlines | American Airlines | Japan Airlines | Hawaiian Airlines | US Airways | Air Canad |
|---|---|---|---|---|---|---|---|---|
| Non-stop | | | | | | | | |
| 1+ stops | $869.70 | $885.70 | $885.70 | $1,068.33 | $1,088.80 | $1,185.30 | $1,295.29 | $1,348.3 |

**Refine Results**

**Select flight times**

Outbound

Take-off: Mon 12:15 AM - Tue 12:00 AM

Show landing time

**Select stops**

| | |
|---|---|
| Any | |
| Non-stop | $1,358 |
| 1 stop | $869 |
| 2+ stops | $885 |

**Select price range**

Any

$869-$1,090 (43)

$1,090-$1,380 (46)

$1,380-$1,370 (43)

$1,370-$1,840 (78)

$1,840-$2,090 (59)

$2,090-$6,140 (39)

**Select airlines**

| | |
|---|---|
| Any | |
| Multiple Airlines | $885 |
| Air Canada | $1,348 |
| Air China | $1,728 |
| All Nippon Airways | $1,589 |
| American Airlines | $1,068 |
| Asiana Airlines | $1,358 |
| British Airways | $3,916 |
| Cathay Pacific | $1,987 |
| China Airlines | $1,815 |
| China Eastern Airlines | $869 |

See all

**Matching Results: 307**

**Sort by:** Shortest Flight

Additional baggage fees may apply.

Flight details

**$1,358.30** Total cost FREE Cancel Select

Leave Mon, Jun 9 — 4:30 PM Seoul ICN — 10:45 AM San Francisco SFO — non-stop 10hr 15min — Asiana Airlines 212

Earn $13.58 ORBITZ REWARDS Earn $20 in bonus Orbucks

Flight details

**$2,251.30** Total cost FREE Cancel Select

Leave Mon, Jun 9 — 4:30 PM Seoul ICN — 10:45 AM San Francisco SFO — non-stop 10hr 15min — United Airlines 7979

Flight 7979 Operated by Asiana Airlines

Earn $22.51 ORBITZ REWARDS Earn $20 in bonus Orbucks

Site Feedback

Flight details

**$1,358.33** Total cost FREE Cancel Select

Leave Mon, Jun 9 — 5:30 PM Seoul ICN — 12:00 PM San Francisco SFO — non-stop 10hr 30min — Korean Air 23

Earn $13.58 ORBITZ REWARDS Earn $20 in bonus Orbucks

Flight details

**$1,358.30** Total cost FREE Cancel Select

Leave Mon, Jun 9 — 4:35 PM Seoul ICN — 11:25 AM San Francisco SFO — non-stop 10hr 50min — Asiana Airlines 6614

Flight 6614 Operated by United Airlines

Earn $13.58 ORBITZ REWARDS Earn $20 in bonus Orbucks

Flight details

**$1,895.30** Total cost FREE Cancel Select

Leave Mon, Jun 9 — 5:50 PM Seoul ICN — 12:40 PM San Francisco SFO — non-stop 10hr 50min — Singapore Airlines 16 Seat map

*Orbitz* Earn **$18.95**  *Orbitz* ORBITZ REWARDS  Earn $20 in bonus Orbucks

**$1,961.**30
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
4:35 PM
Seoul ICN

11:25 AM
San Francisco SFO

non-stop
10hr 50min

United Airlines 892
Seat map

*Orbitz* Earn **$19.61**  *Orbitz* ORBITZ REWARDS  Earn $20 in bonus Orbucks

**$1,087.**41
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
8:55 PM
Seoul ICN

5:25 PM
San Francisco SFO

1 stop
12hr 30min

Korean Air 719
American Airlines 8401
Seat map

Change of airlines.
Flight 8401 Operated by Japan Airlines

*Orbitz* Earn **$10.87**  *Orbitz* ORBITZ REWARDS  Earn $20 in bonus Orbucks

**$1,090.**60
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
8:55 PM
Seoul ICN

5:25 PM
San Francisco SFO

1 stop
12hr 30min

Japan Airlines 5256
American Airlines 8401
Seat map

Change of airlines.
Flight 5256 Operated by Korean Air
Flight 8401 Operated by Japan Airlines

*Orbitz* Earn **$10.91**  *Orbitz* ORBITZ REWARDS  Earn $20 in bonus Orbucks

**$4,298.**80
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
8:55 PM
Seoul ICN

5:25 PM
San Francisco SFO

1 stop
12hr 30min

Japan Airlines 5256 / 2
Seat map

Flight 5256 Operated by Korean Air

*Orbitz* Earn **$42.99**  *Orbitz* ORBITZ REWARDS  Earn $30 in bonus Orbucks

**$2,305.**40
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
8:55 PM
Seoul GMP

8:25 PM
San Francisco SFO

1 stop
13hr 20min

All Nippon Airways 1158
American Airlines 8401
Seat map

Change of airlines.
Flight 8401 Operated by Japan Airlines

*Orbitz* Earn **$23.05**  *Orbitz* ORBITZ REWARDS  Earn $20 in bonus Orbucks

**$1,087.**40
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
8:00 PM
Seoul GMP

5:25 PM
San Francisco SFO

1 stop
13hr 25min

Asiana Airlines 1065
American Airlines 8401
Seat map

Change of airlines.
Flight 8401 Operated by Japan Airlines

*Orbitz* Earn **$10.87**  *Orbitz* ORBITZ REWARDS  Earn $20 in bonus Orbucks

Act Fast! Only 1 ticket left at this price!

APPX206

**$2,303.59**
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
2:00 PM          11:25 AM          1 stop
Seoul ICN        San Francisco SFO  13hr 25min

Change of airlines.

Japan Airlines 954
United Airlines 852
Seat map

🌀 Earn $23.04   🌀 ORBITZ REWARDS   Earn $20 in bonus Orbucks

---

🔲 Flight details

**$1,604.70**
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
11:40 AM         9:25 AM           1 stop
Seoul ICN        San Francisco SFO  13hr 45min

Change of airlines.

Flight 7012 Operated by United Airlines

United Airlines 78
All Nippon Airways 7012
Seat map

🌀 Earn $16.05   🌀 ORBITZ REWARDS   Earn $20 in bonus Orbucks

---

🔲 Flight details

**$1,607.70**
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
11:40 AM         9:25 AM           1 stop
Seoul ICN        San Francisco SFO  13hr 45min

Flight 7046 / 7012 Operated by United Airlines

ANA  All Nippon Airways 7046 / 7012
Seat map

🌀 Earn $16.08   🌀 ORBITZ REWARDS   Earn $20 in bonus Orbucks

---

🔲 Flight details

**$1,976.70**
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
11:40 AM         9:25 AM           1 stop
Seoul ICN        San Francisco SFO  13hr 45min

United Airlines 78 / 538
Seat map

🌀 Earn $19.77   🌀 ORBITZ REWARDS   Earn $20 in bonus Orbucks

---

🔲 Flight details

**$2,088.30**
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
6:20 PM          4:06 PM           1 stop
Seoul ICN        San Francisco SFO  13hr 46min

Change of airlines.

Flight 5738 Operated by COMPASS DBA DELTA CONNECTION

Korean Air 19
Delta Air Lines 5738
Seat map

🌀 Earn $20.88   🌀 ORBITZ REWARDS   Earn $20 in bonus Orbucks

---

Act Fast! Only 2 tickets left at this price!

🔲 Flight details

**$1,365.30**
Total cost
FREE Cancel
[ Select ]

Leave Mon, Jun 9
6:20 PM          4:20 PM           1 stop
Seoul ICN        San Francisco SFO  14hr 0min

Change of airlines.

Korean Air 19
Alaska Airlines 316
Seat map

🌀 Earn $13.65   🌀 ORBITZ REWARDS   Earn $20 in bonus Orbucks

---

🔲 Flight details

**$1,365.33**
Total cost
FREE Cancel

Leave Mon, Jun 9
6:20 PM          4:20 PM           1 stop
Seoul ICN        San Francisco SFO  14hr 0min

Flight 5115 Operated by Alaska Airlines

Korean Air 19 / 5115

APPX207

**– A452 –**

Select

*ᗋ* Earn **$13.65**    *ᗋ* ORBITZ REWARDS   Earn $20 in bonus Orbucks

|  |  |  |  |  | 🔗 Flight details |
|---|---|---|---|---|---|
| **$1,068**.80 Total cost FREE Cancel | Leave Mon, Jun 9 7:15 PM Seoul GMP | 5:25 PM San Francisco SFO | 1 stop 14hr 10min | 🔴 | Japan Airlines 94 / 2 Seat map |

Select

*ᗋ* Earn **$10.69**    *ᗋ* ORBITZ REWARDS   Earn $20 in bonus Orbucks

|  |  |  |  |  | 🔗 Flight details |
|---|---|---|---|---|---|
| **$1,090**.80 Total cost FREE Cancel | Leave Mon, Jun 9 7:15 PM Seoul GMP Change of airlines. Flight 8401 Operated by Japan Airlines | 8:25 PM San Francisco SFO | 1 stop 14hr 10min |  | Japan Airlines 94 American Airlines 8401 Seat map |

Select

*ᗋ* Earn **$10.91**    *ᗋ* ORBITZ REWARDS   Earn $20 in bonus Orbucks

|  |  |  |  |  | 🔗 Flight details |
|---|---|---|---|---|---|
| **$4,078**.41 Total cost FREE Cancel | Leave Mon, Jun 9 7:15 PM Seoul GMP Change of airlines. Flight 5709 / 8401 Operated by Japan Airlines | 5:25 PM San Francisco SFO | 1 stop 14hr 10min |  | Korean Air 5709 American Airlines 8401 Seat map |

Select

*ᗋ* Earn **$40.78**    *ᗋ* ORBITZ REWARDS   Earn $20 in bonus Orbucks

|  |  |  |  |  | 🔗 Flight details |
|---|---|---|---|---|---|
| **$1,639**.30 Total cost FREE Cancel | Leave Mon, Jun 9 4:30 PM Seoul ICN Change of airlines. | 2:45 PM San Francisco SFO | 1 stop 14hr 15min |  | Asiana Airlines 202 Virgin America 929 Seat map |

Select

*ᗋ* Earn **$16.39**    *ᗋ* ORBITZ REWARDS   Earn $20 in bonus Orbucks

|  |  |  |  |  | 🔗 Flight details |
|---|---|---|---|---|---|
| **$1,639**.30 Total cost FREE Cancel | Leave Mon, Jun 9 6:40 PM Seoul ICN Change of airlines. | 4:59 PM San Francisco SFO | 1 stop 14hr 19min |  | Asiana Airlines 272 United Airlines 1151 Seat map |

Select

*ᗋ* Earn **$16.39**    *ᗋ* ORBITZ REWARDS   Earn $30 in bonus Orbucks

|  |  |  |  |  | 🔗 Flight details |
|---|---|---|---|---|---|
| **$2,258**.30 Total cost FREE Cancel | Leave Mon, Jun 9 6:40 PM Seoul ICN Flight 7981 Operated by Asiana Airlines | 4:59 PM San Francisco SFO | 1 stop 14hr 19min | 🔷 | United Airlines 7981 / 1151 Seat map |

Select

*ᗋ* Earn **$22.58**    *ᗋ* ORBITZ REWARDS   Earn $20 in bonus Orbucks

APPX208

**– A453 –**



# Exhibit MM





LOWEST PRICE

$1,006.33

Hide Matrix

| | American Airlines | US Airways | Multiple Airlines | Japan Airlines | United Airlines | Hawaiian Airlines | Singapore Airlines | Korean A |
|---|---|---|---|---|---|---|---|---|
| 1 stop | $1,006.33 | $1,013.44 | $1,019.29 | | | | | |
| 2+ stops | $1,021.67 | $6,041.69 | $1,024.90 | $1,288.10 | $1,868.69 | $2,049.29 | $2,157.29 | $2,472.3 |

**Refine Results**

**Select flight times**

**Outbound**

Take-off: 7:45 AM - 11:45 PM

Show landing time

**Select stops**

| | |
|---|---|
| Any | |
| 1 stop | $1,006 |
| 2+ stops | $1,021 |

**Select price range**

Any

$1,006-$1,300 (40)

$1,300-$1,870 (41)

$1,870-$2,480 (39)

$2,480-$2,870 (39)

$2,870-$3,010 (43)

$3,010-$6,120 (72)

**Select airlines**

| | |
|---|---|
| Any | |
| Multiple Airlines | $1,019 |
| All Nippon Airways | $5,874 |
| American Airlines | $1,006 |
| Hawaiian Airlines | $2,049 |
| Japan Airlines | $1,288 |
| Korean Air | $2,472 |
| Singapore Airlines | $2,157 |
| United Airlines | $1,868 |
| US Airways | $1,013 |

**Matching Results: 274**

**Sort by:** Shortest Flight

Additional baggage fees may apply

Flight details

**$1,006.33**
Total cost
FREE Cancel
Select

**Mon, Jun 9** — **Total time: 15hr 20min**

Depart 4:50 PM — Seoul, South Korea, Incheon International Airport (ICN) — American Airlines 280, Economy, Boeing 777, 6,827 mi | 13hr 5min, Seat map

Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW)

Change of planes. Time between flights: 1hr 35min

Depart 5:30 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) — American Airlines 3397, Economy, Embraer RJ145, 118 mi | 0hr 40min, Seat map

Arrive 6:10 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)

Flight 3397 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $10.06 ORBITZ REWARDS Earn $20 in bonus Orbucks

Flight details

**$1,019.29**
Total cost
FREE Cancel
Select

**Mon, Jun 9** — **Total time: 15hr 20min**

Depart 4:50 PM — Seoul, South Korea, Incheon International Airport (ICN) — US Airways 280, Economy, Boeing 777, 6,823 mi | 13hr 5min, Seat map

Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal 0

Change of airlines. Time between flights: 1hr 35min

Flight 280 Operated by American Airlines

Depart 5:30 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal B — American Airlines 3397, Economy, Embraer RJ145, 112 mi | 0hr 40min, Seat map

Arrive 6:10 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)

Flight 3397 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $10.19 ORBITZ REWARDS Earn $20 in bonus Orbucks

Flight details

**$1,290.30**
Total cost
FREE Cancel
Select

**Mon, Jun 9** — **Total time: 15hr 20min**

Depart 4:50 PM — Seoul, South Korea, Incheon International Airport (ICN) — American Airlines 280, Economy, Boeing 777, 6,823 mi | 13hr 5min, Seat map

Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal 0

Change of airlines. Time between flights: 1hr 35min

Depart 5:30 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal B — US Airways 8197, Economy, Embraer RJ145, 112 mi | 0hr 40min, Seat map

Arrive 6:10 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)

Flight 8197 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $12.90 ORBITZ REWARDS Earn $20 in bonus Orbucks

**$1,296.30**
Total cost
FREE Cancel

[Select]

Mon, Jun 9 · Total time: 18hr 20min

Depart 4:50 PM — Seoul , South Korea, Incheon International Airport (ICN)
Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal 0
Change of planes. Time between flights: 1hr 35min
Flight 280 Operated by American Airlines

US Airways 280
Economy
Boeing 777
6,823 mi | 13hr 5min
Seat map

Depart 5:30 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal B
Arrive 6:10 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)
Flight 8197 Operated by ENVOY AIR AS AMERICAN EAGLE

US Airways 8197
Economy
Embraer RJ145
112 mi | 0hr 40min
Seat map

🛫 Earn $12.96   ⓑ ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$1,006.33**
Total cost
FREE Cancel

[Select]

Mon, Jun 9 · Total time: 18hr 0min

Depart 4:50 PM — Seoul , South Korea, Incheon International Airport (ICN)
Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW)
Change of planes. Time between flights: 4hr 10min

American Airlines 280
Economy
Boeing 777
6,827 mi | 13hr 5min
Seat map

Depart 8:05 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW)
Arrive 8:50 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

American Airlines 3773
Economy
Embraer RJ145
118 mi | 0hr 45min
Seat map

🛫 Earn $10.06   ⓑ ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$1,019.29**
Total cost
FREE Cancel

[Select]

Mon, Jun 9 · Total time: 18hr 0min

Depart 4:50 PM — Seoul , South Korea, Incheon International Airport (ICN)
Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal 0
Change of airlines. Time between flights: 4hr 10min
Flight 280 Operated by American Airlines

US Airways 280
Economy
Boeing 777
6,823 mi | 13hr 5min
Seat map

Depart 8:05 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal B
Arrive 8:50 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

American Airlines 3773
Economy
Embraer RJ145 | On-time: 83%
112 mi | 0hr 45min
Seat map

🛫 Earn $10.19   ⓑ ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$1,290.30**
Total cost
FREE Cancel

[Select]

Mon, Jun 9 · Total time: 18hr 0min

Depart 4:50 PM — Seoul , South Korea, Incheon International Airport (ICN)
Stop 1 3:55 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal 0
Change of airlines. Time between flights: 4hr 10min

American Airlines 280
Economy
Boeing 777
6,823 mi | 13hr 5min
Seat map

Depart 8:05 PM — Dallas, TX, United States, Dallas-Fort Worth Airport (DFW) | Terminal B
Arrive 8:50 PM — Wichita Falls, TX, United States, Sheppard AFB (SPS)
Flight 8470 Operated by ENVOY AIR AS AMERICAN EAGLE

US Airways 8470
Economy
Embraer RJ145 | On-time: 63%
112 mi | 0hr 45min
Seat map

🛫 Earn $12.90   ⓑ ORBITZ REWARDS   Earn $20 in bonus Orbucks

**$1,296.30**      Mon, Jun 9 · Total time: 18hr 0min

APPX212



|  |  |  |
|---|---|---|
| Total cost | Depart 4:50 PM | Seoul , South Korea<br>Incheon International Airport (ICN) |
| FREE Cancel | Stop 1 3:55 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal 0 |
| Select | Change of planes. Time between flights: 4hr 10min | |

Flight 280 Operated by American Airlines

US Airways 280
Economy
Boeing 777
6,823 mi \| 13hr 5min
Seat map

Depart 8:05 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) \| Terminal B
Arrive 8:50 PM — Wichita Falls, TX, United States — Sheppard AFB (SPS)

Flight 8470 Operated by ENVOY AIR AS AMERICAN EAGLE

US Airways 8470
Economy
Embraer RJ145 \| On-time: 63%
112 mi \| 0hr 45min
Seat map

Earn $12.96  ORBITZ REWARDS  Earn $20 in bonus Orbucks



Act Fast! Only 1 ticket left at this price!

⊟ Flight details

**$2,847.90**
Total cost
FREE Cancel
Select

Mon, Jun 9                                    Total time: 18hr 10min

Depart 2:00 PM — Seoul , South Korea — Incheon International Airport (ICN)
Stop 1 4:25 PM — Tokyo , Japan — Narita Airport (NRT) \| Terminal 2
Change of airlines. Time between flights: 1hr 55min

Japan Airlines 954
Economy
Boeing 737
780 mi \| 2hr 25min
Seat map

Depart 8:20 PM — Tokyo, Japan — Narita Airport (NRT) \| Terminal 2
Stop 2 4:05 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) \| Terminal D
Change of planes. Time between flights: 1hr 25min

American Airlines 60
Economy
Boeing 777
6,411 mi \| 11hr 45min
Seat map

Depart 5:30 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) \| Terminal B
Arrive 6:10 PM — Wichita Falls, TX, United States — Sheppard AFB (SPS)

Flight 3397 Operated by ENVOY AIR AS AMERICAN EAGLE

American Airlines 3397
Economy
Embraer RJ145
112 mi \| 0hr 40min
Seat map

Earn $28.48  ORBITZ REWARDS  Earn $20 in bonus Orbucks



Act Fast! Only 1 ticket left at this price!

⊟ Flight details

**$3,005.87**
Total cost
FREE Cancel
Select

Mon, Jun 9                                    Total time: 18hr 10min

Depart 2:00 PM — Seoul , South Korea — Incheon International Airport (ICN)
Stop 1 4:25 PM — Tokyo , Japan — Narita Airport (NRT)
Change of planes. Time between flights: 1hr 55min

Flight 8426 Operated by Japan Airlines

American Airlines 8426
Economy
Boeing 737
758 mi \| 2hr 25min
Seat map

Depart 8:20 PM — Tokyo, Japan — Narita Airport (NRT)
Stop 2 4:05 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW)
Change of planes. Time between flights: 1hr 25min

American Airlines 60
Economy
Boeing 777
6,437 mi \| 11hr 45min
Seat map

Depart 5:30 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW)
Arrive 6:10 PM — Wichita Falls, TX, United States — Sheppard AFB (SPS)

Flight 3397 Operated by ENVOY AIR AS AMERICAN EAGLE

American Airlines 3397
Economy
Embraer RJ145
118 mi \| 0hr 40min
Seat map

Earn $30.06  ORBITZ REWARDS  Earn $20 in bonus Orbucks

Act Fast! Only 1 ticket left at this price!

⊟ Flight details

**$3,008.90**
Total cost
FREE Cancel
Select

Mon, Jun 9                                    Total time: 18hr 10min

Depart 2:00 PM — Seoul , South Korea — Incheon International Airport (ICN)
Stop 1 4:25 PM — Tokyo , Japan — Narita Airport (NRT) \| Terminal 2
Change of airlines. Time between flights: 1hr 55min

Japan Airlines 954
Economy
Boeing 737
780 mi \| 2hr 25min
Seat map

APPX213





Depart 6:20 PM — Tokyo, Japan — Narita Airport (NRT) | Terminal 2 — American Airlines 60, Economy, Boeing 777, 6,411 mi | 11hr 45min, Seat map

Stop 2 4:05 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) | Terminal D

Change of airlines. Time between flights: 1hr 25min

Depart 5:30 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) | Terminal B — US Airways 8197, Economy, Embraer RJ145, 112 mi | 0hr 40min, Seat map

Arrive 6:10 PM — Wichita Falls, TX, United States — Sheppard AFB (SPS)

Flight 8197 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $30.09 ORBITZ REWARDS Earn $20 in bonus Orbucks

---

Act Fast! Only 1 ticket left at this price!

Flight details

**$5,891.67** Total cost FREE Cancel Select

Mon, Jun 9 — Total time: 18hr 10min

Depart 2:00 PM — Seoul, South Korea — Incheon International Airport (ICN) — Korean Air 5703, Economy, Boeing 737, 759 mi | 2hr 25min

Stop 1 4:25 PM — Tokyo, Japan — Narita Airport (NRT)

Change of airlines. Time between flights: 1hr 55min

Flight 5703 Operated by Japan Airlines

Depart 6:20 PM — Tokyo, Japan — Narita Airport (NRT) — American Airlines 60, Economy, Boeing 777, 6,437 mi | 11hr 45min, Seat map

Stop 2 4:05 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW)

Change of planes. Time between flights: 1hr 25min

Depart 5:30 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) — American Airlines 3397, Economy, Embraer RJ145, 118 mi | 0hr 40min, Seat map

Arrive 6:10 PM — Wichita Falls, TX, United States — Sheppard AFB (SPS)

Flight 3397 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $50.00 ORBITZ REWARDS Earn $20 in bonus Orbucks

---

Act Fast! Only 1 ticket left at this price!

Flight details

**$6,088.89** Total cost FREE Cancel Select

Mon, Jun 9 — Total time: 18hr 10min

Depart 2:00 PM — Seoul, South Korea — Incheon International Airport (ICN) — Japan Airlines 954, Economy, Boeing 737, 760 mi | 2hr 25min, Seat map

Stop 1 4:25 PM — Tokyo, Japan — Narita Airport (NRT) | Terminal 2

Change of airlines. Time between flights: 1hr 55min

Depart 6:20 PM — Tokyo, Japan — Narita Airport (NRT) | Terminal 2 — US Airways 60, Economy, Boeing 777, 6,411 mi | 11hr 45min, Seat map

Stop 2 4:05 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) | Terminal D

Change of planes. Time between flights: 1hr 25min

Flight 60 Operated by American Airlines

Depart 5:30 PM — Dallas, TX, United States — Dallas-Fort Worth Airport (DFW) | Terminal B — US Airways 8197, Economy, Embraer RJ145, 112 mi | 0hr 40min, Seat map

Arrive 6:10 PM — Wichita Falls, TX, United States — Sheppard AFB (SPS)

Flight 8197 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $50.00 ORBITZ REWARDS Earn $20 in bonus Orbucks

---

Act Fast! Only 1 ticket left at this price!

Flight details

**$6,117.89** Total cost FREE Cancel Select

Mon, Jun 9 — Total time: 18hr 10min

Depart 2:00 PM — Seoul, South Korea — Incheon International Airport (ICN) — Japan Airlines 954, Economy, Boeing 737, 760 mi | 2hr 25min, Seat map

Stop 1 4:25 PM — Tokyo, Japan — Narita Airport (NRT) | Terminal 2

Change of airlines. Time between flights: 1hr 55min

| | | |
|---|---|---|
| Depart 8:20 PM | Tokyo , Japan Narita Airport (NRT) | Terminal 2 | US Airways 60 Economy Boeing 777 6,411 mi | 11hr 45min Seat map |
| Stop 2 4:05 PM | Dallas, TX, United States Dallas-Fort Worth Airport (DFW) | Terminal D | |

Change of airlines. Time between flights: 1hr 25min

Flight 60 Operated by American Airlines

| | | |
|---|---|---|
| Depart 5:30 PM | Dallas, TX, United States Dallas-Fort Worth Airport (DFW) | Terminal B | American Airlines 3397 Economy Embraer RJ145 112 mi | 0hr 40min Seat map |
| Arrive 6:10 PM | Wichita Falls, TX, United States Sheppard AFB (SPS) | |

Flight 3397 Operated by ENVOY AIR AS AMERICAN EAGLE

🎁 Earn $50.00   🎁 ORBITZ REWARDS   Earn $20 in bonus Orbucks

Act Fast! Only 8 tickets left at this price!



☐ Flight details

**$2,679.29**
Total cost
FREE Cancel
[ Select ]

Mon, Jun 9                                    Total time: 18hr 20min

| | | |
|---|---|---|
| Depart 4:30 PM | Seoul , South Korea Incheon International Airport (ICN) | United Airlines 7979 Economy Boeing 777 5,642 mi | 10hr 15min |
| Stop 1 10:45 AM | San Francisco, CA , United States San Francisco Airport (SFO) | Terminal I | |

Change of airlines. Time between flights: 2hr 15min

Flight 7979 Operated by Asiana Airlines

| | | |
|---|---|---|
| Depart 1:00 PM | San Francisco, CA , United States San Francisco Airport (SFO) | Terminal 2 | American Airlines 193 Economy Boeing 737 | On-time: 80% 1,461 mi | 3hr 35min Seat map |
| Stop 2 6:35 PM | Dallas, TX, United States Dallas-Fort Worth Airport (DFW) | Terminal 0 | |

Change of planes. Time between flights: 1hr 30min

| | | |
|---|---|---|
| Depart 8:05 PM | Dallas, TX, United States Dallas-Fort Worth Airport (DFW) | Terminal B | American Airlines 3773 Economy Embraer RJ145 | On-time: 63% 112 mi | 0hr 45min Seat map |
| Arrive 8:50 PM | Wichita Falls, TX, United States Sheppard AFB (SPS) | |

Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

🎁 Earn $26.79   🎁 ORBITZ REWARDS   Earn $20 in bonus Orbucks



☐ Flight details

**$2,679.29**
Total cost
FREE Cancel
[ Select ]

Mon, Jun 9                                    Total time: 18hr 20min

| | | |
|---|---|---|
| Depart 4:30 PM | Seoul , South Korea Incheon International Airport (ICN) | United Airlines 7975 Economy Boeing 747 5,978 mi | 11hr 0min |
| Stop 1 11:30 AM | Los Angeles, CA , United States Los Angeles Airport, El Segundo (LAX) | Terminal B | |

Change of airlines. Time between flights: 2hr 10min

Flight 7975 Operated by Asiana Airlines

| | | |
|---|---|---|
| Depart 1:40 PM | Los Angeles, CA , United States Los Angeles Airport, El Segundo (LAX) | Terminal 4 | American Airlines 2423 Economy Boeing 757 | On-time: 90% 1,231 mi | 3hr 5min Seat map |
| Stop 2 6:45 PM | Dallas, TX, United States Dallas-Fort Worth Airport (DFW) | Terminal 0 | |

Change of planes. Time between flights: 1hr 20min

| | | |
|---|---|---|
| Depart 8:05 PM | Dallas, TX, United States Dallas-Fort Worth Airport (DFW) | Terminal B | American Airlines 3773 Economy Embraer RJ145 | On-time: 63% 112 mi | 0hr 45min Seat map |
| Arrive 8:50 PM | Wichita Falls, TX, United States Sheppard AFB (SPS) | |

Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

🎁 Earn $26.79   🎁 ORBITZ REWARDS   Earn $20 in bonus Orbucks

☐ Flight details

**$2,850.29**
Total cost
FREE Cancel
[ Select ]

Mon, Jun 9                                    Total time: 18hr 20min

| | | |
|---|---|---|
| Depart 4:30 PM | Seoul , South Korea Incheon International Airport (ICN) | United Airlines 7975 Economy Boeing 747 5,978 mi | 11hr 0min |
| Stop 1 11:30 AM | Los Angeles, CA , United States Los Angeles Airport, El Segundo (LAX) | Terminal B | |

Change of airlines. Time between flights: 2hr 10min

Flight 7975 Operated by Asiana Airlines

| | |
|---|---|
| Depart | Los Angeles, CA , United States | American Airlines 2423 |



1:40 PM   Los Angeles Airport, El Segundo (LAX) | Terminal 4
Stop 2    Dallas, TX, United States
6:45 PM   Dallas-Fort Worth Airport (DFW) | Terminal 0
Change of airlines. Time between flights: 1hr 20min

Economy
Boeing 757 | On-time: 90%
1,231 mi | 3hr 5min
Seat map

Depart   Dallas, TX, United States
8:05 PM  Dallas-Fort Worth Airport (DFW) | Terminal B
Arrive   Wichita Falls, TX, United States
8:50 PM  Sheppard AFB (SPS)

US Airways 8470
Economy
Embraer RJ145 | On-time: 63%
112 mi | 0hr 45min
Seat map

Flight 8470 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $28.50   ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$2,879.29**   Mon, Jun 9                                    Total time: 18hr 20min
Total cost
FREE Cancel

Select

Depart   Seoul, South Korea
4:30 PM  Incheon International Airport (ICN)
Stop 1   Los Angeles, CA, United States
11:30 AM Los Angeles Airport, El Segundo (LAX) | Terminal B
Change of airlines. Time between flights: 2hr 10min

United Airlines 7975
Economy
Boeing 747
5,976 mi | 11hr 0min

Flight 7975 Operated by Asiana Airlines

Depart   Los Angeles, CA, United States
1:40 PM  Los Angeles Airport, El Segundo (LAX) | Terminal 4
Stop 2   Dallas, TX, United States
6:45 PM  Dallas-Fort Worth Airport (DFW) | Terminal 0
Change of planes. Time between flights: 1hr 20min

US Airways 2423
Economy
Boeing 757 | On-time: 90%
1,231 mi | 3hr 5min
Seat map

Flight 2423 Operated by American Airlines

Depart   Dallas, TX, United States
8:05 PM  Dallas-Fort Worth Airport (DFW) | Terminal B
Arrive   Wichita Falls, TX, United States
8:50 PM  Sheppard AFB (SPS)

US Airways 8470
Economy
Embraer RJ145 | On-time: 63%
112 mi | 0hr 45min
Seat map

Flight 8470 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $28.79   ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$2,879.29**   Mon, Jun 9                                    Total time: 18hr 30min
Total cost
FREE Cancel

Select

Depart   Seoul, South Korea
4:30 PM  Incheon International Airport (ICN)
Stop 1   Los Angeles, CA, United States
11:30 AM Los Angeles Airport, El Segundo (LAX) | Terminal B
Change of airlines. Time between flights: 2hr 10min

United Airlines 7975
Economy
Boeing 747
5,976 mi | 11hr 0min

Flight 7975 Operated by Asiana Airlines

Depart   Los Angeles, CA, United States
1:40 PM  Los Angeles Airport, El Segundo (LAX) | Terminal 4
Stop 2   Dallas, TX, United States
6:45 PM  Dallas-Fort Worth Airport (DFW) | Terminal 0
Change of airlines. Time between flights: 1hr 20min

US Airways 2423
Economy
Boeing 757 | On-time: 90%
1,231 mi | 3hr 5min
Seat map

Flight 2423 Operated by American Airlines

Depart   Dallas, TX, United States
8:05 PM  Dallas-Fort Worth Airport (DFW) | Terminal B
Arrive   Wichita Falls, TX, United States
8:50 PM  Sheppard AFB (SPS)

American Airlines 3773
Economy
Embraer RJ145 | On-time: 63%
112 mi | 0hr 45min
Seat map

Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $28.79   ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$2,920.29**   Mon, Jun 9                                    Total time: 18hr 20min
Total cost
FREE Cancel

Select

Depart   Seoul, South Korea
4:30 PM  Incheon International Airport (ICN)
Stop 1   San Francisco, CA, United States
10:45 AM San Francisco Airport (SFO) | Terminal I
Change of airlines. Time between flights: 2hr 15min

United Airlines 7979
Economy
Boeing 777
5,642 mi | 10hr 15min

Flight 7979 Operated by Asiana Airlines

Depart   San Francisco, CA, United States
1:00 PM  San Francisco Airport (SFO) | Terminal 2

American Airlines 193
Economy



| | | |
|---|---|---|
| Stop 2<br>8:35 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal 0 | Boeing 737 \| On-time: 80%<br>1,481 mi \| 3hr 35min<br>Seat map |
| Change of airlines. Time between flights: 1hr 30min | | |
| Depart<br>8:05 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal B | US Airways 8470<br>Economy<br>Embraer RJ145 \| On-time: 63%<br>112 mi \| 0hr 45min<br>Seat map |
| Arrive<br>8:50 PM | Wichita Falls, TX, United States<br>Sheppard AFB (SPS) | |
| Flight 8470 Operated by ENVOY AIR AS AMERICAN EAGLE | | |

✈ Earn $29.20   ✈ ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$2,920.29**
Total cost
FREE Cancel
[Select]

| Mon, Jun 9 | | Total time: 18hr 20min |
|---|---|---|
| Depart<br>4:30 PM | Seoul, South Korea<br>Incheon International Airport (ICN) | United Airlines 7979<br>Economy<br>Boeing 777<br>5,642 mi \| 10hr 15min |
| Stop 1<br>10:45 AM | San Francisco, CA, United States<br>San Francisco Airport (SFO) \| Terminal I | |
| Change of airlines. Time between flights: 2hr 15min | | |
| Flight 7979 Operated by Asiana Airlines | | |
| Depart<br>1:00 PM | San Francisco, CA, United States<br>San Francisco Airport (SFO) \| Terminal 2 | US Airways 193<br>Economy<br>Boeing 737 \| On-time: 80%<br>1,481 mi \| 3hr 35min |
| Stop 2<br>8:35 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal 0 | Seat map |
| Change of planes. Time between flights: 1hr 30min | | |
| Flight 193 Operated by American Airlines | | |
| Depart<br>8:05 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal B | US Airways 8470<br>Economy<br>Embraer RJ145 \| On-time: 63%<br>112 mi \| 0hr 45min |
| Arrive<br>8:50 PM | Wichita Falls, TX, United States<br>Sheppard AFB (SPS) | Seat map |
| Flight 8470 Operated by ENVOY AIR AS AMERICAN EAGLE | | |

✈ Earn $29.20   ✈ ORBITZ REWARDS   Earn $20 in bonus Orbucks



**$2,949.29**
Total cost
FREE Cancel
[Select]

| Mon, Jun 9 | | Total time: 18hr 20min |
|---|---|---|
| Depart<br>4:30 PM | Seoul, South Korea<br>Incheon International Airport (ICN) | United Airlines 7979<br>Economy<br>Boeing 777<br>5,642 mi \| 10hr 15min |
| Stop 1<br>10:45 AM | San Francisco, CA, United States<br>San Francisco Airport (SFO) \| Terminal I | |
| Change of airlines. Time between flights: 2hr 15min | | |
| Flight 7979 Operated by Asiana Airlines | | |
| Depart<br>1:00 PM | San Francisco, CA, United States<br>San Francisco Airport (SFO) \| Terminal 2 | US Airways 193<br>Economy<br>Boeing 737 \| On-time: 80%<br>1,481 mi \| 3hr 35min |
| Stop 2<br>8:35 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal 0 | Seat map |
| Change of airlines. Time between flights: 1hr 30min | | |
| Flight 193 Operated by American Airlines | | |
| Depart<br>8:05 PM | Dallas, TX, United States<br>Dallas-Fort Worth Airport (DFW) \| Terminal B | American Airlines 3773<br>Economy<br>Embraer RJ145 \| On-time: 63%<br>112 mi \| 0hr 45min |
| Arrive<br>8:50 PM | Wichita Falls, TX, United States<br>Sheppard AFB (SPS) | Seat map |
| Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE | | |

✈ Earn $29.49   ✈ ORBITZ REWARDS   Earn $20 in bonus Orbucks



Act Fast! Only 2 tickets left at this price!

**$1,024.90**
Total cost
FREE Cancel
[Select]

| Mon, Jun 9 | | Total time: 19hr 40min |
|---|---|---|
| Depart<br>7:50 AM | Seoul, South Korea<br>Incheon International Airport (ICN) | Japan Airlines 958<br>Economy<br>Boeing 737<br>780 mi \| 2hr 20min |
| Stop 1<br>10:10 AM | Tokyo, Japan<br>Narita Airport (NRT) \| Terminal 2 | Seat map |
| Change of airlines. Time between flights: 1hr 20min | | |
| Depart<br>11:30 AM | Tokyo, Japan<br>Narita Airport (NRT) \| Terminal 2 | American Airlines 176<br>Economy<br>Boeing 777<br>6,411 mi \| 11hr 40min |
| Stop 2 | Dallas, TX, United States | |

APPX217



Change search     Seoul (SEL) to Wichita Falls, TX (SPS)     Mon, Jun 9, 2014

See 25 more result(s)

Prices shown are 'from prices' and are an average per traveller including all airfare taxes and fees and any applicable service fees.

Vacation packages | Car rental | Cruises | Travel blog | Flight status | Orbitz Travel Alerts | Customer Support | Español | Labs

About Orbitz | Contact Us | Investors | Careers | Media | Site map | Advertising | Affiliates | Orbitz for Business | Orbitz for Agents | Terms and conditions | Your Privacy Rights

Site Feedback

Orbitz Rewards | Orbitz Rewards Visa Card | Best Price Guarantee | Travel deals | Mobile | Facebook | Twitter | Pinterest

Download our free app:

APPX218

 Orbitz guards your privacy and security. We're certified by TRUSTe and Verisign.
© 2001 - 2014, Orbitz, LLC. All rights reserved.
CST 2063530-50; Haw all TAR-5627; Iow a 644; **Nevada 2003-0387**; Washington 602-
102-724     

# Exhibit NN

Case: 15-101    Document: 2-3    Page: 41    Filed: 10/23/2014

Case 7:14-cv-00014-O   Document 91-4   Filed 06/10/14   Page 18 of 33   PageID 1307
City Distance Tool - Find the distance between 2 cities                    Page 1 of 1





| Up |
| Login |
| Home |



Jatly – Have
you heard of
Jalty yet?

## City Distance Tool

This City Distance Calculator service is provided
for FREE by Geobytes, inc to assist you in
determining the distance between two cities –
with over 36,000 Cities to choose from. Click
here to checkout our other FREE services.

Moving to another city? - then click here to try our City to City
Moving Estimator.

The distance between san francisco and seoul

Next time, why not try our new "one step" city distance calculator?

**The distance:**

| Origin: | San Francisco, California, United States | |
| Destination: | Seoul, Kyonggi-do, Korea, South | |
| Distance in miles: | 5619 | Direction to Destination: North-West |
| Distance in kilometers: | 9042 | Bearing in degrees to Destination: 311 |

Link to these results:    http://www.geobytes.com/CityDistanceTool.htm?d&pt_1=uscasfra&pt_2=krkgseou

Please note: The distance is calculated "as the crow flies". It uses the latitude and longitude of the cities to calculate the distance, so
this may vary from the driving distances.

If you wish to lookup other cities, then you can use the form below.

Find out more about seoul

Would you like to know more about Seoul, Kyonggi-do, Korea, South - where to stay, what to see, weather, movies, TV, news, fuel
prices, coupons etc, then try entering one of these keywords here.

## Search Seoul, Kyonggi-do, Korea, South

Hint: You can also use it to research people, companies, local services, tours etc

[                    ]    [ Search ]

Step 1: Enter Cities

**Welcome** to the Geobytes **City Distance Tool**.
This wizard will tell you the distance between 2 cities.

**Please enter** your origin city.                **Please enter** your destination city.

[ san francisco ]                                 [ seoul ]

**There is no need to enter the state or country, it will ask you if it needs it. Thanks**

Don't worry if the name of the city that you enter matches more than one of the world's cities, as you
will get to choose the correct one from a list.

[ < Back ]   [ Next > ]

Modified:Mar 22, 11
© 2000 - 2003
Geobytes, inc.
ARBN 091 652 961

*Geobytes - because everybody's somewhere!*
Contact Geobytes via our support forums
Privacy Policy

# Exhibit OO

APPX222

City Distance Tool - Find the distance between 2 cities



| Up |
| Login |
| Home |



Jatly – Have you heard of Jalty yet?

## City Distance Tool

This City Distance Calculator service is provided for FREE by **Geobytes, inc** to assist you in determining the distance between two cities – with over 36,000 Cities to choose from. **Click here** to checkout our other FREE services.

Moving to another city? - then click here to try our **City to City Moving Estimator**.

The distance between wichita falls and seoul

Next time, why not try our new "one step" **city distance calculator**?

**The distance:**

| | |
|---|---|
| Origin: | Wichita Falls, Texas, United States |
| Destination: | Seoul, Kyonggi-do, Korea, South |
| Distance in miles: | 6705 | Direction to Destination: North-West |
| Distance in kilometers: | 10789 | Bearing in degrees to Destination: 325 |
| Link to these results: | http://www.geobytes.com/CityDistanceTool.htm?d&pt_1=ustxwfal&pt_2=krkgseou |

Please note: The distance is calculated "as the crow flies". It uses the latitude and longitude of the cities to calculate the distance, so this may vary from the driving distances.

If you wish to lookup other cities, then you can use the form below.

### Find out more about seoul

Would you like to know more about Seoul, Kyonggi-do, Korea, South - where to stay, what to see, weather, movies, TV, news, fuel prices, coupons etc, then try entering one of these keywords here.

## Search Seoul, Kyonggi-do, Korea, South

Hint: You can also use it to research people, companies, local services, tours etc

[                    ]  [ Search ]

### Step 1: Enter Cities

**Welcome** to the Geobytes **City Distance Tool**.
This wizard will tell you the distance between 2 cities.

**Please enter** your origin city.                    **Please enter** your destination city.

[ wichita falls ]                                      [ seoul ]

### There is no need to enter the state or country, it will ask you if it needs it. Thanks

Don't worry if the name of the city that you enter matches more than one of the world's cities, as you will get to choose the correct one from a list.

[ < Back ]  [ Next > ]

Modified:Mar 22, 11
© 2000 - 2003
Geobytes, inc.
ARBN 091 652 961

*Geobytes - because everybody's somewhere!*
Contact Geobytes via our **support forums**
**Privacy Policy**

http://www.geobytes.com/CityDistanceTool.htm?loadpage                    5/31/2014

APPX223

# Exhibit PP

APPX224

City Distance Tool - Find the distance between 2 cities







## City Distance Tool

This City Distance Calculator service is provided for FREE by Geobytes, inc to assist you in determining the distance between two cities – with over 36,000 Cities to choose from. **Click here** to checkout our other FREE services.

Moving to another city? - then click here to try our City to City Moving Estimator.

Jatly – Have you heard of Jalty yet?

The distance between san francisco and san diego

Next time, why not try our new "one step" city distance calculator?

**The distance:**

| | |
|---|---|
| Origin: | San Francisco, California, United States |
| Destination: | San Diego, California, United States |
| Distance in miles: | 453 | Direction to Destination: South-East |
| Distance in kilometers: | 729 | Bearing in degrees to Destination: 137 |

Link to these results:    http://www.geobytes.com/CityDistanceTool.htm?d&pt_1=uscasfra&pt_2=uscasdie

Please note: The distance is calculated "as the crow flies". It uses the latitude and longitude of the cities to calculate the distance, so this may vary from the driving distances.

If you wish to lookup other cities, then you can use the form below.

Find out more about san diego

Would you like to know more about San Diego, California, United States - where to stay, what to see, weather, movies, TV, news, fuel prices, coupons etc, then try entering one of these keywords here.

### Search San Diego, California, United States

Hint: You can also use it to research people, companies, local services, tours etc

[                    ]    [ Search ]

Step 1: Enter Cities

**Welcome** to the Geobytes **City Distance Tool**.
This wizard will tell you the distance between 2 cities.

**Please enter** your origin city.                    **Please enter** your destination city.

[ san francisco ]                    [ san diego ]

**There is no need to enter the state or country, it will ask you if it needs it. Thanks**

Don't worry if the name of the city that you enter matches more than one of the world's cities, as you will get to choose the correct one from a list.

[ < Back ]    [ Next > ]

Modified:Mar 22, 11
© 2000 - 2003
Geobytes, inc.
ARBN 091 652 961

*Geobytes - because everybody's somewhere!*
Contact Geobytes via our support forums
Privacy Policy

# Exhibit QQ

APPX226

City Distance Tool - Find the distance between 2 cities

# GEO BYTES


| Up |
| Login |
| Home |



Jatly – Have
you heard of
Jalty yet?

## City Distance Tool

This City Distance Calculator service is provided
for FREE by Geobytes, inc to assist you in
determining the distance between two cities –
with over 36,000 Cities to choose from. Click
here to checkout our other FREE services.

Moving to another city? - then click here to try our City to City
Moving Estimator.

The distance between san francisco and wichita falls
Next time, why not try our new "one step" city distance calculator?

**The distance:**

| | |
|---|---|
| Origin: | San Francisco, California, United States |
| Destination: | Wichita Falls, Texas, United States |
| Distance in miles: | 1362 | Direction to Destination: East |
| Distance in kilometers: | 2191 | Bearing in degrees to Destination: 93 |

Link to these results: http://www.geobytes.com/CityDistanceTool.htm?d&pt_1=uscasfra&pt_2=ustxwfal

Please note: The distance is calculated "as the crow flies". It uses the latitude and longitude of the cities to calculate the distance, so
this may vary from the driving distances.

If you wish to lookup other cities, then you can use the form below.

**Find out more about wichita falls**

Would you like to know more about Wichita Falls, Texas, United States - where to stay, what to see, weather, movies, TV, news, fuel
prices, coupons etc, then try entering one of these keywords here.

### Search Wichita Falls, Texas, United States

Hint: You can also use it to research people, companies, local services, tours etc

[              ] [ Search ]

**Step 1:  Enter Cities**

**Welcome** to the Geobytes **City Distance Tool**.
This wizard will tell you the distance between 2 cities.

**Please enter** your origin city.          **Please enter** your destination city.

[ san francisco ]                          [ wichita falls ]

### There is no need to enter the state or country, it will ask you if it needs it. Thanks

Don't worry if the name of the city that you enter matches more than one of the world's cities, as you
will get to choose the correct one from a list.

[ < Back ]  [ Next > ]

Modified:Mar 22, 11
© 2000 - 2003
Geobytes, inc.
ARBN 091 652 961

*Geobytes - because everybody's somewhere!*
Contact Geobytes via our support forums
Privacy Policy

# Exhibit RR



| LIFE AT SAMSUNG MOBILE | SAMSUNG MOBILE PRODUCTS | | CAREERS | CURRENT OPPORTUNITIES |

Samsung Mobile Recruiting » Life At Samsung Mobile » **Our Company**

## Our Company



Samsung Telecommunications America (STA) was established by Samsung Electronics Corporation in 1992. From its Dallas, Texas headquarters, STA researches, develops and markets a variety of personal and business communications products throughout North America including handheld wireless phones, wireless communications infrastructure systems and enterprise communication systems.

Today, STA's Mobile Handset division remains the fastest growing business segment in the history of its parent company, Samsung Electronics, Ltd. The division has been recognized as the number one mobile phone manufacturer in customer loyalty by Brand Keys, Inc. for five consecutive years and it is a driving force that has allowed Samsung Electronics to become the fastest growing brand in the world.

| **History** | 1992 | Purchased Prostar Telecom Inc. |
| | 1996 | Est. Dallas HQ & Expanded Telecom Products |
| | 1997 | Consolidated Telecom R&D (San Jose/Boston Maryland; Sprint Becomes First Customer) |
| | 2001 | CDMA W/S 1st Biz in North America: Sprint; HHP Customer Expanded to T-Mobile & Verizon |
| | 2002 | HHP Customer Expanded to AT&T |
| | 2006 | Achieved over 100 Million HHP Units Shipped |
| | 2008 | Achieved HHP M/S #1 in U.S. (since 08'3Q); '08 YTD HHP Sales over $5 Billion |
| | 2009 | Achieved over 200 Million HHP Units Shipped; '09 Estimated HHP Sales over $6 Billion |

Samsung is dedicated to developing innovative technologies and efficient processes that create new markets, enrich people's lives and continue to make Samsung a digital leader.

At Samsung, it's our people that take our products across the line. We seek creative and bold minded individuals who can meet the exciting challenges of today's marketplace.

SAMSUNG.COM | Contact Us | Privacy | Legal | Site Map                  Copyright © 2014 SAMSUNG. All rights reserved.      

APPX229

# Exhibit SS



BlackBerry Devices BBM Apps & Media Software Support Where to Buy Business Developers

**About Us**

- **Contact Information**
- Maps

BlackBerry Academic Program
BlackBerry Connect
Customer Success
Investors
BlackBerry - Newsroom
Careers

Home › Company › About Us ›

# Contact Information

## Contact information for general inquiries

Like 3

**Investor inquiries:** to contact BlackBerry investor relations, email investor_relations@blackberry.com or call (519) 888-7465, ext. 75950. Learn how to obtain an investor kit

**Career inquiries:** for more information about career opportunities at BlackBerry, or to apply online, visit BlackBerry Careers.

## Contact information for BlackBerry headquarters

### Corporate Head Office

BlackBerry B
2200 University Ave. E
Waterloo, ON, Canada
N2K 0A7

tel: (519) 888-7465
fax: (519) 888-7884

View map of Waterloo offices

### BlackBerry United States

BlackBerry
5000 Riverside Drive,
Irving,
TX 75039
tel: (972) 373-1700
fax: (972) 650-2006

### BlackBerry Europe

BlackBerry
200 Bath Road
Slough, Berkshire
United Kingdom SL1 3XE

tel: +44 (0)1753 667000
fax: +44 (0)1753 669970

## Contact information for other BlackBerry offices

### Manufacturing Facility

BlackBerry
451 Phillip Street
Waterloo, Ontario
Canada N2L 3X2

tel: (519) 888-7465
fax: (519) 888-0021

### Ottawa

BlackBerry
4000 Innovation Drive
Kanata, Ontario
Canada K2K 3K1

tel: (613) 599-7465
fax: (613) 599-1922

### Mississauga

BlackBerry
4701 Tahoe Boulevard
Mississauga, Ontario
Canada L4W 0B5

tel: (905) 629-4746

fax: (905) 629-4869

View addresses for other BlackBerry locations

| FOLLOW US | COUNTRIES | CUSTOMER SERVICE | CORPORATE | SITES | LEGAL INFO |
|---|---|---|---|---|---|
| BlackBerry Communities | Canada (en) | Contact Us | Company | Mobile | Overview |
| Facebook | Canada (fr) | Support | Investors | Developers | Accessibility |
| Twitter | United States | | Careers | Beta | Trademarks |
| YouTube | United Kingdom | | News | Partners | Privacy Policy |
| Flickr | Select Country | | Customer Success | Blog | Class Action Notice To Quebec Consumer BlackBerry Users (PDF) |
| BlackBerry Blog | | | Corporate Responsibility | | |

Copyright © 2014 BlackBerry. All rights reserved.    |    Site Map    Site Index

**APPX232**

**– A477 –**

# Exhibit TT

APPX233

Case: 15-101     Document: 2-3     Page: 54     Filed: 10/23/2014

Flights & Reservations | Fly Wichita Falls                                         Page 1 of 3
Case 7:14-cv-00014-O   Document 91-4   Filed 06/10/14   Page 31 of 33   PageID 1320



Follow @FlyWF     Like 379                                    ☀ 94°

Home (/)     Flights & Reservations (/flights-reservations/)     Area Airports     About (/about/)
Travel Help     News (/news/)     Contact (/contact/)

## FLIGHTS & RESERVATIONS

Wichita Falls Municipal Airport offers daily flights to and from the
Dallas/Ft Worth Airport serviced by American Eagle. Reservations and
flight information are provided by American Eagle.

American Eagle can be contacted at 1-800-433-7300 or by visiting
www.aa.com (http://aa.com).

Go to www.aa.com (http://aa.com) for flight information.

**New Flight Schedule Effective May 8, 2014**

**Sunday-Friday**

**Arrivals:**

**9:35 AM Flight #2935**

**1:30 PM Flight # 3401**

**6:10 PM Flight # 3397**

**8:50 PM Flight # 3773**

**Departures:**

**6:00 AM Flight #3288**

**10:00 AM Flight #2935**

**1:55 PM Flight #3401**

**6:35 PM Flight #3397**

**Saturday**

QUICK LINKS

• Parking (/parking/)
• Flight Schedule (/flights-reservations/)
• Maps & Directions (/contact/)
• Car Rental Info (/car-rental/)
• Baggage Information (http://www.aa.com/i18n/travelInformation/baggage/r



(/promos/1/)



Flight Status
By Flight   By Airport   By Route
Airline
Enter an airline name or code
Flight

Departure Date
2014-06-06
Search ▸

PrevNext

**Arrivals:**

**9:35 AM Flight #2935**

**1:30 PM Flight # 3401**

**5:30 PM Flight # 3397**

**7:25 PM Flight # 3773**

**Departures:**

**6:00 AM Flight #3288**

**10:00 AM Flight #2935**

**1:55 PM Flight #3401**

**5:55 PM Flight #3397**

## Charter Flights

Charter Flights for casino activities are available to Lake Tahoe, Reno, Laughlin, Nevada & Tunica, Mississippi. Allegiant Air and Sun Country are the airlines servicing these destinations.

Allegiant Air (http://www.casinosinternationalinc.com/) services flights out of Wichita Falls to Laughlin, Lake Tahoe and Reno, Nevada. For more information and reservations visit casinosinternationalinc.com (http://www.casinosinternationalinc.com/).

Rebulic service (https://junketflights.com/JF_Schedule.pdf)s flights out of Wichita Falls to Laughlin, Lake Tahoe and Reno, Nevada. For more information and reservations visit https://junketflights.com/JF_Schedule.pdf (https://junketflights.com/JF_Schedule.pdf).

SITE MAP
Home (/)
Flights & Reservations (/flights-reservations/)
Municipal Airport (/municipal-airport/)
Kickapoo Airport (/kickapoo-airport/)
About (/about/)
Parking Info (/parking/)
Frequently Asked (/faq/)
Helpful Links (/links/)
News (/news/)
Contact (/contact/)

American
1-800-433-7300

FLY WICHITA FALLS
4000 Armstrong Dr
Sheppard Air Force Base/Wichita Falls
Municipal Airport (SPS)
Wichita Falls, TX 76305
940-855-3621
Contact Us (/contact/)



(/promos/2/)

© Copyright 2014 Fly Wichita Falls, All Rights Reserved.

(http://crane-west.com?ref=flywichitafalls)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| SUMMIT 6 LLC, | Case Action No. 7:14-cv-00014-O |
|            Plaintiff, | |
| v. | |
| HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM USA, INC., MOTOROLA MOBILITY LLC, APPLE INC., and TWITTER, INC., | |
|            Defendants. | |

<u>**DECLARATION OF ED AXELSEN IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**</u>

I, ED AXELSEN, declare as follows:

1.      I am an employee of Twitter, Inc. ("Twitter"), and I work at Twitter's San Francisco, California headquarters. I have been a Twitter employee since 2011, serving as Director, Real Estate and Facilities.

2.      I provide this declaration in support of Defendants' motion to transfer this action to the United States District Court for the Northern District of California.   Except as otherwise indicated below, the statements in this declaration are based on my personal knowledge or on corporate records maintained by Twitter in the ordinary course of business.

3.      I have been advised that the Complaint in the above-captioned patent infringement lawsuit accuses the following Twitter products and services of infringing U.S. Patent No. 6,895,557, U.S. Patent No. 7,765,482, and U.S. Patent No. 8,612,515: the Twitter Application for iPhone, the Twitter Application for iPad, the Twitter Application for Android, the Twitter Application for Android Tablet, and "any other Twitter Application capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location"; the Twitter content upload functionality integrated into the native sharing options for iOS and Android devices; Twitter's APIs "related to obtaining digital content, pre-processing it, and transmitting it to another device, server or location"; Twitter's mobile website; and Twitter's website-related infrastructure.

4.      Twitter is a Delaware limited liability company with its principal place of business in San Francisco, California.

5.      Twitter's international headquarters is now and has always been in the Northern District of California. Twitter's current headquarters is located at 1355 Market Street, San Francisco, California.

6.      Twitter also has an office in Sunnyvale, California, which is in the Northern District of California.

7.      In total, Twitter employs approximately 1,960 full-time employees in the Northern District of California.

APPX238

8.      Twitter's senior executive team is based in San Francisco, and decisions related to Twitter's overall business—including the most significant engineering, sales, and marketing decisions related to Twitter's software operations—are made there.

9.      Twitter's general software operations are based in large part at Twitter's San Francisco headquarters.   Twitter engineers with relevant technical knowledge of the accused Twitter products are located at Twitter's headquarters, as are Twitter employees familiar with relevant business and financial aspects of these products.

10.      To the extent the Complaint implicates Twitter's multimedia messaging services, mobile applications, or photo features, the Twitter employees with relevant knowledge in each of these areas work at the San Francisco headquarters, where they are part of teams comprising many full-time Twitter employees.  Furthermore, most, if not all, documents and evidence related to these subject areas, including those related to research and development, are located in Twitter's headquarters.

11.      Twitter does not own or lease any real property within the Northern District of Texas and does not employ any individuals within that District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on May 29, 2014.

ED AXELSEN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | No. 7:14-cv-00014 |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS | § | |
| MOBILECOMM USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

## DECLARATION OF MARK BUCKLEY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

I, Mark Buckley, declare and state as follows:

1.    I have personal knowledge of the facts stated in this declaration and, if called to do so, would testify competently thereto.

2.    I am employed as a Finance Manager at Apple Inc. ("Apple") in Sunnyvale, California. I have been employed by Apple since October 2002. Unless otherwise indicated below, the statements in this declaration are based upon my personal knowledge, corporate records, or information maintained by Apple in the ordinary course of business.

**APPX240**

3.    I have been advised that Summit 6 LLC ("Summit 6") filed the above-captioned patent infringement lawsuit against Apple in the United States District Court for the Northern District of Texas, Wichita Falls Division.

4.    I understand that Summit 6's allegations have accused certain Apple iPhones, iPads, and the iPod touch devices (the "Apple Devices") of patent infringement when the Apple Devices obtain multimedia digital content, process that digital content, and transmit or share it with other devices, transmitting the digital content in multimedia messages ("MMS messages") or iMessages, or by Messaging-related Application Programming Interfaces ("APIs"), apps, and other sharing options accessible without an app (collectively, the "Accused Instrumentality").

5.    Apple is a California corporation and was founded in 1976.  Apple is a global business headquartered in Cupertino, California.    Apple's management, research and development, and marketing are primarily located in or near Cupertino, including surrounding cities such as Sunnyvale, all located in the Northern District of California.  Apple's business is led from Cupertino, where the bulk of the decision-making takes place.  As of March 29, 2014, Apple has more than 17,400 employees who work in or near Cupertino.  Apple is in the process of building a new campus in Cupertino that will increase Apple's operations and employees.

6.    To the best of my knowledge after a reasonable investigation, all of the design, development, and marketing efforts for the Apple Devices that are relevant to this action have occurred or currently occur in or near Cupertino.

7.    The Apple employees and foreseeable witnesses in this action who have knowledge of the design, development, and marketing of the Accused Instrumentality are likely to have worked or currently work in or near Cupertino.  The electronic and paper records of their

2                                    **APPX241**

**– A486 –**

work, relevant technical documents and source code, and relevant financial documents, are also located in or near Cupertino.

8.      Among the Apple employees whom Apple expects will be willing witnesses in this action, and who have knowledge relevant to this action, are: (1) Justin Wood, Engineering Manager for iMessages and FaceTime, who has knowledge of the design and operation of some of the Accused Instrumentality, including iMessage, MMS messages, and related APIs; (2) Guy Fullerton, Senior Staff Engineer in the iOS Productivity group, who has knowledge of the design and operation of some of the Accused Instrumentality, including sharing options accessible without an app and related APIs; (3) Gokul Thirumalai, Engineering Manager for Push Notification System and iMessage Delivery, who has knowledge of the design and operation of some of the Accused Instrumentality, including iMessage; and (4) Mark Buckley, Finance Manager, who has knowledge of Apple's finances as they may relate to Summit 6's claims for damages in this action.  Each of these individuals works in or around Cupertino, California, and lives in the San Francisco Bay Area, all within the Northern District of California.  The electronic and paper records of their work, and relevant Apple business records, are also located in or near Cupertino.

9.      Apple operates data centers in California and North Carolina that support the Accused Instrumentality.  Apple does not operate any data centers in Wichita Falls or in the Northern District of Texas that support the Accused Instrumentality.

10.     To the best of my knowledge after a reasonable investigation, none of Apple's design, development, or marketing efforts for the Accused Instrumentality that are relevant to this action have occurred in Wichita Falls or in the Northern District of Texas.

APPX242

11.    I am not aware, after a reasonable investigation, of any foreseeable Apple witnesses or relevant Apple documents located in Wichita Falls or in the Northern District of Texas.

12.    As of March 2014, Apple operates more than 250 retail stores in the United States.  Apple has more than 50 retail stores in California and only 18 retail stores in Texas. Apple has no retail stores, nor any other facilities, in the Wichita Falls Division of the Northern District of Texas.

13.    Apple has four retail stores in the Northern District of Texas, two located in Dallas, one located in Fort Worth, and one located in Southlake.  Apple does not have any other offices or facilities in the Northern District of Texas.

14.    I have also reviewed Apple human resource records for employees in Texas.  I searched those records for any jobs relating to the Accused Instrumentality.  After a reasonable investigation, based on the job descriptions and discussions with the relevant Apple managers, I identified no jobs in Texas relating to the development or implementation of Accused Instrumentality.  After speaking with the relevant Apple managers, I determined that none of their team members are located in Texas.

15.    If this case were litigated in the Wichita Falls Division of the Northern District of Texas, Apple's employees would be required to travel to Wichita Falls, and Apple would incur expenses for airfare, lodging, and meals, as well as losses in productivity due to employees missing work.  In addition, Apple's employees would suffer the personal costs associated with being away from their work, family, and community.

16.    Apple provides uniform, repeatable customer service and support from locations around the country, the vast majority of which are not in Texas. Apple's customer service and support efforts originate from centralized teams in Cupertino. For example, any guidelines, policies, procedures, operating principles, or knowledge base articles originate from Cupertino, where Apple is headquartered.

I declare under penalty of perjury that the foregoing is true and correct.

Date: May 21, 2014

_Mark Buckley_
Mark Buckley

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

SUMMIT 6 LLC,,

      Plaintiff,

    v.

HTC CORPORATION, HTC AMERICA,
INC., LG ELECTRONICS, INC., LG
ELECTRONICS USA, INC., LG
ELECTRONICS MOBILECOMM USA,
INC., MOTOROLA MOBILITY LLC,
APPLE, INC. AND TWITTER, INC.,,

      Defendant.

Civil Action No. 7:14-CV-00014-O

**DECLARATION OF RENEE BROWN IN SUPPORT OF**
**DEFENDANT MOTOROLA MOBILITY LLC'S MOTION TO TRANSFER**

    1.    I, Renee Brown, hereby declare, pursuant to 28 U.S.C. § 1746, that the following

is true and correct:

    2.    I am Senior IP Counsel at Motorola Mobility LLC ("Motorola").  I am over

eighteen (18) years of age, and I am otherwise fully competent to make this Declaration.  Unless

otherwise indicated below, the statements in this declaration are based upon my personal

knowledge or corporate records maintained by Motorola in the ordinary course of business.

    3.    Motorola is a Delaware limited liability company with its principal place of

business in Chicago, Illinois.

    4.    I have been advised that Summit 6 LLC ("Summit 6") filed the above-captioned

patent infringement lawsuit that accuses the following Motorola products of infringing U.S.

Patent Nos. 7,765,482 and 8,612,515: Moto X, Moto G, Droid Maxx, Droid Ultra, Droid Mini,

Moto X Developer Edition (GSM Networks), Moto X Developer Edition Verizon, Droid Maxx

Developer Edition, Droid Razr M, Droid Razr Maxx HD, Motorola Photon Q 4G LTE (the "Accused Products").

5.    I have been advised that Summit 6 accuses the same functionality within each of the Accused Products, including: the Motorola MMS Application, including its MMS functionality; Motorola's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality (the "Accused Functionality").

6.    Motorola currently maintains significant business operations in California. For example, Motorola operates and maintains a facility in Sunnyvale, California, which is within the Northern District of California.

7.    Approximately 537 people work at Motorola's Sunnyvale facility. The employees belong to various groups, the most relevant for the purposes of this Declaration including engineering and finance groups.

8.    Based on its investigation to date, Motorola has identified at least three, if not more, employee(s) in the Northern District of California who will likely be needed as a witness in this action.

9.    For example, Naveen Aerrabotu is knowledgeable about messaging related functionality, including MMS functionality, messaging related applications, and the use of the same to generate, process, send and receive an MMS message at a Motorola phone. Mr. Aerrabotu's job title is Director, and he supervises approximately 50 engineers in the carrier tech group. Mr. Aerrabotu is employed at Motorola's Sunnyvale facility, and he has worked at Motorola for 17 years. I am informed that Motorola would expect Mr. Aerrabotu to provide testimony in the above-referenced litigation.

- 2 -

10.     As another example, Jason Tsuyemura is knowledgeable about Android, the operating system for all of the Accused Products. Mr. Tsuyemura serves as the single point of contact for technical inquiries made by Motorola product groups regarding Android.  Mr. Tsuyemura is knowledgeable about the dissemination and loading of Android source code on Motorola phones, and the internal compliance of these Motorola phones.  Mr. Tsuyemura has been employed at Motorola's Sunnyvale facility for 2 years. I am informed that Motorola would additionally expect Mr. Tsuyemura to provide testimony in the above-referenced litigation.

11.     Finally, Mr. Ben Sherwin is knowledgeable about the sales, revenue, and costs associated with the Accused Products. Mr. Sherwin is employed within the finance group at Motorola's Sunnyvale facility. I am informed that Motorola would expect Mr. Sherwin to provide testimony in the above-referenced litigation.

12.     Through my experience as Motorola's Senior IP Counsel, I have become aware that the time required for Motorola employees to provide testimony as witnesses in litigation (at trial or otherwise) negatively impacts the productivity of those employees. The impact is even greater when the Motorola employees are required to travel to a different state to provide testimony.

13.     All or nearly all of the documents relating to the Accused Products and the Accused Functionality are available in either Sunnyvale, California or in Motorola's headquarters in Chicago, Illinois. Such documents include those related to the research, development, design, sales, and marketing of the Accused Products and the Accused Functionality.

14.     No activities related to the research, design, sales, or marketing of the Accused Products or the Accused Functionality took place in the Northern District of Texas.

- 3 -

15.    Motorola does not own or lease any real property within the Wichita Falls Division of the Northern District of Texas.

16.    Motorola does not employ any individuals within the Wichita Falls Division of the Northern District of Texas.

17.    Currently, Motorola leases real property within the Dallas Division of the Northern District of Texas from third party Flextronics International ("Flextronics"). Flextronics' facility is located at 5650 Alliance Gateway Freeway, Fort Worth, TX 76177.

18.    Currently, Motorola employs 29 individuals at the Flextronics facility. The Motorola employees who work at the Flextronics facility belong to the supply chain group. At this point in time, Motorola does not anticipate that any of the Motorola employees who work at the Flextronics facility will provide testimony in the above-referenced litigation.

19.    Motorola has announced that it will terminate its lease at the Flextronics facility by the end of 2014. It remains to be seen whether the Motorola employees who currently work at the Flextronics facility will continue to be employed by Motorola.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June _4_ , 2014

_Renee DuParol Brown_

Renee Brown

US2008 5633819 2                                                                 **APPX248**

**– A493 –**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| | § | CIVIL ACTION No. 7:14-cv-00014-O |
| | § | |
| vs. | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM USA, | § | |
| INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DECLARATION OF STEPHANIE BARIAULT
IN SUPPORT OF DEFENDANTS HTC CORPORATION'S AND HTC AMERICA,
INC.'S MOTION TO TRANSFER VENUE**

APPX249

I, Stephanie Bariault, declare as follows:

1.       I am the Vice President of Operations for HTC America, Inc., a Defendant in this action and an indirect, wholly-owned subsidiary of HTC Corporation, also a defendant in this action.  My office is located in Bellevue, Washington.  I provide this declaration in support of Defendants' Motion to Transfer Venue.  Unless stated otherwise, I have personal knowledge of the facts set forth below, and if called as a witness, I could and would competently testify thereto.

2.       HTC Corporation ("HTC Corp.") is a Taiwanese corporation with its principal place of business in Taiwan, ROC.  HTC Corp. has no offices in Texas, and no offices elsewhere in the United States.  HTC America, Inc. ("HTC America") is incorporated in the State of Washington and has its principal place of business in Bellevue, Washington.

3.       I understand that Plaintiffs have alleged that certain "upload services and/or devices" on HTC products ("HTC accused products") infringe certain asserted patents, although Plaintiff has not identified the allegedly infringing features of HTC devices with specificity.

4.       Most of the HTC Corp. engineers who work on developing, manufacturing and supporting HTC Corp.'s mobile devices, including foreseeable witnesses who work on what I understand to be HTC accused products, work and live in Taiwan.  For example, Minfeng Hong, who manages the research and development team for the SMS/MMS applications, is located in Taiwan.  To my knowledge, no HTC Corp. engineers live and work in Texas.

5.       HTC Corp. maintains business documents and records relating to the research, design, marketing, sales, and development for what I understand to be the HTC accused products in Taiwan.  HTC Corp. has no corporate repository of any of these documents in Texas.

- 2 -

APPX250

6.     HTC Corp. does not operate any retail stores in the United States.  HTC Corp. does not sell the HTC accused devices named in Plaintiff's complaint directly to any end-user consumer in the United States.  HTC Corp. does not ship its products directly to any individual retail store in any state, including Texas.

7.     HTC Corp. routinely conducts business in the San Francisco Bay Area, which is located in the Northern District of California.  For example, HTC Corp. has worked with, and continues to work with, Google in developing and supporting the accused products.  It is my understanding that the Google Android operating system is contained in all of the HTC mobile devices accused by name in Plaintiff's complaint.  Google is located in Mountain View, California.  HTC Corp. employees frequently travel to Mountain View to meet with Google employees, and HTC Corp. employees otherwise conduct business with Google employees located in Mountain View.  It is my understanding that documents related to the Android operating system are located in Mountain View.

8.     In the United States, HTC Corp. sells mobile phones only to HTC America, Inc., which markets and sells the devices to distributors, carriers and third-party vendors in the United States, including those in the Northern District of California.  HTC America has approximately 130 employees who work in or near its headquarters in Bellevue, Washington.  Approximately 25 HTC America employees are engineers who support testing and development of HTC mobile devices.  Most HTC America employees and officers work on the marketing, distribution, and sales of HTC mobile devices, and some may therefore be foreseeable witnesses in this case.  All such potential witnesses, and indeed, almost all of the HTC America officers and employees who could testify to such matters, including executives and marketing personnel, are located in Washington.

- 3 -

9.     HTC America has employees outside Bellevue, Washington, including in California. A relatively small number of employees also work out of their homes close to customer locations in different parts of the United States. To my knowledge, no HTC America employees with knowledge that is relevant to this case work in Texas.

10.    HTC America maintains business documents and records relating to the marketing, distribution, and sales of what I understand to be the HTC accused products in Bellevue, Washington. To the best of my knowledge, HTC has no corporate repository of any of the above documents in Texas.

11.    I am informed that, if this action proceeds to trial, it will likely be necessary for officers and/or employees of HTC Corp. and HTC America to testify at trial. Further, I have been informed that such testimony will likely include how HTC designs, markets, distributes and sells its products. Almost all of the HTC Corp. and HTC America officers and employees who could testify to such matters, including executives, engineers, marketing personnel, and all foreseeable HTC witnesses, are located either in the state of Washington or Taiwan. None of the officers or employees who could foreseeably testify to such matters are located in the Northern District of Texas.

12.    In my capacity as Vice President of Operations at HTC America, I am a foreseeable witness in this case and could testify competently regarding the operations of HTC America. I have knowledge regarding HTC's supply chain planning and customer support for HTC products in the United States. I also have a general understanding of how HTC America designs, markets, distributes and sells mobile phones. It is my understanding that these topics may be the subject of discovery and/or trial.

- 4 -

13.     As the following exhibits to this declaration demonstrate, it is less burdensome for me and my colleagues in Bellevue and Taiwan to travel to the Northern District of California than to Wichita Falls.

14.     The closest major airport to HTC America's principle place of business in Bellevue, Washington, is Seattle-Tacoma International Airport.  The closest major airport to HTC Corporation's principal place of business in Taiwan is Taiwan Taoyuan International Airport.

15.     Attached hereto as Exhibit 1 is a true and correct copy of an Orbitz estimate of travel times and costs for flights from Seattle-Tacoma International Airport ("SEA") to San Francisco International Airport ("SFO"), sorted by quickest route.

16.     Attached hereto as Exhibit 2 is a true and correct copy of Google Maps Driving Directions showing the driving distance from SFO to the San Francisco Division Courthouse of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102 ("San Francisco Courthouse").

17.     Attached hereto as Exhibit 3 is a true and correct copy of an Orbitz estimate of travel times and costs for flights from Seattle-Tacoma International Airport ("SEA") to Wichita Falls Municipal Airport ("SPS"), sorted by quickest route.

18.     Attached hereto as Exhibit 4 is a true and correct copy of Google Maps Driving Directions showing the driving distance from Dallas/Fort Worth International Airport ("DFW") to the Wichita Falls Division Courthouse of the Northern District of Texas, located at 1000 Lamar Street, Wichita Falls, TX 76301 ("Wichita Falls Courthouse").

- 5 -

APPX253

19.     Attached hereto as Exhibit 5 is a true and correct copy of an Orbitz estimate of travel times from Taiwan Taoyuan International Airport ("TPE") to San Francisco International Airport ("SFO"), sorted by quickest route.

20.     Attached hereto as Exhibit 6 is a true and correct copy of an Orbitz estimate of travel times from Taiwan Taoyuan International Airport ("TPE") to Wichita Falls Municipal Airport ("SPS"), sorted by quickest route.

21.     Attached hereto as Exhibit 7 is a true and correct copy of Google Maps Driving Directions showing the driving distance from DFW to the Dallas Division Courthouse of the Northern District of Texas, located at 1100 Commerce Street, Dallas, TX 75242.

22.     Attached hereto as Exhibit 8 is a true and correct copy of Google Maps Driving Directions showing the driving distance from DFW to the Fort Worth Division Courthouse of the Northern District of Texas, located at 501 West 10th Street, Fort Worth, TX 76102.

23.     Not only would the initial flight into Dallas Fort Worth from Seattle be twice as long as a flight to San Francisco, but once at DFW I would either have to rent a car and drive to Wichita Falls (123 miles or two hours), or take a connecting flight to the Wichita Falls Airport. Either option results in the travel time from Seattle to the Wichita Falls Courthouse being almost four hours longer than the travel time to San Francisco. This extra travel time would be disruptive to my work schedule.

24.     Likewise, HTC Corp.'s foreseeable technical witnesses would need to travel from Taiwan to the United States to attend trial. Assuming trial in the Northern District of California, the flight from Taiwan would take eleven hours. A trial in Wichita Falls would subject HTC Corp.'s witnesses to 19 hours in travel time, including two stopovers. Therefore, travel to

APPX254

Wichita Falls is much more burdensome to HTC Corp.'s technical witnesses than travel to San Francisco.

25.     Although traveling to DFW for trial either in Dallas or Fort Worth would also be significantly more inconvenient than traveling to the Northern District of California, it would be less disruptive to my schedule and the schedules of my colleagues in Bellevue and Taipei than traveling to Wichita Falls.

26.     If called as a trial witness, I would make every effort to remain engaged in my everyday job responsibilities during the time of trial.  I expect the same is true of my colleagues in Bellevue and Taiwan.  Conducting a trial in the Northern District of California would result in less travel and other time away from our offices than if the trial is conducted in Wichita Falls.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 29th, 2014, at Bellevue, Washington.

/ Stephanie Bariault

APPX255

# EXHIBIT 1

Orbitz estimate of travel times and costs for flights from
Seattle-Tacoma International Airport ("SEA") to
San Francisco International Airport ("SFO")
sorted by quickest route.



Hotels Flights Vacation Packages Cars Cruises Deals Activities New! Welcome Visit Florida Cred

Change search

Seattle, WA (SEA) to San Francisco, CA (SFO) Mon, Nov 3, 2014
San Francisco, CA (SFO) to Seattle, WA (SEA) Fri, Nov 28, 2014

Flexible Dates? Search +/- 3 days

Don't Miss Out! Save up to $525* by booking your Flight and Hotel together Search now

LOWEST PRICE
$208.00

Hide Matrix

| | Alaska Airlines | Multiple Airlines | American Airlines | Delta Air Lines | United Airlines | Virgin America | jetBlue | US Airways |
|---|---|---|---|---|---|---|---|---|
| Non-stop | $208.00 | $214.99 | $238.00 | $277.00 | $328.00 | $318.00 | | |
| 1+ stops | $288.00 | $308.99 | | | $312.00 | | $334.00 | $531.60 |

**Refine Results**

**Select flight times**

Outbound
Take-off: 5:15 AM - 11:00 PM
Show landing time

Inbound
Take-off: 6:00 AM - 11:00 PM
Show landing time

**Select stops**

| | |
|---|---|
| Any | |
| Non-stop | $208 |
| 1 stop | $288 |

**Select price range**

Any
$208-$220 (120)
$220-$230 (88)
$230-$250 (120)
$250-$260 (110)
$260-$540 (62)

**Select airlines**

| | |
|---|---|
| Any | |
| Multiple Airlines | $214 |
| Alaska Airlines | $208 |
| American Airlines | $238 |
| Delta Air Lines | $277 |
| jetBlue | $334 |
| United Airlines | $312 |
| US Airways | $531 |
| Virgin America | $318 |

**Matching Results: 475 of 500** Reset filters

**Sort by:** Shortest Flight

Additional baggage fees may apply.

Flight details

$328.00 Total cost FREE Cancel Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>1:20 PM<br>Seattle SEA | 3:21 PM<br>San Francisco SFO | non-stop<br>2hr 1min | United Airlines 816<br>Seat map |
| Select this return | **Return** Fri, Nov 28<br>10:55 PM<br>San Francisco SFO | 12:51 AM<br>Seattle SEA | non-stop<br>1hr 56min | United Airlines 351<br>Seat map |

This is an overnight flight, which will arrive one (1) day later.

Earn $3.28

Flight details

$328.00 Total cost FREE Cancel Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>1:20 PM<br>Seattle SEA | 3:21 PM<br>San Francisco SFO | non-stop<br>2hr 1min | United Airlines 816<br>Seat map |
| Select this return | **Return** Fri, Nov 28<br>6:00 AM<br>San Francisco SFO | 7:56 AM<br>Seattle SEA | non-stop<br>1hr 56min | United Airlines 276<br>Seat map |

Earn $3.28

Site Feedback

Flight details

$208.00 Total cost FREE Cancel Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>12:00 PM<br>Seattle SEA | 2:08 PM<br>San Francisco SFO | non-stop<br>2hr 8min | Alaska Airlines 306<br>Seat map |
| Select this return | **Return** Fri, Nov 28<br>6:20 PM<br>San Francisco SFO | 8:10 PM<br>Seattle SEA | non-stop<br>1hr 50min | Alaska Airlines 307<br>Seat map |

Earn $2.08

Flight details

$214.99 Total cost FREE Cancel Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>12:00 PM<br>Seattle SEA | 2:08 PM<br>San Francisco SFO | non-stop<br>2hr 8min | Alaska Airlines 306<br>Seat map |
| Select this return | **Return** Fri, Nov 28<br>6:20 PM<br>San Francisco SFO | 8:10 PM<br>Seattle SEA | non-stop<br>1hr 50min | American Airlines 6963<br>Seat map |

Flight 6963 Operated by Alaska Airlines

Earn $2.15

Flight details

$238.00 Total cost FREE Cancel

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>12:00 PM<br>Seattle SEA | 2:08 PM<br>San Francisco SFO | non-stop<br>2hr 8min | American Airlines 6930<br>Seat map |

Flight 6930 Operated by Alaska Airlines



Select

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn **$2.38**

---

Flight details

**$244.99**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **12:00 PM** Seattle SEA | **2:08 PM** San Francisco SFO | **non-stop** 2hr 8min | **American Airlines** 6930 Seat map

Flight 6930 Operated by Alaska Airlines

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **Alaska Airlines** 307 Seat map

Earn **$2.45**

---

**Act Fast!** Only 5 tickets left at this price!

Flight details

**$208.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **7:20 AM** Seattle SEA | **9:29 AM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 222 Seat map

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **Alaska Airlines** 307 Seat map

Earn **$2.08**

---

Flight details

**$208.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **3:25 PM** Seattle SEA | **5:34 PM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 308 Seat map

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **Alaska Airlines** 307 Seat map

Earn **$2.08**

---

Flight details

**$208.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **9:55 AM** Seattle SEA | **12:04 PM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 318 Seat map

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **Alaska Airlines** 307 Seat map

Earn **$2.08**

---

Flight details

**$208.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **6:30 AM** Seattle SEA | **8:39 AM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 320 Seat map

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **Alaska Airlines** 307 Seat map

Earn **$2.08**

---

Flight details

**$208.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **6:25 PM** Seattle SEA | **8:34 PM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 302 Seat map

Select this return | **Return** Fri, Nov 28 | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **Alaska Airlines** 307 Seat map



Earn $2.08

Flight details

| $208.00 Total cost FREE Cancel Select | Select this departure | Leave Mon, Nov 3 2:00 PM Seattle SEA | 4:09 PM San Francisco SFO | non-stop 2hr 9min | Alaska Airlines 316 Seat map |
|---|---|---|---|---|---|
| | Select this return | Return Fri, Nov 28 6:20 PM San Francisco SFO | 8:10 PM Seattle SEA | non-stop 1hr 50min | Alaska Airlines 307 Seat map |

Earn $2.08

Flight details

| $208.00 Total cost FREE Cancel Select | Select this departure | Leave Mon, Nov 3 8:50 PM Seattle SEA | 10:59 PM San Francisco SFO | non-stop 2hr 9min | Alaska Airlines 300 Seat map |
|---|---|---|---|---|---|
| | Select this return | Return Fri, Nov 28 6:20 PM San Francisco SFO | 8:10 PM Seattle SEA | non-stop 1hr 50min | Alaska Airlines 307 Seat map |

Earn $2.08

Flight details

| $214.99 Total cost FREE Cancel Select | Select this departure | Leave Mon, Nov 3 6:25 PM Seattle SEA | 8:34 PM San Francisco SFO | non-stop 2hr 9min | Alaska Airlines 302 Seat map |
|---|---|---|---|---|---|
| | Select this return | Return Fri, Nov 28 6:20 PM San Francisco SFO | 8:10 PM Seattle SEA | non-stop 1hr 50min | American Airlines 6963 Seat map |

Flight 6963 Operated by Alaska Airlines

Earn $2.15

**Act Fast!** Only 5 tickets left at this price!

Flight details

| $214.99 Total cost FREE Cancel Select | Select this departure | Leave Mon, Nov 3 7:20 AM Seattle SEA | 9:29 AM San Francisco SFO | non-stop 2hr 9min | Alaska Airlines 222 Seat map |
|---|---|---|---|---|---|
| | Select this return | Return Fri, Nov 28 6:20 PM San Francisco SFO | 8:10 PM Seattle SEA | non-stop 1hr 50min | American Airlines 6963 Seat map |

Flight 6963 Operated by Alaska Airlines

Earn $2.15

Flight details

| $214.99 Total cost FREE Cancel Select | Select this departure | Leave Mon, Nov 3 3:25 PM Seattle SEA | 5:34 PM San Francisco SFO | non-stop 2hr 9min | Alaska Airlines 308 Seat map |
|---|---|---|---|---|---|
| | Select this return | Return Fri, Nov 28 6:20 PM San Francisco SFO | 8:10 PM Seattle SEA | non-stop 1hr 50min | American Airlines 6963 Seat map |

Flight 6963 Operated by Alaska Airlines

Earn $2.15

Flight details

| $214.99 Total cost FREE Cancel Select | Select this departure | Leave Mon, Nov 3 6:30 AM Seattle SEA | 8:39 AM San Francisco SFO | non-stop 2hr 9min | Alaska Airlines 320 Seat map |
|---|---|---|---|---|---|
| | Select this return | Return Fri, Nov 28 6:20 PM San Francisco SFO | 8:10 PM Seattle SEA | non-stop 1hr 50min | American Airlines 6963 Seat map |

Flight 6963 Operated by Alaska Airlines

Earn $2.15





Flight details

**$214.99**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**8:50 PM** Seattle SEA | **10:59 PM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 300 Seat map

Select this return | **Return** Fri, Nov 28
**6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn **$2.15**

Flight details

**$214.99**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**9:55 AM** Seattle SEA | **12:04 PM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 318 Seat map

Select this return | **Return** Fri, Nov 28
**6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn **$2.15**

Flight details

**$214.99**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**2:00 PM** Seattle SEA | **4:09 PM** San Francisco SFO | **non-stop** 2hr 9min | **Alaska Airlines** 316 Seat map

Select this return | **Return** Fri, Nov 28
**6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn **$2.15**

Flight details

**$238.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**2:00 PM** Seattle SEA | **4:09 PM** San Francisco SFO | **non-stop** 2hr 9min | **American Airlines** 6876 Seat map

Flight 6876 Operated by Alaska Airlines

Select this return | **Return** Fri, Nov 28
**6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn **$2.38**

Flight details

**$238.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**9:55 AM** Seattle SEA | **12:04 PM** San Francisco SFO | **non-stop** 2hr 9min | **American Airlines** 6897 Seat map

Flight 6897 Operated by Alaska Airlines

Select this return | **Return** Fri, Nov 28
**6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn **$2.38**

Flight details

**$238.00**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**3:25 PM** Seattle SEA | **5:34 PM** San Francisco SFO | **non-stop** 2hr 9min | **American Airlines** 6927 Seat map

Flight 6927 Operated by Alaska Airlines

Select this return | **Return** Fri, Nov 28
**6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | **American Airlines** 6963 Seat map

Flight 6963 Operated by Alaska Airlines

Earn $2.38

Flight details

$238.00
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | | | | |
| | **6:30 AM** Seattle SEA | **8:39 AM** San Francisco SFO | **non-stop** 2hr 9min | | **American Airlines** 6868 Seat map |
| | Flight 6868 Operated by Alaska Airlines | | | | |
| Select this return | **Return** Fri, Nov 28 | | | | |
| | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | | **American Airlines** 6963 Seat map |
| | Flight 6963 Operated by Alaska Airlines | | | | |

Earn $2.38

Flight details

$238.00
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | | | | |
| | **6:25 PM** Seattle SEA | **8:34 PM** San Francisco SFO | **non-stop** 2hr 9min | | **American Airlines** 6878 Seat map |
| | Flight 6878 Operated by Alaska Airlines | | | | |
| Select this return | **Return** Fri, Nov 28 | | | | |
| | **6:20 PM** San Francisco SFO | **8:10 PM** Seattle SEA | **non-stop** 1hr 50min | | **American Airlines** 6963 Seat map |
| | Flight 6963 Operated by Alaska Airlines | | | | |

Earn $2.38

**See 25 more result(s)**

Return to top | Change search Showing: 25 of 475 results

*Savings based on all vacation package bookings with Flight + Hotel on www.orbitz.com in 2013, as compared to price of the same components booked separately. Savings will vary based on origin/destination, length of trip, stay dates and selected travel supplier(s). Savings not available on all packages.

Prices shown are 'from prices' and are an average per traveller including all airfare taxes and fees and any applicable service fees.

Vacation packages | Car rental | Cruises | Travel blog | Flight status | Orbitz Travel Alerts | Customer Support | Español | Labs

About Orbitz | Contact Us | Investors | Careers | Media | Site map | Advertising | Affiliates | Orbitz for Business | Orbitz for Agents | Terms and conditions | Your Privacy Rights

Orbitz Rewards | Orbitz Rewards Visa Card | Best Price Guarantee | Travel deals | Mobile | Facebook | Twitter | Pinterest

**Download our free app:**

Orbitz guards your privacy and security. We're certified by TRUSTe and Verisign.
© 2001 - 2014, Orbitz, LLC. All rights reserved.
CST 2063530-50; Hawaii TAR-5627; Iowa 644; **Nevada 2003-0387**; Washington 602-102-724

# EXHIBIT 2

Google Maps Driving Directions showing distance from
San Francisco International Airport ("SFO") to
the San Francisco Courthouse (located at
450 Golden Gate Avenue, San Francisco, CA 94102)

 **Drive 13.9 miles, 19 min**

**Directions from San Francisco International Airport to 450 Golden Gate Ave**



## ⭕ San Francisco International Airport
San Francisco, CA 94128

### Get on US-101 N from Airport Access Rd



1.0 mi / 2 min

| | | |
|---|---|---|
| ⬆ | 1. Head **north** | 236 ft |
| ↱ | 2. Slight **right** toward **Airport Access Rd** | 0.2 mi |
| ↰ | 3. Slight **left** toward **Airport Access Rd** | 0.1 mi |
| ⬆ | 4. Continue straight onto **Airport Access Rd** | 0.2 mi |
| ↱ | 5. Slight **right** to stay on **Airport Access Rd** | 295 ft |
| ⑂ | 6. Keep **right** at the fork to continue toward US-101 N | 0.1 mi |
| ⑂ | 7. Keep **left** at the fork and merge onto US-101 N | 0.3 mi |

**APPX263**

Continue to San Francisco. Take the U.S. 101 N exit from US-101 N

|  | 12.0 mi / 13 min |
|---|---|

🚶 8.   Merge onto US-101 N

|  | 11.8 mi |
|---|---|

↱ 9.   Exit onto US-101 N/Mission St toward G G Bridge

|  | 0.2 mi |
|---|---|



Take S Van Ness Ave to Golden Gate Ave

|  | 0.9 mi / 3 min |
|---|---|

🚶 10.   Merge onto US-101 N/Mission St

|  | 0.2 mi |
|---|---|

↰ 11.   Turn left onto S Van Ness Ave

|  | 0.6 mi |
|---|---|

↱ 12.   Turn right onto Golden Gate Ave

ⓘ Destination will be on the left

|  | 0.1 mi |
|---|---|



◎ **450 Golden Gate Ave**
San Francisco, CA 94102

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

Map data ©2014 Google

**APPX264**

# EXHIBIT 3

Orbitz estimate of travel times and costs for flights from
Seattle-Tacoma International Airport ("SEA") to
Wichita Falls Municipal Airport ("SPS"),
sorted by quickest route.

APPX265



Hotels Flights Vacation Packages Cars Cruises Deals Activities New! Welcome Visit Florida Cred

Change search

Seattle, WA (SEA) to Wichita Falls, TX (SPS) Mon, Nov 3, 2014
Wichita Falls, TX (SPS) to Seattle, WA (SEA) Fri, Nov 28, 2014

Flexible Dates? Search +/- 3 days

Don't Miss Out! Save up to $525* by booking your Flight and Hotel together Search now

LOWEST PRICE
$350.00

Hide Matrix

| | Alaska Airlines | Multiple Airlines | American Airlines | US Airways |
|---|---|---|---|---|
| 1 stop | $350.00 | $424.64 | $476.70 | $740.70 |
| 2+ stops | | $525.64 | $545.70 | $581.05 |

**Refine Results**

**Select flight times**

Outbound
Take-off: Mon 12:45 AM - Tue 12:00 AM
Show landing time

Inbound
Take-off: 6:00 AM - 5:15 PM
Show landing time

**Select stops**

Any
1 stop $350
2+ stops $525

**Select price range**

Any
$350-$570 (96)
$570-$590 (49)
$590-$640 (95)
$640-$680 (122)
$680-$690 (20)
$690-$1,210 (118)

**Select airlines**

Any
Multiple Airlines $424
Alaska Airlines $350
American Airlines $476
US Airways $581

## Matching Results: 500

Sort by: Shortest Flight

Additional baggage fees may apply.

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$672.74** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252, **US Airways** 8113, Seat map
Change of airlines.
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107, **American Airlines** 1207, Seat map
Change of airlines.
Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $6.73

**Act Fast!** Only 1 ticket left at this price!

Flight details

**$677.05** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 / 3294, Seat map
Site Feedback
Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **American Airlines** 3288 / 1207, Seat map
Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $6.77

**Act Fast!** Only 1 ticket left at this price!

Flight details

**$684.04** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 / 3294, Seat map
Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107, **American Airlines** 1207, Seat map
Change of airlines.
Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $6.84

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$725.89**

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** — **4:45 PM** — **1 stop** — **American Airlines**



Total cost
FREE Cancel
Select

Seattle SEA — Wichita Falls SPS — 5hr 35min — 2252 US Airways 8113 — Seat map

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **American Airlines** 3288 / 1207 — Seat map

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$7.26**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$762.89**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **US Airways** 2252 / 8113 — Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107 **American Airlines** 1207 — Seat map

Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$7.63**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$775.54**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 **US Airways** 8113 — Seat map

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107 / 1207 — Seat map

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 1207 Operated by American Airlines

Earn **$7.76**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$849.05**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **US Airways** 2252 / 8113 — Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107 / 1207 — Seat map

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 1207 Operated by American Airlines

Earn **$8.49**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$857.19**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **US Airways** 2252 / 8113 — Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **American Airlines** 3288 / 1207 — Seat map

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $8.57

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$576.84**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **9:10 AM** Seattle SEA | **4:45 PM** Wichita Falls SPS | **1 stop** 5hr 35min | **American Airlines** 2252 **US Airways** 8113 Seat map

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28 | **6:00 AM** Wichita Falls SPS | **10:20 AM** Seattle SEA | **1 stop** 6hr 20min | **US Airways** 8107 **Alaska Airlines** 665 Seat map

Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $5.77

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$657.34**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **9:10 AM** Seattle SEA | **4:45 PM** Wichita Falls SPS | **1 stop** 5hr 35min | **US Airways** 2252 / 8113 Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28 | **6:00 AM** Wichita Falls SPS | **10:20 AM** Seattle SEA | **1 stop** 6hr 20min | **US Airways** 8107 **Alaska Airlines** 665 Seat map

Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $6.57

Flight details

**$717.14**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **9:10 AM** Seattle SEA | **4:45 PM** Wichita Falls SPS | **1 stop** 5hr 35min | **American Airlines** 2252 / 3294 Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28 | **6:00 AM** Wichita Falls SPS | **10:20 AM** Seattle SEA | **1 stop** 6hr 20min | **US Airways** 8107 **Alaska Airlines** 665 Seat map

Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $7.17

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$719.69**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3 | **9:10 AM** Seattle SEA | **4:45 PM** Wichita Falls SPS | **1 stop** 5hr 35min | **American Airlines** 2252 **US Airways** 8113 Seat map

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28 | **6:00 AM** Wichita Falls SPS | **10:20 AM** Seattle SEA | **1 stop** 6hr 20min | **Alaska Airlines** 4419 / 665 Seat map

Flight 4419 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $7.20

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$800.19**
Total cost
FREE Cancel

Select this departure | **Leave** Mon, Nov 3 | **9:10 AM** Seattle SEA | **4:45 PM** Wichita Falls SPS | **1 stop** 5hr 35min | **US Airways** 2252 / 8113 Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE



Select

Select this return | **Return** Fri, Nov 28 | | | |
---|---|---|---|---
| **6:00 AM** Wichita Falls SPS | **10:20 AM** Seattle SEA | **1 stop** 6hr 20min | **Alaska Airlines** 4419 / 665 Seat map

Flight 4419 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$8.00**

---

Flight details

**$859.99** Total cost FREE Cancel Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 / 3294 Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:20 AM** Seattle SEA — **1 stop** 6hr 20min — **Alaska Airlines** 4419 / 665 Seat map

Flight 4419 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$8.60**

---

**Act Fast!** Only 4 tickets left at this price!

Flight details

**$631.55** Total cost FREE Cancel Select

Select this departure — **Leave** Mon, Nov 3
**12:55 PM** Seattle SEA — **8:50 PM** Wichita Falls SPS — **1 stop** 5hr 55min — **American Airlines** 7114 / 3773 Seat map

Flight 7114 Operated by Alaska Airlines
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **American Airlines** 3288 / 1207 Seat map

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$6.32**

---

**Act Fast!** Only 5 tickets left at this price!

Flight details

**$638.54** Total cost FREE Cancel Select

Select this departure — **Leave** Mon, Nov 3
**12:55 PM** Seattle SEA — **8:50 PM** Wichita Falls SPS — **1 stop** 5hr 55min — **American Airlines** 7114 / 3773 Seat map

Flight 7114 Operated by Alaska Airlines
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107 **American Airlines** 1207 Seat map

Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$6.39**

---

**Act Fast!** Only 1 ticket left at this price!

Flight details

**$677.05** Total cost FREE Cancel Select

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 / 3294 Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **2:15 PM** Seattle SEA — **1 stop** 6hr 25min — **American Airlines** 2879 / 2248 Seat map

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$6.77**

---

**Act Fast!** Only 1 ticket left at this price!

Flight details

**$684.04** Total cost FREE Cancel

Select this departure — **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 / 3294 Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE



Select

Select this return | **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **2:15 PM** Seattle SEA — **1 stop** 6hr 25min — **US Airways** 3593 **American Airlines** 2248 — Seat map

Change of airlines.

Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$6.84**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$725.89**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **American Airlines** 2252 **US Airways** 8113 — Seat map

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **2:15 PM** Seattle SEA — **1 stop** 6hr 25min — **American Airlines** 2879 / 2248 — Seat map

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$7.26**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$762.89**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **US Airways** 2252 / 8113 — Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **2:15 PM** Seattle SEA — **1 stop** 6hr 25min — **US Airways** 3593 **American Airlines** 2248 — Seat map

Change of airlines.

Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$7.63**

---

**Act Fast!** Only 5 tickets left at this price!

Flight details

**$765.69**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**12:55 PM** Seattle SEA — **8:50 PM** Wichita Falls SPS — **1 stop** 5hr 55min — **Alaska Airlines** 664 / 4300 — Seat map

Flight 4300 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS — **10:05 AM** Seattle SEA — **1 stop** 6hr 5min — **US Airways** 8107 **American Airlines** 1207 — Seat map

Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$7.66**

---

**Act Fast!** Only 2 tickets left at this price!

Flight details

**$849.05**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA — **4:45 PM** Wichita Falls SPS — **1 stop** 5hr 35min — **US Airways** 2252 / 8113 — Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **2:15 PM** Seattle SEA — **1 stop** 6hr 25min — **US Airways** 3593 / 2248 — Seat map

Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 2248 Operated by American Airlines

Earn **$8.49**



**Act Fast!** Only 2 tickets left at this price!

Flight details

**$857.19**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**9:10 AM** Seattle SEA | **4:45 PM** Wichita Falls SPS | **1 stop** 5hr 35min | **US Airways** 2252 / 8113 Seat map

Flight 2252 Operated by American Airlines
Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS | **2:15 PM** Seattle SEA | **1 stop** 6hr 25min | **American Airlines** 2879 / 2248 Seat map

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $8.57

**Act Fast!** Only 5 tickets left at this price!

Flight details

**$858.84**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**12:55 PM** Seattle SEA | **8:50 PM** Wichita Falls SPS | **1 stop** 5hr 55min | **Alaska Airlines** 664 / 4300 Seat map

Flight 4300 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS | **10:05 AM** Seattle SEA | **1 stop** 6hr 5min | **US Airways** 8107 / 1207 Seat map

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 1207 Operated by American Airlines

Earn $8.59

Flight details

**$859.99**
Total cost
FREE Cancel
Select

Select this departure | **Leave** Mon, Nov 3
**12:55 PM** Seattle SEA | **8:50 PM** Wichita Falls SPS | **1 stop** 5hr 55min | **Alaska Airlines** 664 / 4300 Seat map

Flight 4300 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return | **Return** Fri, Nov 28
**6:00 AM** Wichita Falls SPS | **10:05 AM** Seattle SEA | **1 stop** 6hr 5min | **American Airlines** 3288 / 1207 Seat map

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $8.60

**See 25 more result(s)**

Return to top | Change search — Showing: 25 of 500 results

*Savings based on all vacation package bookings with Flight + Hotel on www.orbitz.com in 2013, as compared to price of the same components booked separately. Savings will vary based on origin/destination, length of trip, stay dates and selected travel supplier(s). Savings not available on all packages.

Prices shown are 'from prices' and are an average per traveller including all airfare taxes and fees and any applicable service fees.

Vacation packages | Car rental | Cruises | Travel blog | Flight status | Orbitz Travel Alerts | Customer Support | Español | Labs

About Orbitz | Contact Us | Investors | Careers | Media | Site map | Advertising | Affiliates | Orbitz for Business | Orbitz for Agents | Terms and conditions | Your Privacy Rights

Orbitz Rewards | Orbitz Rewards Visa Card | Best Price Guarantee | Travel deals | Mobile | Facebook | Twitter | Pinterest

Download our free app:

Orbitz guards your privacy and security. We're certified by TRUSTe and Verisign.
© 2001 - 2014, Orbitz, LLC. All rights reserved.
CST 2063530-50; Hawaii TAR-5627; Iowa 644; **Nevada 2003-0387**; Washington 602-102-724

TRUSTe CERTIFIED PRIVACY

# EXHIBIT 4

Google Directions from
Dallas/Fort Worth International Airport ("DFW") to
the Wichita Falls Courthouse, located at
1000 Lamar Street, Wichita Falls, TX 76301

**Google**

**Drive 123 miles, 1 h 56 min**

**Directions from Dallas/Fort Worth International Airport to US District Court Clerk**



⭘ **Dallas/Fort Worth International Airport**    ⚠ This route has tolls.

3200 E Airfield Dr, DFW Airport, TX 75261

Take **Rte 114 W/State 114 W/State Rte 114 W/TX-114 W** and **US-287 N** to **10th St** in Wichita Falls

————————————————— 123 mi / 1 h 54 min

⬆    1.  Head **north** on International Pkwy
         ⚠ Partial toll road
—————————————————————— 4.5 mi

↱    2.  Take the exit onto **Hwy 114 W**
—————————————————————— 2.5 mi

↱    3.  Keep **right** to continue on Hwy 114 W/Rte 114 W/State 114 W/State Rte 114 W/TX-114 W
—————————————————————— 14.4 mi

↰    4.  Slight **left** onto Rte 114 W/State 114 W/State Rte 114 W/TX-114 W
—————————————————————— 11.5 mi



**APPX273**

5. Keep **left** at the fork, follow signs for US-81 N/US-287 N/TX-114 W/Decatur/Bridgeport and merge onto TX-114 W/US-287 N/US-81 N

   ⓘ Continue to follow US-287 N

   _____ 83.4 mi

6. Continue onto **US-287 N/US-82 W**

   _____ 4.8 mi

7. Continue onto **US-287 N**

   _____ 1.2 mi

8. Take the exit toward **Broad St**

   _____ 0.3 mi

9. Merge onto **Broad St/Central Fwy**

   _____ 0.4 mi

## Follow **10th St** to **Lamar St**

   _____ 0.4 mi / 2 min

10. Turn **right** onto **10th St**

    _____ 0.4 mi

11. Turn **right** onto **Lamar St**

    ⓘ Destination will be on the right

    _____ 46 ft



◉ **US District Court Clerk**

1000 Lamar St, Wichita Falls, TX 76301

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

Map data ©2014 Google

**APPX274**
https://www.google.com/maps/dir/Dallas%2FFort+Worth+International+Airport,+3200+E+Airfield+Dr,+DFW+Airport,+TX+75261/US+District+Court+Clerk,+…    2/2

# EXHIBIT 5

Orbitz estimate of travel times from
Taiwan Taoyuan International Airport ("TPE") to
San Francisco International Airport ("SFO"),
sorted by quickest route.

APPX275



Hotels Flights Vacation Packages Cars Cruises Deals Activities New! Welcome Visit Florida Cred

Change search

Taipei (TPE) to San Francisco, CA (SFO) Mon, Nov 3, 2014
San Francisco, CA (SFO) to Taipei (TPE) Fri, Nov 28, 2014

Flexible Dates?
Search +/- 3 days

Don't Miss Out! Save up to **$525*** by booking your Flight and Hotel together Search now

LOWEST PRICE
$857.20

Hide Matrix

| | China Eastern Airlines | Philippine Airlines | Multiple Airlines | United Airlines | Korean Air | All Nippon Airways | Delta Air Lines | EVA Air |
|---|---|---|---|---|---|---|---|---|
| Non-stop | | | $2,843.39 | $1,157.40 | | | $1,505.40 | $1,529.4( |
| 1+ stops | $857.20 | $861.39 | $861.39 | $1,172.80 | $1,191.62 | $1,200.20 | $1,512.40 | $1,619.4( |

**Refine Results**

**Select flight times**

Outbound
Take-off: 12:15 AM - 11:45 PM
Show landing time

Inbound
Take-off: 12:00 AM - 11:15 PM
Show landing time

**Select stops**

| | |
|---|---|
| Any | |
| Non-stop | $1,157 |
| 1 stop | $857 |
| 2+ stops | $861 |

**Select price range**

Any
$857-$1,520 (88)
$1,520-$1,890 (65)
$1,890-$2,660 (71)
$2,660-$4,350 (70)
$4,350-$11,220 (69)
$11,220-$12,640 (126)

**Select airlines**

| | |
|---|---|
| Any | |
| Multiple Airlines | $861 |
| Air Canada | $1,594 |
| Air China | $2,332 |
| All Nippon Airways | $1,200 |
| Asiana Airlines | $2,244 |
| Cathay Pacific | $3,090 |
| China Airlines | $1,855 |
| China Eastern Airlines | $857 |
| Delta Air Lines | $1,505 |
| Emirates | $1,903 |

See all

**Matching Results: 489** **Sort by:** Shortest Flight

Additional baggage fees may apply.

Flight details

**$1,505.40** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3 — **11:40 PM** Taipei TPE — **6:30 PM** San Francisco SFO — **non-stop** 10hr 50min — **Delta Air Lines** 7725 Seat map
Flight 7725 Operated by China Airlines

Select this return — **Return** Fri, Nov 28 — **12:05 AM** San Francisco SFO — **6:00 AM** Taipei TPE — **non-stop** 13hr 55min — **Delta Air Lines** 7731 Seat map
This is an overnight flight, which will arrive one (1) day later.
Flight 7731 Operated by China Airlines

Earn $15.05

Flight details

**$1,855.40** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3 — **11:40 PM** Taipei TPE — **6:30 PM** San Francisco SFO — **non-stop** 10hr 50min — **China Airlines** 4 Seat map

Select this return — **Return** Fri, Nov 28 — **12:05 AM** San Francisco SFO — **6:00 AM** Taipei TPE — **non-stop** 13hr 55min — **China Airlines** 3 Seat map
This is an overnight flight, which will arrive one (1) day later.

Site Feedback

Earn $18.55

Flight details

**$1,157.40** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3 — **11:40 AM** Taipei TPE — **6:50 AM** San Francisco SFO — **non-stop** 11hr 10min — **United Airlines** 872 Seat map

Select this return — **Return** Fri, Nov 28 — **12:55 PM** San Francisco SFO — **6:35 PM** Taipei TPE — **non-stop** 13hr 40min — **United Airlines** 871 Seat map
This is an overnight flight, which will arrive one (1) day later.

Earn $11.57

Flight details

**$1,529.40** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3 — **11:30 PM** Taipei TPE — **6:30 PM** San Francisco SFO — **non-stop** 11hr 0min — **EVA Air** 28

Select this return — **Return** Fri, Nov 28 — **12:15 AM** San Francisco SFO — **6:15 AM** Taipei TPE — **non-stop** 14hr 0min — **EVA Air** 17
This is an overnight flight, which will arrive one (1) day later.

Earn $15.29

Flight details

**$1,536.40** **Leave** Mon, Nov 3

Orbitz.com Flight Search Results

| | | | | | | |
|---|---|---|---|---|---|---|
| Total cost FREE Cancel | Select this departure | 7:50 PM Taipei TPE | 2:50 PM San Francisco SFO | non-stop 11hr 0min | | EVA Air 18 |
| **Select** | | | | | | |
| | Select this return | **Return** Fri, Nov 28 12:15 AM San Francisco SFO | 6:15 AM Taipei TPE | non-stop 14hr 0min | | EVA Air 17 |
| | | This is an overnight flight, which will arrive one (1) day later. | | | | |

Earn **$15.36**

---

**Flight details**

| | | | | | | |
|---|---|---|---|---|---|---|
| **$1,562**.40 Total cost FREE Cancel | Select this departure | **Leave** Mon, Nov 3 11:30 PM Taipei TPE | 6:30 PM San Francisco SFO | non-stop 11hr 0min | | EVA Air 28 |
| **Select** | | | | | | |
| | Select this return | **Return** Fri, Nov 28 12:40 AM San Francisco SFO | 6:40 AM Taipei TPE | non-stop 14hr 0min | | EVA Air 7 |
| | | This is an overnight flight, which will arrive one (1) day later. | | | | |

Earn **$15.62**

---

**Flight details**

| | | | | | | |
|---|---|---|---|---|---|---|
| **$1,569**.40 Total cost FREE Cancel | Select this departure | **Leave** Mon, Nov 3 7:50 PM Taipei TPE | 2:50 PM San Francisco SFO | non-stop 11hr 0min | | EVA Air 18 |
| **Select** | | | | | | |
| | Select this return | **Return** Fri, Nov 28 12:40 AM San Francisco SFO | 6:40 AM Taipei TPE | non-stop 14hr 0min | | EVA Air 7 |
| | | This is an overnight flight, which will arrive one (1) day later. | | | | |

Earn **$15.69**

---

**Flight details**

| | | | | | | |
|---|---|---|---|---|---|---|
| **$2,843**.39 Total cost FREE Cancel | Select this departure | **Leave** Mon, Nov 3 11:40 AM Taipei TPE | 6:50 AM San Francisco SFO | non-stop 11hr 10min | | United Airlines 872 Seat map |
| **Select** | | | | | | |
| | Select this return | **Return** Fri, Nov 28 12:05 AM San Francisco SFO | 6:00 AM Taipei TPE | non-stop 13hr 55min | | Delta Air Lines 7731 Seat map |
| | | This is an overnight flight, which will arrive one (1) day later. | | | | |
| | | Flight 7731 Operated by China Airlines | | | | |

Earn **$28.43**

---

**Flight details**

| | | | | | | |
|---|---|---|---|---|---|---|
| **$1,529**.40 Total cost FREE Cancel | Select this departure | **Leave** Mon, Nov 3 11:30 PM Taipei TPE | 6:30 PM San Francisco SFO | non-stop 11hr 0min | | EVA Air 28 |
| **Select** | | | | | | |
| | Select this return | **Return** Fri, Nov 28 4:20 PM San Francisco SFO | 10:30 PM Taipei TPE | non-stop 14hr 10min | | EVA Air 27 |
| | | This is an overnight flight, which will arrive one (1) day later. | | | | |

Earn **$15.29**

---

**Flight details**

| | | | | | | |
|---|---|---|---|---|---|---|
| **$1,536**.40 Total cost FREE Cancel | Select this departure | **Leave** Mon, Nov 3 7:50 PM Taipei TPE | 2:50 PM San Francisco SFO | non-stop 11hr 0min | | EVA Air 18 |
| **Select** | | | | | | |
| | Select this return | **Return** Fri, Nov 28 4:20 PM San Francisco SFO | 10:30 PM Taipei TPE | non-stop 14hr 10min | | EVA Air 27 |
| | | This is an overnight flight, which will arrive one (1) day later. | | | | |

Earn **$15.36**

---

**Flight details**

| | | | | | | |
|---|---|---|---|---|---|---|
| **$1,619**.40 Total cost | Select this departure | **Leave** Mon, Nov 3 11:30 PM Taipei TPE | 6:30 PM San Francisco SFO | non-stop 11hr 0min | | EVA Air 28 |

APPX277



FREE Cancel

Select

| | | | | | |
|---|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28<br>**8:55 PM**<br>San Francisco SFO | **5:50 AM**<br>Taipei TPE | **1 stop**<br>16hr 55min | **Alaska Airlines** 223<br>**EVA Air** 25<br>Seat map |

This flight arrives two (2) days later.
Change of airlines.

Earn **$16.19**

---

Flight details

**$1,619.40**
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>**7:50 PM**<br>Taipei TPE | **2:50 PM**<br>San Francisco SFO | **non-stop**<br>11hr 0min | **EVA Air** 18 |
| Select this return | **Return** Fri, Nov 28<br>**8:55 PM**<br>San Francisco SFO | **5:50 AM**<br>Taipei TPE | **1 stop**<br>16hr 55min | **Alaska Airlines** 223<br>**EVA Air** 25<br>Seat map |

This flight arrives two (2) days later.
Change of airlines.

Earn **$16.19**

---

Flight details

**$1,512.40**
Total cost
FREE Cancel
Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>**11:40 PM**<br>Taipei TPE | **6:30 PM**<br>San Francisco SFO | **non-stop**<br>10hr 50min | **Delta Air Lines** 7725<br>Seat map |

Flight 7725 Operated by China Airlines

| | | | | |
|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28<br>**8:00 PM**<br>San Francisco SFO | **5:50 AM**<br>Taipei TPE | **1 stop**<br>17hr 50min | **Delta Air Lines** 6449 / 7730<br>Seat map |

This flight arrives two (2) days later.

Flight 6449 Operated by COMPASS AIRLINE-DL CONNECTION-DL SHUTTLE
Flight 7730 Operated by China Airlines

Earn **$15.12**

---

Flight details

**$1,862.40**
Total cost
FREE Cancel
Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>**11:40 PM**<br>Taipei TPE | **6:30 PM**<br>San Francisco SFO | **non-stop**<br>10hr 50min | **China Airlines** 4<br>Seat map |
| Select this return | **Return** Fri, Nov 28<br>**8:00 PM**<br>San Francisco SFO | **5:50 AM**<br>Taipei TPE | **1 stop**<br>17hr 50min | **Delta Air Lines** 6449<br>**China Airlines** 7<br>Seat map |

This flight arrives two (2) days later.
Change of airlines.

Flight 6449 Operated by COMPASS AIRLINE-DL CONNECTION-DL SHUTTLE

Earn **$18.62**

---

Flight details

**$1,317.29**
Total cost
FREE Cancel
Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>**9:00 AM**<br>Taipei TPE | **8:15 AM**<br>San Francisco SFO | **1 stop**<br>15hr 15min | **China Southern Airlines** 4803<br>**United Airlines** 858<br>Seat map |

Change of airlines.

Flight 4803 Operated by China Airlines

| | | | | |
|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28<br>**12:55 PM**<br>San Francisco SFO | **6:35 PM**<br>Taipei TPE | **non-stop**<br>13hr 40min | **United Airlines** 871<br>Seat map |

This is an overnight flight, which will arrive one (1) day later.

Earn **$13.17**

---

Flight details

**$1,384.79**
Total cost
FREE Cancel
Select

| | | | | |
|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3<br>**11:40 AM**<br>Taipei TPE | **6:50 AM**<br>San Francisco SFO | **non-stop**<br>11hr 10min | **United Airlines** 872<br>Seat map |
| Select this return | **Return** Fri, Nov 28<br>**11:10 AM**<br>San Francisco SFO | **9:00 PM**<br>Taipei TPE | **1 stop**<br>17hr 50min | **All Nippon Airways** 7 / 1083<br>Seat map |



Air & rail round trip Search results

This is an overnight flight, which will arrive one (1) later.

Earn $13.85

---

**Act Fast!** Only 4 tickets left at this price!                                    ⊞ Flight details

**$1,471.80**
Total cost
FREE Cancel

[ Select ]

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | 11:40 AM Taipei TPE | 6:50 AM San Francisco SFO | non-stop 11hr 10min | United Airlines 872 Seat map |
| Select this return | **Return** Fri, Nov 28 | 11:10 AM San Francisco SFO | 9:00 PM Taipei TPE | 1 stop 17hr 50min | United Airlines 9689 / 9683 Seat map |

This is an overnight flight, which will arrive one (1) day later.

Flight 9689 / 9683 Operated by All Nippon Airways

Earn $14.72

---

**Act Fast!** Only 4 tickets left at this price!                                    ⊞ Flight details

**$1,481.79**
Total cost
FREE Cancel

[ Select ]

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | 11:40 AM Taipei TPE | 6:50 AM San Francisco SFO | non-stop 11hr 10min | United Airlines 872 Seat map |
| Select this return | **Return** Fri, Nov 28 | 11:10 AM San Francisco SFO | 9:00 PM Taipei TPE | 1 stop 17hr 50min | United Airlines 9689 All Nippon Airways 1083 Seat map |

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 9689 Operated by All Nippon Airways

Earn $14.82

---

⊞ Flight details

**$1,512.40**
Total cost
FREE Cancel

[ Select ]

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | 11:40 PM Taipei TPE | 6:30 PM San Francisco SFO | non-stop 10hr 50min | Delta Air Lines 7725 Seat map |
| | | | Flight 7725 Operated by China Airlines | | |
| Select this return | **Return** Fri, Nov 28 | 11:00 AM San Francisco SFO | 9:10 PM Taipei TPE | 1 stop 18hr 10min | Delta Air Lines 6431 / 7734 Seat map |

This is an overnight flight, which will arrive one (1) day later.

Flight 6431 Operated by COMPASS AIRLINE CONNECTION-DL CONNECTION-DL SHUTTLE
Flight 7734 Operated by China Airlines

Earn $15.12

---

⊞ Flight details

**$2,850.39**
Total cost
FREE Cancel

[ Select ]

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | 11:40 AM Taipei TPE | 6:50 AM San Francisco SFO | non-stop 11hr 10min | United Airlines 872 Seat map |
| Select this return | **Return** Fri, Nov 28 | 8:00 PM San Francisco SFO | 5:50 AM Taipei TPE | 1 stop 17hr 50min | Delta Air Lines 6449 / 7730 Seat map |

This flight arrives two (2) days later.

Flight 6449 Operated by COMPASS AIRLINE CONNECTION-DL CONNECTION-DL SHUTTLE
Flight 7730 Operated by China Airlines

Earn $28.50

---

⊞ Flight details

**$1,590.59**
Total cost
FREE Cancel

[ Select ]

| | | | | | |
|---|---|---|---|---|---|
| Select this flight | **Leave** Mon, Nov 3 | 4:50 PM Taipei TSA | 4:15 PM San Francisco SFO | 1 stop 15hr 25min | All Nippon Airways 1188 United Airlines 876 Seat map |
| | Change of airlines. | | | | |
| Select this flight | **Return** Fri, Nov 28 | 12:55 PM San Francisco SFO | 6:35 PM Taipei TPE | non-stop 13hr 40min | United Airlines 871 Seat map |

This is an overnight flight, which will arrive one (1) day later.

**APPX279**



This trip starts and ends at different airports.

Earn $15.91

---

Flight details

**$1,619.40** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**11:30 PM** Taipei TPE — **6:30 PM** San Francisco SFO — **non-stop** 11hr 0min — **EVA Air** 28

Select this return — **Return** Fri, Nov 28
**12:30 PM** San Francisco SFO — **10:35 PM** Taipei TPE — **1 stop** 18hr 5min — **United Airlines** 342, **EVA Air** 11
Seat map

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Earn $16.19

---

Flight details

**$1,512.40** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**5:10 PM** Taipei TPE — **4:21 PM** San Francisco SFO — **1 stop** 15hr 11min — **Delta Air Lines** 7732 / 6438
Seat map

Flight 7732 Operated by China Airlines
Flight 6438 Operated by COMPASS AIRLINE-DL CONNECTION-DL SHUTTLE

Select this return — **Return** Fri, Nov 28
**12:05 AM** San Francisco SFO — **6:00 AM** Taipei TPE — **non-stop** 13hr 55min — **Delta Air Lines** 7731
Seat map

This is an overnight flight, which will arrive one (1) day later.

Flight 7731 Operated by China Airlines

Earn $15.12

---

**Act Fast!** Only 4 tickets left at this price!

Flight details

**$1,172.80** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**11:40 AM** Taipei TPE — **6:50 AM** San Francisco SFO — **non-stop** 11hr 10min — **United Airlines** 872
Seat map

Select this return — **Return** Fri, Nov 28
**11:00 AM** San Francisco SFO — **9:00 PM** Taipei TPE — **1 stop** 18hr 0min — **United Airlines** 837 / 9683
Seat map

This is an overnight flight, which will arrive one (1) day later.

Flight 9683 Operated by All Nippon Airways

Earn $11.73

---

Flight details

**$1,182.79** Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**11:40 AM** Taipei TPE — **6:50 AM** San Francisco SFO — **non-stop** 11hr 10min — **United Airlines** 872
Seat map

Select this return — **Return** Fri, Nov 28
**11:00 AM** San Francisco SFO — **9:00 PM** Taipei TPE — **1 stop** 18hr 0min — **United Airlines** 837, **All Nippon Airways** 1083
Seat map

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Earn $11.83

---

**See 25 more result(s)**

Return to top | Change search — Showing: 25 of 489 results

*Savings based on all vacation package bookings with Flight + Hotel on www.orbitz.com in 2013, as compared to price of the same components booked separately. Savings will vary based on origin/destination, length of trip, stay dates and selected travel supplier(s). Savings not available on all packages.

Prices shown are 'from prices' and are an average per traveller including all airfare taxes and fees and any applicable service fees.

Vacation packages | Car rental | Cruises | Travel blog | Flight status | Orbitz Travel Alerts | Customer Support | Español | Labs

About Orbitz | Contact Us | Investors | Careers | Media | Site map | Advertising | Affiliates | Orbitz for Business | Orbitz for Agents | Terms and conditions | Your Privacy Rights

Orbitz Rewards | Orbitz Rewards Visa Card | Best Price Guarantee | Travel deals | Mobile | Facebook | Twitter | Pinterest

Download our free app:

    Orbitz guards your privacy and security. We're certified by TRUSTe and Verisign.
© 2001 - 2014, Orbitz, LLC. All rights reserved.
CST 2063530-50; Hawaii TAR-5627; Iowa 644; **Nevada 2003-0387**; Washington 602-102-724



**APPX281**

# EXHIBIT 6

Orbitz estimate of travel times from
Taiwan Taoyuan International Airport ("TPE") to
Wichita Falls Municipal Airport ("SPS"),
sorted by quickest route.

APPX282



New!

Hotels    Flights    Vacation Packages    Cars    Cruises    Deals    Activities                Welcome        Visit Florida    Cred

Change search

Taipei (TPE) to Wichita Falls, TX (SPS)        Mon, Nov 3, 2014                    Flexible Dates?
Wichita Falls, TX (SPS) to Taipei (TPE)         Fri, Nov 28, 2014                   Search +/- 3 days

Don't Miss Out! Save up to $525* by booking your Flight and Hotel together    Search now

| | | Multiple Airlines | American Airlines | US Airways | Japan Airlines | United Airlines | Cathay Pacific |
|---|---|---|---|---|---|---|---|
| LOWEST PRICE $1,314.00 | Hide Matrix | | | | | | |
| | 2+ stops | $1,314.00 | $1,314.00 | $1,598.79 | $1,757.00 | $3,664.39 | $4,798.59 |

### Refine Results

**Select flight times**

Outbound
Take-off: Mon 7:15 AM - Tue 12:00 AM

Show landing time

Inbound
Take-off: 6:00 AM - 5:15 PM

Show landing time

**Select stops**

Any
2+ stops                    $1,314

**Select price range**

Any
$1,314-$1,470 (56)
$1,470-$1,550 (17)
$1,550-$1,680 (46)
$1,680-$1,750 (30)
$1,750-$2,230 (30)
$2,230-$5,050 (71)

**Select airlines**

Any
Multiple Airlines    $1,314
American Airlines    $1,314
Cathay Pacific       $4,798
Japan Airlines       $1,757
United Airlines      $3,664
US Airways           $1,598

**Matching Results: 250**                    Sort by: Shortest Flight

Additional baggage fees may apply.

Act Fast! Only 4 tickets left at this price!

                                                                                    Flight details

**$2,619.79**  Total cost    Select this departure    Leave Mon, Nov 3    11:40 AM    4:45 PM    2 stops    United Airlines 872
FREE Cancel                                            Taipei TPE    Wichita Falls SPS    19hr 5min    American Airlines 1658
                                                                                                         US Airways 8113
Select                  Change of airlines.                                                              Seat map

                        Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

                        Select this return    Return Fri, Nov 28    9:50 AM    9:40 PM    2 stops    American Airlines
                                                                   Wichita Falls SPS    Taipei TPE    21hr 50min    2879 / 61 / 8458
                                                                                                                    Seat map

                        This is an overnight flight, which will arrive one (1) day later.

                        Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
                        Flight 8458 Operated by Japan Airlines

Earn $26.20

                                                                                    Flight details

**$2,753.79**  Total cost    Select this departure    Leave Mon, Nov 3    [ ]    4:45 PM    2 stops    United Airlines 872
FREE Cancel                                            Tai█    Wichita Falls SPS    19hr 5min    American Airlines 1658 / 3294
                                                       Site Feedback
Select                  Change of airlines.                                                              Seat map

                        Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

                        Select this return    Return Fri, Nov 28    9:50 AM    9:40 PM    2 stops    American Airlines
                                                                   Wichita Falls SPS    Taipei TPE    21hr 50min    2879 / 61 / 8458
                                                                                                                    Seat map

                        This is an overnight flight, which will arrive one (1) day later.

                        Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
                        Flight 8458 Operated by Japan Airlines

Earn $27.54

Act Fast! Only 4 tickets left at this price!

                                                                                    Flight details

**$3,664.39**  Total cost    Select this departure    Leave Mon, Nov 3    11:40 AM    4:45 PM    2 stops    United Airlines 872
FREE Cancel                                            Taipei TPE    Wichita Falls SPS    19hr 5min    American Airlines 1658
                                                                                                         US Airways 8113
Select                  Change of airlines.                                                              Seat map

                        Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

                        Select this return    Return Fri, Nov 28    6:00 AM    6:35 PM    2 stops    US Airways 8107
                                                                   Wichita Falls SPS    Taipei TPE    22hr 35min    American Airlines 1521
                                                                                                                    United Airlines 871
                                                                                                                    Seat map

                        This is an overnight flight, which will arrive one (1) day later.
                        Change of airlines.

                        Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $36.64

**Act Fast!** Only 4 tickets left at this price!

Flight details

$3,664.39
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | | | | |
| | **11:40 AM** Taipei TPE | **4:45 PM** Wichita Falls SPS | **2 stops** 19hr 5min | | **United Airlines** 872 **American Airlines** 1658 **US Airways** 8113 Seat map |

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

| | | | | | |
|---|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28 | | | | |
| | **6:00 AM** Wichita Falls SPS | **6:35 PM** Taipei TPE | **2 stops** 22hr 35min | | **US Airways** 8107 **American Airlines** 132 **United Airlines** 871 Seat map |

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $36.64

**Act Fast!** Only 4 tickets left at this price!

Flight details

$3,788.39
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | | | | |
| | **11:40 AM** Taipei TPE | **4:45 PM** Wichita Falls SPS | **2 stops** 19hr 5min | | **United Airlines** 872 **American Airlines** 1658 **US Airways** 8113 Seat map |

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

| | | | | | |
|---|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28 | | | | |
| | **6:00 AM** Wichita Falls SPS | **6:35 PM** Taipei TPE | **2 stops** 22hr 35min | | **American Airlines** 3288 / 132 **United Airlines** 871 Seat map |

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $37.88

**Act Fast!** Only 4 tickets left at this price!

Flight details

$3,788.39
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | | | | |
| | **11:40 AM** Taipei TPE | **4:45 PM** Wichita Falls SPS | **2 stops** 19hr 5min | | **United Airlines** 872 **American Airlines** 1658 **US Airways** 8113 Seat map |

Change of airlines.

Flight 8113 Operated by ENVOY AIR AS AMERICAN EAGLE

| | | | | | |
|---|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28 | | | | |
| | **6:00 AM** Wichita Falls SPS | **6:35 PM** Taipei TPE | **2 stops** 22hr 35min | | **American Airlines** 3288 / 1521 **United Airlines** 871 Seat map |

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $37.88

Flight details

$3,798.39
Total cost
FREE Cancel
Select

| | | | | | |
|---|---|---|---|---|---|
| Select this departure | **Leave** Mon, Nov 3 | | | | |
| | **11:40 AM** Taipei TPE | **4:45 PM** Wichita Falls SPS | **2 stops** 19hr 5min | | **United Airlines** 872 **American Airlines** 1658 / 3294 Seat map |

Change of airlines.

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

| | | | | | |
|---|---|---|---|---|---|
| Select this return | **Return** Fri, Nov 28 | | | | |
| | **6:00 AM** Wichita Falls SPS | **6:35 PM** Taipei TPE | **2 stops** 22hr 35min | | **US Airways** 8107 **American Airlines** 132 **United Airlines** 871 Seat map |

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

 Earn **$37.98**

---

+ Flight details

**$3,798**.39
Total cost
FREE Cancel

Select

**Leave** Mon, Nov 3
11:40 AM        4:45 PM        2 stops        United Airlines 872
Taipei TPE       Wichita Falls SPS    19hr 5min      American Airlines
                                                     1658 / 3294
Change of airlines.                                  Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return    **Return** Fri, Nov 28
6:00 AM        6:35 PM        2 stops        US Airways 8107
Wichita Falls SPS    Taipei TPE      22hr 35min     American Airlines
                                                    1521
                                                    United Airlines 871
                                                    Seat map
This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 8107 Operated by ENVOY AIR AS AMERICAN EAGLE

 Earn **$37.98**

---

+ Flight details

**$3,922**.39
Total cost
FREE Cancel

Select

Select this departure    **Leave** Mon, Nov 3
11:40 AM        4:45 PM        2 stops        United Airlines 872
Taipei TPE       Wichita Falls SPS    19hr 5min      American Airlines
                                                     1658 / 3294
Change of airlines.                                  Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return    **Return** Fri, Nov 28
6:00 AM        6:35 PM        2 stops        American Airlines
Wichita Falls SPS    Taipei TPE      22hr 35min     3288 / 132
                                                    United Airlines 871
                                                    Seat map
This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

 Earn **$39.22**

---

+ Flight details

**$3,922**.39
Total cost
FREE Cancel

Select

Select this departure    **Leave** Mon, Nov 3
11:40 AM        4:45 PM        2 stops        United Airlines 872
Taipei TPE       Wichita Falls SPS    19hr 5min      American Airlines
                                                     1658 / 3294
Change of airlines.                                  Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return    **Return** Fri, Nov 28
6:00 AM        6:35 PM        2 stops        American Airlines
Wichita Falls SPS    Taipei TPE      22hr 35min     3288 / 1521
                                                    United Airlines 871
                                                    Seat map
This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 3288 Operated by ENVOY AIR AS AMERICAN EAGLE

 Earn **$39.22**

---

+ Flight details

**$2,194**.20
Total cost
FREE Cancel

Select

Select this departure    **Leave** Mon, Nov 3
9:40 AM        4:45 PM        3 stops        Delta Air Lines 276 /
Taipei TPE       Wichita Falls SPS    21hr 5min      166
                                                     American Airlines
                                                     2252 / 3294
Change of airlines.                                  Seat map

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return    **Return** Fri, Nov 28
9:50 AM        9:40 PM        2 stops        American Airlines
Wichita Falls SPS    Taipei TPE      21hr 50min     2879 / 61 / 8458
                                                    Seat map
This is an overnight flight, which will arrive one (1) day later.

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 8458 Operated by Japan Airlines

**APPX285**



Earn **$21.94**

---

Flight details

**$2,222.40**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:40 AM** Taipei TPE — **4:45 PM** Wichita Falls SPS — **3 stops** 21hr 5min — **Delta Air Lines** 276 / 166 **American Airlines** 2252 / 3294
Seat map

Change of airlines.

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **American Airlines** 2879 / 61 **Japan Airlines** 809
Seat map

This is an overnight flight, w hich w ill arrive one (1) day later.
Change of airlines.

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn **$22.22**

---

**Act Fast!** Only **4 tickets** left at this price!

Flight details

**$2,533.60**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:40 AM** Taipei TPE — **4:45 PM** Wichita Falls SPS — **3 stops** 21hr 5min — **Delta Air Lines** 276 / 166 **American Airlines** 2252 / 3294
Seat map

Change of airlines.

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **American Airlines** 2879 **Japan Airlines** 7011 / 809
Seat map

This is an overnight flight, w hich w ill arrive one (1) day later.
Change of airlines.

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 7011 Operated by American Airlines

Earn **$25.34**

---

Flight details

**$2,614.20**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:40 AM** Taipei TPE — **4:45 PM** Wichita Falls SPS — **3 stops** 21hr 5min — **Delta Air Lines** 276 / 166 **American Airlines** 2252 / 3294
Seat map

Change of airlines.

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **US Airways** 3593 **American Airlines** 61 / 8458
Seat map

This is an overnight flight, w hich w ill arrive one (1) day later.
Change of airlines.

Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 8458 Operated by Japan Airlines

Earn **$26.14**

---

Flight details

**$2,619.60**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**9:40 AM** Taipei TPE — **4:45 PM** Wichita Falls SPS — **3 stops** 21hr 5min — **Delta Air Lines** 276 / 166 **American Airlines** 2252 / 3294
Seat map

Change of airlines.

Flight 3294 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **US Airways** 3593 **Japan Airlines** 7011 / 809
Seat map

This is an overnight flight, w hich w ill arrive one (1) day later.
Change of airlines.



Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 7011 Operated by American Airlines

Earn **$26.20**

---

Flight details

**$1,846.40**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**1:20 PM** Taipei TPE — **8:50 PM** Wichita Falls SPS — **2 stops** 21hr 30min — **Japan Airlines** 804 **American Airlines** 60 / 3773
Seat map

Change of airlines.

Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **American Airlines** 2879 / 61 / 8458
Seat map

This is an overnight flight, which will arrive one (1) day later.

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 8458 Operated by Japan Airlines

Earn **$18.46**

---

Flight details

**$2,444.59**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**1:20 PM** Taipei TPE — **8:50 PM** Wichita Falls SPS — **2 stops** 21hr 30min — **Japan Airlines** 804 **US Airways** 60 **American Airlines** 3773
Seat map

Change of airlines.

Flight 60 Operated by American Airlines
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **US Airways** 3593 / 61 **Japan Airlines** 809
Seat map

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 61 Operated by American Airlines

Earn **$24.45**

---

**Act Fast!** Only **4 tickets** left at this price!

Flight details

**$2,527.00**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**1:20 PM** Taipei TPE — **8:50 PM** Wichita Falls SPS — **2 stops** 21hr 30min — **Japan Airlines** 804 / 7012 **American Airlines** 3773
Seat map

Change of airlines.

Flight 7012 Operated by American Airlines
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **American Airlines** 2879 **Japan Airlines** 7011 / 809
Seat map

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.

Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 7011 Operated by American Airlines

Earn **$25.27**

---

Flight details

**$2,614.00**
Total cost
FREE Cancel
Select

Select this departure — **Leave** Mon, Nov 3
**1:20 PM** Taipei TPE — **8:50 PM** Wichita Falls SPS — **2 stops** 21hr 30min — **Japan Airlines** 804 / 7012 **American Airlines** 3773
Seat map

Change of airlines.

Flight 7012 Operated by American Airlines
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return — **Return** Fri, Nov 28
**9:50 AM** Wichita Falls SPS — **9:40 PM** Taipei TPE — **2 stops** 21hr 50min — **US Airways** 3593 **Japan Airlines** 7011 / 809



This is an overnight flight, which will arrive one day later.
Change of airlines.
Flight 3593 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 7011 Operated by American Airlines

Earn $26.14

**Act Fast!** Only 4 tickets left at this price!    Flight details

$1,671.10
Total cost
FREE Cancel
Select

Select this departure  Leave Mon, Nov 3
12:50 PM   8:50 PM   2 stops   Cathay Pacific
Taipei TPE   Wichita Falls SPS   22hr 0min   American Airlines 60 / 3773
Seat map

Change of airlines.
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return  Return Fri, Nov 28
9:50 AM   9:40 PM   2 stops   American Airlines 2879 / 61 / 8458
Wichita Falls SPS   Taipei TPE   21hr 50min
Seat map

This is an overnight flight, which will arrive one (1) day later.
Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 8458 Operated by Japan Airlines

Earn $16.71

**Act Fast!** Only 4 tickets left at this price!    Flight details

$1,674.30
Total cost
FREE Cancel
Select

Select this departure  Leave Mon, Nov 3
12:50 PM   8:50 PM   2 stops   Cathay Pacific 450
Taipei TPE   Wichita Falls SPS   22hr 0min   American Airlines 60 / 3773
Seat map

Change of airlines.
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Select this return  Return Fri, Nov 28
9:50 AM   9:40 PM   2 stops   American Airlines 2879 / 61
Wichita Falls SPS   Taipei TPE   21hr 50min   Japan Airlines 809
Seat map

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.
Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE

Earn $16.74

**Act Fast!** Only 4 tickets left at this price!    Flight details

$1,677.50
Total cost
FREE Cancel
Select

Select this departure  Leave Mon, Nov 3
12:50 PM   8:50 PM   2 stops   Cathay Pacific 450
Taipei TPE   Wichita Falls SPS   22hr 0min   American Airlines 60 / 3773
Seat map

Change of airlines.

Select this return  Return Fri, Nov 28
9:50 AM   9:40 PM   2 stops   American Airlines 2879
Wichita Falls SPS   Taipei TPE   21hr 50min   Japan Airlines 7011 / 809
Seat map

This is an overnight flight, which will arrive one (1) day later.
Change of airlines.
Flight 2879 Operated by ENVOY AIR AS AMERICAN EAGLE
Flight 7011 Operated by American Airlines

Earn $16.78

**Act Fast!** Only 4 tickets left at this price!    Flight details

$1,758.10
Total cost
FREE Cancel
Select

Select this departure  Leave Mon, Nov 3
12:50 PM   8:50 PM   2 stops   Cathay Pacific 450
Taipei TPE   Wichita Falls SPS   22hr 0min   American Airlines 60 / 3773
Seat map

Change of airlines.
Flight 3773 Operated by ENVOY AIR AS AMERICAN EAGLE

Return Fri, Nov 28

**APPX288**



*Savings based on all vacation package bookings with Flight + Hotel on www.orbitz.com in 2013, as compared to price of the same components booked separately. Savings will vary based on origin/destination, length of trip, stay dates and selected travel supplier(s). Not available on all packages.

Prices shown n are 'from prices' and are an average per traveller including all airfare taxes and fees and any applicable service fees.

Vacation packages | Car rental | Cruises | Travel blog | Flight status | Orbitz Travel Alerts | Customer Support | Español | Labs

About Orbitz | Contact Us | Investors | Careers | Media | Site map | Advertising | Affiliates | Orbitz for Business | Orbitz for Agents | Terms and conditions | Your Privacy Rights

Orbitz Rewards | Orbitz Rewards Visa Card | Best Price Guarantee | Travel deals | Mobile | Facebook | Twitter | Pinterest

Download our free app:

ORBITZ

Orbitz guards your privacy and security. We're certified by TRUSTe and Verisign.
© 2001 - 2014, Orbitz, LLC. All rights reserved.
CST 2083530-50; Hawaii TAR-5627; Iowa & 644; Nevada 2003-0387; Washington 602-102-724

# EXHIBIT 7

Google Directions from
Dallas/Fort Worth Airport ("DFW") to
Dallas Courthouse located at
1100 Commerce Street, Dallas, TX 75242

APPX290



**Drive 20.8 miles, 24 min**

Directions from **Dallas/Fort Worth International Airport** to **1100 Commerce St**



○ **Dallas/Fort Worth International Airport**                    ⚠ This route has tolls.

3200 E Airfield Dr, DFW Airport, TX 75261

Get on **S International Pkwy**



───────────────────── 0.5 mi / 1 min

↑    1.  Head **south**

──────────────── 0.2 mi

↰    2.  Slight **left** toward **S International Pkwy**

──────────────── 0.2 mi

🚶    3.  Slight **right** to merge onto **S International Pkwy**

──────────────── 0.2 mi

Take **TX-183 E** and **I-35E S** to **Commerce St** in Dallas. Take exit **428E** from **I-35E S**

**APPX291**

https://www.google.com/maps/dir/Dallas%2FFort+Worth+International+Airport,+3200+E+Airfield+Dr,+DFW+Airport,+TX+75261/1100+Commerce+St,+Dallas...    1/2

19.6 mi / 21 min

🚶 4.  Merge onto **S International Pkwy**
⚠ Toll road

——————————————————— 2.1 mi

⬆ 5.  Continue onto **TX-97 Spur/International Pkwy**
⚠ Partial toll road

——————————————————— 1.7 mi

🔀 6.  Keep **left** at the fork, follow signs for **TX-183 E/Irving/Dallas** and merge onto **TX-183 E**

——————————————————— 11.0 mi

🚶 7.  Merge onto **I-35E S**

——————————————————— 4.7 mi

↱ 8.  Take exit **428E** for **Commerce St** E toward **Reunion Blvd**

——————————————————— 0.2 mi





🚶 Merge onto **Commerce St**

ⓘ Destination will be on the right

——————————————————— 0.6 mi / 2 min



◉ **1100 Commerce St**

Dallas, TX 75242

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

**Map data ©2014 Google**

# EXHIBIT 8

Google Directions from
Dallas/Fort Worth Airport ("DFW") to
Fort Worth Courthouse, located at
501 West 10th Street, Fort Worth, TX 76102.



**Drive 24.6 miles, 29 min**

Directions from **Dallas/Fort Worth International Airport** to **501 W 10th St**



○ **Dallas/Fort Worth International Airport**

3200 E Airfield Dr, DFW Airport, TX 75261

⚠ This route has tolls.

Get on **S International Pkwy**

0.5 mi / 1 min



↑   1.   Head **south**

0.2 mi

↰   2.   Slight **left** toward **S International Pkwy**

0.2 mi

↗   3.   Slight **right** to merge onto **S International Pkwy**

0.2 mi

Take **TX-183 W** and **TX-121 S** to **E 6th St** in Fort Worth

**APPX294**

**– A539 –**



23.5 mi / 26 min

- ↟ 4. Merge onto **S International Pkwy**
  ⚠ Toll road

  2.1 mi

- ↑ 5. Continue onto **TX-97 Spur/International Pkwy**
  ⚠ Partial toll road

  1.7 mi

- ↱ 6. Keep **right** at the fork, follow signs for **TX-183 W/Ft Worth** and merge onto **TX-183 W**

  10.4 mi

- ↑ 7. Continue onto **I-820 S**

  1.0 mi

- ↰ 8. Keep **left** to continue on **TX-121 S**, follow signs for **Texas 121 S/Downtown Ft Worth**

  7.1 mi

- ↰ 9. Take the exit on the **left** onto **I-35W S/US-287 S/US-377 S** toward **Waco**

  0.7 mi

- ↱ 10. Take exit **52A** for **Texas 280 Spur** toward **Downtown**

  0.2 mi

- ↟ 11. Merge onto **TX-280 Spur**

  0.4 mi

## Continue on E 6th St. Drive to W 10th St

0.6 mi / 2 min

- ↑ 12. Continue onto **E 6th St**

  0.4 mi

- ↰ 13. Turn **left** onto **Lamar St**

  0.1 mi

- ↱ 14. Turn **right** onto **W 10th St**
  ℹ Destination will be on the left

  148 ft



◉ **501 W 10th St**
Fort Worth, TX 76102

APPX295

https://www.google.com/maps/dir/Dallas%2FFort+Worth+International+Airport,+3200+E+Airfield+Dr,+DFW+Airport,+TX+75261/501+W+10th+St,+Fort+Wort...    2/3

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

**Map data ©2014 Google**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

|  |  |  |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CASE NO. 7:14-cv-00014 |
| | § | |
| **HTC CORPORATION,** *et al.* | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

**DECLARATION OF CECILIA SON (LG DEFENDANTS)
IN SUPPORT OF MOTION TO TRANSFER**

I, Cecilia Son, make the following declaration based on my personal knowledge and investigation, or on information received from someone with knowledge. If called as a witness, I could and would testify competently to the following facts:

1.      I am currently employed as Director in the Partner Engineering team at LG Electronics Mobile Research U.S.A., LLC ("LGEMR"), which is a wholly-owned subsidiary of LG Electronics Mobilecomm U.S.A., Inc. ("LGEMU" or "LGE MobileComm").

2.      I understand that Summit 6 LLC ("Plaintiff") has brought a patent infringement action against LGEMU, LG Electronics, Inc. ("LGEKR" or "LGE Inc."), and LG Electronics U.S.A., Inc. ("LGEUS" or "LGE USA") (collectively "LGE").

3.      LGEMU is a California corporation and a wholly-owned subsidiary of LGEUS. Both LGEMR and LGEMU have a principal place of business at 10255 Willow Creek Road, San Diego, CA 92131. My office is located at 2540 North First St., Suite #300, San Jose, CA 95131 (the "San Jose Office"). The San Jose Office is leased by LGEMU and staffed with LGEMU

and LGEMR employees.

4.      LGEKR is a South Korean company headquartered in Seoul, South Korea. LGEUS is a wholly-owned subsidiary of LGEKR.

5.      LGEKR manufactures LG-branded mobile products sold in the United States. The LG-branded mobile products manufactured by LGEKR are imported into the United States by LGEMU, and sold by LGEMU to national carriers and retailers, who then sell the LG-branded mobile products to end users nationwide, including in the Northern and Southern Districts of California.

6.      LGEMU is the only LGE entity that imports, conducts testing (through LGEMR), markets, and sells LG-branded mobile products in the United States, including throughout the State of California.

7.      I understand that Plaintiff has accused LG-branded mobile products running the Android Operating System ("OS"). The Android OS is an open-source operating system for communication devices that was developed and is provided by Google Inc. ("Google").

8.      During the manufacturing process, LGEKR obtains the Android OS from the Android Open Source Project ("AOSP"), which is led by Google. Google also provides certain Android OS applications, such as Google Play Music, YouTube, and Google Maps. Google develops, maintains, and supports these Android OS applications.

9.      As noted earlier, I am a Director in the Partner Engineering team in the San Jose Office. The Partner Engineering team was called "Strategic Google Alliance" until early 2013. Other members of my team also located in the San Jose Office include Steven Howard, Bum Suk Bae, Joonhyun Baek, Jae Wook Cho, Dong Ho Han, Jeong Rae Kim, Kush Shrivastava, and Namrata Suryavanshi.

APPX298

10.     One of the key functions that my team manages out of the San Jose Office is Android OS certification for LG-branded mobile products running Android OS. Android OS certification is a process by which Google and LGEMR ensure that the LG-branded Android Products manufactured by LGEKR and imported and sold by LGEMU adhere to Google's Android OS compatibility requirements.

11.     As of March 1, 2014, the San Jose Office employed 57 employees, comprised of one LGEMU sales employee and 56 LGEMR employees. The office space occupied by these employees is approximately 25,000 square feet, and is leased by LGEMU. Employees in the San Jose Office, including the individuals in my team, have communicated and interacted with Google personnel (such as Mr. Jongyeong Lee and Mr. Joseph Hwang) in connection with LG-branded Android products. Both Mr. Lee and Mr. Hwang are located at Google's headquarters in Mountain View, CA.

12.     Documents and records relating to LG-branded Android Products and Android OS certification, which includes information relating to technical functionality, are either physically present or electronically accessible at the San Jose Office.

13.     The Twitter application is provided by Twitter, Inc. ("Twitter"). My team also interacts with Twitter. Our team communicates with Twitter employees about operation of its Twitter application and/or service on LG-branded mobile products. The Twitter employees my team interacts with are located in San Francisco.

14.     Documents and records relating to my team's interaction with Twitter are either physically present or electronically accessible at the San Jose Office.

15.     As of March 1, 2014, LGEMU has approximately 39 employees in the San Diego Office and LGEMR has approximately 73 employees in the San Diego office. The San Diego

3

APPX299

Office, which is owned by LGEMU, is over 71,000 square feet. The San Diego Office oversees the product management of LG-branded mobile products sold in the United States. The San Diego Office also shares responsibility for selling and marketing LG-branded mobile products. For example, Eric Ley is located in the San Diego Office, and is a Vice President and Director of National Retail Accounts for the U.S. Mr. Ley's job responsibilities include managing sales and handling account management for LGEMU's national retailers, such as Best Buy, Target, Walmart, Costco, and Radio Shack. Mr. Ley is also responsible for LGEMU's "Go-to-Market" business, which involves LGEMU's Android OS tablet business.

16.     Documents and records relating to LG-branded mobile products, such as importation documents, sales agreements, marketing documents, and market strategy reports, are either physically present or electronically accessible at the San Diego Office. Some of these marketing documents and market studies, for example, only exist in the San Diego Office and nowhere else.

17.     There are no LGE employees in Texas who are involved in Android OS certification.

18.     There are no documents relating to Android OS certification physically present or electronically accessible in Texas.

19.     There are also no LGE employees in Texas who are involved in communicating with Twitter or working on the Twitter application or functionality.

20.     None of LGEUS, LGEMU, or LGEMR develops software related to Twitter or Twitter's MMS-to-Twitter service.

21.     LGEUS does not design, develop, manufacture, import, or sell the accused LG-branded mobile products.

4

APPX300

22.    LGEUS has a warehouse facility in Fort Worth, Texas.  However, and consistent with the above statements, that facility relates to non-mobile products sold by LGEUS.

23.    LGEUS sells non-mobile products throughout the United States, including throughout California. These products include televisions, Blu-ray players, home theater systems, washers and dryers, refrigerators, and dishwashers.

I declare under penalty of perjury the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed at _San Jose_____, California this _6_ day of June, 2014.


_Cecilia Son_____

Cecilia Son

APPX301

– A546 –

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Case No. 7:14-cv-00014-O |
| | § | |
| HTC CORPORATION, HTC | § | |
| AMERICA, INC., LG ELECTRONICS, | § | |
| INC., LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | |
| USA, INC.,  MOTOROLA MOBILITY | § | |
| LLC, APPLE INC., and TWITTER, | § | |
| INC., | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT APPLE INC.'S MOTION TO SEVER**

IRI-64053v1

1

Defendant Apple Inc. ("Apple") hereby files this Motion to Sever.  For the reasons given in Apple's Memorandum in Support of a Motion to Sever, Apple respectfully requests pursuant to 35 U.S.C. § 299 and Fed. R. Civ. P. 21 that the Court severs Summit 6 LLC's claims against Apple from Summit 6 LLC's claims against the other defendants and transfer the severed action against Apple to the Northern District of California.

Dated:  June 25, 2014                                Respectfully submitted,

                                                     JONES DAY


                                                     */s/ Hilda C. Galvan*
                                                     Hilda C. Galvan
                                                     State Bar No. 00787512
                                                     hcgalvan@jonesday.com
                                                     JONES DAY
                                                     2727 North Harwood Street
                                                     Dallas, TX 75201-1515
                                                     Telephone:  (214) 220-3939
                                                     Facsimile:  (214) 969-5100

                                                     William C. Rooklidge *(pro hac vice)*
                                                     wrooklidge@jonesday.com
                                                     Mark A. Finkelstein *(pro hac vice)*
                                                     mafinkelstein@jonesday.com
                                                     Frank P. Cote *(pro hac vice)*
                                                     fcote@jonesday.com
                                                     Michelle Stover *(pro hac vice)*
                                                     mstover@jonesday.com
                                                     Douglas L. Clark *(pro hac vice)*
                                                     dlclark@jonesday.com
                                                     JONES DAY
                                                     3161 Michelson Drive, Suite 800
                                                     Irvine, CA 92612-4408
                                                     Telephone:  (949) 851-3939
                                                     Facsimile:  (949) 553-7539

                                                     ***Attorneys for Defendant* APPLE INC.**

**– A548 –**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this DEFENDANT APPLE INC.'S MOTION TO SEVER via the Court's CM/ECF system per Local Rule 5.1(d) this 25th day of June, 2014.

 */s/ Hilda C. Galvan*
Hilda C. Galvan

## CERTIFICATE OF CONFERENCE

The undersigned hereby certify that the parties have complied with Local Rule 7.1 (a) and (b).  On June 25, 2014, a telephone conference was held between Hilda C. Galvan, representing Apple Inc. and Ashley Moore, representing Summit 6, LLC regarding Apple's Motion to Sever.  Summit 6 opposed this motion.  Agreement could not be reached because the parties did not agree on whether severance and transfer was proper.

 */s/ Hilda C. Galvan*
Hilda C. Galvan

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 7:14-cv-00014-O** |
| | § | |
| **HTC CORPORATION, HTC** | § | |
| **AMERICA, INC., LG ELECTRONICS,** | § | |
| **INC., LG ELECTRONICS USA, INC.,** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | |
| **USA, INC.,  MOTOROLA MOBILITY** | § | |
| **LLC, APPLE INC., and TWITTER,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## [PROPOSED] ORDER GRANTING
## DEFENDANT APPLE INC.'S MOTION TO SEVER

Having considered the papers submitted by counsel, the applicable law, the relevant pleadings and papers on file in this action, and the arguments of counsel, the Court concludes that Defendant Apple Inc.'s Motion to Sever should be and hereby is GRANTED.

IT IS SO ORDERED.

Dated: _____, 2014

_____
Hon. Reed O'Connor
United States District Court Judge

1

IRI-64054v1

**– A550 –**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this [PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S MOTION TO SEVER AND TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA via the Court's CM/ECF system per Local Rule 5.1(d) this 25th day of June, 2014.

 /s/ Hilda C. Galvan
Hilda C. Galvan

IRI-64054v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION** |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | **No. 7:14-cv-00014** |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER, INC., | § | |
| | § | |
| **Defendants.** | § | **JURY TRIAL DEMANDED** |
| | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
APPLE INC.'S MOTION TO SEVER**

IRI-63752v3

## TABLE OF CONTENTS

                                                                                    Page

I       INTRODUCTION…. ..................................................................................1

II      FACTUAL BACKGROUND ...................................................................2

III     THE CLAIMS AGAINST APPLE SHOULD BE SEVERED...........................2

        A.      The America Invents Act, 35 U.S.C. § 299, Imposes Stringent Joinder
                Requirements That Exceed The Requirements Of The Federal Rules. ...................2

        B.      Claims Against Apple Are Not Joinable With Claims Against The Other
                Defendants ...................................................................................4

                1.      The Accused Apple Products Are Distinct from the Accused
                        Products and Services of the Other Defendants………………………….4

                2.      The Facts Underlying Plaintiff's Infringement Claims Against
                        Apple Are Distinct from the Facts Underlying Plaintiff's
                        Infringement Claims Against the Other Defendants……………………..5

        C.      Apple's Joinder With Twitter And The Other Co-Defendants Would Be
                Highly Prejudicial And Confusing To A Jury .........................................................7

        D.      After Severance, The Case Against Apple Should Be Transferred. .......................9

IV      CONCLUSION .................................................................................9

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.,*
    501 F.3d 1307 (Fed. Cir. 2007)..................................................................................6

*Acevedo v. Allsup's Convenience Stores, Inc.,*
    600 F.3d 516 (5th Cir. 2010) .................................................................................3, 7

*In re EMC Corp.,*
    677 F.3d 1351 (Fed. Cir. 2012)........................................................................ passim

*In re Nintendo Co.,*
    2013 U.S. App. LEXIS 19606 (Fed. Cir. Sept. 25, 2013) .......................................2

*Lodsys, LLC v. Brother Int'l Corp.,*
    2013 U.S. Dist. LEXIS 513362 (E.D. Tex. Jan. 14, 2013)......................................5

*Summit 6 LLC v. Research in Motion, et al.,*
    No. 3:11-cv-367-O (N.D. Tex. Feb. 6, 2013) .....................................................1, 7

*WiAV Networks, LLC v. 3Com Corp.,*
    No. C 10-03448, 2010 WL 3895047 (N.D. Cal. Oct. 1, 2010)................................8

STATUTES

28 U.S.C. § 1404(a) .....................................................................................................9

35 U.S.C. § 299................................................................................................. passim

OTHER AUTHORITIES

Fed. R. Civ. P. 20.........................................................................................................3

Fed. R. Civ. P. 21 ..................................................................................................1, 2, 3

IRI-63752v3

## I.    INTRODUCTION

On February 18, 2014, Plaintiff Summit 6 LLC ("Summit 6") brought this patent infringement lawsuit against Apple Inc. ("Apple"), Twitter, Inc. ("Twitter"), and three other mobile device manufacturers and their affiliates, namely HTC Corporation and HTC America, Inc. (collectively, "HTC"), LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics MobileComm USA, Inc. (collectively, "LG"), and Motorola Mobility LLC ("Motorola").  By this motion, Apple respectfully moves pursuant to 35 U.S.C. § 299 and Fed. R. Civ. P. 21 to sever Summit 6's claims against Apple from Summit 6's claims against the other defendants. Further, Apple requests that, to the extent this Court does not transfer this entire action pursuant to the defendants' pending joint motion to transfer to the Northern District of California (ECF No. 90, hereinafter "Transfer Motion"), this Court transfer at least the severed action against Apple to the Northern District of California.

Summit 6's complaint violates the joinder requirements of the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 299.  Apple's devices, which use the iOS operating system, have no overlap with the devices of LG, HTC, or Motorola, which use the Android operating system.  Twitter does not manufacture mobile devices at all and was sued based on its services. Under the AIA, Summit 6 cannot reasonably argue that joinder is proper because no overlap exists between the products and services of the diverse parties.  In fact, when presented with a similar motion to sever brought by Facebook in a prior litigation involving some of the patents asserted in this case, Summit 6 did not oppose, agreeing that mobile device manufacturer Samsung should be severed from Facebook.  *Summit 6 LLC v. Research in Motion, et al.*, No. 3:11-cv-367-O, (N.D. Tex. Feb. 6, 2013), ECF No. 508.

IRI-63752v3

With respect to transfer, as set forth in the Transfer Motion, there is no reasonable basis for Summit 6's action against Apple to remain in this Court. All of the relevant factors either support transfer or are neutral. And although Your Honor previously litigated a case involving two of the patents that are at issue in the matter at hand, that fact alone is insufficient to avoid transfer. Thus, after severing Apple, this Court should transfer the action at least as to Apple, in the event that the entire action is not transferred.

## II.    FACTUAL BACKGROUND

Summit 6 alleges that all of the defendants infringe U.S. Patent Nos. 7,765,482 ("the '482 patent") and 8,612,515 ("the '515 patent"). In addition, Summit 6 alleges that Twitter also infringes U.S. Patent No. 6,895,557 ("the '557 patent").

Summit 6 asserts that Apple infringes the '482 and the '515 patents through "Apple's upload services and/or devices." First Amended Compl. ¶¶ 95, 193, ECF No. 6, (hereinafter "FAC"). Summit 6's claims against Apple focus on: (1) Apple's products, including the iPhone, iPad, and iPod Touch, and (2) Apple's iOS-based proprietary services, including iMessaging, MMS Messaging, Messaging-related APIs, and Twitter integration/functionality on Apple devices. *See id.* In contrast, Summit 6's claims against LG, Motorola, and HTC focus on each of their disparate devices and their Android-based proprietary services for MMS Messaging, Messaging-related APIs, and Twitter integration/functionality. *Id.* ¶¶ 23, 35, 47, 59, 71, 83, 121, 133, 145, 157, 169, 181. Summit 6's claims against Twitter focus solely on "Twitter's upload services," as they relate to Twitter's applications, APIs, and the functionality used by mobile devices and tablets. *Id.* ¶¶ 12, 107, 205, 219.

### III.    THE CLAIMS AGAINST APPLE SHOULD BE SEVERED

**A.    The America Invents Act, 35 U.S.C. § 299, Imposes Stringent Joinder Requirements That Exceed The Requirements Of The Federal Rules.**

Rule 21 of the Federal Rules of Civil Procedure provides considerable latitude to courts to sever claims, even if only for the purpose of facilitating transfer. *In re Nintendo Co.*, 2013 U.S. App. LEXIS 19606, at *18 (Fed. Cir. Sept. 25, 2013). Because Rule 21 does not provide a standard for determining whether parties or claims are properly joined, "[w]hen considering a motion to sever under Rule 21, 'courts have looked to Rule 20 for guidance.'" *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). Rule 20 provides that defendants may be joined in one action if (1) any claim asserted against each of them arises out of the *same transaction, occurrence, or serious of transactions or occurrences*, and (2) there is any question of law or fact common to all defendants that will arise in the action. Fed. R. Civ. P. 20(a)(2)(A).

The AIA, however, permits joinder of multiple defendants "only if":

> any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions or occurrences* relating to the making, using, importing into the United States, offering for sale, or selling *of the same accused product or process*….

35 U.S.C. § 299 (emphasis added). Thus, section 299 imposes more stringent requirements than Rule 20, insofar as it necessitates that Rule 20's "transactions or occurrences" must relate to making, using, or selling the *same accused product or process*. *Id.* Further, section 299 prohibits joining multiple defendants "based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299. "[T]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise

common questions of claim construction and patent invalidity." *In re EMC Corp.*, 677 F.3d at 1357.

**B.    Claims Against Apple Are Not Joinable With Claims Against The Other Defendants.**

1.    The Accused Apple Products Are Distinct from the Accused Products and
Services of the Other Defendants.

In its Complaint, Summit 6 highlights two distinct classes of products—those that use the iOS operating system and those that use the Android operating system.  Apple uses the iOS operating system.  *See* FAC, ¶¶ 99, 197; Transfer Motion at 9, 12.  LG, HTC, and Motorola, on the other hand, use an Android operating system.  Transfer Motion at 12, 18; *see* FAC, ¶¶ 107, 205.

Summit 6 specifically references in the Complaint "the Twitter content upload functionality integrated into the native sharing options for *iOS* and *Android* devices."  FAC, ¶¶ 107, 205 (emphasis added).  Summit 6 also alleges that Twitter's accused upload services involve "the Twitter Application for Android, the Twitter Application for Android Tablet," as well as "the Twitter Application for iPhone [and] the Twitter Application for iPad."  *Id.* ¶¶ 107, 205.  Summit 6 acknowledges that the iPhone and iPad utilize iOS, referencing Apple instructions, the "iPhone User Guide for iPhone OS 3.1 Software," "iPhone User Guide For iOS 7 (October 2013)," and "iPad User Guide For iOS 7 (October 2013)."  *Id.* ¶¶ 99, 197.

The defendants cannot be joined in one action because the infringement allegations against Apple and the co-defendants do not implicate the same accused products and processes, as required by the AIA.  35 U.S.C. § 299.  Indeed, "joinder is not appropriate where different products or processes are involved."  *In re EMC*, 677 F.3d at 1359.  Here, Summit 6 identifies various versions of Apple's iPhones, iPads, and iPod Touches as the accused devices, and Apple's proprietary methods for uploading digital content to remote locations (*e.g.*, to Twitter)

4

using its unique operating system, as the accused processes.  FAC ¶¶ 95, 193.  In contrast, Summit 6 identifies HTC products and HTC's upload-processes against HTC; LG products and LG's upload-processes against LG; and Motorola products and Motorola's upload-processes against Motorola.  *Id.* ¶¶ 23, 35, 47, 59, 71, 83, 121, 133, 145, 157, 169, 181.  Summit 6 does not identify any products against Twitter, but only identifies "Twitter's upload services."  *Id.* ¶¶ 107, 205, 219.  None of the defendants' products overlap.  Similarly, because Apple uses a distinct operating system from LG, HTC, and Motorola, Apple's process does not overlap with any of the other defendants' processes.

      2.      <u>The Facts Underlying Plaintiff's Infringement Claims Against Apple Are Distinct from the Facts Underlying Plaintiff's Infringement Claims Against the Other Defendants</u>.

Even if the Defendants' products were identical—which they are not—no "link" exists between the facts underlying Summit 6's infringement claims against Apple and its claims against LG, HTC, Motorola, and Twitter.  "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are coincidentally identical."  *In re EMC Corp.*, 677 F.3d at 1359.  Summit 6 does not allege that LG, HTC, Motorola, Twitter, and Apple are related entities or that they share a common management or ownership.  *Lodsys, LLC v. Brother Int'l Corp.*, 2013 U.S. Dist. LEXIS 513362, at *22 (E.D. Tex. Jan. 14, 2013) (granting severance where the plaintiff "does not allege any relationship among the defendants").  Summit 6 also does not allege any overlap between the development and manufacture of the products of Apple, LG, HTC, and Motorola.  *Id.* (granting severance where the plaintiff "does not allege an overlap of the products' development and manufacture").  Further, the mobile

device manufacturer defendants have long been considered competitors in the marketplace.  *Id.* at *24 (granting severance where "[i]t is clear that each of the accused products are independently designed and manufactured by the various defendants who, in fact, compete with one another in the marketplace").

Because the defendants' products and services are distinct, Summit 6's claims of both direct and indirect infringement against each defendant will require different witnesses, different sources of proof, and different technical expertise.  *See generally* Transfer Motion.

To prove direct infringement, Summit 6 bears the burden of "point[ing] to specific instances of direct infringement or show[ing] that the accused device necessarily infringes the patent in suit."  *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).  Here, there will be no overlap in sources of proof regarding specific instances of infringement as Summit 6's claims are directed to disparate products with distinct operating systems and different technical specifications.  FAC ¶¶ 23, 35, 47, 59, 71, 83, 99, 107, 121, 133, 145, 157, 169, 181, 197; Transfer Motion at 8, 9, 12, 18.  As such, discovery related to all defendants will necessarily involve witnesses and documents with no foreseeable overlap with Apple.  *See* Transfer Motion at 9-25.

To prove indirect infringement, Summit 6 must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *ACCO Brands, Inc.*, 501 F.3d at 1312.  Summit 6's indirect infringement claims, thus, also require disparate sources of proof.  Specifically, proof of direct infringement or proof of intent by Apple, LG, HTC, Motorola, and Twitter will not have any commonality of evidence or witnesses.  *See* Transfer Motion at 9-25 (identifying names of different witnesses and distinct locations as sources of evidence).

IRI-63752v3

Moreover, the financial and sales information related to the various products are similarly

distinct and devoid of any overlap.  *See id.*  As a result, the witnesses and evidence needed to

establish Summit 6's damages claim will be different for its claims against each of the

defendants.  *See id.*  Thus, no common set of operative facts or evidence ties Summit 6's

allegations of infringement against Apple to those against LG, HTC, Motorola, and Twitter.

**C.    Apple's Joinder With Twitter And The Other Co-Defendants Would Be Highly
       Prejudicial And Confusing To A Jury.**

Not only is joinder prohibited by the AIA in this matter, but it also would be highly

prejudicial and confusing to the jury.  "[D]istrict courts have the discretion to refuse joinder in

the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding

principles of fundamental fairness."  *In re EMC*, 677 F.3d at 1360 (quoting *Acevedo*, 600 F.3d at

521).  "In a complicated patent litigation a large number of defendants might prove unwieldy,

and a district court would be justified in exercising its discretion to deny joinder 'when different

witnesses and documentary proof would be required.'"  *Id.* (quoting *Acevedo*, 600 F.3d at 522).

Previously, Your Honor expressed that joining a social media company with a mobile

device company would be prejudicial and confusing to a jury.  Order 3, *Summit 6 LLC v.

Research in Motion, et al.*, No. 3:11-cv-367-O, (N.D. Tex. Feb. 6, 2013), ECF No. 508.

Specifically, in a prior suit involving Summit 6 and Samsung, Your Honor found that claims

against Facebook and Samsung should be severed due to the potential for prejudice and

confusion.  *Id.* ("Here, the Court finds that trial with two independent defendants each involving

different accused products or processes would be prejudicial and potentially confusing to the jury.

Accordingly, it is ORDERED that Defendant Facebook's motion to sever should be and is

hereby GRANTED.").  Twitter, like Facebook, interacts with mobile devices through its social

media app, and Apple, like Samsung, designs, manufactures and sells mobile devices.  Therefore,

7

allowing claims against Apple and Twitter (and three other mobile device manufacturers) to be tried together would similarly be prejudicial.

There can be little doubt that the various processes and products in this case would confuse a jury.  There are at least two distinct categories of products, iOS devices and Android devices (further subdivided into each defendants' specific products), and at least three categories of processes—iOS-based processes, Android-based processes, and Twitter's proprietary processes.  *See* FAC, ¶¶ 99, 107, 197, 205; Transfer Motion at 9, 12, 18.  A jury would likely be confused by the distinctions between these products and processes.  For example, Google designs the Android operating system, but Google is not a party to this case, whereas Apple, who is a party to the action, designs the iOS operating system.  Transfer Motion at 2, 6, 12, 16, 18.  Further, Twitter has no accused products, but if the jury deems one of Twitter's processes as infringing, then that may influence the jury's view of Apple's accused products or processes.  Likewise, if the jury deems one of the co-defendant's Android products to be infringing, then that may cause the jury to erroneously find infringement by the Apple iOS products.

Unless the Court grants severance, Apple "will not have a meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages because each defendant will have limited opportunities to present its own defense to the jury. . . . [D]istrict courts have expressed similar concerns.  *See, e.g.*, *WiAV Networks, LLC v. 3Com Corp.*, No. C 10-03448, 2010 WL 3895047, at *2 (N.D. Cal. Oct. 1, 2010) ('Each defendant has simply been thrown into a mass pit with others to suit plaintiff's convenience.  In this connection, the accused defendants—who will surely have competing interests and strategies—are also entitled to present individualized assaults on questions of non-infringement, invalidity, and claim construction.')."  *In re EMC Corp.*, 677 F.3d at 1355.

For the foregoing reasons, the claims against Apple should be severed from the claims against the co-defendants pursuant to 35 U.S.C. § 299.

**D.    After Severance, The Case Against Apple Should Be Transferred.**

For all the reasons set forth in the pending Transfer Motion, this case should be transferred to the Northern District of California under 28 U.S.C. § 1404(a), because the action "might have been brought" in the transferee venue and the "private" and "public" interest factors clearly weigh in favor of transfer of Apple.  Transfer Motion at 9-25.  If, for some reason, this Court does not believe this entire case should be transferred, then in the alternative, Summit 6's claims against Apple should be transferred to the Northern District of California following severance.

## IV.    CONCLUSION

The AIA requires courts to sever patent infringement claims against unrelated defendants that are based on different transactions and/or different accused products.  Summit 6's Complaint joining Apple with the co-defendants fails the threshold statutory requirement of 35 U.S.C. § 299. Thus, Apple respectfully requests that this Court sever Summit 6's claim against Apple from Summit 6's claim against the co-defendants, and—if this entire action is not transferred— transfer Summit 6's claim against Apple to the Northern District of California.

Dated:  June 25, 2014                    Respectfully submitted,

                                         JONES DAY


                                         _/s/ Hilda C. Galvan_____
                                         Hilda C. Galvan
                                         State Bar No. 00787512
                                         hcgalvan@jonesday.com
                                         JONES DAY
                                         2727 North Harwood Street
                                         Dallas, TX 75201-1515
                                         Telephone:  (214) 220-3939
                                         Facsimile:  (214) 969-5100


                                         William C. Rooklidge *(pro hac vice)*
                                         wrooklidge@jonesday.com
                                         Mark A. Finkelstein *(pro hac vice)*
                                         mafinkelstein@jonesday.com
                                         Frank P. Cote *(pro hac vice)*
                                         fcote@jonesday.com
                                         Michelle Stover *(pro hac vice)*
                                         mstover@jonesday.com
                                         Douglas L. Clark *(pro hac vice)*
                                         dlclark@jonesday.com
                                         JONES DAY
                                         3161 Michelson Drive, Suite 800
                                         Irvine, CA 92612-4408
                                         Telephone:  (949) 851-3939
                                         Facsimile:  (949) 553-7539


                                         ***Attorneys for Defendant* APPLE INC.**

IRI-63752v3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this MEMORANDUM IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO SEVER via the Court's CM/ECF system per Local Rule 5.1(d) this 25th day of June, 2014.

*/s/ Hilda C. Galvan*
Hilda C. Galvan

## CERTIFICATE OF CONFERENCE

The undersigned hereby certify that the parties have complied with Local Rule 7.1 (a) and (b).  On June 25, 2014, a telephone conference was held between Hilda C. Galvan, representing Apple Inc. and Ashley Moore, representing Summit 6, LLC regarding Apple's Motion to Sever.  Summit 6 opposed this motion.  Agreement could not be reached because the parties did not agree on whether severance and transfer was proper.

*/s/ Hilda C. Galvan*
Hilda C. Galvan

11

IRI-63752v3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANTS'
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 1

II.   Legal Standard ...................................................................................................... 4

III.  TRANSFER TO THE NDCA IS NOT CLEARLY MORE
      CONVENIENT ..................................................................................................... 5

      A.    The Public Interest Factors Favor Keeping this Case in
            NDTX. .......................................................................................................... 6

            1.    Court Congestion Weighs Against Transfer to
                  NDCA. .............................................................................................. 6

            2.    The NDTX Has a Strong Local Interest in Deciding
                  Dallas-Based Summit 6's Case. ...................................................... 7

            3.    The Familiarity with the Law and Conflicts of Law
                  Factors are Neutral. ........................................................................ 9

      B.    The Private-Interest Factors Weigh Heavily Against
            Transfer. ...................................................................................................... 9

            1.    The Practical Problems of Judicial Economy and a
                  More Expeditious and Less Expensive Trial Weigh
                  Against Transfer. ............................................................................ 9

            2.    The Availability of Compulsory Process Does Not
                  Favor Transfer. ............................................................................... 12

            3.    The Cost of Attendance for Willing Witnesses
                  Favors Summit 6. ........................................................................... 14

            4.    Access to Sources of Proof is Neutral. ........................................ 15

IV.   CONCLUSION ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Computer, Inc. v. Creative Tech.*,
  Case Nos. 9:06-cv-00150, 9:06-cv-00149, and 9:06-cv-00114 ..................................5

*Apple, Inc. v. HTC,*
  Case No. 1:10-cv-0167 .................................................................................5

*AT&T IP, Inc. v. Airbiquity Inc.,*
  Case No. 3:08-cv-1637-M, Doc. 25 at 9..................................................................16

*Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*,
  2013 U.S. Dist. LEXIS 88004 (N.D. Tex. June 24, 2013) (Fish, J.) ....................................4

*Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*,
  6:12-cv-0100-LED-JDL, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013) .........................13, 17

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
  No. 6:09-cv-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google,
  Inc.*, 412 Fed. App'x 295 (Fed. Cir. 2011) .............................................................14

*Flashpoint Tech. Inc. v. HTC Corp.*,
  1:14-cv-00317-GMS, Doc. 33 at 18 (E.D.N.C. filed Nov. 27, 2013)........................3, 4, 6, 10

*Flu Shots of Tex., Ltd. v. Lopez,*
  2013 U.S. Dist. LEXIS 79307 (N.D. Tex. June 5, 2013) (O'Connor, J.)............................4, 5

*Frito-Lay N.A., Inc. v. Medallion Foods, Inc.*,
  867 F. Supp. 2d 859 (E.D. Tex. 2012) ..................................................................17

*Geotag, Inc. v. Aromatique, Inc.*,
  2013 U.S. Dist. LEXIS 173481 (E.D. Tex. Jan. 14, 2013)...............................................3

*H-W Tech., L.C. v. Domino's Pizza, LLC*,
  Case No. 3:13-cv-1922-G-BH, Doc. 38 at *12 (N.D. Tex. Oct. 30, 2013) (Ramirez,
  J.)........................................................................................................10

*In re EMC Corp. (EMC II)*,
  2013 WL 324154 (Fed. Cir. Jan. 29, 2013) ...............................................................6

*In re Genetech,*
  566 F.3d 1338 (Fed. Cir. 2009)...........................................................................6

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc), *cert. denied*, 555 U.S. 1172 (2009)...........4, 5, 17, 18

*Internet Machs. LLC v. Alienware Corp.*,
    2011 U.S. Dist. LEXIS 66207 (E.D. Tex. Jun. 7, 2011)......................................................13

*Kaneka Corp. v. JBS Hair Inc.*,
    Case No. 3:10-cv-1430-P, Doc. 85 at 15 (N.D. Tex. July 5, 2011) (Solis, J.) . [Ex. 10]........11

*Mannatech, Inc. v. Country Life, LLC*,
    Case No. 3:10-cv-533-O, Doc. 98 at *6 (N.D. Tex. July 26, 2010) (O'Connor, J.).................8

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*,
    2 F.Supp. 2d 1345 (D. Colo. 1998)................................................................................8

*Summit 6, LLC v. RIM*,
    Case No. 3:10-cv-367-O (N.D. Tex. filed Feb. 23, 2011) (O'Connor, J.)...............................3

*Thiel v. Southern Pacific Co.*,
    328 U.S. 217 (1946)..................................................................................................9

*Tsera, LLC v. Apple, Inc.*,
    Case No. 6:09-cv-312-LED-JDL, 2010 U.S. Dist. LEXIS 144798 (E.D. Tex. May 12,
    2010) ......................................................................................................................8

*Vertical Computer Sys., Inc. v. LG Electronics Mobilecomm USA, Inc.*,
    2013 U.S. Dist. LEXIS 71561 (E.D. Tex. May 20, 2013).............................................. passim

*VirnetX Inc. v. Apple Inc.*,
    6:10-cv-417 (E.D. Tex. filed Aug. 10, 2011)...............................................................2, 5, 15

*Wellogix Tec. Licensing LLC v. Automatic Data Processing, Inc.*,
    No. 6:11-cv-401 ......................................................................................................14

*Wi-Lan Inc. v. HTC Corp.*,
    2013 U.S. Dist. LEXIS 99635 (E.D. Tex. July 17, 2013) (Gilstrap, J.) ..................................13

## I.    INTRODUCTION

Defendants bear the burden of showing that this case should be transferred to the Northern District of California ("NDCA"), and they cannot make such a showing.  Defendants' Motion to Transfer (the "Motion") ignores both their own, and Plaintiff Summit 6 LLC's ("Summit 6"), ties to the Northern District of Texas ("NDTX"), and instead misleadingly focusing on undisclosed "likely" witnesses, unknown "potential" witnesses, and hypothetical third-parties.  For these reasons, and those discussed below, the NDTX is the most convenient venue.

Summit 6 is a long-standing corporate citizen of Texas, has numerous connections to the NDTX, and this case (much like the previous case against Facebook, Samsung, and others) should be tried here in the NDTX.  In stark contrast to Defendants' unsupported allegations, Summit 6 has committed no act of "gamesmanship" or otherwise orchestrated a "sham presence in Dallas" for the purposes of this lawsuit.  Almost a decade before this lawsuit was filed, in 2005, employees of Summit 6's predecessor company (AdMission) traveled to Dallas to join forces with Dallas-based Sell.com.  Pate Decl. at 2. [Ex. 4].  AdMission and Sell.com jointly developed some of AdMission's patented technology into a product called AdMission Marketplace.  *Id.*  Several Dallas-based companies—such as the Belo Corporation (owners of the Dallas Morning News)—licensed and used AdMission Marketplace on their websites beginning in June 2006.  *Id.*  More than two years before Summit 6 filed its previous lawsuit, and more than five years before the filing of the current lawsuit, AdMission sold its operating company and became—Dallas-based—Summit 6.  *Id.* at 2-3.  As of March 2009, Summit 6's office space and operational support was and is located in North Texas.  *Id.* at 3.  Summit 6 has paid property taxes in Dallas every year since opening in 2009, and paid franchise taxes in 2013.  *Id.* at 4.

On top of Summit 6's connections to the NDTX, Defendants ignore many of their own ties to Texas and whether Texas is truly an inconvenient forum to resolve this dispute.  For example, Apple admits that it is just as convenient for it to try patent cases in Marshall, Texas as it is for any other venue:

1

> Question: "Is it inconvenient for Apple to go to the Eastern District of Texas for a patent infringement trial?"
>
> Answer: "I don't think it's any less convenient than any other place we go."

*VirnetX Inc. v. Apple Inc.*, Case No. 6:10-cv-417 (E.D. Tex. filed Aug. 10, 2011), Trial Tr. 11/02/12 a.m., 38:18-22 (Testimony from Apple's Corporate Representative Patrick Gates); *see also id.* 37:23-24 ("It's a pretty short flight, so it's not a big deal.") [Ex. 1]. Dallas and Wichita Falls are just as convenient, if not more convenient, than the Eastern District of Texas, which also requires multiple flights stopping at DFW airport. Apple also maintains a 290,000 square foot "Operations Center" in Austin, Texas, which garnered Apple $21 million from the state of Texas and another $8.6 million from Austin in economic incentives [Ex. 6]. Defendant Motorola downplays its 450,000 square foot facility in Fort Worth, Texas, shown below,[1] that manufactures its "flagship phone" the Moto X—one of the accused products in this case [Ex. 3]:



Only two Defendants actually reside in California. Motorola, LG and HTC do not, and their witnesses will have to travel no matter where the case is. LG stated to another court just last year

---

[1]    Available    at    http://www.dallasnews.com/business/business-headlines/20130910-photos-motorolaflextronics-smartphone-assembly-plant-opens-in-fort-worth.ece (last visited June 1, 2014). [Ex. 2].

that "several business functions related to LG MobileComm's mobile phone business have been transitioning to LG Electronics, U.S.A., Inc. in New Jersey." *Vertical Computer Sys., Inc. v. LG Electronics Mobilecomm USA, Inc.*, 2013 U.S. Dist. LEXIS 71561, at *8 (E.D. Tex. May 20, 2013). LG even sought transfer to that district. *Id.* Finally, HTC is more than happy to have the same court resolve cases "involv[ing] some of the same claim terms, inventors, patent counsel, and technologies," and even urged one court to transfer an HTC action to the District of Delaware, so that the same judge could hear "similar, and in some instances identical, issues of claim construction, invalidity, and enforceability." *Flashpoint Tech. Inc. v. HTC Corp.*, 1:14-cv-00317-GMS, Doc. 33 at 18 (E.D.N.C. filed Nov. 27, 2013) (HTC's Memorandum of Law in Support of Motion to Transfer Venue).

Defendants also ignore the convenience of third parties, which even they acknowledge is "the most important consideration in analyzing a motion to transfer." Motion at 11. Most known third-parties do not reside in California, including one of the inventors who lives in the Czech Republic, the attorney who prosecuted two of the Patents-in-Suit in front of the U.S. Patent Office who resides in Reston, Virginia, and several customers and licensees that use Summit 6's inventions that are in Texas. *See* Pate Decl. at 2-3. [Ex. 4]. Defendants' customers also represent a key link in the supply chain for the infringing hardware, and will provide important evidence regarding damages and demand for the features afforded by the patents-in-suit. Both AT&T and Verizon have significant facilities in NDTX.[2] [Ex. 5]. Third party Point2 was located in Canada and its documents were found there in the last case.

Finally, Defendants pay scant lip-service to the previous Summit 6 case against Facebook, Samsung, and others. They minimize the fact that this very Court proceeded all the way through pre-trial on two of the three Patents-in-Suit, and went through a liability trial, an inequitable conduct trial, and post-trial briefing for one of the Patents-in-Suit. *Summit 6, LLC v. RIM*, Case No. 3:10-cv-367-O (N.D. Tex. filed Feb. 23, 2011) (O'Connor, J.). As HTC noted in

---

[2] *See Geotag, Inc. v. Aromatique, Inc.*, 2013 U.S. Dist. LEXIS 173481, at *20-21 (E.D. Tex. Jan. 14, 2013)..

its *Flashpoint* case, having the same court hear these issues would "promote judicial economy and justice by allowing the parties and the court to . . . avoid re-litigating overlapping issues of claim construction, non-infringement, invalidity, and unenforceability, and mitigate the danger of inconsistent judgments on these very complex issues." *Flashpoint Tech.*, 1:14-cv-00317-GMS, Doc. 33 at 20. Otherwise, as HTC put it, this would lead it to "potentially face inconsistent evidentiary rulings and judgments." *Id.* at 23. The same issues, the same facts, and the same arguments will be involved in this current suit, and this Court should resolve those issues. Summit 6 therefore requests that the Court deny Defendants' Motion to Transfer.

## II.    LEGAL STANDARD

A court should grant venue transfer only if the proposed transferee venue is "*clearly* more convenient" than the chosen venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc), *cert. denied*, 555 U.S. 1172 (2009) (emphasis added). A plaintiff's choice of forum is entitled to deference, even if most or substantial activities took place in another venue. *Flu Shots of Tex., Ltd. v. Lopez*, 2013 U.S. Dist. LEXIS 79307, at *3-4 (N.D. Tex. June 5, 2013) (O'Connor, J.) (citing *Tex. Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000)) (holding that "[i]f venue is proper in the district where the plaintiff files the claim, then even though there are other venues where more, or even the most, substantial activities took place, the plaintiff's chosen venue does not become improper.").

"It is well settled that the party moving for a change of venue bears the burden of demonstrating why the forum should be changed." *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 2013 U.S. Dist. LEXIS 88004, at *7 (N.D. Tex. June 24, 2013) (Fish, J.) (quoting *Dupre v. Spanier Marine Corporation*, 810 F.Supp. 823, 825 (S.D. Tex. 1993)). Placing the burden on the moving party to show "good cause" for the transfer "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *In re Volkswagen*, 545 F.3d at 315.

In determining whether to grant a motion to transfer venue, a court must consider a series of public interest and private interest factors, none of which is dispositive. *Flu Shots of Tex.*, 2013 U.S. Dist. LEXIS 79307, at *5. "The private interest factors are: (1) the relative ease of

access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* (quoting *In re Volkswagen*, 545 F.3d at 315). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity with the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws . . . ." *Id.* These factors are not exhaustive or exclusive, and no factor is dispositive. *In re Volkswagen*, 545 F.3d at 315. "When transferring venues would simply shift inconveniences, transfer is inappropriate." *Flu Shots of Tex.*, 2013 U.S. Dist. LEXIS 79307, at *5 (citing *First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 658 (N.D. Tex. 2008)).

## III.    TRANSFER TO THE NDCA IS NOT CLEARLY MORE CONVENIENT

Defendants turn a blind eye to all witnesses, documents, prior statements, and other evidence that shows that the NDTX is "no less convenient than any other place" they litigate. *VirnetX Inc.,* Case No. 6:10-cv-417, Trial Tr. 11/02/12 a.m., 38:18-22. [Ex. 1].  As explained above, Apple itself, under oath and in front of a jury, admits that it is just as convenient for it to try patent cases in Texas as it is for any other venue. *Id.* For example, Apple has chosen to litigate in multiple forums far from its Cupertino, California base. It filed cases in the Eastern District of Texas, (*Apple Computer, Inc. v. Creative Tech.*, Case Nos. 9:06-cv-00150, 9:06-cv-00149, and 9:06-cv-00114) and the District of Delaware (*Apple, Inc. v. HTC,* Case No. 1:10-cv-0167).   It has sought to transfer cases all over the country, including the District of Massachusetts, the District of New Jersey, and the Western District of Wisconsin.  Apple also fails to mention receiving almost $30 million in Texas funds as part of its decision to build an "Operations Center" in Austin, Texas. [Ex. 6].

For three Defendants—none of which are based in California—the NDCA is not a clearly more convenient venue.  Less than two years ago, LG moved to transfer another case to New Jersey as its "mobile phone business had been transitioned to LG Electronics USA in New

Jersey." *Vertical Computer*, 2013 U.S. Dist. LEXIS 71561, at *8. Motorola minimizes its actual and continuing presence in Fort Worth, even though venue is evaluated based on the situation that existed when suit was filed, not afterward. *In re EMC Corp. (EMC II)*, 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013). And HTC has not identified a single witness or document that is located in the NDCA. Motion at 8. Instead, HTC is an international company with witnesses and documents in Taiwan and elsewhere, and it agrees that it is better to have the same court decide the issues in order to "avoid re-litigating overlapping issues of claim construction, non-infringement, invalidity, and unenforceability, and mitigate the danger of inconsistent judgments on these very complex issues." *Flashpoint Tech.*, Case No. 1:14-cv-00317-GMS, Doc. 33, at 20.

### A.    The Public Interest Factors Favor Keeping this Case in NDTX.

Of the public interest factors, Defendants suggest they are all neutral with the exception of the NDCA having a strong local interest in deciding the case. Even though only two of the Defendants are headquartered in NDCA, they suggest that the NDCA has a strong local interest in resolving this dispute. This is incorrect. The NDTX has a strong local interest in resolving this dispute, and court congestion also strongly favors keeping this case in the NDTX.

### 1.    Court Congestion Weighs Against Transfer to NDCA.

Defendants' calculations of median time to case ***disposition*** are misleading and improper. The proper measure of court congestion is to look at the median time to ***trial***. *See In re Genetech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (stating that court congestion can be measured by "whether a trial may be speedier in another court because of its less crowded docket."). The median time to trial in the NDCA is more than twice that of this Court. [Ex. 7]. The Federal Judicial case load statistics show the median time to trial in the NDTX is 1.68 years while the median time to trial in NDCA is 2.3 years. Id. In five recent settings, the district courts in the NDCA set trial dates a year or more after the *Markman* Order. Those trial settings are, on

6

average, 2.7 years after filing.  The Court has set this case for trial on its four week docket beginning on November 30, 2015—which is even less than the median time to trial in the NDTX and half the median time to trial in NDCA.  Scheduling Order, Doc. 93. [Ex. 8].

Summit 6 also retains a keen interest in swift justice.  As the owner of the Patents-in-Suit, Summit 6 has a constitutionally protected property right.  The business that remains after Defendants' rampant infringement—technology licensing—is implicated by this case.  Further, the longer a case takes, the more expensive it becomes, disadvantaging a smaller party (i.e., Summit 6) to the benefit of the larger parties (i.e., Defendants).  Justice delayed is justice denied. This factor weighs strongly against transfer.

### 2.    The NDTX Has a Strong Local Interest in Deciding Dallas-Based Summit 6's Case.

Summit 6 has been a Dallas-based company, paying Texas property taxes, and working with Dallas-based Sell.com for almost 10 years.  Pate Decl. at 2-3. [Ex. 4]. Its predecessor company, AdMission, worked with Sell.com to develop products that practice the Patents-in-Suit.  *Id.*  By mid-2006, it had licensed this technology to Dallas-based companies including the Belo Corporation.  *Id.* at 2.  As of early 2009, Dallas hosted the development, web, and operational support for Summit 6.  *Id.* at 2-3.  Summit 6 has leased offices in north Texas for five years, first on Quorum Drive and then on Greenville Avenue in Dallas, Texas.  *Id.* at 3.  All of Summit 6's board meetings occur in north Texas and strategy meetings with partner Sell.com occur in Dallas, Texas.  *Id.*  Summit 6 has bank accounts, a P.O. box, and its long-standing accountant in the Dallas area.  *Id.*  All of Summit 6's corporate records, hard-copy documents, historic software packages, and other business materials are located in Dallas and have been since 2009.  *Id.*  Summit 6 has paid property taxes in Dallas every year since opening in 2009, and paid franchise taxes in 2013.  *Id.* at 4; *see Tsera, LLC v. Apple, Inc.*, Case No. 6:09-cv-312-

LED-JDL, 2010 U.S. Dist. LEXIS 144798, at *34-39 (E.D. Tex. May 12, 2010) (the decision to open an office in a particular location and conduct business at that location supports a specific district's local interest in the dispute).   Summit 6 is therefore a local company, with a local interest in having its case decided in the NDTX.

Activities from almost twenty years ago that took place in California, by people that have since scattered all over the nation and other countries, have no bearing on any alleged "local interest" of California.  If activity in a certain location over twenty years ago were sufficient to give a court a local interest, then technology giant Microsoft would be forced into lawsuits where it began in Albuquerque, New Mexico, despite the fact that its headquarters have been in Washington state since 1979.

Finally, although transfer analysis requires consideration of local interests, this interest cannot be an illegitimate one.  Defendants have no local interest in, for example, obtaining a forum "that is more convenient only for them and that will grant them a jury pool from which they likely will draw highly favorable, if not out-right biased, jurors."  *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 2 F.Supp. 2d 1345, 1352 (D. Colo. 1998).  Similarly, "a decision to transfer venue must not simply shift the expense and inconvenience of litigating in a particular venue from one party to the other."  *Mannatech, Inc. v. Country Life, LLC*, Case No. 3:10-cv-533-O, Doc. 98, at *6 (N.D. Tex. July 26, 2010) (O'Connor, J.) (quoting *Mannatech, Inc. v. K.Y.C., Inc.*, No. 3:06-CV-813, 2006 WL 2216033, at *3 (N.D. Tex. Aug. 3, 2006)).  This concern is not merely speculative.  Trying a case against Apple alone in the NDCA would be extremely prejudicial to Summit 6.  In *Apple v. Samsung*, 25% of the entire jury panel admitted to having an outright bias toward Apple or a friend or family member who worked at Apple. (Trial Tr. vol. 1, 50:21-69:13; 136:11-139:22, July 30, 2012). [Ex. 9].  "The American tradition

of trial by jury . . . necessarily contemplates an impartial jury." *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 221 (1946).    This factor therefore weighs against transfer or, at best for Defendants, is neutral.

### 3.    The Familiarity with the Law and Conflicts of Law Factors are Neutral.

Summit 6 agrees with Defendants that the remaining public interest factors are neutral.

### B.    The Private-Interest Factors Weigh Heavily Against Transfer.

Of the four private interest factors, two favor denial of transfer to the NDCA and two factors, at best for Defendants, are neutral.

### 1.    The Practical Problems of Judicial Economy and a More Expeditious and Less Expensive Trial Weigh Against Transfer.

This Court will certainly give the parties a more expeditious and less expensive trial than the NDCA.    This Court is exceedingly familiar with the Patents-in-Suit, claim construction issues, validity issues, and inequitable conduct issues—all from the previous Summit 6 case. Defendants argue that the handful of claims from the '482 Patent that actually went to trial somehow negates this Court's experience: (1) construing terms from both the '557 and '482 Patents; (2) ruling on summary judgment motions related to validity and infringement of both the '557 and '482 Patents; (3) ruling on evidentiary issues, (4) holding a liability trial on infringement and validity for the '482 Patent; and (5) holding an inequitable conduct trial relating to facts that would be the same across both the '482 Patent and the newly-issued '515 Patent.    This Court's past experience is significant, it substantially overlaps with the issues in the current case, and will likely involve similar or identical evidence as that in the current case.

At least one Defendant has agreed that it is important for the same court to hear cases "involv[ing] some of the same claim terms, inventors, patent counsel, and technologies." *Flashpoint*, Case No. 1:14-cv-00317-GMS, Doc. 33 at 18.    This is because it allows the same

judge to decide "similar, and in some instances identical, issues of claim construction, invalidity, and enforceability." *Id.* Having the same judge decide the same issues avoids the possibility of "inconsistent evidentiary rulings and judgments." *Id.* at 23. Summit 6 agrees; this case should remain here in the NDTX. Defendants cannot have it both ways, asking to transfer cases *to* courts familiar with the issues on the one hand, but asking to transfer other cases *away from* courts familiar with the issues on the other hand.

In addition, this case is already well under way. The Court has entered a scheduling order, a discovery order, and a protective order in the instant case. Discovery has already been propounded and documents have already been produced. Infringement contentions have been served on Defendants. Defendants' invalidity contentions are due August 11, 2014, which is a little over a month away. Transferring this case to California would only cause delay and increase litigation costs. *See H-W Tech., L.C. v. Domino's Pizza, LLC*, Case No. 3:13-cv-1922-G-BH, Doc. 38 at *12 (N.D. Tex. Oct. 30, 2013) (Ramirez, J.) ("[T]ransferring a case to a different district where other relevant cases are pending is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the case involve the same or similar defendants with the same or similar products.").

Defendants further discount this Court's experience with Summit 6's previous litigation, relying heavily on *In re Verizon*. Motion at 20. However, *Verizon* is very different from the facts in Summit 6's case. Unlike *Verizon*, Summit 6 does not solely rely on the Court's familiarity with the prior Summit 6 v. Samsung case or judicial economy as a basis for its opposition to the motion to transfer. *See id.* at 561-62 ("To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be

inconsistent with the policies underlying § 1404(a).").  First, the previous Summit 6 case did not settle—it was fully adjudicated, with a jury trial and an inequitable conduct hearing, and final judgment was entered just last year.  This weighs heavily in favor of maintaining the case in NDTX.  Second, as discussed above, Defendants have failed to meet their burden to show that the private and public interest factors weigh in favor of transfer.  Several factors weigh in favor of denying the motion to transfer, in addition to judicial economy, including: (a) Defendants' ties to NDTX; (b) Summit 6's ties to NDTX; (c) the convenience of all of the parties; (d) the local interest of the NDTX in the outcome of the litigation; and (e) court congestion.  Thus, *In re Verizon* is inapposite to the instant case.

Defendants suggest that transferring the case to the NDCA will reduce the number of people that must travel.  Motion at 19.  This allegation is specious at best.  As discussed above, several third-party witnesses will have to travel to either Texas or California,[3] including third-party inventors of the patents-in-suit, prosecuting attorneys, and licensees of the patents-in-suit. The same is true for previous third-party trial witness Eron Wright and any Point2 witnesses from Canada.  And party witnesses for HTC will have to travel for either district.  See *Kaneka Corp. v. JBS Hair Inc.*, Case No. 3:10-cv-1430-P, Doc. 85 at 15 (N.D. Tex. July 5, 2011) (Solis, J.) ("The flights from Korea to Dallas are equally as inconvenient as flights from Korea to San Francisco.").  [Ex. 10].  It also appears highly likely that at least some LG and Motorola witnesses will have to travel from their respective locations in New Jersey and Chicago. Reducing the travel time for a handful of witnesses from Apple and Twitter does not "greatly reduce the number of people required to travel" for any of the other Defendants or third-party witnesses.

---

[3] As discussed above, a number of third-party witnesses are located in Texas, and more specifically in the DFW area, including Summit 6's development partners, Summit 6 customers, Summit 6 licensees, and Defendants' customers.

Given the much faster time to trial, the likelihood of travel and hotel expenses for many witnesses regardless of the district in which the case is tried, and this Court's familiarity with the issues in this case, trial will be much easier, more expeditious, and less expensive here in Texas.

**2.    The Availability of Compulsory Process Does Not Favor Transfer.**

Defendants only argument that the availability of compulsory process "weighs strongly in favor of transfer" is because an unknown number of unknown witnesses *may* not voluntarily travel to Wichita Falls for trial.  They cite to no support for any of these allegations.  Motion at 16-17.  This factor does not favor transfer for two reasons.

First, of the potential, actually known third-party witnesses, California could not compel a deposition or attendance at trial for *any* of them who have not already committed to voluntarily come to trial.  The known third-party witnesses at this stage of the litigation are two of the inventors, the patent prosecutor for the Patents-in-Suit, four of Summit 6's board members, development partner Sell.com, customers to the patented technology, Summit 6's licensees, Point2, and third-party carriers, like AT&T, Verizon, Sprint, and T-Mobile, with relevant usage statistics and requirements documents.  Inventor Robin Fried lives in Praha, Czech Republic.  Patent prosecutor Duane Kobayashi lives in Reston, Virginia.  Of the Summit 6 current or former board members, one splits his time between Lexington, Kentucky and Gulf Stream, Florida, two live in Seattle, Washington, and one lives in Bainbridge Island, Washington.  Technology partner Sell.com and customer The Belo Corporation are located right here in the NDTX.  This Court could compel the deposition and attendance of any witnesses for these corporations.  The carriers are located all over the United States, including AT&T Service, Inc. and AT&T Mobility which are headquartered in Dallas, Texas and Verizon which has a Richardson facility with 2,250 employees. [Ex. 5].

Second, Defendants cannot meet their burden through sheer guess-work and supposition.[4] Defendants have not identified a single former employee of Summit 6, AdMission, or PictureWorks that it would seek to depose, much less whether that witness resides in the NDCA. Although Defendants mention Point2, they do not identify any particular person in the NDCA related to Point2 for which it could compel a deposition or bring to trial. Point2 is located in Saskatoon, SK, Canada, its founding owners (the Wright brothers) appear to live in Canada, Cory Furman (a former employee that was deposed in the previous Summit 6 case) appears to live in Regina, Canada, and Eron Wright (another former employee) appears to live in Sammamish, Washington. So again, the courts in California have no power over Point2 or any of its relevant employees or former employees.

Defendants also identify unknown witnesses at Google from which they may seek unknown testimony. However, any alleged Google witnesses are inapposite and irrelevant. Although Defendants sell Android-based accused products, Defendants have the relevant source code in their possession and control. This is because original equipment manufacturers—like Defendants here—modify the "Android operating system" to suit their particular needs and to include features and functions which may not be found in the open-source code. Of the Patents-in-Suit, none read solely on functions or features found in Android software. Not a single Google witnesses was deposed or called at trial in the previous Summit 6 case, even though most of Samsung's accused phones also operated on the Android platform. And finally, Defendant's

---

[4] "Defendants are asking the Court to attribute more weight based on this assertion of a potential likelihood that an un-named and otherwise unidentified third-party witness may or may not be used for trial sometime in the future." *Wi-Lan Inc. v. HTC Corp.*, 2013 U.S. Dist. LEXIS 99635, at *30 (E.D. Tex. July 17, 2013) (Gilstrap, J.); *see also Internet Machs. LLC v. Alienware Corp.*, 2011 U.S. Dist. LEXIS 66207, at *22 (E.D. Tex. Jun. 7, 2011) (finding that a party must at least identify witnesses who would require compulsory process); *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 6:12-cv-0100-LED-JDL, 2013 WL 682849, at *3 (E.D. Tex. Feb. 22, 2013) (finding assertions that "the alleged infringing products were designed and developed in Cupertino, CA and the employees responsible for that development are based in the Cupertino area" to be "vague" such that "weighing [them in the analysis] … would be merely speculative").

identify unknown employees who may leave their employment, may have relevant knowledge, and may continue to live in the NDCA. This seems highly unlikely and, in any event: (a) HTC's relevant employees do not live in California; (b) LG's relevant employees appear to live in New Jersey according to other court filings; and (c) Motorola has several employees at its large facility in Fort Worth. *Vertical Computer*, 2013 U.S. Dist. LEXIS 71561, at *8. [Ex. 11].

Importantly, this factor weighs in favor of transfer only if "the majority of non-party witnesses are located" in the transferee district. *See Wellogix Tec. Licensing LLC v. Automatic Data Processing, Inc.*, No. 6:11-cv-401 LED-KDL, 2013 WL 1729606, at *6 (E.D. Tex. Mar. 19, 2013) (emphasis added). Where both forums have some non-party witnesses, but neither forum has absolute subpoena power over most non-party witnesses, the factor is neutral. *See Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *5 (E.D. Tex. Sept. 28, 2010) (concluding factor neutral where each forum had some non-party witnesses but neither had all), *aff'd In re Google, Inc.*, 412 Fed. App'x 295 (Fed. Cir. 2011).

Given that Defendants' witnesses are unknown and based on supposition, that Summit 6 has identified relevant non-party witnesses within this District, and that a majority of the likely non-party witnesses otherwise come from diverse locations, this factor weighs against transfer. At best for the Defendants, this factor is neutral.

### 3.    The Cost of Attendance for Willing Witnesses Favors Summit 6.

Defendants overshadow their entire Motion by stressing the importance of convenience for party witnesses. However, the cost of attendance of non-party witnesses is more important. *Vertical Computer*, 2013 U.S. Dist. LEXIS 71561, at *12. Most non-party witnesses live outside of either California or Texas. *See* Sections I and III(B)(1) *supra*. Flights to Dallas are typically less expensive than those to San Francisco and other expenses—hotels, rental cars, food, and all

14

other costs of travel—are greatly magnified in northern California. Because of the complex, international nature of this patent case, witnesses will inevitably have to book overnight stays. Expenses are higher in San Francisco than Dallas or Wichita Falls, thus this District is much less costly for those witnesses than the NDCA. [*Compare* Ex. 12 and Ex. 13 with Ex. 14 and Ex. 15.]

Regarding party witnesses, Apple has already admitted that it is not "any less convenient" to come to Texas for trial. *VirnetX*, Case No. 6:10-cv-417, Trial Tr. 11/02/12 a.m., 38:18-22; *see also id.* at 37:23-24 ("It's a pretty short flight, so it's not a big deal.") [Ex. 1]. Defendants also cherry-pick a large number of redundant witnesses, ignoring those with highly-relevant knowledge outside of California. For example, Motorola neglects to mention that one of the witnesses in its initial disclosures (Andy Koziol) is located in Chicago, Illinois—not California. Motorola Initial Disclosures at 2 [Ex. 11].

### 4.     Access to Sources of Proof is Neutral.

Defendants suggest that the NDCA has easier access to the proof for everyone in this case, including Summit 6. This is not true. First, HTC has no documents or proof in California, instead stating that its proof is either in Taiwan or Washington. Motion at 18. LG Inc.'s proof is in Seoul, Korea, not California. *Id.* And although LG MobileComm states that most of its sources of proof are located in San Jose, California, it appears that at least some of this evidence is actually located in New Jersey. *Vertical Computer*, 2013 U.S. Dist. LEXIS 71561, at *8 (where LG stated that "several business functions related to LG MobileComm's mobile phone business have been transitioning to LG Electronics, U.S.A., Inc. in New Jersey."); *see also* [Ex. 16] (current LG job openings for mobile unit marketing in Englewood Cliffs, New Jersey). And at least some of Motorola's information is likely to be located at its headquarters in Chicago,

Illinois, not its California offices.  *See* [Ex. 17] (current Motorola job openings for carrier marketing consultant in Chicago, Illinois).  Dallas/Fort Worth, and its international airport, is centrally located to all witnesses, whether located on the East Coast, the West Coast, or Korea. *See AT&T IP, Inc. v. Airbiquity Inc.,* Case No. 3:08-cv-1637-M, Doc. 25 at 9 (N.D. Tex. Mar. 24, 2009 (Lynn, J.) (noting that "Dallas is centrally located to the witnesses who reside in or near Washington D.C., Chicago, Atlanta, and Seattle.").

While the bulk of documents generally reside with the infringers, that evidence "cannot be the sole focus of this Court's venue analysis." *Virtualagility*, 2014 U.S. Dist. LEXIS 12015, at *12.  Summit 6's documents are and have been in Dallas, Texas since 2009.  Courts also routinely look to third parties' documents to determine whether venue is proper. Prosecution counsel's documents are located in Reston, Virginia.  Third-party inventor Robin Fried produced documents in the prior Summit 6 litigation, and they were with him in the Czech Republic.  To the extent current board members have documents, they will be at Swiftsure's offices in Seattle, Washington.  To the extent that Peter Yoakum has documents, they will also be in Seattle, Washington.  And third parties with relevant accused product usage information, including Verizon and AT&T, each maintain large facilities in Dallas.  *See* Ex. 5.

Because of the wide geographical dispersion of documents and proof, all parties will suffer some transportation burden.  Thus, Defendants' convenience consideration receives less weight.  *See Frito-Lay N.A., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870 (E.D. Tex. 2012) (stating that "because the sources of proof originate from varied locations, this factor is neutral.").  Defendants' conclusory statements that its documents related to research, design, development, testing and marketing are located in California (or Seoul or Taiwan or Washington), are too vague to meet their burden.  Another court in Texas held that a remarkably

16
**– A585 –**

similar statement by Apple was too speculative to carry its burden that the NDCA was more convenient. *See Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 6:12-cv-0100-LED-JDL, 2013 WL 682849, at *3 (E.D. Tex. Feb. 22, 2013) (holding following statement too speculative: "virtually all Apple business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused products are located in or near Cupertino.").

As Summit 6's documents are located in this District, third-party documents are likely located in this District and/or elsewhere outside of California, Defendants' documents are scattered all over the world, and because Defendants support their assertions with only vague statements, this factor weighs against transfer.

## IV.    CONCLUSION

The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Based on the evidence in the instant case, the public and private interest factors do not weigh in favor of transfer:

The public interest factors also favor denial of transfer:

(1) the administrative difficulties flowing from court congestion: FAVORS NDTX;
(2) the local interest in having localized interests decided at home: FAVORS NDTX;
(3) the familiarity of the forum with the law that will govern the case: NEUTRAL;
(4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law: NEUTRAL;

The private interest factors favor denial of transfer:

(1) the relative ease of access to sources of proof: NEUTRAL;
(2) the availability of compulsory process to secure the attendance of witnesses: NEUTRAL;

(3) the cost of attendance for willing witnesses: FAVORS NDTX;
(4) all other practical problems that make trial of a case easy, expeditious, and inexpensive: FAVORS NDTX.

NDCA is not "clearly more convenient" than NDTX for trying the instant case. *See In re Volkswagen*, 545 F.3d at 315. In fact, after an objective review of the evidence and the factual background of the instant case, it is clearly more convenient for the case to go forward in the NDTX. Based on the evidence presented in their Motion to Transfer, Defendants have failed to meet their burden to show good cause that this case should be transferred away from NDTX to Defendants' preferred venue of NDCA. Therefore, Defendants motion should be denied.

18

Dated:  July 1, 2014                    Respectfully submitted,

                                        **MCKOOL SMITH, P.C.**

                                        By:  /s/ Douglas A. Cawley
                                        Douglas A. Cawley
                                        Lead Attorney
                                        Texas State Bar No. 04035500
                                        dcawley@mckoolsmith.com
                                        Theodore Stevenson III
                                        Texas State Bar No. 19196650
                                        tstevenson@mckoolsmith.com
                                        Phillip M. Aurentz
                                        Texas State Bar No. 24059404
                                        paurentz@mckoolsmith.com
                                        Ashley N. Moore
                                        Texas State Bar No. 24074748
                                        amoore@mckoolsmith.com
                                        Mitchell R. Sibley
                                        Texas State Bar No. 24073097
                                        msibley@mckoolsmith.com
                                        Richard A. Kamprath
                                        Texas State bar No. 24078767
                                        rkamprath@mckoolsmith.com
                                        McKool Smith, P.C.
                                        300 Crescent Court, Suite 1500
                                        Dallas, Texas 75201
                                        Telephone: (214) 978-4000
                                        Telecopier: (214) 978-4044

                                        Bradley W. Caldwell
                                        Texas State Bar No. 24040630
                                        bcaldwell@caldwellcc.com
                                        Caldwell Cassady & Curry
                                        2101 Cedar Springs Road, Suite 1000
                                        Dallas, Texas 75201
                                        Telephone: (214) 888-4848
                                        Telecopier: (214) 888-4849

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **SUMMIT 6 LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Richard A. Kamprath*
Richard A. Kamprath

**590**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| **Defendants.** | § | |

## APPENDIX IN SUPPORT OF PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANTS' MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

**DESCRIPTION**                                                                  **APPENDIX PAGES**

Declaration of Richard Kampreth

Exhibit 1 –      Jury Trial Transcript excerpts for VirnetX, Inc. v. Apple, Inc., U.S.D.C., Eastern District of Texas, Tyler Division, Civil Action No. 6:10-cv-417, dated Nov. 11, 2012      2-5

Exhibit 2 –      The Dallas Morning News article, dated Sept. 9, 2013      7-8

Exhibit 3 –      Tarrant County Appraisal District Business Property Page, dated May 27, 2014      10

Exhibit 4 –      Declaration of S. Pate, dated June 28, 2014      12-15

Exhibit 5 –      AT&T and Verizon headquarters information, dated July 1, 2014      17-22

Exhibit 6 –      Internet article from Silicon Valley Business Journal, dated February 5, 2014      24-27

Exhibit 7 –      U.S. District Courts Chart, dated March 13, 2013      29-31

Exhibit 8 –      Scheduling Order for Summit 6, LLC, v. HTC Corporation, et al., U.S.D.C., Northern District, Wichita Falls Division, Civil Action No. 7:14-cv-14-O, dated June 12, 2014      33-44

Exhibit 9 –      Jury Trial Transcript for Apple, Inc. v. Samsung Electronics Co, et al., U.S.D.C., Northern District of California, San Jose Division, Civil Action No. C-11-01846-LHK, dated July 30, 2012      46-71

Exhibit 10 –      Order for Kaneka Corporation v. JBS Hair, Inc., et al., U.S.D.C., Northern District of Texas, Dallas Division, Civil Action No. 3:10-cv-1430-P, dated July 5, 2011      73-87

Exhibit 11 –      Initial Disclosures of Defendant Motorola Mobility LLC for Summit 6, LLC, v. HTC Corporation, et al., U.S.D.C., Northern District, Wichita Falls Division, Civil Action No. 7:14-cv-14-O, dated June 20, 2014      89-96

Exhibit 12 –      Wichita Falls, Texas Per Diem Rates, dated July 1, 2014      98

Exhibit 13 –   Dallas, Texas Per Diem Rates, dated, July 1, 2014          100

Exhibit 14 –   Sunnyvale, Palo Alto, and San Jose, California Per
               Diem Rates, dated July 1, 2014                             102

Exhibit 15 –   San Francisco, California Per Diem Rates,
               dated July 1, 2014                                         104

Exhibit 16 –   LG Account Marketing Manager Job Information Sheet,
               dated April 16, 2014                                       106-107

Exhibit 17 –   Motorola Mobility Carrier Marketing Consultant
               Job Information Sheet, dated June 28, 2014                 109-110

Dated:  July 1, 2014

Respectfully submitted,

**MCKOOL SMITH, P.C.**

By: /s/ Douglas A. Cawley
Douglas A. Cawley
Lead Attorney
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Theodore Stevenson III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Phillip M. Aurentz
Texas State Bar No. 24059404
paurentz@mckoolsmith.com
Ashley N. Moore
Texas State Bar No. 24074748
amoore@mckoolsmith.com
Mitchell R. Sibley
Texas State Bar No. 24073097
msibley@mckoolsmith.com
Richard A. Kamprath
Texas State bar No. 24078767
rkamprath@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@caldwellcc.com
Caldwell Cassady & Curry
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Telecopier: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
SUMMIT 6 LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Richard A. Kamprath*
Richard A. Kamprath

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF RICHARD KAMPRETH IN SUPPORT OF
PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANTS'
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

I, Richard Kampreth, do state and declare as follows:

I am an attorney with the law firm of McKool Smith PC ("McKool Smith"), counsel for

Plaintiff Summit 6 LLC ("Summit 6") in this action.  I make this declaration in support of

Plaintiff Summit 6 LLC's Response to Defendants' Motion to Transfer to the Northern District

of California, filed herewith.  Unless otherwise stated, the matters contained in this declaration

are of my own personal knowledge and, if called as a witness, I could and would testify

competently to the matters set forth herein.

1.      Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the November 2, 2012 Jury Trial Transcript for VirnetX, Inc. v. Apple, Inc., United States District Court for the Eastern District of Texas, Tyler Division, Civil Action No. 6:10-cv-417.

2.      Attached hereto as Exhibit 2 is a true and correct copy of an internet article from The Dallas Morning News, dated September 9, 2013.

3.      Attached hereto as Exhibit 3 is a true and correct copy of the Tarrant County Appraisal District Business Property page for Motorola, dated May 27, 2014.

4.      Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of S. Pate, dated June 28, 2014.

5.      Attached hereto as Exhibit 5 is a true and correct copy of AT&T and Verizon headquarters information, dated July 1, 2014.

6.      Attached hereto as Exhibit 6 is a true and correct copy of an internet article from Silicon Valley Business Journal, dated February 5, 2014.

7.      Attached hereto as Exhibit 7 is a true and correct copy of a U.S. District Courts Chart, dated March 13, 2013.

8.      Attached hereto as Exhibit 8 is a true and correct copy of the Scheduling Order for Summit 6, LLC, v. HTC Corporation, et al., United States District Court for the Northern District, Wichita Falls Division, Civil Action No. 7:14-cv-14-O., dated June 12, 2014.

9.      Attached hereto as Exhibit 9 is a true and correct copy of excerpts of the July 30, 2012 Jury Trial Transcript for Apple, Inc. v. Samsung Electronics Co, et al., United States District Court for the Northern District of California, San Jose Division, Civil Action No. C-11-01846-LHK.

**DECLARATION OF RICHARD KAMPRETH IN SUPPORT OF
PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANTS'
MOTION TO TRANSFER**

PAGE 2

10.     Attached hereto as Exhibit 10 is a true and correct copy of an Order for Kaneka Corporation v. JBS Hair, Inc., et al., United States District Court for the Northern District of Texas, Dallas Division, Civil Action No. 3:10-cv-1430-P, dated July 5, 2011.

11.     Attached hereto as Exhibit 11 is a true and correct copy of Initial Disclosures of Defendant Motorola Mobility LLC for Summit 6, LLC, v. HTC Corporation, et al., United States District Court for the Northern District, Wichita Falls Division, Civil Action No. 7:14-cv-14-O., dated June 20, 2014.

12.     Attached hereto as Exhibit 12 is a true and correct copy of Wichita Falls, Texas Per Diem Rates, dated July 1, 2014.

13.     Attached hereto as Exhibit 13 is a true and correct copy of Dallas, Texas Per Diem Rates, dated, July 1, 2014.

14.     Attached hereto as Exhibit 14 is a true and correct copy of Sunnyvale, Palo Alto, and San Jose, California Per Diem Rates, dated July 1, 2014.

15.     Attached hereto as Exhibit 15 is a true and correct copy of San Francisco, California Per Diem Rates, dated July 1, 2014.

16.     Attached hereto as Exhibit 16 is a true and correct copy of LG Account Marketing Manager Job Information Sheet, dated April 16, 2014.

17.     Attached hereto as Exhibit 17 is a true and correct copy of Motorola Mobility Carrier Marketing Consultant Job Information Sheet, dated June 28, 2014.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 1, 2014 in Dallas, Texas.

*s/ Richard Kampreth*
Richard Kampreth

**DECLARATION OF RICHARD KAMPRETH IN SUPPORT OF
PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANTS'
MOTION TO TRANSFER**

# Exhibit 1

APPX-0001

599
Case 7:14-cv-00014-O Document 2-3 Page 174 Filed 10/23/2014 PageID 1781
Case 15:01 Document 118-12 Filed 09/01/14 Page 10 of 119 PageID

Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
 2                           TYLER DIVISION
 3
     VIRNETX, INC.                    )
 4                                        DOCKET NO. 6:10cv417
        -vs-                           )
 5                                        Tyler, Texas
                                      )   8:23 a.m.
 6   APPLE, INC.                          November 2, 2012
 7
 8                      TRANSCRIPT OF TRIAL
                          MORNING SESSION
 9            BEFORE THE HONORABLE LEONARD DAVIS,
        UNITED STATES CHIEF DISTRICT JUDGE, AND A JURY
10
11
12                   A P P E A R A N C E S
13
14   FOR THE PLAINTIFFS:
15
     MR. DOUGLAS CAWLEY
16   MR. BRADLEY W. CALDWELL
     MR. JASON D. CASSADY
17   MR. JOHN AUSTIN CURRY
     McKOOL SMITH
18   300 Crescent Court, Ste. 1500
     Dallas, TX  75201
19
20
21   COURT REPORTERS:       MS. JUDITH WERLINGER
                            MS. SHEA SLOAN
22                          shea_sloan@txed.uscourts.gov
23
24   Proceedings taken by Machine Stenotype; transcript was
     produced by a Computer.
25
```

## Page 34

1    development for the CommNAT server, which is involved in
2    some way in Face -- in FaceTime, did you do a search to
3    see if any work you were doing was infringing others'
4    patents?
5         ANSWER:  No.
6         QUESTION:  Well, now that you do know
7    about the VirnetX patents, do you wish you had done
8    something differently with regards to your work on the
9    CommNAT server?
10        ANSWER:  I don't know.
11        QUESTION:  Does it mean anything to you
12   at all that the work that you have done is being accused
13   of infringing another's patent?
14        ANSWER:  I'm not sure how to answer that
15   question.  It's not making sense to me.  I'm sorry.
16        QUESTION:  Do you care that someone is
17   accusing you of the work you've done as infringing a
18   United States patent?
19        ANSWER:  Could you define -- what do you
20   mean by, do I care?
21        QUESTION:  I'm asking you, do you care?
22        ANSWER:  I understand that there is a
23   lawsuit going on, and I'm not sure there is any opinion
24   here that -- that I have at this point.
25        (End of video clip.)

## Page 35

1         MR. CASSADY:  And, finally, Mr. Vyrros.
2    V-Y-R-R-O-S.
3         (Video clip playing.)
4         QUESTION:  Will you please state your
5    name for the record, sir?
6         ANSWER:  My name is Andrew Vyrros.
7         QUESTION:  Mr. Vyrros, this is the second
8    time you've been deposed in this case; is that right?
9         ANSWER:  I believe it's the third time
10   actually.
11        QUESTION:  Have you reviewed the VirnetX
12   patents?
13        ANSWER:  No, I have not.
14        QUESTION:  Okay.  So you remember the two
15   other depositions that have been taken of you related to
16   the VirnetX patents, right?
17        ANSWER:  Yes.
18        QUESTION:  Okay.  And so after those
19   depositions, you did not go and get the VirnetX patents
20   and review them; is that right?
21        ANSWER:  That's correct.  I have not seen
22   the VirnetX patent.
23        QUESTION:  After you've been deposed
24   twice in this case and now a third time, you still have
25   not reviewed the VirnetX patents; is that fair?

## Page 36

1         ANSWER:  It seems very fair to me.
2         Why -- why would -- why should I do that?
3    Regardless of whether I should or shouldn't, that is
4    absolutely true; I have not looked at any of the VirnetX
5    patents.
6         QUESTION:  You were one of the primary
7    developers of the FaceTime functionality; is that right?
8         ANSWER:  That's correct.  I was one of
9    the primary developers of FaceTime.
10        (End of video clip.)
11        MR. CASSADY:  That concludes the
12   depositions, Your Honor.
13        THE COURT:  All right.  Who will be your
14   next witness?
15        MR. CAWLEY:  Thank you, Your Honor.  At
16   this time, VirnetX will call to the stand Patrick Gates.
17        THE COURT:  Mr. Gates.
18   PATRICK GATES, PLAINTIFF'S WITNESS, PREVIOUSLY SWORN
19        DIRECT EXAMINATION
20   BY MR. CAWLEY:
21   Q.  Good morning, Mr. Gates.
22   A.  Good morning.  Thank you.
23   Q.  Are you Apple's representative at this trial?
24   A.  Yes, sir.  That's correct.
25   Q.  That's why you've been sitting at the table

## Page 37

1    throughout the whole trial, right?
2    A.  That's right.
3    Q.  Who chose you to be at the trial?
4    A.  Actually, I don't know who made that decision.
5    I was approached to come here by our counsel in this
6    case, but I don't know who originally had the idea of me
7    having to do that.
8    Q.  So a lawyer approached you and asked you to be
9    here?
10   A.  Yes, sir.
11   Q.  But you don't know who it was at Apple that
12   made the decision that you're the one who -- who should
13   get that duty?
14   A.  That's correct.
15   Q.  Okay.  Where do you live?
16   A.  I live in San Francisco, California.
17   Q.  Well, welcome to Texas.
18   A.  Thank you.
19   Q.  Now, it's not convenient for Apple to bring
20   witnesses to the Eastern District of Texas for a patent
21   infringement trial, is it?
22   A.  Well, when you say convenient, Texas is not
23   that far.  It's a pretty short flight, so it's not a
24   huge deal.  You know, at the same time, I think we have
25   a lot of people that are working on products; and we

Page 38

1    would like to focus on those products. And there's
2    definitely a time tradeoff.
3        Q.  Do you remember when your deposition was
4    taken?
5        A.  Yes, sir.
6        Q.  And do you remember when you were asked this
7    question at your deposition?
8        A.  Sorry. Which question, whether it's
9    inconvenient to --
10       Q.  Yes, sir.
11       A.  I -- I think I remember that question.
12       Q.  Let me refresh your recollection. I'm
13   going -- I'm going to take a look at Page 35, Line 24
14   through 36, Line 4 of your deposition.
15           MR. CAWLEY: This is Clip 1. Can you
16   play Clip 1?
17           (Video clip playing.)
18           QUESTION: Is it inconvenient for Apple
19   to go to the Eastern District of Texas for a patent
20   infringement trial?
21           ANSWER: I don't think it's any less
22   convenient than any other place we go.
23           (End of video clip.)
24       Q.  (By Mr. Cawley) Is that the answer you gave in
25   your deposition, Mr. Gates?

Page 39

1        A.  I think it's a little bit different, the
2    wording.
3        Q.  Sir?
4        A.  I think it's a little bit different, sir.
5        Q.  Is that the answer that you gave in your
6    deposition?
7        A.  Sorry. I think you're asking was the answer I
8    just gave to the question of whether it was inconvenient
9    was the same as the one at the deposition?
10       Q.  No. Was -- was the testimony that the jury
11   just saw, did you give in the deposition --
12       A.  Ah, I understand. Yes. I believe that was a
13   video from my deposition.
14       Q.  Okay. And you don't disagree that what we
15   just saw is what you said under oath in your deposition?
16       A.  That's correct, sir.
17       Q.  Okay. Thank you.
18       Now, you first began working at Apple when
19   Apple bought a company that you already worked at,
20   right?
21       A.  That's correct.
22       Q.  And then after that, you left Apple and worked
23   at a couple of other companies and took some time off,
24   right?
25       A.  Yes, sir.

Page 40

1        Q.  And then you went to work for Apple a second
2    time?
3        A.  That's correct.
4        Q.  Do you know when the company, Apple, started?
5        A.  I believe I recall it was founded in the
6    mid-to-late 1970s.
7        Q.  Late '70s. So the company has been around
8    something like 35 years maybe, approximately?
9        A.  Give or take.
10       Q.  And you've been with them about seven years?
11       A.  I've been there for a total of about 10,
12   10-and-a-half years.
13       Q.  10-and-a-half, but counting the first time and
14   the second time?
15       A.  That's correct.
16       Q.  Okay. And your title at Apple is the director
17   of engineering, right?
18       A.  Yes, sir.
19       Q.  Now, does that mean that you oversee all of
20   Apple's engineers?
21       A.  No, sir. There are a number of directors of
22   engineering at Apple.
23       Q.  I see. How many engineers does Apple have?
24       A.  I really don't know the exact number. I
25   believe all the various engineering teams combined, add

Page 41

1    up to several thousand.
2        Q.  Several thousand engineers.
3           And how many total employees does Apple have?
4        A.  It's about 70,000.
5        Q.  So how many of those do you see -- excuse
6    me -- do you oversee as a director of engineering?
7        A.  If you combine all the teams that I'm
8    responsible for, it's about 40 engineers.
9        Q.  40 engineers?
10       A.  Yes, sir.
11       Q.  And who is your boss? Who do you report to?
12       A.  My boss is the Vice President of Engineering
13   for Internet Services, and her name is Patrice Gautier.
14       Q.  Mr. Gautier (sic)?
15       A.  Yes, sir.
16       Q.  And who does Mr. Gautier (sic) report to?
17       A.  She reports to the Senior Vice President of
18   Internet Services, Eddie Cue.
19       Q.  And who does Mr. Cue report to?
20       A.  Mr. Cue reports to Tom Cook, who is our CEO.
21       Q.  Okay. So the reason I'm asking you all these
22   questions, Mr. Gates, is -- is as Apple -- as the person
23   that Apple has chosen to bring to represent the company
24   at the trial, would you say that you're closer to the
25   top of the structure of Apple or closer to the middle?

602

Page 178

```
 1                    CERTIFICATION
 2
 3           I HEREBY CERTIFY that the foregoing is a
 4    true and correct transcript from the stenographic notes
 5    of the proceedings in the above-entitled matter to the
 6    best of our abilities.
 7
 8
 9    /s/ Shea Sloan
      SHEA SLOAN, CSR
10    Official Court Reporter
      State of Texas No.: 3081
11    Expiration Date:  12/31/12
12
13
      /s/ Judith Werlinger
14    JUDITH WERLINGER, CSR
      Deputy Official Court Reporter
15    State of Texas No.:  731
      Expiration Date  12/31/12
16
17
18
19
20
21
22
23
24
25
```

# Exhibit 2

APPX-0006


72 HOUR SALE SUN. MON. & TUES. June 29 June 30 July 1

Albertsons
You're in for something fresh!

experience something BETTER!
For the Best Customers in Town!

✔ Fast, Friendly Service!
✔ Best People ✔ Great Offers!
✔ Fresh Cut Meat & Quality Produce!

dallasnews    SportsDay    GuideLIVE    FD Luxe    neighborsgo    aldiatx

Subscribe    Sign In    My Account    Premium Site

OBITS    CLASSIFIEDS    AUTOS    JOBS    REAL ESTATE    SHOPPING

## dallasnews  BUSINESS

Powered by *The Dallas Morning News*

95° FORECAST    TRAFFIC

WALL STREET    AIRLINES    TECHNOLOGY    ECONOMY & YOU    TOP 100    REAL ESTATE    AUTOS

## Take a photo tour of the new Motorola/Flextronics smartphone plant in Fort Worth

Photo Gallery

5/18



Motorola/Flextronic holds an open house and tour of the new manufacturing plant in Fort Worth on Tuesday, August 27, 2013.

Photo: Louis DeLuca/Staff Photographer

### Related Content

Motorola factory expected to have large economic impact on Fort Worth



Join befor a gift card

      

233    14    0    Share 0

Photo Store

### Comments

To post a comment, log into your chosen social network and then add your comment below. Your comments are subject to our Terms of Service and the privacy policy and terms of service of your social network. If you do not want to comment with a social network, please consider writing a letter to the editor.

 Write a comment

**0 Comments**

Sort    Subscribe    RSS

DALLASNEWS.COM
Home
Blogs
Business
eBooks
Entertainment
Investigations
Life
Local
Nation & World
Opinion
Photos
Sports
Traffic
Weather

Autos
Real estate
Jobs
Shopping
Classifieds
Legal notices
Obituaries
Pets
Mobile Apps
---------
Site map

ADVERTISING
View ads
Place a Classified ad
Media kit
Special sections

MY ACCOUNT
Pay bill
Suspend delivery
Back copies
Newsstand feedback

CONTACT US
Careers
News tips
2014 DMN Intern Program
Feedback/questions

NEWSPAPER ARCHIVES

CELEBRATIONS
Submit a Celebration ad
View Celebration ads

RELATED SITES
AlDiaTX.com
FDLuxe.com
GuideLive.com
neighborsgo.com
Today's ePaper
Parade
DentonRC.com
Local business listings
Find&Save Local Shopping
The Texas Wedding Guide
Design Guide Texas

The Dallas Morning News

©2014, The Dallas Morning News Inc. All Rights Reserved | Terms of Service | Privacy Policy

# Exhibit 3

APPX-0009

Business Personal Property Display         http://www.tad.org/datasearch/bpp.cfm?Account=(.18LJ=X>JPH

**607**

Case 7:14-cv-00015-O   Case 15-501   Document 2-3   Document 118-1   Filed 09/01/14 Filed 10/23/2014   Page 182   Page 18 of 119   PageID 1789




🔶 Menu     🏠 | 🔍 | ◁▷ | **My eAccess Account**           🖨 Printable PDF Version | Locate on MapQuest Maps

# Tarrant Appraisal District
## Business Personal Property
### 05/25/2014

**Account Number:** 12679941     **View RE Account**

**Business Name:** Motorola Distribution Ctr

**Property Location:** 5650 Alliance Gateway Fwy, Fort Worth

[Show Bing Maps]

**Owner Information:** Motorola Mobility Inc

Attn Tax Dept

600 N US Highway 45

Libertyville Il 60048-5343

**Property Type:** Business Personal Property

**Taxing Jurisdictions:** 026 City of Fort Worth

099 Regional Water District

[Show Tax Rates]

220 Tarrant County

224 Tarrant County Hospital Dist

[Pay Your Taxes - Ad Valorem Tax Offices]

225 Tarrant County College Dist

911 Northwest ISD

This information is intended for reference only and is subject to change. It may not accurately reflect the complete status of the account as actually carried in TAD's database.

## Proposed Values for Tax Year 2014
The valuation process has not yet been completed for this account.

| 2014 Market Value | $0 |
|---|---|

### Tax Year 2013 - 2009 Five-Year Value History

| Tax Year | Appraised Total | Market Total |
|---|---|---|
| 2013 | $49,781,908 | $49,781,908 |
| 2012 | $155,170,194 | $155,170,194 |
| 2011 | $115,348,404 | $115,348,404 |
| 2010 | $122,266,377 | $122,266,377 |
| 2009 | $38,244,506 | $38,244,506 |

**2014 Rendition Received?** Y      **Worked?** Y      **Extension Filing Code:** NP

**2014 Notice Sent:**                                             **Protest Deadline:**

**Exemptions:** None

**Property Data**

**State Code:** L1 Commercial BPP

**SIC:** 5065 Electronic Parts & Equipment

**Real Estate Account:** 06795404

**Agent:** 00320C Ryan LLC

TAD Home   Report Questions and Comments   Website Updated: 05/20/2014   Property Data Updated: 05/25/2014
**Tarrant Appraisal District © 2014**   All rights reserved.

# Exhibit 4

APPX-00011

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| **Defendants.** | § | |

**DECLARATION OF SARAH PATE IN SUPPORT OF PLAINTIFF SUMMIT 6 LLC'S
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

I, SARAH PATE, hereby declare under penalty of perjury that the facts set forth herein are true and correct to be best of my personal knowledge, and, if called as a witness, I could and would testify competently as follows:

1.    I am over twenty-one (21) years of age, have never been convicted of a crime involving moral turpitude, and am in all respects fully competent to make this Declaration.

2.    I submit this declaration in connection with Summit 6's Opposition to Defendants' Motion to Transfer Venue.

3.    At all relevant times, I have been the Managing Director of Summit 6 LLC ("Summit 6"). I was President and Chief Operating Officer of AdMission Corporation, ("AdMission"), and I was the Executive Vice President of IPIX Corporation ("IPIX").

4.     Summit 6 is owner by assignment of U.S. Patent Nos. 6,895,557, 7,765,482, and 8,612,515 (the "Patents-in-Suit").

5.     In 2005, AdMission spun off from IPIX and set out to build a turnkey advertising platform that leveraged its unique technologies and experience in the online advertising market.

6.     In 2005, AdMission created a Product Requirements Document laying out the requirements for an application that would practice the technology patented in the Patents-in-Suit.

7.     Because AdMission devoted all its internal resources to the core technology and did not have the expertise needed to develop the application, Scott Lewis and I searched for development resources that could partner with AdMission in building this application.  In 2005, we traveled to Dallas where two of the identified development groups were located.

8.     After reviewing several potential candidates, AdMission entered into a Memo of Understanding with Sell.com in May of 2005. The joint marketing agreement was finalized in September of 2005.

9.     Sell.com was, and still is, located in Dallas, Texas.

10.     AdMission and Sell.com jointly developed the AdMission Marketplace product and signed an agreement for the product with Yellowpages.com June 2006 and several major newspapers.

11.     As of 2005 AdMission was working with the Dallas Morning News.  In June of 2006, AdMission signed The Houston Chronicle for the core AdMission product. In August of 2007, AdMission also signed the Belo Corporation, which is based in Dallas.

12.     In May of 2008, AdMission sold select assets of it's operating company including AdMission brand name and up to one year of transition support. The remaining entity became

APPX-00013

Summit 6 LLC as of March 2009. As of that time, the development, web, and operational support for Summit 6 was based in Dallas, Texas.

13.     For financial reasons, Summit 6 shared office space with its development partners in Dallas in 2009.  Summit 6 filed for NEXUS in Texas and leased office space from Sell.com at 14850 Quorum Drive, Suite 330, Dallas, TX 75254.  Around February of 2010, Summit 6 and Sell.com moved to Suite 325 in the same building and signed a lease with Antidote Education Co.

14.     Since its formation in 2009, Summit 6 has held its board meetings in north Texas, hold its corporate records in north Texas, meetings with our bankers and accountants for distributions to owners occur in north Texas, and meetings with attorneys advising for contract, copyright, human resources, taxes, and accounting matters are held in north Texas.

15.     Since its formation in 2009, Summit 6 has met routinely with Sell.com in Dallas, Texas to consult on strategy and business opportunities.

16.     Summit 6 also opened bank accounts at Chase Bank 550 Quorum Drive, Suite 100, Dallas, TX 75254 and a P.O. box at the Addison, Texas Post Office, which is closer to and more convenient for the main Dallas office.

17.     Laura Onsgard has worked as an accountant for Summit 6 at 6831 Blessing Dr. Dallas, TX 75214 since its formation.

18.     In January of 2012, Summit 6 moved its office to 4925 Greenville Ave, Suite 200, Dallas, TX 75206 and continued to share space with Sell.com in exchange for technical work and hosting of its website.  Summit 6's office remains at this address today.

19.     Summit 6 possesses over 30 boxes of hard-copy work documents, software packages, and other business materials, all located in Dallas, Texas.

APPX-00014

20.     Summit 6 has paid property taxes in Dallas every year since opening the LLC in Texas in 2009, and franchise taxes in 2013.

21.     While one inventor and I live in California, the two remaining inventors live outside the state of California.

22.     I am the only member of Summit 6's board that resides in California. All of Summit 6's other board members live outside the state of California.

23.     Seventy-four percent (74%) of the Summit 6 ownership lives outside of California.


I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Date: June 28th, 2014

_____

Sarah Pate, Managing Director

# Exhibit 5

APPX-00016

## AT&T Corporate Headquarters to Move to Dallas

### San Antonio, Texas, June 27, 2008

AT&T Inc. (NYSE:T), the world's largest telecom company, announced today that it will move its corporate headquarters from to its customers and operations throughout the world, and to the key technology partners, suppliers, innovation and human domestically and internationally.

The move will begin in the coming weeks and is expected to be complete around yearend. It is expected to involve about 700 Antonio-based employees.

"We're a growing global company with customers and operations around the world," said Randall Stephenson, AT&T chairman will benefit our long-term growth prospects and human resources needs, and our ability to operate more efficiently, better se the future.

"San Antonio is a great city with much to offer and it's been good for AT&T as we've grown from primarily a five-state local p company," Stephenson said. "San Antonio will continue to be a major operations and employment center for us."

Following the move, AT&T will have about 1,700 more employees in San Antonio than before it relocated its corporate headq The company's Telecom Operations group, which serves residential and regional business customers in 22 U.S. states, will re

Moving to Dallas puts AT&T's corporate headquarters near many of its key technology suppliers and other telecom companie as Alcatel-Lucent, Cisco, Ericsson, Fujitsu, Huawei, Nokia, Nortel, RIM and Samsung. The Dallas area is home to one of the c companies, nearly 1,300 strong with 45,000 employees.

With customers and operations in all 50 U.S. states and 160 countries, air travel to and from Dallas will be more convenient, airport is the third largest in the U.S. and one of the top six in the world, offering daily nonstop service to 35 international an enjoys a second major airport; Love Field — the 50th largest U.S. airport — offers more than 160 nonstop flights daily.

Being headquartered near leading air transportation facilities is critical to global companies like AT&T as the airline industry c flights amid higher fuel prices and industry economic pressures.

Atlanta will continue to be the headquarters for AT&T's Mobility group. New Jersey will continue to be the headquarters for th and AT&T Labs. St. Louis will continue as home to the company's Directory operations.

#### About AT&T

*AT&T Inc. (NYSE:T) is a premier communications holding company. Its subsidiaries and affiliates, AT&T operating companies, are the prov around the world. Among their offerings are the world's most advanced IP-based business communications services and the nation's leadin services. In domestic markets, AT&T is known for the directory publishing and advertising sales leadership of its Yellow Pages and YELLOW licensed to innovators in such fields as communications equipment. As part of its three-screen integration strategy, AT&T is expanding its T ranked No. 1 on Fortune magazine's World's Most Admired Telecommunications Company list and No. 1 on America's Most Admired Telecom information about AT&T Inc. and the products and services provided by AT&T subsidiaries and affiliates is available at www.att.com.*

*© 2008 AT&T Intellectual Property. All rights reserved. AT&T, the AT&T logo and all other marks contained herein are trademarks of AT&T companies.*

**615**

Case 15-1   Document 2-3   Page 190   Filed: 10/23/2014

APPX-00018

# Investor Relations

## To contact the company:

Our headquarters mailing address is

208 S. Akard St.
Dallas, TX 75202

Our main telephone number is (210) 821-4105. *(Please note that while AT&T's corporate headquarters are in Dallas, the main telephone number uses a San Antonio area code.)*

### *Investor Relations*

*Company Information*

*Corporate Governance*

*Financial Reporting*

*Stock Information*

*Stockholder Services*

*Investor News*

*Calendar*

*Investor Contacts*

*FAQ*

**- A616 -**

**APPX-00019**

**Stock Quote** (NYSE:T)

| | |
|---|---|
| Price | $35.45 |
| Last Trade | 12:27 PM |
| | Jul 1 2014 |
| Change | ▲ $+0.09 |
| Change (%) | +0.24% |
| Volume | 10,492,571 |
| 52 Week Low | $31.74 |
| 52 Week High | $36.86 |
| Day Low | $35.15 |
| Day High | $35.48 |

Price Quotes/Charts

## Related Content

AT&T Senior Executive Biographies
Citizenship and Sustainability
Diversity
Innovation

## AT&T 2014 Annual Meeting of Stockholders

2014 Proxy Statement
2013 Annual Report
2014 Annual Meeting Final Voting Results

**- A617 -**

APPX-00020



Home  |  Find Property  |  Contact Us

**NAVIGATION LINKS**

- DCAD Videos
- Annual Report
- About DCAD
- Search Appraisals
  - By Owner
  - By Account
  - **By Address**
  - By Business
- Find Property on Map
- Online BPP Rendition
- Online TaxRep Website
- Forms
- Data Products
- GIS Data Products
- Exemptions
- Property Valuation Process
- Protest Process
- Paying Taxes
- Local Tax Offices
- Taxing Unit Rates
- F.A.Q.
- Calendar
- Certified Value Summaries
- Certified Comparisons
- Certification Reports
- Preliminary Value Summary
- Average House Values
- Reappraisal Plan
- Water & Electricity Usage
- Administration
- Human Resources
- Links
- Contact Us
- On-line Help
- DCAD Mobile Site

# Find Property By Street Address

**Search By:**  **Owner Name**   **Account Number**   **Street Address**   **Business Name**   **Map**

If you would like to access the **uFile** System to protest your account, please use the search function from this screen to locate your account and then select the **uFile Online Protest** link from the Account detail screen.

| Address Number | Direction | Street Name (required) |
|---|---|---|
| 2400 | | GLENVILLE |

| Building | Suite | City |
|---|---|---|
| | | RICHARDSON |

**Account Type**

☑ RESIDENTIAL
☑ COMMERCIAL
☑ BPP

**Address Number Range Search**

| From | To | |
|---|---|---|
| | | Search |

Hints:

- Do not enter the street type such as Street, Drive or Lane.
- To find a single address, fill in one Address Number field. To find a range of addresses, fill in both.
- If no results are found, try entering less information.
- Use % as a wildcard. For example, %oak in the street name to find all streets with "oak" somewhere in the name.
- If searching for a one letter street name, such as X,Y or Z street, you must add the wildcard after the letter. For Example, X%.

The Residence Homestead Exemption Application form is available from the details page of your account. You may search for your account by owner, by account or by address. Click the BLUE property address link to view the details of your account. Select the link "Print Homestead Exemption Form".

| | < PREV matches 1 - 6 of 6 properties. NEXT > | | | | Page 1 of 1 |
|---|---|---|---|---|---|
| # | Property Address | City | Owner Name / Business Name | Total Value | Type |
| 1 | 2400 GLENVILLE DR | RICHARDSON | HEWLETT PACKARD COMPANY DBA: HEWLETT PACKARD COMPANY TX401 | $1,450 | BPP |
| 2 | 2400 N GLENVILLE DR | RICHARDSON | MCI WORLDCOM NETWK SVCS | $25,840,000 | COMMERCIAL |
| 3 | 2400 N GLENVILLE DR | RICHARDSON | VERIZON SERVICES CORP DBA: VERIZON SERVICES CORP | $1,070,880 | BPP |
| 4 | 2400 N GLENVILLE DR | RICHARDSON | VERIZON DATA SERVICES LLC DBA: VERIZON DATA SERVICES LLC | $107,810 | BPP |
| 5 | 2400 N GLENVILLE DR | RICHARDSON | VERIZON LABORATORIES INC DBA: VERIZON LABORATORIES INC | $23,720 | BPP |

**- A618 -**       **APPX-00021**

| | | | | | |
|---|---|---|---|---|---|
| 6 | 2400 N GLENVILLE DR | RICHARDSON | VERIZON ONLINE LLC DBA: VERIZON ONLINE LLC | $52,050 | BPP |
| | < PREV   matches 1 - 6 of 6 properties.    NEXT > | | | | Page 1 of 1 |

© 2014 Dallas Central Appraisal District.
All Rights Reserved.

- A619 -

APPX-00022

# Exhibit 6

APPX-00023

- [Cities](#)
- [Business Directory](#)
- [Book of Lists](#)
- [Upstart Business Journal](#)
- [Bizwomen](#)

- [Contact Us](#)
- [Sign In](#)

- [Like on Facebook](#)
- [Follow on Twitter](#)
- [Follow on LinkedIn](#)
- [Follow on Google+](#)

[Silicon Valley Business Journal](#)

Search

- [Home](#)
- [News](#)
- [People](#)
- [Events](#)
- [Jobs](#)
- [Resources](#)
- [Store](#)
-  [Subscribe Now](#)Limited Time Offer

## Sign Up for the TechFlash Newsletter

[See all newsletters](#)

Enter your email address    Sign Up

Feb 5, 2014, 2:36pm PST

# Apple's Austin campus looks nothing like the Spaceship



[Eric Van Susteren](#)

**- A621 -**                    APPX-00024

**622**

Digital Producer- Silicon Valley Business Journal
Email  |  Twitter

Our colleagues in Texas got pictures of the Apple Inc. campus that's under construction in Austin, where the company plans to spend at least $282 million to develop 513,000 square feet of office and bring 3,635 jobs.

Apple, Silicon Valley's largest public company, has already spent at least $27 million on the site's design and construction and has issued temporary certificates of occupancy for two buildings, totaling 290,000 square feet. Another four buildings are in the early stages of permitting.

The city and the Texas Enterprise Fund will offer the company $30 million in incentives to build the project.

The buildings there resemble some of the Silicon Valley buildings the Cupertino headquarters occupies, with few hints of the architectural ambitions represented by the company's Spaceship campus.

Be sure to check out the Austin Business Journal's full report.

Eric Van Susteren is the Digital Producer at the Silicon Valley Business Journal.

**Industries:**

Technology

**We Recommend**                                                                 Promoted by Taboola

   

Tesla releases new features for Model S as appetizer for delayed Mo…

Apple keeps locking up new property even as its 'spaceship' office build …

Marissa Mayer has more Yahoos looking to stay in-house, report says

Reid Hoffman on the PayPal Mafia, who inspires him and why h…

**From Around The Web**

   

Supplier Network Fees: Pay-to-Play Or Pay For Value?
Nipendo

Better Think Twice About That Mortgage Payment
One Smart Penny

Little Known Way To Pay Off Mortgage
Daily Mortgage Monitor

8 Awesome Discontinued Cars That We Want Back
Wall St. Cheat Sheet

# Trending

**623**

In Partnership with



- 

[Sam Liccardo](#)

- 

[Mark McLaughlin](#)

- 

[Pat Gelsinger](#)

- 

[Jeremy Stoppelman](#)

- 

**- A623 -**

APPX-00026

Case 15-c-01   Document 2-3   Page 199   Filed: 10/23/2014

**624**

[Lloyd Carney](#)

- A624 -

APPX-00027

# Exhibit 7

APPX-00028

Case 7:14-cv-00015-O Document 112-2 Filed 10/23/14 Page 1 of 3 PageID 1808

Table C-5.
U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2013

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 198,301 | 8.4 | 43,423 | 5.0 | 128,042 | 8.5 | 24,058 | 12.7 | 2,778 | 23.8 |
| DC | 1,974 | 8.9 | 721 | 7.3 | 1,201 | 9.8 | 10 | 38.4 | 42 | 43.5 |
| 1ST | 4,940 | 9.6 | 1,067 | 3.9 | 2,543 | 9.6 | 1,228 | 15.2 | 102 | 27.5 |
| ME | 373 | 7.8 | 137 | 6.2 | 220 | 8.8 | 12 | 19.3 | 4 | - |
| MA | 2,434 | 8.3 | 623 | 3.0 | 803 | 6.9 | 953 | 14.9 | 55 | 30.6 |
| NH | 468 | 9.6 | 81 | 3.9 | 206 | 6.7 | 169 | 15.2 | 12 | 19.3 |
| RI | 652 | 13.7 | 85 | 8.0 | 522 | 14.7 | 34 | 16.1 | 11 | 40.4 |
| PR | 1,013 | 11.6 | 141 | 6.7 | 792 | 11.6 | 60 | 19.9 | 20 | 26.0 |
| 2ND | 18,455 | 8.8 | 3,799 | 5.0 | 10,820 | 8.6 | 3,515 | 12.1 | 321 | 32.2 |
| CT | 1,656 | 10.7 | 776 | 8.0 | 760 | 11.1 | 69 | 21.5 | 51 | 37.9 |
| NY,N | 1,163 | 11.8 | 251 | 5.2 | 580 | 11.5 | 300 | 17.3 | 32 | 28.8 |
| NY,E | 5,533 | 8.8 | 1,162 | 5.5 | 3,096 | 8.6 | 1,176 | 11.7 | 99 | 31.0 |
| NY,S | 8,441 | 8.3 | 1,198 | 4.4 | 5,176 | 7.5 | 1,944 | 11.4 | 123 | 28.8 |
| NY,W | 1,389 | 7.4 | 377 | 2.9 | 976 | 9.6 | 24 | 34.6 | 12 | 67.1 |
| VT | 273 | 8.9 | 35 | 3.8 | 232 | 9.5 | 2 | - | 4 | - |
| 3RD | 23,315 | 9.2 | 2,467 | 4.0 | 17,015 | 9.3 | 3,506 | 11.9 | 327 | 27.0 |
| DE | 1,226 | 8.0 | 441 | 4.6 | 648 | 8.8 | 78 | 14.3 | 59 | 34.2 |
| NJ | 5,908 | 6.1 | 544 | 4.0 | 3,326 | 3.6 | 1,974 | 13.2 | 64 | 35.1 |
| PA,E | 12,617 | 14.6 | 579 | 3.1 | 10,626 | 17.9 | 1,290 | 9.4 | 122 | 17.8 |
| PA,M | 1,472 | 7.7 | 459 | 4.7 | 913 | 8.1 | 57 | 22.4 | 43 | 28.6 |
| PA,W | 1,870 | 6.2 | 325 | 2.9 | 1,491 | 7.0 | 33 | 24.3 | 21 | 29.2 |
| VI | 222 | 18.0 | 119 | 14.0 | 11 | 11.5 | 74 | 19.9 | 18 | 29.0 |
| 4TH | 12,392 | 7.4 | 2,302 | 5.3 | 8,437 | 7.1 | 1,467 | 10.4 | 186 | 20.2 |
| MD | 3,191 | 7.1 | 404 | 6.3 | 2,151 | 5.6 | 582 | 13.5 | 54 | 30.1 |
| NC,E | 1,012 | 9.0 | 300 | 7.8 | 697 | 9.5 | 7 | - | 8 | - |
| NC,M | 551 | 10.1 | 361 | 9.0 | 159 | 12.2 | 22 | 16.4 | 9 | - |
| NC,W | 930 | 8.2 | 298 | 4.8 | 533 | 8.7 | 84 | 14.7 | 15 | 22.6 |
| SC | 2,484 | 8.8 | 265 | 3.7 | 2,051 | 9.0 | 135 | 12.1 | 33 | 25.4 |
| VA,E | 2,358 | 5.0 | 330 | 3.0 | 1,434 | 4.1 | 554 | 7.7 | 40 | 11.1 |
| VA,W | 678 | 8.0 | 167 | 3.8 | 449 | 8.9 | 46 | 12.5 | 16 | 12.0 |
| WV,N | 428 | 8.8 | 115 | 6.4 | 302 | 9.2 | 8 | - | 3 | - |
| WV,S | 760 | 8.7 | 62 | 2.6 | 661 | 9.1 | 29 | 17.9 | 8 | - |

APPX-00029

# Table C-5. (March 31, 2013—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **22,514** | **10.9** | **4,961** | **6.0** | **15,381** | **12.2** | **1,838** | **13.6** | **334** | **20.2** |
| LA,E | 6,391 | 26.0 | 169 | 0.9 | 5,315 | 30.4 | 861 | 14.4 | 46 | 18.1 |
| LA,M | 579 | 12.1 | 192 | 10.3 | 347 | 12.1 | 24 | 16.6 | 16 | 35.0 |
| LA,W | 1,358 | 12.5 | 489 | 8.9 | 777 | 14.0 | 58 | 20.1 | 34 | 24.1 |
| MS,N | 581 | 10.6 | 196 | 7.9 | 215 | 10.4 | 155 | 14.2 | 15 | 22.2 |
| MS,S | 1,392 | 10.8 | 631 | 9.2 | 715 | 11.7 | 23 | 19.5 | 23 | 18.4 |
| TX,N | 3,200 | 6.8 | 603 | 5.4 | 2,547 | 7.1 | 4 | - | 46 | 20.2 |
| TX,E | 2,234 | 8.7 | 572 | 6.9 | 1,593 | 9.0 | 33 | 24.4 | 36 | 25.5 |
| TX,S | 4,506 | 7.5 | 1,402 | 4.3 | 2,454 | 8.4 | 581 | 10.2 | 69 | 19.8 |
| TX,W | 2,273 | 7.0 | 707 | 6.2 | 1,418 | 6.6 | 99 | 15.8 | 49 | 19.0 |
| **6TH** | **16,864** | **8.9** | **4,882** | **4.6** | **8,073** | **9.0** | **3,737** | **12.5** | **172** | **24.9** |
| KY,E | 1,187 | 8.3 | 158 | 4.6 | 994 | 8.4 | 24 | 21.8 | 11 | 23.2 |
| KY,W | 1,114 | 8.5 | 323 | 4.5 | 752 | 9.4 | 31 | 18.4 | 8 | - |
| MI,E | 4,388 | 7.7 | 997 | 3.1 | 1,559 | 5.3 | 1,795 | 13.2 | 37 | 20.4 |
| MI,W | 1,143 | 7.0 | 210 | 1.7 | 668 | 6.8 | 249 | 11.9 | 16 | 23.1 |
| OH,N | 3,239 | 8.9 | 864 | 4.2 | 1,533 | 12.5 | 819 | 9.6 | 23 | 24.7 |
| OH,S | 2,266 | 9.9 | 869 | 5.5 | 717 | 11.1 | 654 | 13.3 | 26 | 31.9 |
| TN,E | 1,238 | 10.4 | 578 | 5.5 | 509 | 12.4 | 132 | 14.2 | 19 | 22.3 |
| TN,M | 1,208 | 10.4 | 175 | 10.0 | 1,005 | 10.2 | 10 | 19.3 | 18 | 26.3 |
| TN,W | 1,081 | 10.7 | 708 | 9.5 | 336 | 11.5 | 23 | 22.8 | 14 | 23.5 |
| **7TH** | **15,666** | **7.6** | **4,480** | **5.4** | **8,717** | **6.9** | **2,270** | **12.7** | **199** | **27.6** |
| IL,N | 8,741 | 6.6 | 2,519 | 5.8 | 5,404 | 6.2 | 714 | 11.5 | 104 | 33.7 |
| IL,C | 724 | 9.0 | 291 | 7.1 | 412 | 9.7 | 6 | - | 15 | 36.7 |
| IL,S | 1,141 | 11.0 | 519 | 11.7 | 589 | 10.2 | 11 | 32.3 | 22 | 24.5 |
| IN,N | 1,293 | 9.9 | 399 | 3.2 | 407 | 8.7 | 469 | 16.3 | 18 | 29.9 |
| IN,S | 2,053 | 9.2 | 277 | 3.4 | 944 | 6.9 | 817 | 12.5 | 15 | 24.8 |
| WI,E | 1,045 | 6.7 | 218 | 3.2 | 790 | 7.2 | 25 | 16.3 | 12 | 16.4 |
| WI,W | 669 | 6.0 | 257 | 2.5 | 171 | 6.6 | 228 | 11.2 | 13 | 16.4 |
| **8TH** | **13,983** | **12.2** | **4,887** | **7.1** | **8,027** | **13.6** | **909** | **13.3** | **160** | **21.9** |
| AR,E | 4,204 | 46.3 | 1,084 | 47.1 | 3,091 | 45.7 | 5 | - | 24 | 19.6 |
| AR,W | 863 | 11.7 | 121 | 8.5 | 722 | 11.8 | 3 | - | 17 | 18.8 |
| IA,N | 406 | 9.7 | 85 | 7.6 | 311 | 9.8 | 1 | - | 9 | - |
| IA,S | 507 | 7.9 | 89 | 4.1 | 308 | 7.1 | 99 | 14.7 | 11 | 23.5 |
| MN | 2,825 | 5.4 | 1,301 | 2.4 | 753 | 5.1 | 745 | 12.4 | 26 | 23.2 |
| MO,E | 2,232 | 10.6 | 1,038 | 9.6 | 1,159 | 11.0 | 9 | - | 22 | 22.1 |
| MO,W | 2,054 | 8.4 | 1,010 | 4.4 | 987 | 11.0 | 35 | 17.2 | 22 | 18.9 |
| NE | 496 | 9.0 | 36 | 2.8 | 430 | 9.1 | 11 | 17.8 | 19 | 28.8 |
| ND | 159 | 8.4 | 8 | - | 150 | 8.5 | 0 | - | 1 | - |
| SD | 237 | 11.4 | 115 | 10.2 | 116 | 12.4 | 1 | - | 5 | - |

Table C-5. (March 31, 2013—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
|---|---|---|---|---|---|---|---|---|---|---|
| **9TH** | **34,756** | **6.7** | **9,346** | **4.7** | **22,196** | **6.8** | **2,750** | **13.8** | **464** | **23.4** |
| AK | 250 | 9.2 | 53 | 7.4 | 187 | 9.0 | 2 | - | 8 | - |
| AZ | 2,538 | 7.0 | 82 | 2.4 | 2,388 | 7.0 | 42 | 24.2 | 26 | 31.0 |
| CA,N | 5,054 | 6.4 | 827 | 3.6 | 2,747 | 4.7 | 1,424 | 12.5 | 56 | 27.5 |
| CA,E | 3,046 | 8.3 | 1,119 | 5.8 | 1,832 | 9.6 | 68 | 18.2 | 27 | 30.2 |
| CA,C | 12,112 | 5.4 | 4,097 | 4.9 | 7,716 | 5.5 | 146 | 16.8 | 153 | 20.0 |
| CA,S | 2,316 | 6.7 | 321 | 3.5 | 1,251 | 5.2 | 709 | 12.9 | 35 | 26.9 |
| HI | 673 | 9.4 | 333 | 7.0 | 265 | 9.3 | 55 | 22.8 | 20 | 15.6 |
| ID | 513 | 10.2 | 43 | 1.7 | 375 | 9.8 | 80 | 19.0 | 15 | 27.3 |
| MT | 442 | 9.1 | 166 | 4.5 | 161 | 8.9 | 106 | 14.3 | 9 | - |
| NV | 2,207 | 8.8 | 343 | 6.0 | 1,753 | 9.0 | 84 | 10.2 | 27 | 37.8 |
| OR | 1,805 | 10.1 | 676 | 7.3 | 1,079 | 11.2 | 7 | - | 41 | 21.4 |
| WA,E | 703 | 9.4 | 315 | 4.9 | 372 | 13.1 | 9 | - | 9 | - |
| WA,W | 3,042 | 6.2 | 942 | 2.8 | 2,051 | 7.6 | 11 | 16.4 | 38 | 20.0 |
| GUAM | 26 | 16.2 | 5 | - | 16 | 18.4 | 5 | - | 0 | - |
| NMI | 29 | 24.5 | 24 | 19.8 | 3 | - | 2 | - | 0 | - |
| **10TH** | **8,600** | **8.4** | **2,268** | **5.0** | **5,069** | **8.5** | **1,100** | **13.6** | **163** | **22.7** |
| CO | 2,602 | 6.0 | 749 | 3.7 | 1,654 | 6.2 | 139 | 18.6 | 60 | 23.1 |
| KS | 1,305 | 7.6 | 373 | 4.5 | 808 | 8.2 | 102 | 18.1 | 22 | 24.9 |
| NM | 890 | 8.6 | 316 | 6.6 | 332 | 8.7 | 226 | 11.3 | 16 | 24.0 |
| OK,N | 729 | 12.0 | 55 | 4.1 | 652 | 12.3 | 13 | 19.8 | 9 | - |
| OK,E | 396 | 11.7 | 251 | 10.3 | 135 | 13.1 | 8 | - | 2 | - |
| OK,W | 1,188 | 8.7 | 297 | 3.7 | 447 | 8.1 | 423 | 11.7 | 21 | 16.4 |
| UT | 1,277 | 11.2 | 172 | 6.7 | 984 | 10.9 | 98 | 22.2 | 23 | 38.8 |
| WY | 213 | 10.1 | 55 | 5.8 | 57 | 6.3 | 91 | 12.2 | 10 | 15.6 |
| **11TH** | **24,842** | **7.3** | **2,243** | **4.0** | **20,563** | **7.2** | **1,728** | **12.7** | **308** | **18.9** |
| AL,N | 2,631 | 7.9 | 126 | 5.3 | 2,448 | 7.9 | 22 | 25.2 | 35 | 21.9 |
| AL,M | 639 | 10.2 | 51 | 4.1 | 532 | 9.7 | 41 | 16.3 | 15 | 23.2 |
| AL,S | 566 | 8.4 | 93 | 3.7 | 455 | 8.8 | 11 | 15.8 | 7 | - |
| FL,N | 1,277 | 7.4 | 41 | 3.9 | 1,210 | 7.4 | 12 | 10.6 | 14 | 21.1 |
| FL,M | 7,451 | 10.2 | 410 | 5.5 | 6,833 | 10.2 | 129 | 18.4 | 79 | 20.5 |
| FL,S | 6,685 | 5.2 | 554 | 3.7 | 5,918 | 5.2 | 96 | 12.0 | 117 | 16.3 |
| GA,N | 4,236 | 6.4 | 480 | 2.6 | 2,331 | 4.7 | 1,401 | 11.6 | 24 | 20.9 |
| GA,M | 755 | 8.7 | 262 | 6.0 | 481 | 10.3 | 2 | - | 10 | 16.3 |
| GA,S | 602 | 8.1 | 226 | 5.8 | 355 | 9.7 | 14 | 25.0 | 7 | - |

NOTE: Median time intervals are not computed when fewer than 10 cases reported. This table excludes land condemnations, prisoner petitions, deportation reviews, recovery of overpayments, and enforcement of judgments. Includes cases filed in previous years as consolidated cases that thereafter were severed into individual cases. For fiscal years prior to 2001, this table included data on recovery of overpayments and enforcement of judgments.

Page 3 of 3

APPX-00031

# Exhibit 8

APPX-00032

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| Summit 6 LLC, et al., | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No.  7:14-CV-00014-O |
| | § | |
| HTC Corporation, et al., | § | |
| | § | |
|    Defendants. | § | |

## SCHEDULING ORDER

## I. SCHEDULING INSTRUCTIONS

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and the local rules of this Court (exception as modified herein), the Court, having considered the status report submitted by the parties, finds that the following schedule should govern the disposition of this case:

Unless otherwise ordered or specified herein, all limitations and requirements of the Federal Rules of Civil Procedure and the local rules of this Court must be observed.

> **Please note that the Court has attempted to adhere to the schedule requested by the parties.  In so doing, the Court assumes that the parties thoroughly discussed scheduling issues prior to submitting their status report and that the parties understand that the deadlines imposed in the Order are firmly in place, absent the few exceptions set forth below.**

1. **Trial Date:**  This case is **set for trial** on this Court's four week docket beginning **November 30, 2015** Counsel and the parties shall be ready for trial on **two days** notice at any time during this four week period.

2. **Patentee Serves Disclosure of Asserted Claims and Preliminary Infringement Contentions:** June 26, 2014.

3. **Patentee's Document Production Accompanying Disclosure**: June 26, 2014.

- 1 -

Case 3:17-cv-00019-D Document 18-2 Filed 09/21/14 Page 206 of 559 PageID 1481
Case 7:14-cv-00104-O Document 193-2 Filed 03/27/14 Page 2 of 10 PageID 4813
631

4. **Claim Construction:**

a. **Accused Infringer(s) Serve Preliminary Invalidity Contentions:** By **August 11, 2014** the accused infringer shall serve its preliminary invalidity contentions and produce all accompanying documents.

b. **Exchange of Proposed Terms and Claim Elements:** By **August 25, 2014** all parties shall exchange their respective proposed terms and claim elements for construction. All parties shall meet and confer regarding a list of proposed terms and claim elements for construction at a mutually agreeable time and place on or before **September 02, 2014.**

c. **Exchange of Preliminary Claim Constructions and Extrinsic Evidence:** By **September 15, 2014** all parties shall exchange their respective preliminary claim constructions and any extrinsic evidence.

d. **Joint Claim Construction and Prehearing Statement:** All parties shall meet and confer regarding a joint claim construction and prehearing statement at a mutually agreeable time and place on or before **October 9, 2014.** Plaintiff shall file the parties' joint claim construction and prehearing statement no later than **October 16, 2014.**

e. **Completion of Claim Construction Discovery:** The parties shall complete all discovery related to claim constructions by **November 17, 2014.**

f. **Claim Construction Briefing and Evidence:** Each party must serve and file a claim construction brief and any evidence supporting its claim construction on or before **December 30, 2014.** Each party may file a responsive brief and supporting evidence on or before **14 days** after the other party's brief is filed**.**

g. **Claim Construction Chart:** The parties must jointly prepare a claim construction chart. Plaintiff must submit the chart on or before **7 days** after Claim Construction Response Briefs are due under paragraph 4(f) of this order, in WordPerfect format, to: o'connor_orders@txnd.uscourts.gov and include the case number and the document number of the referenced motion in the subject line. Plaintiff must also submit a paper courtesy copy.

h. **Claim Construction Hearing:** To be scheduled by the Court if necessary.

- 2 -

                        APPX-00034

5. **Joinder of Parties or Amendment of Pleadings:** **September 10, 2014**, all motions requesting **joinder** of additional parties shall be filed.  By **September 24, 2014** all motions requesting leave to **amend** pleadings shall be filed.

6. **Final Contentions:** **30 days** after the Court's Claim Construction Ruling, the patentee shall make its <u>final infringement contentions</u>. The accused infringer(s) shall make <u>final invalidity contentions</u> on or before **50 days** after the Court's Claim Construction Ruling.

7. **Willfulness Disclosures:** The accused infringer(s) shall make all disclosures relating to willfulness on or before **10 days** after making final invalidity contentions.

8. **Dispositive Motions:** By **August 3, 2015,** all motions that would dispose of all or any part of this case (including motions for **summary judgment**) shall be filed.

9. **Experts:**

    **a. Designation of Expert(s) by:**  Unless otherwise stipulated or directed by order, all parties shall file a written designation of the name and address of each **expert witness** who will testify at trial shall otherwise comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure, on or before **April 6, 2015.** (Unless otherwise noted, all references to Rules in this Order shall refer to the Federal Rules of Civil Procedure.)

    **b. Rebuttal Expert(s):**  If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), the disclosures required under Rule 26(a)(2) shall be made within **30 days** after the disclosure made by the other party.

    **c. Challenges to Experts:**  The parties are directed to file any objections to, or motions to strike or exclude expert testimony (including *Daubert* motions),  no later than **October 26, 2015**.  *No challenges to experts shall be filed prior to August 3, 2015 without obtaining leave of court.*

10. **Mediation Deadline:**  The parties shall jointly select a mediator and mediate on or  before **June 3, 2015.**  Within **seven days** after the mediation, the parties shall

- 3 -

APPX-00035

**jointly prepare and file a written report**, which shall be signed by counsel for each party, detailing the date on which the mediation was held, the persons present (including the capacity of any representative), and a statement informing the Court of the effect of their mediation and whether this case has been settled by agreement of the parties.

11. <u>**Completion of Discovery**</u>: By **July 3, 2015**, all **discovery**, including discovery concerning expert witnesses, shall be completed. The parties may agree to extend this discovery deadline, provided (a) the extension **does not affect** the trial setting, dispositive motions deadline, challenges to experts deadline, or pretrial submission dates; and (b) **written notice** of the extension is given to the Court.

12. <u>**Pretrial Disclosures and Objections**</u>: Unless otherwise directed by order, the parties must make the disclosures required by Rule 26(a)(3)(A)-(B) by **October 21, 2015**. With respect to the identification of witnesses who will be called by deposition, the parties must also identify the portions of the deposition transcript that they intend to use. (Modification of Rule 26(a)(3)(A)(ii)). Within **14 days thereafter**, a party must serve and file a list disclosing any **objections**, together with the grounds therefor, to: (a.) the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); (b.) the admissibility of materials identified under Rule 26(a)(3)(A)(iii); and (c.) the use of any witnesses (except for expert objections) identified under Rule 26(a)(3)(A)(i),[1] if any. Objections not so disclosed, other than objections under Rules 402 and 403 of the

---

[1] Requiring parties to file objections to witnesses disclosed under Rule 26(a)(3)(A)(i) is a modification of the requirements of Rule 26(a)(3)(B), which only requires that the parties file objections to deposition designations (Rule 26(a)(3)(A)(ii)) and exhibits (Rule 26(a)(3)(A)(iii)).

Federal Rules of Evidence, are waived unless excused by the Court for good cause.

13. **Pretrial Materials:** By **October 21, 2015**, except as otherwise noted below, all **pretrial materials** shall be filed. Specifically, by this date:

a. **Pretrial Order:** A **joint pretrial order** shall be submitted by the Plaintiff's attorney which covers each of the matters listed in Local Rule 16.4 and which states the **estimated length of trial**. If an attorney for either party does not participate in the preparation of the joint pretrial order, the opposing attorney shall submit a separate pretrial order with an explanation of why a joint order was not submitted (so that the Court can impose sanctions, if appropriate). Each party may present its version of any disputed matter in the joint pretrial order; therefore, failure to agree upon content or language is **not an excuse for submitting separate pretrial orders**. (Modification of Local Rule 16.4). When the joint pretrial order is approved by the Court, it will control all subsequent proceedings in this case. If submitted on paper, the parties must submit the original and one copy of the proposed pretrial order (styled as the "Pretrial Order") directly to the Court's chambers. Do not file it with the clerk. The Court will direct the clerk to file it after the Court signs it. If submitted electronically, it must be transmitted to the electronic address used for receipt of proposed orders (o'connor_orders@txnd.uscourts.gov) and a paper courtesy copy must be physically delivered to the Court's chambers no later than **October 23, 2015**.

b. **Witness List:** A **list of witnesses** shall be filed by each party, which divides the persons listed into groups of "**probable witnesses**," "**possible witnesses**," "**experts**," and "**record custodians**" and which provides:

    (i)    the **name and address** of each witness;

    (ii)    a **brief narrative summary** of the testimony to be covered by each witness;

    (iii)    whether the witness has been **deposed;** and

    (iv)    the **expected duration** of direct or cross-examination of the witness.[2]

---

[2] Pursuant to Rule 16(c)(2)(O) and Section VII of the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan, the Court may impose a reasonable limit on the time allowed for presenting evidence in this case. *See* Commentary - 1993 Amendment to the Federal Rules of Civil Procedure (court should ordinarily impose time limits only after receiving appropriate submissions from the parties).

- 5 -

The Witness list will include three columns. The first column will contain a brief statement of the subject matter to be covered by a particular witness. The second column will bear the heading "Sworn" and the third column will bear the heading "Testified" so that the Court can keep track of the witnesses at trial.

If any witness needs an interpreter, please note this on the witness list. It is the obligation of the party offering such a witness to arrange for an interpreter to be present at trial.

(Modification of Local Rule 26.2(b))

**c.   Exhibit List and Deposition Testimony Designations:   A list of exhibits (including demonstrative exhibits)** and a **designation of portions of depositions** to be offered at trial shall be filed by each party. The list of exhibits shall describe with specificity the documents or things in numbered sequence. The documents or things to be offered as exhibits shall be numbered by attachment of gummed labels to correspond with the sequence on the exhibit list and identify the party submitting the exhibit.   (Modification of Local Rule 26.2(b), (c)).   Do not use letter suffixes to identify exhibits (e.g., designate them as 1, 2, 3, not as 1A, 1B, 1C).   The Exhibit list will include two columns, one bearing the heading "Offered" and the other bearing the heading "Admitted."

Each party's **exhibit list** shall be accompanied by a written statement, signed  by counsel for each party and state that, as to each exhibit shown on the list,

> **(i)**  the parties agree to the admissibility of the exhibit; or

> **(ii)**  the admissibility of the exhibit is objected to, identifying the nature and legal basis of any objection to admissibility and the name(s) of the party or parties urging the objection.

All parties shall cooperate in causing such statements to be prepared in a timely manner for filing with the exhibit lists.   Counsel for the party proposing to offer an exhibit shall be responsible for coordinating activities related to preparation of such a statement as to the exhibit the party proposes to offer.   This includes an obligation to make exhibits available for inspection in advance of the deadline for filing exhibit lists where a party needs to see exhibits to assess admissibility. The Court may exclude any exhibit offered at trial unless such a statement regarding the exhibit has been filed in a timely manner.   In addition, objections not identified in the statement may be waived.

- 6 -

Case 7:17-cv-00010-O Document 133-2 Filed 09/12/14 Page 46 of 212 PageID 2518
636
Case 7:14-cv-00010-O Document 133-2 Filed 09/12/14 Page 4 of 12 PageID 451

A **list of each party's exhibits** to which no objection will be lodged (preadmitted) must be submitted at the **pretrial conference**.[3] The Court expects the parties to confer and agree to admit the <u>majority</u> of their exhibits prior to trial.

**d. Jury Charge: Requested jury instructions and questions (annotated)**[4] shall be filed as set forth below. In order to minimize time after commencement of the trial in resolving differences in the language to be included in the Court's charge to the jury:

**(i)** Counsel for the Plaintiff shall deliver to counsel for Defendant by **October 26, 2015**, a copy of its proposed Court's charge to the jury.

**(ii)** Counsel for Defendant shall deliver to counsel for the Plaintiff by **October 28, 2015:** (A) a statement, prepared with specificity, of any objection his client had to any part of the proposed charge that counsel for Plaintiff has delivered pursuant to this paragraph and (B) the text of all additional instructions or questions his client wishes to have included in the Court's charge to the jury. Each objection and each such request shall be accompanied by citations of authorities supporting defendant's objection or request.

**(iii)** At 10:00 a.m. on **October 30, 2015**, the lead attorneys for the parties to this action shall meet face-to face at either (A) a mutually agreeable place, or (B) at the office of counsel for the Plaintiff located in Dallas, Texas or within 50 miles of the Dallas Division of the Northern District of Texas, for the purposes of (1) discussing, and trying to resolve, differences between the parties as to language to be included in the Court's charge to the jury and (2) identifying areas of disagreement that cannot be resolved. Such meeting shall be held for a sufficient length of time for there to be a meaningful discussion of all areas of disagreement and a meaningful attempt to accomplish agreement. Each attorney shall cooperate fully in all matters related to such a meeting.

**(iv)** By 2:00 p.m. on **November 2, 2015**, counsel for Plaintiff shall file a document titled "Agreed Charge" which in a single document shall contain, in logical sequence, all language to be included in the charge, including jury instructions and jury questions, about which the parties do

---

[3] This does not change the sequential manner in which each side should number its exhibits. In other words, a party should not separately number its exhibits into "objected to" and "unobjected to" categories.

[4] "Annotated" means that *each* proposed instruction shall be accompanied by citation to statutory or case authority and/or pattern instructions. It is not sufficient to submit a proposed instruction without citation to supporting authority.

- 7 -

not have disagreement and all language either party wishes to have included in the charge about which there is disagreement. All language of the proposed charge about which there is disagreement shall be (A) in bold face, (B) preceded by an indication of the identity of the party requesting the language, and (C) followed by a listing of citations of authorities in favor of and in opposition to the proposed language. Objections may be waived if not stated in the Agreed Charge.

Plaintiff must also send, in a WordPerfect-compatible format, the Agreed Charge to: o'connor_orders@txnd.uscourts.gov and include the case number and the document number of the referenced motion in the subject line.

    **e. Limited Number of Motions in Limine:** Motions in limine should not be filed as a matter of course. If filed counsel must file them with the Court and serve them on the opposing party by **November 2, 2015**. Responses must be filed with the Court and served on the opposing party by **November 16, 2015.** Replies to responses are not permitted except by leave of Court. Parties may file motions in limine on no more than **TEN discrete topics** (no subparts) that are actually in dispute. (good faith compliance with the conference requirements of Local Rule 7.1 will help to narrow issues that are *actually* in dispute). Motions in limine that contain boilerplate requests, that exceed ten topics or that cover undisputed issues will be stricken.

    **f. Voir Dire:** The parties shall file any **proposed voir dire questions** which the Court is requested to ask during its examination of the jury panel by **November 9, 2015.**

    **g. Trial Briefs:** Trial briefs may be filed by each party. In the absence of a specific order of the Court, trial briefs are not required, but are welcomed. The briefing should utilize Fifth Circuit and/or Supreme Court authority or relevant state authority to address the issues the parties anticipate will arise at trial.

**NOTE**: Deadlines in this order regarding pretrial materials are dates for **filing** or **delivery**, **not mailing** dates.

14.   **Exchange of Exhibits**:   **No later than November 16, 2015**, counsel for each party intending to offer exhibits shall **exchange a complete set** of marked exhibits (including demonstrative exhibits) with opposing counsel and shall **deliver, a set of marked exhibits to the Court's chambers** (except for large or voluminous items that cannot be easily reproduced).

15.   **Settlement Conference and Status Report:**

- 8 -

APPX-00040

a. <u>**Settlement Conference**</u>: **No later than November 16, 2015**, the parties and their respective lead counsel shall hold a **face-to-face meeting** to discuss **settlement** of this case. Individual parties and their counsel shall participate in person, not by telephone or other remote means. All other parties shall participate by a representative or representatives, in addition to counsel, who shall have unlimited settlement authority and who shall participate in person, not by telephone or other remote means. If a party has liability insurance coverage as to any claim made against that party in this case, a representative of each insurance company providing such coverage, who shall have full authority to offer policy limits in settlement, shall be present at, and participate in, the meeting in person, not by telephone or other remote means. At this meeting, the parties shall comply with the requirements of Local Rule 16.3.

b. <u>**Joint Settlement Report**</u>: Within **seven days** after the settlement conference, the parties shall **jointly prepare and file a written report**, which shall be signed by counsel for each party, detailing the date on which the meeting was held, the persons present (including the capacity of any representative), a statement regarding whether meaningful progress toward settlement was made, and a statement regarding the prospects of settlement.

16. <u>**Pretrial Conference**</u>: A **pretrial conference** will be conducted, in person, if the Court determines such a conference is necessary. If the Court anticipates imposing time limits on the presentation of evidence that *significantly* reduces the parties' estimated trial length, the Court will schedule a pretrial conference and advise of such deadlines so that counsel will have reasonable notice of such limits. Lead counsel for each party must attend, or, if the party is proceeding *pro se*, the party must attend. FED. R. CIV. P. 16 (c)(1) & (e). Lead counsel and *pro se* parties must have the authority to enter into stipulations and admissions that would facilitate the admission of evidence and reduce the time and expense of trial. *Id.* All pretrial motions not previously decided will be resolved at that time, and procedures for trial will be discussed. At the final pretrial conference, it should be possible to assign the specific date for trial during the four-week

APPX-00041

docket. **Telephone calls about the probable trial date prior to the final pretrial conference will not likely be beneficial to counsel or the Court staff.**

17.    <u>**Modification of Scheduling Order:**</u> As addressed above, this Order shall control the disposition of this case unless it is modified by the Court upon a showing of **good cause** and by **leave of court**. FED. R. CIV. P. 16(b)(4). Any request that the **trial date** of this case be modified must be made (a.) **in writing** to the Court; (b.) **before** the deadline for completion of discovery; and (c.) **in accordance with the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan ¶ V and Local Rule 40.1** (motions for continuance must be signed by the party as well as by the attorney of record).

18.    <u>**Sanctions:**</u>  Should any party or counsel fail to cooperate in doing anything required by this Order, such party or counsel or both may be subject to sanctions. If the *plaintiff* does not timely file the required (or other) pretrial material, the case will be dismissed.  If the *defendant/third party* does not timely file the required (or other) pretrial material, a default will be entered or the defendant/third party will not be permitted to present witnesses or exhibits at trial.  Fines or other sanctions, if appropriate, may also be imposed under Rule 16(f).  **Failure to list a witness, exhibit, or deposition excerpt as required by this Order** shall be grounds for exclusion of that evidence.  This does not apply to testimony, exhibits, or deposition excerpts offered for impeachment; further, the use of unlisted witnesses, exhibits, or deposition excerpts for rebuttal shall be permitted if the attorneys could not have reasonably anticipated their need for that evidence.

- 10 -

19. **Electronic Filing Procedures:** This case has been designated for enrollment in the Electronic Case Filing System (CM/ECF). (For more information on the ECF system, please see http://www.txnd.uscourts.gov/filing/ecf.html). Now that the case is designated an ECF case, all documents must be filed electronically; however, the Court still requires that courtesy copies of dispositive motions (and accompanying briefs and appendices) be sent to Chambers. Proposed orders are **required** to be submitted with **EVERY** motion. (Modification to Local Rule 7.1(c)). Proposed orders must be submitted via e-mail in a WordPerfect-compatible format as instructed in the CM/ECF system's "Proposed Orders" Event. The proposed orders must be e-mailed to: o'connor_orders@txnd.uscourts.gov and include the case number and the document number of the referenced motion in the subject line.

20. **Citations:** All briefs filed with the Court shall comply with the most recent edition of *The Bluebook: A Uniform System of Citation.* Particularly, counsel are directed to provide, where applicable, the subsections of cited statutes, and to provide pincites when citing cases, i.e., provide the page where the stated legal proposition can be found. *See Bluebook* Rules 3.2-3.4 (Columbia Law Review Ass'n et al. eds, 19th ed. 2010) (regarding pincites and subsections). Furthermore, if a brief contains citations to unpublished opinions or to LEXIS, counsel must attach copies of those cases to the brief.

21. **Notice:** Each attorney of record and any unrepresented party must review and adhere to the Local Civil Rules of the Northern District of Texas, which may be accessed at http://www.txnd.uscourts.gov/rules/localrules/lr_civil.html.

- 11 -

Additionally, each attorney of record and any unrepresented party must review

and abide by the standards of litigation conduct for attorneys appearing in civil

actions in the Northern District of Texas, as outlined in *Dondi Properties Corp. v.*

*Commerce Savings & Loan*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), which

may be accessed at http://www.txnd.uscourts.gov/publications/index.html.

22.    **Inquiries:**  Questions relating to this scheduling order or legal matters should be

presented in a motion, as appropriate.  Questions regarding electronic notice or

electronic case files shall be directed to the **Help Desk** at **1-(866) 243-2866**.


**SO ORDERED** on this **12th day of June, 2014.**


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

- 12 -

# Exhibit 9

APPX-00045

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN JOSE DIVISION

 4

 5

       APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
 6     CORPORATION,                )
                                   )  SAN JOSE, CALIFORNIA
 7                    PLAINTIFF,   )
                                   )  JULY 30, 2012
 8              VS.                )
                                   )  VOLUME 1
 9     SAMSUNG ELECTRONICS CO.,    )
       LTD., A KOREAN BUSINESS     )  PAGES 1-282
10     ENTITY; SAMSUNG             )
       ELECTRONICS AMERICA,        )
11     INC., A NEW YORK            )
       CORPORATION; SAMSUNG        )
12     TELECOMMUNICATIONS          )
       AMERICA, LLC, A DELAWARE    )
13     LIMITED LIABILITY           )
       COMPANY,                    )
14                                 )
                      DEFENDANTS.  )
15     _____

16            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
24

25
```

```
1     SPEAK OUT SO THAT SHE CAN CREATE A CLEAR TRANSCRIPT

2     FOR US.

3            I ALSO HAVE LAW CLERKS AND EXTERNS WHO

4     ARE LAW STUDENTS WHO ARE HELPING ME DURING THIS

5     SUMMER, MANY OF WHOM WILL ALL BE LEAVING DURING

6     THIS TRIAL, BUT IF YOU RECOGNIZE ANY OF OUR TEAM --

7     I'M GOING TO STATE THEIR NAMES AS WELL -- I'D LIKE

8     YOU TO RAISE YOUR HAND AND LET US KNOW IF YOU KNOW

9     OF ANY OF THESE INDIVIDUALS.

10           LAURIE DEAN, CONNIE CHAN, THOMAS FU.  I

11    HAVE OTHER FOLKS WHO ARE LEAVING BUT WHO PREVIOUSLY

12    WORKED ON THIS CASE AS WELL, JUAN VALDIEVIESO,

13    ASHER HODES, DANIEL KUO, KATE WEIS, MONICA LIENKE.

14           DOES ANYONE RECOGNIZE ANY OF THOSE NAMES,

15    HAVE HEARD OF THEM, HAD ANY PRIOR ACQUAINTANCE WITH

16    ANYONE?

17           IF YOU HAVE, WOULD YOU PLEASE RAISE YOUR

18    HAND.

19           THE RECORD SHOULD REFLECT THAT NO ONE HAS

20    RAISED THEIR HAND.

21           OKAY.  WELL, LET'S GET INTO THE QUESTION

22    OF DO YOU, A FAMILY MEMBER, CLOSE FRIEND, WORK FOR

23    OR HAVE EVER WORKED FOR APPLE, SAMSUNG, GOOGLE, OR

24    MOTOROLA?  SO I THINK A LOT OF HANDS ARE GOING TO

25    GO UP.  LET'S SEE.
```

```
 1              OKAY.  LET'S -- IF IT'S ALL RIGHT, LET'S

 2      JUST START WITH SEAT NUMBER 1 AND WE'LL JUST GO

 3      DOWN EACH ROW.

 4              OKAY.  GO AHEAD, PLEASE IS IT MS. HALIM.

 5              PROSPECTIVE JUROR:  YES.

 6              THE COURT:  GO AHEAD, PLEASE.

 7              PROSPECTIVE JUROR:  I HAVE A FRIEND WHO

 8      WORKS AT APPLE.

 9              THE COURT:  OKAY.  AND WOULD THAT IN ANY

10      WAY AFFECT YOUR ABILITY TO BE FAIR TO BOTH SIDES IN

11      THIS CASE?

12              PROSPECTIVE JUROR:  MAY NOT BE.

13              THE COURT:  YOU'RE NOT SURE?

14              PROSPECTIVE JUROR:  I'M NOT SURE.

15              THE COURT:  HAS THAT PERSON TOLD YOU

16      ANYTHING ABOUT THIS CASE?

17              PROSPECTIVE JUROR:  NO.

18              THE COURT:  ALL RIGHT.  WOULD THAT, YOUR

19      FRIENDSHIP, WOULD -- IS IT A CURRENT EMPLOYEE?

20              PROSPECTIVE JUROR:  YES.

21              THE COURT:  OKAY.  YOU EXPRESSED SOME

22      HESITATION ABOUT WHETHER THAT WOULD AFFECT YOUR

23      ABILITY TO BE FAIR AND IMPARTIAL.  IS THAT BECAUSE

24      YOU MIGHT SHOW SOME SYMPATHY TOWARDS ONE SIDE OR

25      THE OTHER?  OR TELL US A LITTLE BIT ABOUT THAT.
```

```
 1                PROSPECTIVE JUROR:  IT MIGHT.

 2                BUT ON THE OTHER HAND, I -- WELL, I'M

 3      ABOUT TO BUY A SMARTPHONE AND I'M NOT SURE WHICH

 4      ONE I'M GOING TO BUY STILL, SO THAT --

 5                (LAUGHTER.)

 6                PROSPECTIVE JUROR:  SO THAT MAKES ME

 7      THINK THAT MAYBE I'M NOT THAT PARTIAL, SO THAT'S

 8      ALL.

 9                BUT MY FRIEND THAT I HAVE AT APPLE IS

10      PRETTY CLOSE FRIEND.

11                THE COURT:  LET ME ASK, DURING THE COURSE

12      OF THIS TRIAL, COULD YOU NOT SEE THAT FRIEND AND

13      NOT TALK TO THAT FRIEND OR WOULD THAT BE A

14      DIFFICULTY FOR YOU?

15                PROSPECTIVE JUROR:  YEAH, I COULD.

16                THE COURT:  ALL RIGHT.  BECAUSE I'M GOING

17      TO ASK YOU TO DO THAT.

18                PROSPECTIVE JUROR:  I SEE.  OKAY.

19                THE COURT:  AND YOU CAN DO THAT; RIGHT?

20                PROSPECTIVE JUROR:  YES.

21                THE COURT:  OKAY.  DURING THIS TRIAL

22      YOU'RE GOING TO HEAR EVIDENCE BEING ADMITTED AND

23      I'M GOING TO INSTRUCT YOU ON THE LAW.  CAN YOU BASE

24      YOUR VERDICT, YOUR DECISION IN THIS CASE, SOLELY ON

25      WHAT YOU HEAR THAT'S ADMITTED DURING THIS TRIAL AND
```

```
1    THE LAW AS I INSTRUCT YOU?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  OKAY.  SO IF I -- YOU'RE

4    GOING TO GET A JURY INSTRUCTION THAT YOU CANNOT

5    BASE YOUR DECISION ON ANY SYMPATHY, PREJUDICE, LIKE

6    OR DISLIKE.

7              CAN YOU DO THAT?

8              PROSPECTIVE JUROR:  YES.

9              THE COURT:  OKAY.  THANK YOU.

10             LET'S GO TO MR. OKAMOTO, PLEASE.

11             PROSPECTIVE JUROR:  YES.  SO -- HELLO.

12   YEAH.

13             SO I'M CURRENTLY EMPLOYED AT GOOGLE

14   AND -- YEAH, SO THAT I RAISED MY HAND.

15             THE COURT:  ALL RIGHT.  WHAT DO YOU DO AT

16   GOOGLE?

17             PROSPECTIVE JUROR:  SO I'M A USER

18   INTERFACE DESIGNER.

19             THE COURT:  OKAY.  AND WOULD THAT IN ANY

20   WAY AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN

21   THIS CASE?

22             PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

23             THE COURT:  OKAY.  WOULD YOU BASE YOUR

24   DECISION, IF YOU'RE SELECTED AS A JUROR, SOLELY ON

25   THE EVIDENCE THAT'S ADMITTED DURING THIS TRIAL AND
```

```
1    APPLY THE LAW AS I INSTRUCT YOU?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  OKAY.  CAN YOU SET ASIDE ANY

4    SYMPATHIES, PREJUDICES, LIKES, DISLIKES?

5              PROSPECTIVE JUROR:  YES.

6              THE COURT:  OKAY.  THANK YOU.

7              WHO ELSE IN ROW 1?

8              ALL RIGHT.  NO HANDS HAVE BEEN RAISED.

9              LET'S GO TO ROW 2.  WHO ELSE IN ROW 2 HAS

10   A FAMILY MEMBER, CLOSE FRIEND OR YOU YOURSELF EVER

11   WORKED FOR APPLE, SAMSUNG, GOOGLE OR MOTOROLA?

12   NUMBER 13.

13             ALL RIGHT.  MR. BARRAGAN, GO AHEAD,

14   PLEASE.

15             PROSPECTIVE JUROR:  I HAVE A FRIEND WHO

16   WORKS AT APPLE.

17             THE COURT:  WHO USED TO OR CURRENTLY?

18             PROSPECTIVE JUROR:  CURRENTLY.

19             THE COURT:  OH.  AND WHAT IS THAT

20   PERSON'S JOB?

21             PROSPECTIVE JUROR:  I DON'T KNOW.

22             THE COURT:  LET ME ACTUALLY GO BACK TO

23   MS. HALIM.  WHAT DOES YOUR FRIEND AT APPLE DO?

24             PROSPECTIVE JUROR:  ASIC DESIGN FOR IPAD

25   AND IPHONE.
```

APPX-00051

```
 1              THE COURT:  I'M SORRY, MR. BARRAGAN.  LET

 2    ME GO BACK TO MS. HALIM A MOMENT.

 3              HAVE YOU SPOKEN TO YOUR FRIEND ABOUT HER

 4    ACTUAL JOB?

 5              PROSPECTIVE JUROR:  NO, NOT -- NOT IN

 6    DETAIL, BUT I KNOW HE, HE DOES ASIC DESIGN.

 7              THE COURT:  AND WHAT DO YOU YOURSELF DO?

 8              PROSPECTIVE JUROR:  I USED TO BE

 9    ENGINEER, BUT NOW I WORK FOR A START-UP, MOSTLY ON

10    THE OPERATING AND FINANCE.

11              THE COURT:  AND HOW DID YOU MEET THIS

12    FRIEND WHO CURRENTLY WORKS AT APPLE?

13              PROSPECTIVE JUROR:  WE USED TO WORK

14    TOGETHER FOR A LONG TIME AT CISCO.

15              THE COURT:  I SEE.  OKAY.  ALL RIGHT.

16    THANK YOU.

17              LET'S GO BACK TO MR. BARRAGAN.  YOUR

18    FRIEND AT APPLE, HOW DO YOU KNOW THIS FRIEND?

19              PROSPECTIVE JUROR:  I USED TO WORK WITH

20    HIM AT MY CURRENT EMPLOYER.

21              THE COURT:  WHO IS YOUR CURRENT EMPLOYER?

22              PROSPECTIVE JUROR:  SPACE SYSTEMS LORAL.

23              THE COURT:  AND HOW OFTEN DO YOU SEE THIS

24    FRIEND?

25              PROSPECTIVE JUROR:  I DON'T SEE HIM IN
```

 1    PERSON.  IT'S MAINLY THROUGH TEXTING AND PHONE.

 2              THE COURT:  OKAY.  HAVE YOU SPOKEN WITH

 3    THIS FRIEND AT ALL ABOUT THIS CASE?

 4              PROSPECTIVE JUROR:  NO.

 5              THE COURT:  OKAY.  HOW FREQUENTLY DO YOU

 6    TEXT AND PHONE YOUR FRIEND?

 7              PROSPECTIVE JUROR:  MAYBE FOUR OR FIVE

 8    TIMES A WEEK.  A LITTLE LESS THAN THAT I GUESS.

 9              THE COURT:  OKAY.  I WOULD -- I WILL

10    INSTRUCT YOU, IF YOU'RE SELECTED AS A JUROR, THAT

11    YOU ARE NOT TO HAVE CONTACT WITH THAT FRIEND.  CAN

12    YOU DO THAT?

13              PROSPECTIVE JUROR:  YES.

14              THE COURT:  ALL RIGHT.  WOULD YOUR

15    RELATIONSHIP WITH THIS FRIEND AFFECT YOUR ABILITY

16    TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS

17    CASE?

18              PROSPECTIVE JUROR:  NO.

19              THE COURT:  ALL RIGHT.  YOU WOULD DECIDE

20    THIS CASE SOLELY BASED ON THE EVIDENCE THAT'S

21    ADMITTED AT THIS TRIAL AND APPLYING THE LAW AS I

22    INSTRUCT YOU?

23              PROSPECTIVE JUROR:  THAT IS CORRECT.

24              THE COURT:  OKAY.  THANK YOU.

25              LET'S GO TO THE THIRD ROW.  I THINK THERE

1    WERE A COUPLE OF HANDS RAISED.

2              LET'S GO TO MS. PHAN.

3              PROSPECTIVE JUROR:  OKAY.  I HAVE A

4    FRIEND WHO WORKS AT GOOGLE, A FRIEND THAT WORKS AT

5    APPLE, AND A FRIEND WHO WORKS AT -- WHO WAS THE

6    OTHER COMPANY?

7              THE COURT:  THEY WERE MOTOROLA AND

8    SAMSUNG WERE THE OTHER TWO COMPANIES.

9              PROSPECTIVE JUROR:  OKAY.  THEN THAT'S

10   IT.

11             THE COURT:  THAT'S IT.  OKAY.  CAN YOU

12   TELL ME, YOUR FRIEND THAT IS AT GOOGLE, IS HE OR

13   SHE CURRENTLY AT GOOGLE?

14             PROSPECTIVE JUROR:  YEAH.

15             THE COURT:  AND WHAT DOES HE OR SHE DO?

16             PROSPECTIVE JUROR:  I DON'T REMEMBER.

17             THE COURT:  OKAY.  AND HOW DO YOU KNOW

18   THIS FRIEND?

19             PROSPECTIVE JUROR:  I'VE KNOWN HIM SINCE

20   HIGH SCHOOL.

21             THE COURT:  OKAY.  AND HOW FREQUENTLY DO

22   YOU HAVE CONTACT WITH HIM?

23             PROSPECTIVE JUROR:  ONCE OR TWICE A

24   MONTH.

25             THE COURT:  ONCE OR TWICE A MONTH.  AND

1    THAT'S JUST SOCIAL?

2              PROSPECTIVE JUROR:  WE'RE BOTH IN A

3    NONPROFIT ORGANIZATION, SO HE HELPS OUT WITH CIRCLE

4    K.

5              THE COURT:  I WOULD INSTRUCT YOU NOT TO

6    HAVE ANY CONTACT WITH THIS PERSON DURING THE

7    DURATION OF THIS TRIAL.  CAN YOU DO THAT?

8              PROSPECTIVE JUROR:  I COULD DO THAT.

9              THE COURT:  OKAY.  WOULD YOUR

10   RELATIONSHIP WITH YOUR FRIEND AT GOOGLE IN ANY WAY

11   IMPACT YOUR ABILITY TO BE FAIR TO BOTH SIDES?

12             PROSPECTIVE JUROR:  I COULD BE FAIR.

13             THE COURT:  OKAY.  LET ME HEAR ABOUT YOUR

14   FRIEND AT APPLE.  CURRENT OR PAST EMPLOYEE?

15             PROSPECTIVE JUROR:  CURRENT.

16             THE COURT:  AND DO YOU KNOW WHAT THE JOB

17   IS?

18             PROSPECTIVE JUROR:  NO.  SHE'S JUST KNOWN

19   ME SINCE I WAS A KID, BUT WE DON'T REALLY TALK

20   ABOUT JOB STUFF.

21             THE COURT:  ALL RIGHT.  HOW FREQUENTLY DO

22   YOU HAVE CONTACT WITH THIS FRIEND AT APPLE?

23             PROSPECTIVE JUROR:  PROBABLY ONCE EVERY

24   TWO MONTHS.

25             THE COURT:  SOCIAL OR SOME OTHER CONTACT?

```
 1              PROSPECTIVE JUROR:  FAMILY STUFF.  NOT

 2    DIRECT FAMILY.  SHE'S JUST -- I JUST KNOW HER

 3    THROUGH MY COUSIN BECAUSE -- A LOT OF, LIKE,

 4    CAMPING EVENTS WITH FAMILY AND GIRL SCOUTS AND

 5    STUFF.

 6              THE COURT:  DID YOU SAY GIRL SCOUTS?

 7              PROSPECTIVE JUROR:  KIND OF, YEAH.

 8              THE COURT:  ALL RIGHT.  NOW, I WILL

 9    INSTRUCT YOU THAT YOU ARE NOT TO HAVE ANY CONTACT

10    WITH THAT PERSON DURING THIS TRIAL.  CAN YOU DO

11    THAT?

12              PROSPECTIVE JUROR:  NO PROBLEM.

13              THE COURT:  ALL RIGHT.  ANYTHING ABOUT

14    YOUR RELATIONSHIP WITH THIS FRIEND WHO CURRENTLY

15    WORKS AT APPLE THAT WOULD AFFECT YOUR ABILITY TO BE

16    FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

17              PROSPECTIVE JUROR:  I COULD BE FAIR.

18              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19              LET'S -- MR. DEPRIEST, YOU'RE A CURRENT

20    APPLE EMPLOYEE; CORRECT?

21              PROSPECTIVE JUROR:  YES, MA'AM.

22              THE COURT:  AND WHAT'S YOUR JOB THERE?

23              PROSPECTIVE JUROR:  I'M A Q.A. ENGINEER

24    FOR THE ICLOUD PRODUCT.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

```
 1              MR. SHAH, YOU RAISED YOUR HAND.  GO
 2     AHEAD.
 3              PROSPECTIVE JUROR:  YEAH.  MY SON WORKS
 4     AT APPLE.
 5              THE COURT:  OKAY.  AND WHAT DOES YOUR SON
 6     DO?
 7              PROSPECTIVE JUROR:  HE'S IN THE LEGAL
 8     DEPARTMENT, CORPORATE LAW.
 9              THE COURT:  ALL RIGHT.  HAS HE HAD ANY
10     INVOLVEMENT IN THIS CASE THAT YOU KNOW OF?
11              PROSPECTIVE JUROR:  WELL, WE DON'T TALK
12     ABOUT --
13              THE COURT:  HIS WORK?
14              PROSPECTIVE JUROR:  -- THE CASES, YES.
15              THE COURT:  AND HE'S A CURRENT EMPLOYEE;
16     CORRECT?
17              PROSPECTIVE JUROR:  YES.
18              THE COURT:  ALL RIGHT.  WELL, WE'LL DELVE
19     INTO THAT A LITTLE LATER.
20              ANYONE ELSE?  I THINK, MR. TEPMAN, YOU --
21              PROSPECTIVE JUROR:  I HAVE A QUESTION.
22              THE COURT:  OKAY.  MR. ROGERS?
23              PROSPECTIVE JUROR:  I DON'T HAVE ANYONE
24     WHO WORKS AT APPLE, BUT DO I KNOW MY GRANDPARENTS
25     HAVE STOCK.  IS THAT RELEVANT AT THIS TIME?
```

```
1               THE COURT:  YES.  THAT WAS GOING TO BE MY

2      NEXT QUESTION.

3               PROSPECTIVE JUROR:  SO SHOULD I PASS IT

4      ON AND TALK ABOUT THAT LATER?

5               THE COURT:  NO, GO AHEAD.  SO YOU'RE

6      GRANDPARENTS CURRENTLY OWN STOCK IN APPLE.  IS THAT

7      RIGHT?

8               PROSPECTIVE JUROR:  YES.

9               THE COURT:  ARE YOU A BENEFICIARY ON

10     THEIR INVESTMENT OR ANYTHING LIKE THAT?

11              PROSPECTIVE JUROR:  NOT DIRECTLY.  I

12     THINK BOTH THEY AND MY PARENTS WOULD HAVE TO PASS

13     ON FOR ME TO BENEFIT FROM THAT AT ALL.

14              THE COURT:  OKAY.  WOULD THAT IN ANY WAY,

15     YOUR POTENTIAL FINANCIAL BENEFIT IN ANY WAY, OR

16     ANYTHING ABOUT YOUR GRANDPARENTS' INVESTMENT AFFECT

17     YOUR ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE?

18              PROSPECTIVE JUROR:  I DON'T THINK SO.

19     I'M FAIRLY CERTAIN IT WOULDN'T.

20              THE COURT:  ALL RIGHT.  WOULD YOU DECIDE

21     THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S

22     ADMITTED DURING THIS TRIAL AND APPLY THE LAW AS I

23     INSTRUCT YOU?

24              PROSPECTIVE JUROR:  YES.

25              THE COURT:  OKAY.  AND YOU'LL SET ASIDE
```

```
 1    ANY SYMPATHIES OR LIKES OR DISLIKES?

 2               PROSPECTIVE JUROR:  YES.

 3               THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 4               LET'S GO TO MR. TEPMAN, PLEASE.

 5               PROSPECTIVE JUROR:  YEAH, MY SON WORKS IN

 6    GOOGLE.  HE'S AN ECONOMIST.

 7               THE COURT:  HE'S CURRENTLY AN ECONOMIST

 8    AT GOOGLE?

 9               PROSPECTIVE JUROR:  YES.

10               THE COURT:  OKAY.  HAVE YOU SPOKEN WITH

11    YOUR SON ABOUT THIS CASE?

12               PROSPECTIVE JUROR:  NO.

13               THE COURT:  ALL RIGHT.  WOULD YOUR SON'S

14    CURRENT EMPLOYMENT AT GOOGLE IN ANY WAY AFFECT YOUR

15    ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN

16    THIS CASE?

17               PROSPECTIVE JUROR:  I DON'T THINK SO.

18               THE COURT:  ALL RIGHT.  THANK YOU.

19               WHO ELSE ON THE THIRD ROW?  NO ONE ELSE?

20               ALL RIGHT.  CAN WE PLEASE GO -- DID

21    ANYONE RAISE THEIR HAND IN THE FOURTH ROW?  NO.  NO

22    HANDS HAVE BEEN RAISED.

23               FIFTH ROW.

24               ALL RIGHT.  LET'S GO TO MR., IS IT

25    FLADELAND?
```

```
 1              PROSPECTIVE JUROR:  YES.

 2              THE COURT:  ALL RIGHT.  IF YOU COULD

 3    PLEASE TAKE THE MICROPHONE AND -- OKAY.  GO AHEAD,

 4    PLEASE.

 5              PROSPECTIVE JUROR:  TWO FRIENDS.  ONE IS

 6    A CURRENT EMPLOYEE OF APPLE; ONE IS A FORMER

 7    EMPLOYEE OF APPLE AND NOW HE WORKS FOR AMAZON.

 8              THE COURT:  AND WHAT IS THE CONTEXT IN

 9    WHICH YOU KNOW THESE TWO FRIENDS?

10              PROSPECTIVE JUROR:  JUST FRIENDS I'VE

11    KNOWN SEVEN, EIGHT YEARS.

12              THE COURT:  HOW FREQUENTLY DO YOU

13    INTERACT WITH THE CURRENT EMPLOYEE OF APPLE?

14              PROSPECTIVE JUROR:  A COUPLE OF TIMES A

15    MONTH.

16              THE COURT:  IF I ASKED YOU -- OR I WOULD

17    INSTRUCT YOU NOT TO HAVE ANY CONTACT WHATSOEVER, NO

18    TWEETS, NO FACEBOOK, NO NOTHING WITH THAT PERSON

19    DURING THE COURSE OF THIS TRIAL, CAN YOU DO THAT?

20              PROSPECTIVE JUROR:  YES.

21              THE COURT:  ALL RIGHT.  HAS THAT CURRENT

22    EMPLOYEE TOLD YOU ANYTHING ABOUT THIS CASE?

23              PROSPECTIVE JUROR:  NO.

24              THE COURT:  ALL RIGHT.  WHAT ABOUT THE

25    FORMER APPLE EMPLOYEE WHO IS NOW AT AMAZON?  HOW
```

1    FREQUENTLY DO YOU INTERACT WITH THAT PERSON?

2              PROSPECTIVE JUROR:  MAYBE ONCE A MONTH.

3              THE COURT:  IS THAT IN PERSON OR JUST BY

4    ELECTRONIC --

5              PROSPECTIVE JUROR:  USUALLY IN PERSON.

6              THE COURT:  OKAY.  AND I WOULD INSTRUCT

7    YOU NOT TO HAVE ANY CONTACT WITH THAT PERSON DURING

8    THIS TRIAL.  CAN YOU DO THAT?

9              PROSPECTIVE JUROR:  YES.

10             THE COURT:  OKAY.  HAS THAT PERSON AT ALL

11   COMMENTED TO YOU ABOUT THIS CASE?

12             PROSPECTIVE JUROR:  NO.

13             THE COURT:  ALL RIGHT.  ANYTHING ABOUT

14   EITHER OF THOSE RELATIONSHIPS THAT WOULD AFFECT

15   YOUR ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES

16   IN THIS CASE?

17             PROSPECTIVE JUROR:  NO.

18             THE COURT:  OKAY.  THANK YOU.

19             MR. LADWIG, I THINK YOU RAISED YOUR

20   NUMBER.  GO AHEAD, PLEASE.

21             PROSPECTIVE JUROR:  I'M A TEN YEAR FORMER

22   EMPLOYEE, PAST EMPLOYEE OF MOTOROLA.

23             THE COURT:  ALL RIGHT.  DO YOU HAVE ANY

24   CURRENT RELATIONSHIPS WITH MOTOROLA?

25             PROSPECTIVE JUROR:  NOT REALLY, NO.

```
 1            THE COURT:  OKAY.  WOULD YOUR PREVIOUS

 2    EMPLOYMENT AT MOTOROLA AFFECT YOUR ABILITY TO BE

 3    FAIR AND IMPARTIAL IN THIS CASE?

 4            PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

 5            THE COURT:  ALL RIGHT.  THANK YOU.

 6            ANYONE ELSE ON ROW FIVE?

 7            OKAY.  LET'S GO TO ROW 6.  DID ANYONE

 8    RAISE YOUR CARD IN RESPONSE TO THIS QUESTION?

 9            OKAY.  THE RECORD SHOULD REFLECT THAT NO

10    HANDS HAVE BEEN RAISED.

11            ALL RIGHT.  NOW, LET'S GO TO THE STOCK

12    QUESTION THAT MR. ROGERS HAS ALREADY ANSWERED, BUT

13    LET'S SEE, WHO ELSE -- DO YOU, A FAMILY MEMBER,

14    CLOSE FRIEND HAVE ANY BUSINESS RELATIONSHIP -- AND

15    I'M GOING TO INCLUDE IN THIS QUESTION EITHER YOU

16    OWN STOCK OR YOU'RE A CONTRACTOR OR DO SOME KIND OF

17    CONSULTING WORK OR -- AND I DON'T MEAN A RETAIL

18    CUSTOMER, BUT SORT OF A BIGGER CUSTOMER/SUPPLIER,

19    THAT KIND OF RELATIONSHIP WITH APPLE, SAMSUNG,

20    GOOGLE OR MOTOROLA?

21            WOULD YOU RAISE YOUR HAND, PLEASE.

22            ALL RIGHT.  LET'S -- IT LOOKS LIKE THERE

23    ARE FOUR.

24            LET'S GO TO MR. OKAMOTO, PLEASE.  IS THE

25    MICROPHONE -- WOULD YOU PLEASE PASS THAT BACK?
```

```
 1              PROSPECTIVE JUROR:  SO BEING A GOOGLE

 2    EMPLOYEE, I HAVE GOOGLE STOCK OPTIONS, BUT I DON'T

 3    HAVE ANYTHING WITH APPLE OR SAMSUNG.

 4              THE COURT:  ALL RIGHT.  AND WOULD YOUR

 5    STOCK OWNERSHIP AFFECT YOUR ABILITY TO BE FAIR AND

 6    IMPARTIAL TO BOTH SIDES IN THIS CASE?

 7              PROSPECTIVE JUROR:  NO.

 8              THE COURT:  ALL RIGHT.  THANK YOU.

 9              I BELIEVE WE HAD -- I GUESS NEXT WAS

10    MR. LADWIG, AND WHO ELSE RAISED THEIR HAND?  OKAY.

11    LET'S GO TO MR. DEPRIEST AND MR. SHAH.

12              PROSPECTIVE JUROR:  I OWN STOCK IN APPLE

13    COMPUTER.

14              THE COURT:  ALL RIGHT.  AND WOULD THAT

15    AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN

16    THIS CASE?

17              PROSPECTIVE JUROR:  NOT MY STOCK

18    HOLDINGS, NO.

19              THE COURT:  ALL RIGHT.  BUT OTHER REASONS

20    WE'LL GET INTO IN A MINUTE.

21              OKAY.  LET ME ASK MR. SHAH, OTHER THAN

22    YOUR --

23              PROSPECTIVE JUROR:  YES, MY SON AND I OWN

24    STOCK, AND I'VE DONE CONSULTING WORK AT APPLE.

25              THE COURT:  OKAY.  SO YOU AND YOUR SON
```

APPX-00063

```
 1    OWN STOCK IN APPLE?

 2                PROSPECTIVE JUROR:  YEP.

 3                THE COURT:  AND YOU HAVE DONE -- WHAT

 4    KIND OF CONSULTING WORK HAVE YOU DONE FOR APPLE?

 5                PROSPECTIVE JUROR:  COMPLIANCE ON

 6    SARBAINS-OXLEY, AND I DID CONSULTING.

 7                THE COURT:  WOULD YOU AND YOUR SON'S

 8    STOCK OWNERSHIP AND YOUR CONSULTING WORK FOR APPLE

 9    AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL TO

10    BOTH SIDES IN THIS CASE?

11                PROSPECTIVE JUROR:  I DON'T THINK SO.

12                THE COURT:  ALL RIGHT.  THANK YOU.

13                LET'S GO -- I KNOW MR. LADWIG.  ANYONE

14    ELSE IN ROW 3, 4, 5 AND 6?  WERE YOU GOING TO RAISE

15    YOUR HAND?

16                PROSPECTIVE JUROR:  YEAH.

17                THE COURT:  OKAY.  GO AHEAD, PLEASE.

18                PROSPECTIVE JUROR:  SO MY COMPANY IS

19    DOING VOICE OVER I.P. AND A LOT OF OUR CUSTOMER

20    USES GOOGLE VOICE FOR THEIR SERVICE.

21                THE COURT:  AND WHAT'S THE NAME OF YOUR

22    COMPANY?

23                PROSPECTIVE JUROR:  OBIHAI TECHNOLOGY.

24                THE COURT:  OKAY.  IS THERE ANYTHING

25    ABOUT YOUR COMPANY'S RELATIONSHIP WITH GOOGLE THAT
```

1    WOULD AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL

2    TO BOTH SIDES IN THIS CASE?

3            PROSPECTIVE JUROR:  NO.

4            THE COURT:  OKAY.  THANK YOU.

5            WHO ELSE RAISED THEIR HAND IN RESPONSE TO

6    THAT QUESTION?

7            OKAY.  SO WE HAVE MR. LADWIG AND

8    MR. WARMAN.

9            ALL RIGHT.  WOULD YOU PLEASE PASS THE

10   MICROPHONE FORWARD?

11           OKAY.  LET'S GO TO MR. LADWIG.

12           PROSPECTIVE JUROR:  I'M AN APPLE

13   SHAREHOLDER.

14           THE COURT:  OKAY.  WOULD THAT IN ANY WAY

15   IMPACT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN

16   THIS CASE?

17           PROSPECTIVE JUROR:  I HAVE SEVERAL

18   THOUSAND REASONS TO FIND IN FAVOR OF APPLE, BUT I

19   COULD TRY TO BE FAIR.

20           THE COURT:  ALL RIGHT.  WELL, WE'LL --

21   OKAY.  WE'LL GET INTO THAT IN PRIVATE.

22           OKAY.  LET'S GO TO MR. WARMAN.

23           PROSPECTIVE JUROR:  I WORKED FOR APPLE

24   YEARS AGO DOING A CONSULTING PROJECT.

25           THE COURT:  HOW LONG AGO WAS THAT?

1     PROSPECTIVE JUROR:  I THINK 2004 OR '05.

2     THE COURT:  AND HOW LONG -- WHAT WAS THE

3  DURATION OF YOUR CONSULTING PROJECT?

4     PROSPECTIVE JUROR:  I WAS PROBABLY THERE

5  ABOUT FIVE WEEKS.

6     THE COURT:  ANYTHING ABOUT THAT

7  CONSULTING PROJECT THAT WOULD AFFECT YOUR ABILITY

8  TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS

9  CASE?

10    PROSPECTIVE JUROR:  NO.

11    THE COURT:  ALL RIGHT.  THANK YOU.

12    DID ANYONE ELSE RAISE THEIR HAND TO THIS

13  QUESTION ABOUT THE BUSINESS RELATIONSHIP?

14    PROSPECTIVE JUROR:  I HAVE A QUESTION.

15    THE COURT:  YES?  AND THAT'S MR. ROGERS.

16    PROSPECTIVE JUROR:  WOULD I BE ASKED TO

17  NOT TALK TO MY GRANDMOTHER DURING THE ENTIRE CASE

18  OF THE TRIAL?

19    THE COURT:  OH, THAT'S REALLY HARD.  I'M

20  NOT GOING TO MAKE YOU DO THAT.  BUT I'M GOING TO

21  SAY THAT IF YOU GET SELECTED, YOU CANNOT --

22    PROSPECTIVE JUROR:  TALK ABOUT THE CASE?

23    THE COURT:  AT ALL.

24    PROSPECTIVE JUROR:  I WOULD CERTAINLY BE

25  WILLING TO DO THAT.

Case 7:14-cv-00014-O Document 123 Filed 09/08/14 Page 76 of 160 PageID 1846

```
 1              YOU CAN TAKE THAT WITH YOU.

 2              ALL RIGHT.  THANK YOU, SIR.

 3              PROSPECTIVE JUROR:  THANK YOU.

 4              THE COURT:  ALL RIGHT.  LET'S BRING IN

 5     MR. DEPRIEST.

 6              (WHEREUPON, THE FOLLOWING PROCEEDINGS

 7     WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

 8     JURORS WITH ONLY MR. DEPRIEST PRESENT.)

 9              THE COURT:  ALL RIGHT.  YOU CAN TAKE ANY

10     SEAT YOU WISH.

11              WHY DON'T YOU BRIEFLY TELL US WHY YOU

12     THINK YOU CAN'T BE FAIR AND IMPARTIAL.

13              PROSPECTIVE JUROR:  ONE OF THE PLAINTIFFS

14     IS MY EMPLOYER.

15              THE COURT:  ALL RIGHT.  AND SO YOU COULD

16     NOT KEEP AN OPEN MIND?  YOU WOULD FEEL PRESSURE TO

17     HAVE YOUR EMPLOYER PREVAIL IN THIS CASE?

18              PROSPECTIVE JUROR:  I FEEL -- YES.  I

19     MEAN, I WOULD LIKE FOR MY EMPLOYER TO PREVAIL.

20              THE COURT:  ALL RIGHT.  WELL, IS THERE AN

21     OBJECTION TO EXCUSING MR. DEPRIEST FOR CAUSE?

22              MR. PRICE:  NO, YOUR HONOR.

23              MR. LEE:  NONE, YOUR HONOR.

24              THE COURT:  ALL RIGHT.  THEN I'M GOING TO

25     THANK YOU AND EXCUSE YOU, MR. DEPRIEST.  THANK YOU
```

APPX-00067

1    FOR YOUR WILLINGNESS TO SERVE.

2              IF YOU WOULD LEAVE WHATEVER PAPERS ON THE

3    CHAIR.

4              AND THEN WOULD YOU PLEASE JUST REPORT TO

5    MR. YOUNGER AND MAKE SURE THAT --

6              PROSPECTIVE JUROR:  YES, MA'AM.

7              THE COURT:  ALL RIGHT.  THANK YOU.

8              CAN YOU PLEASE BRING IN MR. SHAH.

9              (WHEREUPON, THE FOLLOWING PROCEEDINGS

10   WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

11   JURORS WITH ONLY MR. SHAH PRESENT.)

12             THE COURT:  THANK YOU, MR. SHAH.  TAKE A

13   SEAT ANYWHERE.

14             MR. SHAH, YOU WANT TO JUST TELL US VERY

15   BRIEFLY WHY YOU DON'T THINK YOU COULD BE FAIR AND

16   IMPARTIAL IN THIS CASE?

17             PROSPECTIVE JUROR:  BECAUSE MAINLY I'VE

18   BEEN ASSOCIATED WITH APPLE FROM ITS FOUNDING DAYS.

19   ACTUALLY, MY BROTHER, WHEN IT WAS FOUNDED, EVEN

20   WORKED THERE FOR A BRIEF PERIOD OF TIME.

21             AND SO, LIKE, FROM THE STANDPOINT OF

22   KNOWING THE GROWTH OF APPLE AND HOW THE UPS AND

23   DOWNS OF APPLE HAVE TAKEN PLACE OVER THE PAST 30

24   YEARS, I FEEL, AND WITH MY SON WORKING OVER THERE

25   ALSO, ESPECIALLY, I FEEL THAT IT'S KIND OF BRED

Case 7:14-cv-00014-O Document 130 Filed 09/04/14 Page 7 Page ID 1848

1   INTO THE FAMILY THAT WE ARE AN APPLE KIND OF

2   FAMILY.

3            THE COURT:  ALL RIGHT.  SO YOU CANNOT BE

4   FAIR TO SAMSUNG IN THIS CASE?

5            PROSPECTIVE JUROR:  I BELIEVE SO.

6            THE COURT:  ALL RIGHT.  ANY OBJECTION TO

7   EXCUSING MR. SHAH FOR CAUSE?

8            MR. PRICE:  OBVIOUSLY NOT.

9            MR. LEE:  NO, YOUR HONOR.

10           THE COURT:  ALL RIGHT.  MR. SHAH, THANK

11  YOU VERY MUCH FOR YOUR WILLINGNESS TO SERVE, SIR,

12  BUT YOU'RE THANKED AND EXCUSED.

13           IF YOU WOULD LEAVE THE PAPERWORK ON THE

14  CHAIR AND JUST GO TO THE SECOND FLOOR AND REPORT TO

15  MR. YOUNGER.  THANK YOU.

16           ALL RIGHT.  LET'S BRING IN MR. LADWIG,

17  PLEASE.

18           (WHEREUPON, THE FOLLOWING PROCEEDINGS

19  WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

20  JURORS WITH ONLY MR. LADWIG PRESENT.)

21           THE COURT:  ANYWHERE YOU WANT, SIR.  ALL

22  RIGHT.  THE RECORD SHOULD REFLECT THAT MR. LADWIG

23  IS THE ONLY JUROR IN THE COURTROOM.

24           SIR, CAN YOU JUST VERY BRIEFLY TELL US

25  WHY YOU CAN'T BE FAIR AND IMPARTIAL TO BOTH SIDES

APPX-00069

1    IN THIS CASE?

2              PROSPECTIVE JUROR:  I PURCHASED A HUNDRED

3    SHARES OF APPLE STOCK WHEN IT WAS $618, WHEN THE

4    HYPE WAS IT WAS GOING TO GO TO 700 TO A THOUSAND.

5              BUT ANYWAY, AS YOU KNOW, I'M -- I'M AT A

6    LOSS RIGHT NOW.  SO I'M -- I KEEP UP THE SPEED ON

7    THE NEWS, APPLE NEWS EVERY DAY.  I'M SIGNED UP TO

8    SEEKING NEWSLETTERS.  I GET DOZENS AND DOZENS OF

9    E-MAIL NEWSLETTERS BY THE HOUR ABOUT APPLE STOCK.

10             AND I HAVE A LOT OF INTEREST IN APPLE

11   STOCK.

12             THE COURT:  ALL RIGHT.  SO YOU CANNOT BE

13   FAIR AND IMPARTIAL TO SAMSUNG IN THIS CASE?

14             PROSPECTIVE JUROR:  TO BE HONEST, I'M --

15   I'M BIASED.

16             THE COURT:  ALL RIGHT.  IS THERE ANY

17   OBJECTION TO EXCUSING MR. LADWIG FOR CAUSE?

18             MR. LEE:  NO, YOUR HONOR.

19             MR. PRICE:  NO, YOUR HONOR.

20             THE COURT:  ALL RIGHT.  MR. LADWIG, THANK

21   YOU VERY MUCH, SIR, FOR YOUR WILLINGNESS TO SERVE.

22   YOU'RE THANKED AND EXCUSED.

23             AND IF YOU WOULD PLEASE JUST GO TO THE

24   SECOND FLOOR TO CHECK IN WITH MR. YOUNGER.

25             (WHEREUPON, THE FOLLOWING PROCEEDINGS

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10  THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11  FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12  CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14  CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16  SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17  HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18  TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20                    /S/

21              _____
                LEE-ANNE SHORTRIDGE, CSR, CRR
22              CERTIFICATE NUMBER 9595

23

24                    DATED:  JULY 30, 2012

25

APPX-00071

# Exhibit 10

APPX-00072

670

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KANEKA CORPORATION, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:10-CV-1430-P |
| | § | |
| JBS HAIR, INC. and UNO & COMPANY, | § | |
| LTD., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Now before the Court is Defendants' JBS Hair, Inc ("JBS Hair"), and Uno & Company,

Ltd. ("UNO") (collectively "Defendants") Motion for Judgment on the Pleadings For a Finding

of No Personal Jurisdiction Or, In the Alternative, Motion to Transfer Venue to the Northern

District of California Pursuant to 28 U.S.C 1404(a), filed on February 22, 2011.[1] (Doc. No. 50.)

On March 21, 2011, while Defendants' motion was still pending, Plaintiff Kaneka Corporation

("Kaneka") filed a Motion for Leave to Amend the Pleadings to Join Jinny Beauty Supply Co,

Inc. as a Defendant.[2] (Doc. No. 56.) After reviewing the parties' briefings, the evidence, and the

applicable law, the Court DENIES Defendants' motion in its entirety and GRANTS Kaneka's

Motion for Leave to Amend.

### I.   Background

On July 20, 2010, Kaneka filed its Original Complaint with Jury Demand against JBS Hair

and UNO. (Doc. No. 1.) Kaneka asserted jurisdiction was proper under 28 U.S.C. §§ 1338(a) and

---

[1] Kaneka filed a Response on March 18, 2011. (Doc. No. 54.) Defendants filed a Reply on April 4, 2011. (Doc. No. 73.)

[2] Defendants filed a Response on April 14, 2011. (Doc. No. 76.) Kaneka filed a Reply April 28, 2011. (Doc. No. 79.)

1331. Kaneka asserted that Defendants were infringing upon its patents, numbered 7,759,429

("429 Patent") and 7,759,430 ("430 Patent") (collectively "Patents-in-Suit"), and requested

injunctive relief against the Defendants from further infringing on their patents. (Pl.'s Am.

Compl. 1-5.) Kaneka also requests that the Court declare this action an exceptional case under 35

U.S.C. § 285, and award attorney's fees. (*Id.* at 5.)

JBS Hair and UNO answered and counterclaimed separately, seeking a declaration that the

Patents-in-Suit are invalid. (Docs. Nos. 24, 25.) Kaneka filed two corresponding answers. (Docs.

Nos. 38, 39.) Defendants filed a Motion for Judgment of the Pleadings for a Finding of No

Personal Jurisdiction, or In the Alternative, a Motion to Transfer to the Northern District of

California. (Doc. No. 50.)

## II. Motion for Leave to Amend to Add JBS

With the Defendants' Motion to Dismiss still pending, Kaneka filed a Motion for Leave to

Amend to add Jinny Beauty Supply, Co. ("JBS") as a Defendant. (Doc. No. 56.) However, in

their briefs regarding the Motion to Amend, neither party addresses whether the Court can

exercise personal jurisdiction over JBS if it were added to the lawsuit. So, the Court will consider

whether JBS can be added as a party and then determine if it can exercise personal jurisdiction

over Defendants and JBS collectively.

### A. Legal Principles

Regional circuit law governs amendments in patent cases. *Pressure Products Med. Supplies,*

*Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315 (Fed. Cir. 2010) (internal citations omitted). In the

instant case, Kaneka seeks leave of the court under Rule 15(a) to add a party under Rule 20(a),

Fed. R. Civ. P. The grant of leave to amend is not automatic. *See Ynclan v. Dept. of the Air*

*Force*, 943 F.2d 1388, 1391 (5th Cir. 1991). However, "Rule 15(a) evinces a bias in favor of

granting leave to amend." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157,

1163 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983). To decide whether to grant a motion to

amend, this Court considers the four factors found in *Chitimacha*, that is, whether the

amendment would: (1) cause undue delay or prejudice; (2) whether the movant is acting in bad

faith or with a dilatory motive; (3) whether denial would prejudice the movant; and (4) whether

the amendment is germane to the original cause of action. *Id.* (internal citations omitted).

### B. Analysis

Defendants contest only the fourth factor, stating that adding JBS would be futile because

they cannot prove that JBS infringed the Patents-in-Suit. (Defs.' Opp. to Pl.'s Mot. for Leave to

Amend 1.) However, Kaneka alleges that JBS may have in fact been helping JBS Hair infringe

the patent through placing JBS Hair advertisements in their catalog. (Pl.'s Reply to Defs.' Opp.

to its Mot. for Leave to Amend 5-6.) Furthermore, Kaneka addresses the other factors the Court

considers, first stating that the case is still in the early stages with little discovery completed, and

the addition of JBS would result in efficiency without prejudicing either side. (Pl.'s Mot. for

Leave to Amend 3-5.) Kaneka further contends that denial of leave to amend is only appropriate

when a claim lacks legal sufficiency.

In a test of legal sufficiency, the Court must "accept the allegations as true, viewing them in

the light most favorable to the plaintiff." *Jamieson v. Shaw*, 772 F.2d 1208, 1209 (5th Cir. 1985);

*see also* Fed. R. Civ. P. 12(b)(6). Without going into the merits of Kaneka's claim, here Kaneka

must allege sufficient facts that would, "accepted as true, 'state a claim to relief that is plausible

on its face.'" *Iqbal v. Ashcroft*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)). Here, Kaneka brought its original claim against

Defendants pursuant to 35 U.S.C. § 271. Section 271(a) states that one who "makes, uses, offers

Order
3:10-CV-1430-P
Page **3** of 15

to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." Furthermore, section 271(b) holds liable those "[who] actively induces infringement of a patent."

However, Defendants argue that their actions cannot give rise to infringement under § 271(a), because the advertisements are not an "offer of sale," which would in turn support liability under § 271(a). Yet, Kaneka did not bring a claim solely under § 271(a), but a claim for patent infringement. (*See* Pl.'s Am. Compl. 3-4.) Taking all of Kaneka's factual allegations as true and in a light most favorable to them, the Court finds that Kaneka could state a claim against JBS. Kaneka alleges that JBS holds the trademark under which JBS Hair markets and sells the accused product. Such an allegation could give rise to liability under § 271(b).[3]

Thus, as Kaneka suggests, adding JBS would not be futile because the facts alleged as to JBS could support liability. Furthermore, under the permissive joinder standard of Federal Rule of Civil Procedure 20(a) would lead to the broadest action possible, and avoid inconsistent adjudication with regard to JBS and JBS Hair. Examining the Proposed Second Amended Complaint, the Court finds that Kaneka is alleging the exact same claim against JBS as it is against JBS Hair and Uno. (*See* Doc. No. 76.1 at ¶¶ 13, 18.) The Court finds that there will be no substantial delay or prejudice to either party by allowing Kaneka to amend. Furthermore, Kaneka has not moved to amend in bad faith, and seeks to add a party whose actions are germane to this claim. Consequently, the Court GRANTS Kaneka's Motion for Leave to Amend the Pleadings.

---

[3] The Supreme Court interprets 35 U.S.C. § 271(b) as a requirement that "active steps . . . [be] taken to encourage direct infringement." *Metro-Goldwyn-Mayer Inc., v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (internal citations omitted). Those "active steps" boil down to the court finding that one "actively and knowingly aid and abet another's direct infringement" *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). The aiding and abetting requirement can be met with evidence showing advertisement of an infringing use, demonstrations of infringing uses by sales staff, or even infringing uses depicted in promotional films. *Grokster*, 545 U.S. at 936 (internal citations omitted).

Order
3:10-CV-1430-P
Page **4** of 15

674

Case 7:14-cv-00014-O Document 118-12 Filed 09/01/14 Page 85 of 120 PageID 1856
Case 15-01 Document 12-3 Filed 10/23/2014 Page 249

## III.    Personal Jurisdiction

### A. Legal Principles

In patent infringement suits, Federal Circuit law is controlling for personal jurisdiction determinations. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). Alternatively, the application of regional circuit law in this matter "would . . . not promote our mandate of achieving national uniformity in the field of patent law." *Beverly Hills Fan Co.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994); *see also Panduit Corp. v. All States Mfg. Co.*, 744 F.2d 1564, 1574 (Fed. Cir. 1984).

The plaintiff has the burden of establishing the basis for a court to exercise personal jurisdiction over a nonresident defendant. *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp.2d 789, 793 (N.D. Tex. 2010) (McBryde, J.) (internal citations omitted). When this Court makes a disposition regarding personal jurisdiction questions based on affidavits and written materials, the plaintiff must make a prima facie case showing that the defendants are subject to personal jurisdiction. *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Furthermore, this Court must accept uncontroverted allegations in the plaintiff's complaint as true, and resolve factual disputes in the plaintiff's favor. *Id*.

First, the plaintiff must prove the forum state's long-arm statute permits service of process. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). The Texas long-arm statute reaches to the limits of Due Process. *See U-Anchor Adver. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977), *cert. denied*, 434 U.S. 1063 (1978), *and* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008). Thus, the inquiry narrows to whether the nonresident defendant had sufficient minimum contacts "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945). Specifically, the Federal Circuit examines whether (1) the defendant "purposefully directed [its] activities at residents" of the forum state; (2) if "the litigation results from alleged injuries that arise out of or relate to those activities;" and (3) "whether personal jurisdiction can be exercised in a given case consistent with the Due Process Clause." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995). In regards to the third factor, fairness in forcing a nonresident defendant to defend in an unfamiliar forum may compel dismissal for lack of personal jurisdiction. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114-15 (1987). The Court evaluates fairness according to five factors: "[1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1331 (Fed Cir. 2008) (*quoting World-Wide Wolkswagen v. Woodson*, 444 U.S. 286, 292 (1980)) (internal quotation marks omitted).

A finding of no specific jurisdiction does not completely foreclose this Court's jurisdiction. This Court "may exercise general jurisdiction when a nonresident defendant has contacts with the forum that are sufficiently continuous and systematic as to support the reasonable exercise of jurisdiction." *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp.2d 789, 795 (N.D. Tex. 2010); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). However Defendants argue that Kaneka cannot make the requisite showing to support a finding of specific or general jurisdiction. (Defs.' Mot. to Dismiss 1.) In its Reply, Kaneka implicitly concedes this, as its evidence and relevant law do not address any probable finding of general jurisdiction. Thus the Court will omit any general jurisdiction analysis.

Order
3:10-CV-1430-P
Page **6** of 15

## B. Specific Jurisdiction Analysis

In its Second Amended Complaint, Kaneka alleges that personal jurisdiction exists because UNO, JBS, and JBS Hair:

> [Placed] their products that infringe Kaneka's patents within the stream of commerce, which this stream is directed at this District as well as Texas. Personal jurisdiction also exists over JBS because it has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this Judicial District. Further, specific jurisdiction exists as a result of JBS's having committed the tort of patents infringement within Texas and this District, by its offer for sale and sale of products that infringe Kaneka's patents-in-suit within Texas and this District, and by having a place of business in Texas and this District (Dallas).

(Pl.'s 2d Am. Compl. ¶ 5.) Kaneka further alleges that JBS Hair "uses, sells, offers for sale and imports infringing hair products under the trade name "NATURA®," which UNO manufactures (*Id.* at ¶ 10.) Kaneka asserts that defendants "know and intend that customers within this District will use said hair products…" (*Id.* at ¶ 11.)

### i. Purposefully Directed Activities

Applying the facts to the first prong of the *Akro* test, whether Defendant "purposefully directed his activities at the forum state," Kaneka argues that UNO colludes with JBS Hair to place UNO's "NATURA" mark on their products and JBS Hair's website supports the conclusion that UNO purposefully placed its products into distribution channels that led all the way to Texas. (Pl.'s Opp. To Defs.' Mot. to Dismiss 7.) Kaneka asserts that JBS Hair admits to making sales of its products to companies in Texas and advertising within the state with JBS. (*Id.* at 5.) Furthermore, Kaneka asserts that JBS owns the trademark "PURE EXCHANGE TANGLE FREE HAIR" which JBS Hair uses to sell the infringing products. (*Id.* at 6.) Defendants argue Kaneka did not present evidence that the accused product made its way to Texas, or that JBS Hair sold it in Texas. (Defs.' Reply in Supp. for their Mot. for J. on the Pleadings 4.)

Order
3:10-CV-1430-P
Page **7** of 15

To support their proposition, Kaneka cites *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). Kaneka argues that in *Beverly Hills Fan*, the foreign manufacturer was in the same position as UNO—no assets, employees, sales, or license to do business in the forum state—yet the court was correct to exercise jurisdiction over the company because the manufacturer purposefully shipped products through an established distribution channel. (Pl.'s Opp. To Defs.' Mot. to Dismiss 7.) Kaneka's reading is correct. The *Beverly Hills Fan* court did find jurisdiction was proper, because "[I]f the sale of a product is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject it to suit." 21 F.3d at 1566 (alterations in original) (*quoting World Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). The recent Federal Circuit decision in *Nuance Communications, Inc. v. Abbyy Software House* is also instructive. 626 F.3d 1222 (Fed. Cir. 2010). There the court, applying the first factor of the *Akro* test, found that a foreign parent company helping its American subsidiary advertise and sell the product in the forum state supported finding that they had purposefully directed their activities there. *Id.* at 1231. That scenario is analogous to the instant case. Here, UNO allows JBS Hair to place their NATURA mark on the accused products. (Pl.'s Opp. To Defs.' Mot. to Dismiss 7.) Furthermore, JBS holds the trademark for JBS Hair's allegedly infringing product. (Pl.'s Opp. to Defs.' Mot. to Dismiss 5-6.)

### ii. Injury Relates to Activities in the Forum

Moving to the second prong of *Akro*, "if the alleged injury arises or relates to activities in the forum state." Here Kaneka alleges again that JBS Hair sells the accused products with the NATURA mark. (Pl.'s Opp. to Defs.' Mot. to Dismiss 7.) Furthermore, Kaneka asserts that JBS Hair and JBS advertise they are the largest beauty supply distributors in the U.S., and that UNO

would most likely be aware of the sale of its products by these entities. (*Id.* at 8.) Because of this knowledge, Kaneka argues, it follows that if JBS Hair has a branch in Dallas, then UNO would be aware that JBS Hair and JBS advertise and sell their products in the District. (*Id.*)

Defendants counter Kaneka's evidence by citing to the affidavits of JBS Hair and UNO's executives. The affidavits assert: (1) neither UNO or JBS Hair have offices or employees in Texas (Defs.' Mot. to Dismiss 3, 4); (2) neither parties are licensed to do business in Texas (*Id.*); (3) UNO has never shipped the allegedly infringing product to Texas (*Id.*); (4) JBS Hair has never sold any of the accused products in Texas or to any entity in Texas (*Id.* at 4.); and (5) JBS Hair has fewer than 20 customers in Texas that constitute less than 1% of its annual revenue. (*Id.*) Defendants then claim that the evidence should result in a finding of no specific or general jurisdiction, and cite to Fifth Circuit precedent and state that JBS Hair's low volume of sales within Texas should preclude the Court's exercise of personal jurisdiction. (*Id.* at 5; Defs.' Reply in Supp. for their Mot. to Dismiss 6.) Finally, Defendants attempt to refute Kaneka's allegations by collecting Fifth Circuit and Texas cases discussing the irrelevance of corporate interrelatedness to personal jurisdiction determinations. (*Id.* at 6-8.)

Kaneka again meets the requirements of the second *Akro* factor, as the claim of infringement arises out of UNO and JBS Hair's activities within the forum. Just because a defendant does not sell the product within the forum state does not mean that infringement did not take place within the forum state. *See Synthes v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1298 (Fed. Cir. 2009). In *Synthes*, an American company sued a Brazilian company for patent infringement when it displayed medical devices at a trade show in San Diego. 563 F.3d at 1288. The FDA had not even licensed the Brazilian company's accused product for sale in the U.S. *Id.* at 1298. Yet, the Federal Circuit found jurisdiction proper even

when the Brazilian company's *sales* efforts were not directed at U.S. residents, the alleged
infringement occurred in the forum because the Brazilian company was trying to generate
interest at the San Diego trade show. *Id.* (emphasis in original).

Here, Defendants cannot escape that placing NATURA marks on the accused products
and JBS Hair then advertising them in catalogs within the District might create some interest in
the product. (*See* Pl.'s Opp. to Defs.' Mot. for J. on the Pleadings App. 047-049.) Despite
Defendants' efforts to articulate that the advertisements were not offers to sell, by their very
nature, advertisements direct potential customers to the product. Defendants' actions involving
the accused product made use of the forum to promote their product, thus giving rise to Kaneka's
claim. Defendants must be reminded that at this stage the Court will not delve into whether
Kaneka has made a prima facie showing on the merits of its infringement claim. *See Synthes*, 563
F.3d at 1298-99 ("We see no reason to address . . . whether Synthes made a prima facie showing
that GMReis's activities in the United States constituted patent infringement . . . .).

### iii. The Exercise of Personal Jurisdiction Consistent With Due Process

On the third *Akro* factor, "whether personal jurisdiction can be exercised consistent with
Due Process," Kaneka has met its burden. Kaneka cites to *Beverly Hills Fan* to support the
proposition that working with a U.S. company means a foreign company cannot feign ignorance
of the laws of the United States. 21 F.3d at 1569 ("[T]hrough its business dealings with [the
resident company], [defendant] cannot profess complete ignorance of the judicial system of the
United States. Accordingly we conclude that the burden . . . is not sufficiently compelling to
outweigh the [plaintiff's] interests.") In Defendants' briefings, most of their arguments
applicable to this factor are contained within their Motion to Transfer Venue Pursuant to 28
U.S.C. § 1404(a). The Court will consider those arguments accordingly.

Order
3:10-CV-1430-P
Page **10** of 15

Consequently, the Court concludes that Defendants have sufficient minimum contacts with the District such that the maintenance of the lawsuit will not offend traditional notions of fair play. *See World-Wide Volkswagen v. Woodson*, 326 U.S. 310, 316 (1980). Furthermore, the Defendants purposefully directed their activities into Texas and the alleged injury arises out of that purposeful activity. As a result, it would not be unfair for the Court to assert personal jurisdiction over the Defendants. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114-15. Thus, the Court finds it has personal jurisdiction over Defendants, and DENIES their Motion for Dismiss for Lack of Personal Jurisdiction.

## IV.    Motion to Transfer Venue

In the alternative, Defendants move for transfer of the case to the Northern District of California. Foremost, Defendants cite overall efficiency and expediency as the primary factor favoring transfer. (Defs.' Reply in Supp. for their Mot. to Dismiss 9.)

### A. Legal Principles

Regional circuit law governs transfer motions in patent disputes, because transfer is not a substantive issue within patent law. *In re Nintendo*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (internal citations omitted). This Court evaluates transfer motions under the four private and four public interest factors the Supreme Court adopted in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). The Court lists the private factors followed by the public factors:

> (1) the relative ease of access to proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy expeditious and inexpensive;" (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws[,] [and] the application of foreign law.

*Accord In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal citations omitted). The factors are not exhaustive or exclusive, nor can a single factor be of dispositive weight. *Id.* (*quoting Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004). "He who seeks transfer must show good cause." *Humble Oil & Ref. Co. v. Bell*, 321 F.2d 53, 56 (5th Cir. 1963). A party must "clearly demonstrate that a transfer is for the convenience of the parties and witnesses, in the interest of justice . . . . [W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. *In re Volkswagen*, at 315 (internal quotation marks omitted).

The parties contest the first factor. Defendants argue all of UNO's evidence and witnesses are in Asia, as is all of Kaneka's evidence too. (Defs.' Mot. to Dismiss 6-7.) They also assert that JBS Hair has no documents or witnesses in Texas. (*Id.* at 8.) Kaneka responds by stating UNO will have to transport its documents and witnesses across the Pacific regardless of venue. (Pl.'s Opp. to Defs.' Mot. to Dismiss 10.) Because JBS Hair is a Georgia company, Kaneka argues, their evidence and witnesses in that state are closer to Texas than California, as well as JBS Hair's physical presence in Texas. (Pl.'s Opp. to Defs.' Mot. for J. on the Pleadings 9-10.) Also, Kaneka points out that JBS Hair has no presence or no sources of proof in California. (*Id.*)

Defendants cite to *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009), to support their proposition that California is closer to Korea, and that consideration should factor in to the Court's decision to transfer. (Defs.' Reply in Supp. of their Mot. to Dismiss 8-9.) Delving into the case, the Federal Circuit reversed the district court's denial of the California company's motion to transfer to the Northern District of California on the grounds that it was more convenient for the witnesses for the German company to travel to Texas than to California. *In re Genentech*, at 1344. In making that determination, the *Genentech* court found the district court

had applied the "100-mile" rule too rigidly.[4] *Id.* The witnesses coming from Europe would have to travel a significant distance regardless of trial location, and Genentech had witnesses in the proposed venue, a different proposition than the one at hand in the instant case. *Id.*

Here, neither UNO or JBS claim they have witnesses in California. Defendants' fallback logic is that flights between Korea and the Northern District of California are shorter and more frequent than to the Northern District of Texas. (*See* Marton Decl. 7-8.) Kaneka also plays travel agent for UNO's witnesses, attempting to controvert Defendant's declarations that flights to Dallas are any less frequent or inconvenient than they are to San Francisco. (*See* Yang Decl. 1-2.) Consequently, the Court cannot say this factor favors transfer. With the vagaries of modern air travel, the Court declines to speculate which flight itinerary or final destination will be absolutely more convenient and inexpensive for UNO's witnesses. Furthermore, Texas is closer to JBS Hair's Georgia location, and JBS's location in Dallas favor keeping the action in Dallas.

On the second factor, the availability of compulsory process, both parties omitted any arguments specifically regarding this factor, so the Court will not analyze this factor. Regarding the third factor, cost of attendance for witnesses, Defendants do not assert that it will be any cheaper for the witnesses to travel to California versus Texas. However, Kaneka asserts, without citation to any source, that the cost of living is cheaper in the Northern District of Texas than the Northern District of California, thus making all the living expenses and services relating to trial cheaper. (Pl.'s Opp. to Defs.' Mot. for J. on the Pleadings 10.) Arguably Kaneka is correct. However, citation to an authority would allow the Court to make a determination of this factor.

---

[4] The "100-mile" rule, adopted by the Fifth Circuit to determine convenience for witnesses, is as follows: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *In re Volkswagen*, 371 F.3d 201, 204-05 (5th Cir. 2004). Additional distance increases travel time, and corresponding expenses, as well as time missed from employment and family. *Id.* at 205.

On the fourth factor, the practical problems that would make litigating a case easy and inexpensive, the parties do not include any arguments not covered by the Court's consideration of other factors. Correspondingly, the Court will omit analysis of this factor.

Moving to the first public interest factor, administrative difficulties flowing from court congestion, Defendants assert that transferring the instant case to Northern District of California, where it could be consolidated with Defendant's pending declaratory action, would ease congestion. (Defs.' Mot. to Dismiss 8.) Defendants also counterclaimed in this case, seeking declaratory judgment and patent invalidity. (Def.'s Answer 9-10.) Conversely, Kaneka asserts the pending action in California could consolidate with the instant case. (Pl.'s Reply to Defs.' Mot. for J. on the Pleadings 11) The court agrees, as this case embraces the entire controversy. Furthermore, Kaneka asserts—without any citation— that according to a Patent Litigation Study that median litigation of patent dispute in the Northern District of Texas is 0.30 years faster than in the Northern District of California. (*Id.*) The Court declines to rely on such proof, as studies regarding litigation time are fraught with complications. *See In Re Genentech*, 566 F.3d at 1347, ("We note that this factor appears to be the most speculative . . . . [C]ase-disposition statistics may not always tell the whole story.) (internal citations omitted).

Regarding the second public interest factor, the localized interest, Defendants allege that JBS Hair and UNO do not do business in Texas. (Defs.' Mot. to Dismiss 8.) However JBS has a physical presence and conducts business operations in Texas, including Dallas. (2d Am. Compl. ¶ 4.) Furthermore, Kaneka states, the Northern District of California has no localized interest in JBS Hair or JBS whatsoever, and that the infringement is the result of intentional conduct in the district. (*Id.*) The Court agrees with Kaneka because there seems to be no connection to, or localized interest within the Northern District of California. Thus, any local interest lies in Texas.

Defendants make one contention regarding the fourth and final public interest factor, the avoidance of unnecessary conflict of laws. Defendants assert that if transfer were granted, the action could consolidate with the case in California and avoid inconsistent adjudication. (Defs.' Mot. for J. on the Pleadings 8.) That point is moot, as the inverse is true if the case was not transferred. Furthermore, there would be no conflict of laws, because regardless of forum, the Court must apply Federal Circuit law in most issues regarding patent disputes to enhance uniformity of Federal patent law. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

Consequently, the Court finds that Defendants can show no facts that would favor transferring this case to the Northern District of California. The flights from Korea to Dallas are equally as inconvenient as flights from Korea to San Francisco. Furthermore, JBS Hair has no presence in the Northern District of California, nor does UNO, so the local interest in California is decidedly less than in Texas, where it has been alleged that JBS operates, and works with affiliate JBS Hair. Defendants' Alternative Motion to Transfer Venue is DENIED.

## V. Conclusion

For the foregoing reasons, GRANTS Kaneka's Motion for Leave to Amend to Join Jinny Beauty Supply Co., as a Defendant, DENIES Defendant's Motion for Judgment on the Pleadings, and DENIES Defendant's Alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Signed this ___ day of July, 2011.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

# Exhibit 11

APPX-00088

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:14-CV-00014-O |
| | § | |
| HTC CORPORATION, HTC AMERICA, | § | |
| INC., LG ELECTRONICS, INC., LG | § | |
| ELECTRONICS USA, INC., LG | § | |
| ELECTRONICS MOBILECOMM USA, | § | |
| INC., MOTOROLA MOBILITY LLC, | § | |
| APPLE, INC. AND TWITTER, INC., | § | |
| | § | |
| Defendant. | § | |

## INITIAL DISCLOSURES OF DEFENDANT MOTOROLA MOBILITY LLC

Pursuant to Fed. R. Civ. P. 26(a)(1), Defendant MOTOROLA MOBILITY LLC ("Motorola") provides the following initial disclosures to Plaintiff SUMMIT 6 LLC ("Summit 6"). These initial disclosures are made based on information that is reasonably available to Motorola at this time and at this stage of the proceedings. As additional information becomes available, Motorola reserves the right to supplement these initial disclosures and/or to use documents not described herein.

United States Patent No. 7,765,482 is referred to herein as "the '482 Patent." United States Patent No. 8,612,515 is referred to herein as "the '515 Patent." United States Patent No. 6,895,557 – which is not currently asserted against Motorola -- is referred to herein as "the '557 Patent." The '482 Patent, the '557 Patent, and the '515 Patent are collectively referred to herein as the "Patents" or the "Patents in-Suit."

As used herein, "Accused Functionality" refers to the functionality identified in Summit 6's complaint, including the Motorola MMS Application, including its MMS functionality;

Motorola's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.

As used herein, "Motorola Accused Products" refers to the products identified in Summit 6's complaint as allegedly infringing the '482 and '515 patents, including: Moto X, Moto G, Droid Maxx, Droid Ultra, Droid Mini, Moto X Developer Edition (GSM Networks), Moto X Developer Edition Verizon, Droid Maxx Developer Edition, Droid Razr M, Droid Razr Maxx HD, Motorola Photon Q 4G LTE (the "Accused Products").

I.    **Individuals Likely To Have Discoverable Information (Fed. R. Civ. P. 26(a)(1)(A)(i))**

Motorola provides the following list of individuals likely to have discoverable information that Motorola may use to support its claims or defenses, identifies the subjects of the information, and provides, when possible, the last known address of the individuals.

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| Naveen Aerrabotu | c/o Bonnie M. Grant Kilpatrick Townsend LLP 1100 Peachtree Street; Suite 2800 Atlanta, Georgia 30309 (404) 815-6500 bgrant@kilpatricktownsend.com | Motorola employee; Design/operation of the Accused Functionality within the Motorola Accused Products |
| Jason Tsuyemura | c/o Bonnie M. Grant Kilpatrick Townsend LLP 1100 Peachtree Street; Suite 2800 Atlanta, Georgia 30309 (404) 815-6500 bgrant@kilpatricktownsend.com | Motorola employee; Knowledge regarding the dissemination and loading of Android source code on the Accused Products. |
| Andy Koziol | c/o Bonnie M. Grant Kilpatrick Townsend LLP 1100 Peachtree Street; Suite 2800 Atlanta, Georgia 30309 (404) 815-6500 bgrant@kilpatricktownsend.com | Motorola employee; Design/operation of the Accused Functionality within the Motorola Accused Products |
| Ben Sherwin | c/o Bonnie M. Grant | Motorola employee; |

- 2 -

**- A687 -**

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| | Kilpatrick Townsend LLP 1100 Peachtree Street; Suite 2800 Atlanta, Georgia 30309 (404) 815-6500 bgrant@kilpatricktownsend.com | Sales and finance for the Motorola Accused Products |
| Lisa M. Wood | c/o MCKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Co-Inventor for the Patents-in-Suit; Conception and reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Scott M. Lewis | c/o MCKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Co-Inventor for the Patents-in-Suit, Managing Director of Summit 6, Summit 6 Board of Managers Member; Conception and reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct; licensing of the Patents-in-Suit; assignments of the Patents-in-Suit; Summit 6's corporate structure and formation. |
| Robin T. Fried | Prague, Czech Republic | Co-Inventor for the Patents-in-Suit; Conception and reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Sarah Pate | c/o MCKOOL SMITH, P.C. 300 Crescent Court, | Former CEO of AdMission Corporation ("AdMission"), and former COO/CFO |

- 3 -

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| | Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | of PictureWorks Technology, Inc. ("PictureWorks"); Managing Director of Summit 6, Summit 6 Board of Managers Member;<br><br>Knowledge relating to licensing of the Patents-in-Suit; assignments of the Patents-in-Suit; reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct; Summit 6's corporate structure and formation. |
| Scott Wilson | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Summit 6 Board of Managers Member; founder of Swiftsure Capital.<br><br>Knowledge relating to the formation of Summit 6; the preparation and prosecution of the applications that issued as the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct |
| Peter Yoakum | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Former Summit 6 Board of Managers Member; Former AdMission board member and former managing partner at Swiftsure Capital.<br><br>Knowledge relating to the formation of Summit 6; prosecution of the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Gordon Gardiner | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Summit 6 Board of Managers Member;<br><br>Knowledge relating to the formation of Summit 6. |
| Laban P. Jackson, Jr. | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201 | Summit 6 Board of Managers Member;<br><br>Knowledge relating to the formation of Summit 6. |

- 4 -

**- A689 -**

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| | (214) 978-4000 | |
| Terrell Anderson | Kabongo, Inc.<br>5801 Christie Avenue<br>Suite 470<br>Emeryville, CA 94608 | Vice President of PictureWorks in or about November, 1998.<br><br>Knowledge concerning prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Point 2 | 500-3301 8th Street East<br>Saskatoon,<br>SK S7H 5K5, Canada. | Knowledge concerning prior art relevant to the Patents-in-Suit; products or programs allegedly embodying the purported invention disclosed in the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Duane S. Kobayashi | Law Office of Duane S. Kobayashi<br>1325 Murray Downs Way<br>Reston, VA 20194<br>Office: 703-437-8000 | Prosecuting Attorney;<br><br>Knowledge of the prosecution of the applications that resulted in the issuance of the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Attorneys at the law firm Frost Brown Todd LLC | 3300 Great American Tower,<br>301 East Fourth Street<br>Cincinnati, Ohio 45202 | Prosecuting Attorney;<br><br>Knowledge of the prosecution of the applications that resulted in the issuance of the '557 Patent; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Individuals at the law firm of Fenwick & West | Fenwick & West<br>555 California Street<br>San Francisco GA 94104 | Admission's outside counsel relating to due diligence relating to Point 2;<br><br>Knowledge relating to the facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |

Motorola reserves the right to disclose additional individuals whom Motorola may use to

support its claims or defenses based on information learned during the source of this litigation.

- 5 -

## II. Documents In Motorola's Possession, Custody Or Control That Motorola May Use To Support Its Claims Or Defenses (Fed. R. Civ. P. 26(a)(1)(A)(ii))

Motorola is in possession of the following categories of documents that Motorola may use to support its claims or defenses:

- Information relating to the structure, characteristics, and operation of the Accused Functionalities of the Motorola Accused Products;
- Information relating to the invalidity of the Asserted Patents; and
- Information relating to Motorola and its products and services.

Motorola reserves the right to assert a claim of privilege or immunity and withhold from production any documents, whether or not included above, that are protected from discovery by the attorney-client privilege, work product immunity or any other privilege or immunity. Motorola further reserves the right to disclose additional documents that Motorola may use to support its claims or defenses based on information learned during the course of this litigation.

## III. Computation Of Any Category Of Damages Claimed By The Disclosing Party (Fed. R. Civ. P. 26(a)(1)(A)(iii))

At this time, Motorola only seeks to recover its reasonable attorneys' fees and costs and a declaration that this case is exceptional. Motorola is not yet certain as to the amount of fees and costs it will seek.

## IV. Applicable Insurance Agreement (Fed. R. Civ. P. 26(a)(1)(A)(iv))

Motorola's parent corporation, Google, Inc. has insurance through Imi Assurance Inc. that may by applicable to this matter. Relevant portions of this agreement will be produced.

In providing these initial disclosures, Motorola does not waive any objections, defenses or applicable privileges. Motorola will supplement these disclosures to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Court.

- 6 -

DATED: June 20, 2014

Respectfully submitted,

By:

*/s/ Bonnie M. Grant*

Steven D. Moore (*pro hac vice*)
smoore@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Eighth Floor
Two Embarcadero Center
San Francisco, CA 94111
(415) 576.0200 (telephone)
(415) 576.0300 (facsimile)

D. Clay Holloway (*pro hac vice*)
dholloway@kilpatricktownsend.com
Bonnie M. Grant (Bar No. 24067634)
bgrant@kilpatricktownsend.com
Akarsh P. Belagodu (*pro hac vice*)
abelagodu@kilpatricktownsend.com
Shayne E. O'Reilly (*pro hac vice*)
soreilly@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)

GRUBER HURST JOHANSEN HAIL SHANK
MICHAEL K. HURST (Bar No. 10316310)
mhurst@ghjhlaw.com
JOSHUA M. SANDLER (Bar No. 24053680)
jsandler@ghjhlaw.com
1445 Ross Avenue
Suite 2500
Dallas, Texas 75202
Telephone: 214 855 6800
Facsimile: 214 855 6808

*ATTORNEYS FOR DEFENDANT*
*MOTOROLA MOBILITY LLC*

- 7 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of foregoing has been served upon counsel of record this 20th day of June, 2014.

Douglas A. Cawley
dcawley@mckoolsmith.com
Theodore Stevenson III
tstevenson@mckoolsmith.com
Phillip M. Aurentz
paurentz@mckoolsmith.com
Ashley N. Moore
amoore@mckoolsmith.com
Mitchell R. Sibley
msibley@mckoolsmith.com
Richard A. Kamprath
rkamprath@mckoolsmith.com

MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

Bradley W. Caldwell
bcaldwell@caldwellcc.com

CALDWELL CASSADY & CURRY
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201

*/s/ Bonnie M. Grant*
Bonnie M. Grant

- 8 -

# Exhibit 12

APPX-00097



Home | Mobile Site | Newsroom | Regions | Staff Directory | Careers | Forms | e-Tools | QuickLinks

U.S. General Services Administration

Search

Home > Policy & Regulations > Travel and Relocation Policy > Per Diem > Per Diem Rates >

# FY 2014 Per Diem Rates for Texas

**(October 2013 - September 2014)**

**SEARCH BY CITY, STATE OR ZIP CODE**

Enter your city
Wichita Falls

Texas

OR

Enter your ZIP Code

**FIND PER DIEM RATES**

Per Diem Map >

**ADDITIONAL PER DIEM TOPICS**
Meals & Incidental Expenses Breakdown (M&IE)
FAQs
State Tax Exemption Forms
Factors Influencing Lodging Rates
FY 2014 Per Diem Highlights
Fire Safe Hotels
Have a Per diem Question?
Downloadable Per Diem Files

Cities not appearing below may be located within a county for which rates are listed.
To determine what county a city is located in, visit the National Association of Counties (NACO) website (a non-federal website).

The following rates apply for **Texas**

| Primary Destination* (1) | County (2, 3) | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Meals & Inc. Exp.** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Standard Rate | STANDARD RATE | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 83 | 46 |

Max lodging by Month (excluding taxes): 2013 / 2014

* NOTE: Traveler reimbursement is based on the location of the work activities and not the accommodations, unless lodging is not available at the work activity, then the agency may authorize the rate where lodging is obtained.
** Meals and Incidental Expenses, see Breakdown of M&IE for important information on first and last days of travel.

**CONTACTS**
Additional Contacts for
Travel Management Policy

**NEED MORE INFORMATION?**
Rates for Alaska, Hawaii, U.S. Territories and Possessions (set by DoD)
Rates in Foreign Countries (Set by State Dept.)
Federal Travel Regulations (FTR)

**RELATED TOPICS**
Travel Resources
E-Gov Travel
FedRooms
POV Mileage Reimbursement Rates

Last Reviewed 2014-05-21

 Print  Email  Favorites  Twitter  Facebook  Share

Help | Sitemap | Accessibility Aids | Linking | Privacy and Security | Contact Us



Also of Interest: Whitehouse.gov  Recovery.gov  Data.gov  USA.gov  Business.USA.gov

# Exhibit 13

**APPX-00099**

**GSA** U.S. General Services Administration

[                    ] Search

Home > Policy & Regulations > Travel and Relocation Policy > Per Diem > Per Diem Rates >

# FY 2014 Per Diem Rates for Dallas, Texas

**(October 2013 - September 2014)**

**SEARCH BY CITY, STATE OR ZIP CODE**

Enter your city          Enter your ZIP Code

[ Dallas        ]    OR    [              ]    [ FIND PER DIEM RATES ]

[ Texas        ▼ ]                            Per Diem Map >

**ADDITIONAL PER DIEM TOPICS**

Meals & Incidental Expenses Breakdow n (M&IE)
FAQs
State Tax Exemption Forms
Factors Influencing Lodging Rates
FY 2014 Per Diem Highlights
Fire Safe Hotels
Have a Per diem Question?
Dow nloadable Per Diem Files

Cities not appearing below may be located within a county for which rates are listed.
To determine what county a city is located in, visit the National Association of Counties (NACO) website (a non-federal website).

The following rates apply for **Dallas , Texas**

| Primary Destination* (1) | County (2, 3) | Max lodging by Month (excluding taxes) | | | | | | | | | | | | Meals & Inc. Exp.** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2013 | | | 2014 | | | | | | | | | |
| | | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | |
| Dallas | Dallas County | 123 | 108 | 108 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 71 |

* NOTE: Traveler reimbursement is based on the location of the work activities and not the accommodations, unless lodging is not available at the work activity, then the agency may authorize the rate where lodging is obtained.
** Meals and Incidental Expenses, see Breakdown of M&IE Expenses for important information on first and last days of travel.

**CONTACTS**

Additional Contacts for

Travel Management Policy

**NEED MORE INFORMATION?**

Rates for Alaska, Haw aii, U.S. Territories and Possessions (set by DoD)
Rates in Foreign Countries (Set by State Dept.)
Federal Travel Regulations (FTR)

**RELATED TOPICS**

Travel Resources
E-Gov Travel
FedRooms
POV Mileage Reimbursement Rates

Last Reviewed 2014-05-21

 Print   Email   Favorites   Tw itter   Facebook   Share

Help | Sitemap | Accessibility Aids | Linking | Privacy and Security | Contact Us



Also of Interest:   Whitehouse.gov   Recovery.gov   Data.gov   USA.gov   Business.USA.gov

# Exhibit 14

APPX-000101



GSA U.S. General Services Administration

Search

Home > Policy & Regulations > Travel and Relocation Policy > Per Diem > Per Diem Rates >

# FY 2014 Per Diem Rates for Sunnyvale / Palo Alto / San Jose, California

(October 2013 - September 2014)

**SEARCH BY CITY, STATE OR ZIP CODE**

Enter your city
Cupertino
California

OR

Enter your ZIP Code

FIND PER DIEM RATES

Per Diem Map >

**ADDITIONAL PER DIEM TOPICS**

Meals & Incidental Expenses Breakdown n (M&IE)
FAQs
State Tax Exemption Forms
Factors Influencing Lodging Rates
FY 2014 Per Diem Highlights
Fire Safe Hotels
Have a Per diem Question?
Dow nloadable Per Diem Files

Cities not appearing below may be located within a county for which rates are listed.
To determine what county a city is located in, visit the National Association of Counties (NACO) website (a non-federal website).

The following rates apply for **Sunnyvale / Palo Alto / San Jose , California**

| Primary Destination* (1) | County (2, 3) | Max lodging by Month (excluding taxes) | | | | | | | | | | | | Meals & Inc. Exp.** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2013 | | | 2014 | | | | | | | | | |
| | | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | |
| Sunnyvale / Palo Alto / San Jose | Santa Clara | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 56 |

* NOTE: Traveler reimbursement is based on the location of the work activities and not the accommodations, unless lodging is not available at the work activity, then the agency may authorize the rate where lodging is obtained.
** Meals and Incidental Expenses, see Breakdown of M&IE Expenses for important information on first and last days of travel.

**CONTACTS**

Additional Contacts for

Travel Management Policy

**NEED MORE INFORMATION?**

Rates for Alaska, Haw aii, U.S. Territories and Possessions (set by DoD)
Rates in Foreign Countries (Set by State Dept.)
Federal Travel Regulations (FTR)

**RELATED TOPICS**

Travel Resources
E-Gov Travel
FedRooms
POV Mileage Reimbursement Rates

Last Reviewed 2014-05-21

Print    Email    Favorites    Twitter    Facebook    Share

Help | Sitemap | Accessibility Aids | Linking | Privacy and Security | Contact Us

Also of Interest:   Whitehouse.gov   Recovery.gov   Data.gov   USA.gov   Business.USA.gov

# Exhibit 15

APPX-000103



Home | Mobile Site | New sroom | Regions | Staff Directory | Careers | Forms | e-Tools | QuickLinks

**GSA** U.S. General Services Administration

[          ] Search

Home > Policy & Regulations > Travel and Relocation Policy > Per Diem > Per Diem Rates >

# FY 2014 Per Diem Rates for San Francisco, California

**(October 2013 - September 2014)**

**ADDITIONAL PER DIEM TOPICS**

Meals & Incidental Expenses Breakdow n (M&IE)
FAQs
State Tax Exemption Forms
Factors Influencing Lodging Rates
FY 2014 Per Diem Highlights
Fire Safe Hotels
Have a Per diem Question?
Dow nloadable Per Diem Files

**SEARCH BY CITY, STATE OR ZIP CODE**

Enter your city
[San Francisco]
[California ▼]

OR

Enter your ZIP Code
[          ]

**FIND PER DIEM RATES**

Per Diem Map >

Cities not appearing below may be located within a county for which rates are listed.
To determine what county a city is located in, visit the National Association of Counties (NACO) website (a non-federal website).

The following rates apply for **San Francisco , California**

| Primary Destination* (1) | County (2, 3) | Max lodging by Month (excluding taxes) | | | | | | | | | | | | Meals & Inc. Exp.** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2013 | | | 2014 | | | | | | | | | |
| | | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | |
| San Francisco | San Francisco | 226 | 172 | 172 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 189 | 226 | 71 |

* NOTE: Traveler reimbursement is based on the location of the work activities and not the accommodations, unless lodging is not available at the work activity, then the agency may authorize the rate where lodging is obtained.
** Meals and Incidental Expenses, see Breakdown of M&IE Expenses for important information on first and last days of travel.

**CONTACTS**

Additional Contacts for

Travel Management Policy

**NEED MORE INFORMATION?**

Rates for Alaska, Haw aii, U.S. Territories and Possessions (set by DoD)
Rates in Foreign Countries (Set by State Dept.)
Federal Travel Regulations (FTR)

**RELATED TOPICS**

Travel Resources
E-Gov Travel
FedRooms
POV Mileage Reimbursement Rates

Last Reviewed 2014-05-21

 Print   Email   Favorites   Twitter   Facebook   Share

Help | Sitemap | Accessibility Aids | Linking | Privacy and Security | Contact Us

Also of Interest: Whitehouse.gov  Recovery.gov  Data.gov  USA.gov  Business.USA.gov

# Exhibit 16

APPX-000105



## Account Marketing Manager, Enterprise Solutions

| Job ID | 2014-2498 | Division (Team Name) | LG Marketing |
|---|---|---|---|
| Posted Date | 4/16/2014 | Company | LGEMU |
| Location | US-NJ-Englewood Cliffs | Category | Marketing - All Openings |

More information about this job:

**Overview:**

LG Electronics Mobile Communications Company (LG), is a leader and innovator in the global mobile communications industry, constantly setting new trends in mobile technology and helping to enrich lives around the world. With its breakthrough technologies and innovative design in smart devices, LG is committed to providing the best-ever user experience and being at the forefront of efforts to open up the next generation of communications.

LG is now hiring at our Corporate HQ in Englewood Cliffs, NJ for an Account Marketing Manager for Enterprise Solutions.

**Position Description:**

The AMM - Enterprise Solutions will plan and implement marketing programs or projects that support Enterprise Solutions business objectives for volume, revenue, profit, retention and satisfaction. S/He will identify and develop new marketing program opportunities; working both individually and within the team, and also with KAM (key account management) teams to analyze economic considerations, develop marketing forecasts, estimate costs, prepare pricing studies, and manage program/project budgets.

- Develops short and long-range strategic marketing of assigned products and brands including identification of brand extension opportunities
- Helps to plan develop and direct the marketing efforts for specific products
- Collaboratively develops specific marketing plans and activities for specific product(s), services or product line(s) to establish, enhance or distinguish product placement within the competitive arena and develops business plans and product positioning in the marketplace
- Works with Business Development, Sales and marketing strategy team internally to define market opportunities and establish marketing strategies for specific products and services. Works with customers (carriers) to co-define market opportunities and develop joint marketing opportunities
- Works with engineering, manufacturing and sales to develop new products or enhance existing product(s) or product line(s)
- Develop an understanding of market needs in mobile industry by working with market intelligence group
- Partner with senior leadership to develop value propositions to achieve business goals and strategic vision
- Develop the marketing strategy for value propositions based on market needs, competitive

**- A703 -**

APPX-000106

...ality working along with all marketing disciplines

- Work cross functionally to help drive value propositions, including, product/service branding, naming and pricing
- Develop and implement strategic marketing communications plans to support value propositions against specific products/services
- Measure and report on key success metrics for product/service launch and key value propositions with Sales and Marketing

**Qualifications:**

Bachelor's degree in Marketing, Business, or closely related discipline

Minimum:  Five (5) years direct, related experience.  Prefer:  Eight (8) direct, related experience

- Strong project management skills
- Willingness to work with cross functional senior members and lead the efforts to define and achieve a common goal
- Proven ability to develop competitive analysis and come up with best suitable market positioning strategy
- Solid ability to develop written communication including marketing collaterals and training materials
- Knowledge in mobile industry ecosystem (OEM, wireless carriers, mobile solution partners, etc.)
- Experience in enterprise mobility industry is preferred

Ability to speak effectively before groups of customers or employees of organization.
Ability to compile reports using multiple levels of data to prepare reports on progress and future trends.

Ability to work with mathematical concepts such as probability and statistical inference.
Ability to define problems, collect data, establish facts, and draw valid conclusions with trending analysis.

Resumes with cover letters welcomed at https://jobs-lge.icims.com/jobs/1917/account-marketing-manager%2c-enterprise-solutions/job .

LG is an Equal Opportunity Employer. We welcome job applications from qualified individuals without regard to race, color, creed, religion, ancestry, national origin, age, sex, pregnancy, marital status,

**- A704 -**                                  APPX-000107

# Exhibit 17

APPX-000108



Job Description

## Carrie r Marke ting Consultant-140000G0
Description

Motorola Mobility is one of the world's fastest growing smartphone providers, creating groundbreaking, affordable, high-quality products designed and built with the global customer in mind. And it's our people who make this all happen. We are thinkers, risk-takers and problem solvers, working together to constantly challenge the status quo. If you share our commitment to ingenuity, creativity and innovation, we want you to help us define our world of tomorrow. Explore the opportunities and apply today.

Team and Culture Description:
The North America Marketing team is responsible for executing the marketing strategy for key product launches with carrier and channel partners. The Carrier Marketing Consultant role will be dedicated to a specific carrier partner, tailoring marketing plans for their customized needs.

Scope of Responsibilities:
- Support development of customer specific annual marketing plans and identify key milestones
- Implement key marketing programs in partnership with key carrier customers
- Identify and develop marketing program metrics/tracking measures, reports on progress and makes recommendations for process improvements
- Ensure customer needs are clearly identified and delivered against from a marketing perspective
- Manages marketing budgets as it relates to customer-specific marketing programs
- Manages key agency partners on an as-needed basis
- Work regularly with channel partners in order to foster relationships, develop co-marketing opportunities and drive

https://motomobi.taleo.net/careersection/2/jobdetail.ftl?job=132700&src=JB-10200

Motorola brand through channels
- Partner closely with Product Marketing, Product
Management, other Carrier Account Teams, Go-To-Market
Team (Sales, Operations, Finance), Core/Retail Marketing
and Marketing Operations teams in order to
develop cohesive marketing strategies and implement brand
and demand generation tactics
- Ensure consistent, repeatable launch practices, processes
and deliverables for global implementation

Job Description:
Bachelor's Degree

 Preferred Qualifications:
 - 5+ years of prior consumer marketing experience
preferably in areas related to technology industry
- MBA-level education preferred
- Business oriented and customer driven
- Leader, team player, pro-active and problem-solving attitude
- Demonstration of key leadership behaviors (including ability
to develop and motivate others, build support and inclusion,
manage execution, show creativity, drive and initiative,
establish trust and respect, and readily adaptable)
- Superior operational and interpersonal skills

Motorola Mobility is an Equal Opportunity/Affirmative Action
Employer.
If requested in advance and in compliance with the
Americans with Disabilities Act (ADA) and/or other
applicable law, we will provide reasonable accommodation to
applicants in need of accommodation so as to permit access
to the application, interviewing, and selection process.
ExperiencedIndividual Contributor
Job Marketing
Primary Location United States-Illinois-Chicago
Full-time
Job Posting
Bachelor's Degree



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | |
|---|---|
| SUMMIT 6 LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM USA, INC., MOTOROLA MOBILITY LLC, APPLE INC., and TWITTER INC.,<br><br>               Defendants. | Case No. 7:14-cv-00014-O |

**<u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

I.      INTRODUCTION .................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 1

    1.      Summit 6 has no relevant connections to Dallas .................................... 1

    2.      The Defendants' relevant connections to this District are minimal or non-
            existent ................................................................................................... 3

    3.      The private interest factors overwhelmingly favor transfer................................... 5

        a.      The Northern District of California would be a far more convenient
                forum for all known witnesses ..................................................... 5

        b.      The Northern District of California could compel the attendance of
                critical third-party witnesses ....................................................... 5

        c.      The Northern District of California has easier access to sources of
                proof .......................................................................................... 7

        d.      Litigating in the Northern District of California would make trial
                easier, more expeditious, and less expensive ............................. 7

    4.      The public interest factors either favor transfer to the Northern District of
            California or are neutral. ........................................................................ 8

        a.      The Northern District of California has a strong local interest in
                resolving the dispute, favoring transfer ..................................... 8

        b.      The court congestion factor is neutral ...................................... 10

III.    CONCLUSION ................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dataquill, Ltd. v. Apple Inc.,*
   No. 1:13-cv-706, D.I. 85 at 8 (W.D. Tex. Jun. 13, 2014)........................................4

*FutureVision.com, LLC v. Time Warner Cable, Inc.,*
   No. 6:12-cv-386, 2013 WL 5496810 (E.D. Tex. Apr. 22, 2013) ...............................5

*In re EMC Corp.,*
   501 Fed. App'x. 973, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013)...........................2

*In re Genentech, Inc.,*
   566 F.3d 1338 (Fed. Cir 2009)....................................................................3, 5, 7, 10

*In re Microsoft Corp.,*
   630 F.3d 1361 (Fed. Cir. 2011)..................................................................................9

*In re Radmax, Ltd.,*
   720 F.3d 285 (5th Cir. 2013) .....................................................................................8

*In re Verizon Bus. Network Servs., Inc.,*
   635 F.3d 559 (Fed. Cir. 2011)....................................................................................7

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008) .....................................................................................6

*In re Zimmer,*
   609 F.3d 1378 (Fed. Cir. 2010)...............................................................................3, 9

*Novelpoint Learning LLC v. Leapfrog Enters., Inc.,*
   No. 6:10-cv-229-JDL, 2010 BL 288604, at *4 (E.D. Tex. Dec. 6, 2010) ................2

STATUTE

35 U.S.C. § 299................................................................................................................6

## I.    INTRODUCTION

The convenience of the parties and witnesses clearly favors transfer of this action to the Northern District of California.  Of the 40 witnesses the parties identified in their initial disclosures, none resides in Texas.  In contrast, the parties collectively identified 24 California witnesses.  Summit 6's heavy reliance on its alleged connections to Dallas is thus misplaced, given that Summit 6 failed to name *any* Texas witnesses in its opposition or initial disclosures. The parties' focus on California-based witnesses is no accident and is unlikely to change for trial. This is clear from Summit 6's own trial witness list from its previous case against Samsung, in which it identified 17 witnesses from California and only five from Texas—four Samsung employees irrelevant to this case and one damages expert under Summit 6's control.

Moreover, and contrary to its assertion that it "has been a Dallas-based company" for almost 10 years, Summit 6 has been in existence for only five years, has no Texas employees, and does not deny that its sole presence in this District is limited to a mail-stop "virtual office" that it shares with over 100 other organizations.  In sum, Summit 6 has no current or otherwise meaningful business contacts with this judicial district beyond as a litigant.

As explained herein, Summit 6's remaining arguments are based largely on out-of-context or inapposite statements made by Defendants in other lawsuits or on activity irrelevant to this suit.  When the facts of *this* case are examined, it is clear that transfer is appropriate.  And as Federal Circuit precedent makes plain, this Court's experience with two of the asserted patents does not justify keeping in Texas a case that clearly belongs in California.

## II.    ARGUMENT

### 1.    Summit 6 has no relevant connections to Dallas.

Summit 6 admits that it has no employees or directors that reside in Texas; that none of the ownership of Summit 6 is in Texas; and that none of the named inventors reside in Texas. Dkt. No. 118 ("Opp.") at 12, APPX015 ¶¶ 21, 23.  Further, Summit 6 has *never* been registered to do business with the Texas Secretary of State.  APPX002 (Clark Decl.) ¶ 4; APPX005–010. In contrast, Summit 6 does not deny that one of its two employees (a Managing Director) and a

named inventor reside in California; that there is 26% ownership of its company in California; or that the patents-in-suit were developed in Northern California by the three named inventors while they were employed in the San Francisco Bay Area by PictureWorks Technology, Inc.

Nevertheless, Summit 6 claims strong connections to Dallas (and does not even attempt to claim any connection to Wichita Falls) by relying on business relationships made by AdMission, Summit 6's predecessor company, years before Summit 6 was formed in 2009. Focusing on historic contacts is contrary to Summit 6's own argument that "venue is evaluated based on the situation that existed when suit was filed." Opp. at 10 (citing *In re EMC Corp. (EMC II)*, 501 Fed. App'x. 973, 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013).) Further, AdMission is not the plaintiff and Summit 6 does not allege any continuing relationships with those companies. Opp. at APPX013 ¶¶ 5-11. The only Texas business to which Summit 6 alleges a loose connection is Sell.com, with which Summit 6 has met to discuss unidentified "strategy and business opportunities." *Id.* at APPX014 ¶ 15. Those discussions have apparently never developed into any actual business venture, and again, Summit 6 did not identify any Sell.com witnesses in its initial disclosures or opposition. These circumstances do not establish Summit 6 as a Texas company.

Summit 6's Texas property taxes do not alter the analysis, and in fact amounted to just $21.04 in 2012 and 2013 for maintaining a virtual office.[1] APPX028–033. Additionally, while Summit 6 claims it has been paying property taxes in Dallas since its formation in 2009, the Dallas County Tax Office only has a record of it paying personal property taxes beginning in 2012, after Summit 6 filed its patent infringement lawsuit against Samsung. APPX033.

Because Summit 6 has no Texas employees and is not even registered to do business in Texas, it is an ephemeral Texas entity; any alleged local bank accounts (with unknown activity), a P.O. Box, or a local accountant do not change this fact. *Novelpoint Learning LLC v. Leapfrog*

---

[1] Summit 6's personal property tax is based on the maintenance of a virtual office at Ste 200, 4925 Greenville Ave., Dallas, Texas. Dkt. No. 91-1, APPX049–053. This exact address is used by at least 145 other businesses. APPX011-027.

*Enters., Inc.*, No. 6:10-cv-229-JDL, 2010 BL 288604, at *4 (E.D. Tex. Dec. 6, 2010) (noting that the Federal Circuit "has concluded that an entity that does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum is an 'ephemeral' entity" (citing *In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)).

### 2. The Defendants' relevant connections to this District are minimal or non-existent.

Defendants explained that none of the activities accused of infringement in this case took place in Wichita Falls, or anywhere else in the Northern District of Texas. In response, Summit 6 cites to statements and arguments made by some of the Defendants in unrelated lawsuits.

Two years ago in an unrelated lawsuit, an Apple witness did not concede that the Eastern District of Texas is convenient but, rather, stated that it is not "any less convenient than any other place [Apple] go[es]." Opp. at APPX004, at 38:18-22. Further, he testified that Apple "would like to focus on [its] products. And there's definitely a time tradeoff" to bring witnesses to Texas. *Id.* at 38:1-2. Thus, while Texas may not be less convenient than some other places Apple goes, there can be no question that it would be more convenient for Apple and its witnesses in Northern California not to have to go anywhere at all.[2]

Further, Apple's Operations Center in Austin (outside of this District) is largely dedicated to customer service and support, sales, and accounting functions. APPX110 (Buckley Decl.) ¶ 4. That facility has no documents or employees relevant to the development, implementation, or operation of the accused products and services. *Id.* Thus, Apple's Austin facility is irrelevant. And Apple's tax incentives from the State of Texas are similarly irrelevant to the transfer analysis. Just a few weeks ago, a patent infringement case against Apple was transferred to the Northern District of California from the Austin Division of the Western District of Texas.

---

[2] The fact that Apple previously filed a lawsuit in the Eastern District of Texas is irrelevant. *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (holding it was clear error for the lower court to consider defendant's previous decision to file suit in the Eastern District of Texas as a relevant factor in the transfer analysis in an unrelated case).

Despite the Texas tax incentives and Apple's connections to Austin, that Court found that the local interest in resolution of the case favored transfer because:

> Apple has decades of history with the people of Cupertino (where it employs over 16,000 workers) and with the Northern District of California. Apple has smaller, much more recent connections with this district given Apple's presence here and expansion plans for the future. But this case is about Apple's actions in designing and developing the iPhone and some of its software products, all of which happened in Cupertino.

*Dataquill, Ltd. v. Apple Inc.*, No. 1:13-cv-706, D.I. 85 at 8 (W.D. Tex. Jun. 13, 2014).

Motorola currently leases a facility in Fort Worth. Dkt. 91-5, APPX248 ¶ 17, 19.[3] Summit 6 suggests that Motorola "minimizes" the significance of this lease. Opp. at 6. Motorola did not "minimize" the lease, but instead accurately noted that it will terminate by the end of the year, and that Motorola only employs 29 people there, none of whom are involved in activities related to the research, design, sales, or marketing of any of the accused products. Dkt. No. 91-5, APPX248 ¶¶ 17-19. Motorola does not intend to call any witnesses from that facility in this lawsuit, and Summit 6 did not identify any witnesses from the Fort Worth facility in its initial disclosures or opposition. Motorola's lease is irrelevant to the transfer analysis.

Summit 6 repeatedly cites to HTC's argument in an unrelated case regarding transferring a lawsuit for judicial economy where the prior court had relevant knowledge. Opp. at 3, 4, 6 and 10. But that unrelated HTC case involved a plaintiff that sued HTC in the District of Delaware and then, following an adverse ruling, sued HTC in another jurisdiction on the same technology. HTC's statements in that case regarding why it would be appropriate to transfer the plaintiff's follow-on case back to Delaware are wholly irrelevant to this matter.

Finally, Summit 6's opposition ignores—and, therefore, concedes—that the witnesses identified by LGE as being familiar with accused features of the products at issue in this case are

---

[3] Exhibit 3 to Summit 6's opposition is for Motorola's "business personal property." Complete property records for the facility itself show that it is owned by a third party, APPX103, and has never been owned by Motorola. APPX105. The value of the personal property owned by Flextronics—the third party from whom Motorola leases the facility—greatly exceeds that of Motorola. APPX106.

located in LGE's San Jose and San Diego, California facilities. Dkt 91-5, APPX 297 at ¶¶ 3, 7-11, 15. Summit 6 instead cites to an unrelated case where LGE identified certain New Jersey witnesses as having knowledge relevant to that case, and sought transfer to New Jersey. Opp. at 2-3, 5-6 and 15. Tellingly, Summit 6 has not identified a single individual from New Jersey as relevant to this case. Whether another case would be more convenient in New Jersey is irrelevant to whether this case—where no New Jersey witness has relevant knowledge, but many California witnesses have such knowledge—should be transferred to Northern California.

### 3. The private interest factors overwhelmingly favor transfer.[4]

#### a. The Northern District of California would be a far more convenient forum for all known witnesses.

In their moving papers, Defendants identified 23 witnesses who reside in the Northern District of California. In its response, Summit 6 did not identify a single witness residing in this District. Instead, Summit 6 points out that one of the inventors lives overseas (ignoring that another inventor lives in the Northern District of California) and one of the prosecuting attorneys lives in Virginia, and will have to travel anyway. Although Summit 6 claims that "several customers and licensees that use Summit 6's inventions are in Texas," Opp. at 3, Summit 6 does not explain how those customers and licensees are relevant to this case (indeed, the witnesses did not appear at trial in the prior *Samsung* case). Summit 6 fails to identify a single Texas witness that it believes possesses relevant information. Defendants have clearly met their burden that witness convenience, a critical factor under § 1404(a), *see In re Genentech*, 566 F.3d at 1343, strongly favors transfer.

#### b. The Northern District of California could compel the attendance of critical third-party witnesses.

Summit 6's cited authority agrees that the availability of compulsory service of process to secure the attendance of witnesses favors transfer "when more third-party witnesses reside within the transferee venue." *FutureVision.com, LLC v. Time Warner Cable, Inc.*, No. 6:12-cv-386,

---

[4] Summit 6 does not dispute that this case could have been brought in Northern California.

2013 WL 5496810, at *4 (E.D. Tex. Apr. 22, 2013) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008)).  Defendants made a sufficient showing that this factor weighs heavily in favor of transfer by identifying numerous third-party witnesses who reside in the Northern District of California.  These include inventor Lisa T. Wood, former employees of AdMission and PictureWorks,[5] witnesses from Fenwick & West who investigated the Point2 prior art, and Google employees.  Dkt. No. 90, at n.10, 16-17; Dkt 91-5, APPX 299 at ¶ 11.  Moreover, if this case is severed for trial in this District,[6]  none of Twitter's California witnesses could be compelled to the trial of a non-Twitter Defendant.

Against this, Summit 6 fails to identify any third-party witness in the Northern District of Texas.  Instead, Summit 6 points to a few people who live outside of both California and Texas, as well as a handful of companies that do not reside solely in California, including national cellular-carrier companies such as AT&T, Verizon, Sprint, and T-Mobile.  Opp. at 12.  Tellingly, Summit 6 identifies no one from any of these cellular-carrier companies in its opposition papers or its initial disclosures, let alone state why their testimony might be relevant to *this* case.  And Summit 6 again fails to identify any individual in this District at Sell.com or The Belo Corporation, explain how those companies are relevant to this lawsuit, or state whether they would be willing to testify or unwilling to travel to California.

Without any identified witnesses in Texas to counter those Defendants identified in Northern California, Summit 6 ironically criticizes Defendants' list of witnesses as "sheer guess-work and supposition."  Not so.  Defendants have clearly met their burden by identifying third-party witnesses by name and establishing their relevancy.  *See Volkswagen II*, 545 F.3d at 317, n. 12 (noting, in the *forum non conveniens* context, that affidavits of specific testimony are not

---

[5] In particular, Defendants have identified in their initial disclosures Terrell Anderson, former employee and Vice President of PictureWorks Technology, Inc., as a relevant third-party witness.  APPX049, 057, 083 and 095.

[6] Apple has already moved for severance, Dkt. Nos. 111–113, and the remaining Defendants have reserved their right to pursue severance under 35 U.S.C. § 299.

required); *In re Genentech*, 566 F.3d at 1343-44 (when conducting a § 1404(a) analysis, identification of witnesses relevant to issues is sufficient).

Because third-party witnesses reside in the Northern District of California and not in this District, this factor weighs strongly in favor of transfer.

### c. The Northern District of California has easier access to sources of proof.

As explained in Defendants' moving papers, the vast majority of likely sources of proof, including documentation for the accused systems and services, are located, accessed, or managed in Northern California.  In response, Summit 6 argues that this factor is "neutral" because certain of the Defendants and third parties have documents outside of both California and Texas, and Summit 6 has documents here.  But because Summit 6 does not deny that the documents it has in this District were brought here for litigation, *see* Opp. at APPX014 ¶ 19, the documents located in Texas should be afforded no weight in the transfer analysis.  *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 561-62 (Fed. Cir. 2011).  Moreover, the only two document custodians Summit 6 has identified to date reside in Northern California and Utah.  APPX004, ¶ 16.

Because most of the relevant documents are located in the Northern District of California, this factor, too, weighs in favor of transfer.  *In re Genentech, Inc.*, 566 F.3d at 1345.

### d. Litigating in the Northern District of California would make trial easier, more expeditious, and less expensive.

Ignoring the number of witnesses who would not have to travel at all, as well as the witnesses whose travel times would be greatly reduced if this case were litigated in Northern California, Summit 6 resorts to statistics regarding per diem rates and claims litigating here would be cheaper for the witnesses.  But the difference in per diem between Dallas and San Jose (the division where Apple is located), according to Summit 6's own statistics, is $6.  *See* Opp. at APPX100–102.  For those witnesses who would have to travel to Northern California, this $6 increase is more than offset by the shorter travel times and the convenience of three international airports in the Bay Area.  Moreover, Summit 6 ignores the time lost to traveling for witnesses

such as LGE's Korea and San Diego witnesses, and HTC's Taiwan and Washington witnesses, since the Bay Area is much more convenient than Wichita Falls, in terms of both travel time and available flights.

Summit 6 also claims that transfer should be denied because this case "is already well under way." Opp. at 10. While preliminary orders have been entered, this case is in its infancy. Summit 6 has not yet served any discovery. Summit 6's contention that transferring the case would cause delay or increase costs is unfounded. *See In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) (delay caused by the transfer itself is irrelevant).

Finally, as anticipated, Summit 6 argues that it is more efficient to litigate in Texas because Your Honor presided over the prior *Samsung* case in the Dallas Division. While Summit 6 discusses the considerable work done by Your Honor in the prior lawsuit, Summit 6 does not deny that: (1) this case involves different defendants, different claims, an additional patent, and different accused products and services and, in Apple's case, a different operating system altogether; (2) none of the products and services accused here was at issue in the prior matter; (3) the five adjudged claims of the '482 patent are currently under reexamination; and (4) the PTO recently issued a Final Rejection that held all five claims unpatentable. Thus, even if the original claims survive, this case will require new claim-construction proceedings that take into account the different technology and additional prosecution history in light of the reexamination, as well as terms from the patent claims not previously asserted in the *Samsung* action.

**4.    The public interest factors either favor transfer to the Northern District of California or are neutral.[7]**

**a.    The Northern District of California has a strong local interest in resolving the dispute, favoring transfer.**

As pointed out in Defendants' moving papers, the Northern District of California has considerably more factual connections to this action than the Northern District of Texas. First,

---

[7] The parties agree that the public interest factors of the familiarity of the forum with the governing law and the avoidance of unnecessary conflicts of law issues are neutral.

this action concerns inventions allegedly conceived and developed in, and attributed to residents of, the Northern District of California; and one of Summit 6's two employees still resides in Northern California, the other having resided there until October 2013.  *See* Dkt. No. 6 ¶ 1; *id.* Exs. A, B, C.  Second, acts relevant to Defendants' inequitable conduct defense—namely, the due diligence performed on the Point2 prior art— took place in the Northern District of California.  And third, four of the five Defendants[8] are headquartered or have offices in the Northern District of California, where they collectively employ nearly 20,000 employees, and where they and third parties developed many of the accused products and services, including the operating systems on the accused devices and the Twitter functionality.

Summit 6 attempts to turn this factor to its favor by mischaracterizing itself as a long-standing Texas company with deep roots in Dallas.  But as explained above, Summit 6's only business local to this District is filing patent infringement lawsuits and its only local connection is to a virtual mail-stop office in Dallas, which it apparently shares with 145 other businesses, and for which it pays roughly $21 annually for taxes.  Summit 6 identifies no employees in Texas, no document custodians in Texas, and is not even registered to do business in Texas. APPX004, ¶ 16; APPX005-010.

The Federal Circuit has expressly rejected the "fallacious assumption" that a court "must honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient."  *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).  Moreover, as in *Zimmer Holdings*, Summit 6's presence in this District is "recent, ephemeral, and an artifact of litigation."  609 F.3d at 1381.  There is simply no justification for burdening a Wichita Falls jury with a trial on this matter that has no meaningful connection to this District.

---

[8] Summit 6's argument that only two defendants actually reside in California, Opp. at 2 ignores that LG MobileComm is a California corporation headquartered in San Diego with offices relevant to *this* case in San Jose, California.  Dkt 91-5, APPX297 ¶ 3.

Summit 6 also seeks to disclaim its Northern Californian roots to argue that it cannot get a fair trial against Apple, one of five defendants, in Northern California. Opp. at 8.[9]  To support the outrageous statement that litigating against Apple in Northern California is, by its nature, "extremely prejudicial," Summit 6 cites only to snippets of jury selection from an unrelated case between Apple and Samsung. *Id.*  But the cited transcript actually demonstrates that Judge Koh carefully questioned prospective jurors for bias and, where appropriate, excluded for cause those who could not be fair and impartial. Opp. at APPX045–071. Nothing about the *Apple v. Samsung* case, or the way Judge Koh conducted jury selection, remotely suggests that Summit 6 could not get a fair trial in Northern California.

### b.    The court congestion factor is neutral.

Summit 6's lead argument against transfer is court congestion, the "most speculative" of all the factors. *In re Genentech*, 566 F.3d at 1347. Summit 6 argues that congestion weighs against transfer because the median time to trial in this District is 1.68 years versus 2.3 years in the Northern District of California, slightly more than 30% longer (not twice as long, as Summit 6 contends). But when most cases settle before trial, it is the time to disposition, not the time to trial, that merits attention in considering court congestion. In this context, the Northern District of California has Local Patent Rules that will ensure the orderly progress of the case, and a median time to disposition that is *faster* than this District. Opp. at APPX028–031.

Finally, having chosen to delay this case by years when it strategically filed the Samsung case first, and having never sought preliminary injunctive relief, Summit 6 should not now be heard to complain of an unjust delay because the clearly more convenient Northern District of California court might schedule a trial date a few months later than the current trial date.

### III.    CONCLUSION

For the reasons given, the Court should transfer this case to the Northern District of California.

---

[9] Summit 6 pointedly does not seek to harmonize this argument with its position that Apple's Austin facility and state tax breaks effectively make Texas Apple's home court.

Dated:  July 15, 2014

Respectfully submitted,

/s/ Hilda C. Galvan
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

William C. Rooklidge *(pro hac vice)*
wrooklidge@jonesday.com
Mark A. Finkelstein *(pro hac vice)*
mafinkelstein@jonesday.com
Frank P. Cote *(pro hac vice)*
fcote@jonesday.com
Michelle Stover *(pro hac vice)*
mstover@jonesday.com
Doug L. Clark *(pro hac vice)*
dlclark@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539

**Attorneys for Defendant APPLE INC.**

By:  /s/ David J. Silbert
David J. Silbert *Pro Hac Vice*
Leo L. Lam *Pro Hac Vice*
Julie A. Duncan *Pro Hac Vice*
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
dsilbert@kvn.com
llam@kvn.com
jduncan@kvn.com

Brett C. Govett
FULBRIGHT & JAWORSKI

/s/ Debora L. Sterling
Deborah L. Sterling
Texas Bar No. 19170950
QUILLING SELANDER LOWNDS
    WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone:  214-871-2111
Facsimile:  214-871-2111
*dsterling@qslwm.com*

Steven J. Routh (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.

**– A721 –**

2200 Ross Ave., Suite 2800
Dallas, TX 75201-2784
Telephone:  214.855.8118
Facsimile:  214.855.8200
brett.govett@nortonrosefulbright.com

***Attorneys for Defendant TWITTER, INC.***

Washington, D.C. 20005-1706
Tel.: (202) 339-8400
Fax: (202) 339-8500

Robert M. Isackson (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel.: (212) 506-5000
Fax: (212) 506-5151

Stacey E. Stillman (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
Fax: (650) 614-7401

Hsiwen Lo (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Tel: (949) 567-6700
Fax: (949) 567-6710

***Attorneys for Defendants LG
ELECTRONICS, INC., LGE
ELECTRONICS USA, INC., AND LG
ELECTRONICS MOBILECOMM USA,
Inc.INC.***

*/s/ Bonnie M. Grant*
Steven D. Moore (pro hac vice)
smoore@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Eighth Floor
Two Embarcadero Center
San Francisco, CA 94111
(415) 576.0200 (telephone)
(415) 576.0300 (facsimile)

D. Clay Holloway (pro hac vice)
dholloway@kilpatricktownsend.com
Bonnie M. Grant (Tex. Bar No. 24067634)
bgrant@kilpatricktownsend.com

*/s/ Mashhood Rassam*
Yar R. Chaikovsky (admitted)
Bryan K. James (pro hac vice)
Philip Ou (pro hac vice)
Darryl J. Ong (pro hac vice)
McDermott Will & Emery LLP
275 Middlefield Road, Suite 100
Menlo Park, California  94025-4004
Telephone: +1 650 815 7400
Facsimile: +1 650 815 7401
Email: ychaikovsky@mwe.com
Email: bjames@mwe.com
Email: pou@mwe.com
Email: djong@mwe.com

Akarsh P. Belagodu (pro hac vice)
abelagodu@kilpatricktownsend.com
Shayne E. O'Reilly (pro hac vice)
soreilly@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)

GRUBER HURST JOHANSEN HAIL
SHANK
MICHAEL K. HURST (Bar No. 10316310)
mhurst@ghjhlaw.com
JOSHUA M. SANDLER (Bar No. 24053680)
jsandler@ghjhlaw.com
1445 Ross Avenue
Suite 2500
Dallas, Texas 75202
Telephone: 214 855 6800
Facsimile:  214 855 6808

***Attorneys for Defendant MOTOROLA
MOBILITY LLC***

E. Leon Carter (Texas Bar No. 03914300)
Linda R. Stahl (Texas Bar No. 00798525)
CARTER SCHOLER ARNETT HAMADA &
MOCKLER, PLLC
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
Telephone: +1 214 550 8160
Facsimile: +1 214 550 8185
Email: lcarter@carterscholer.com

***Attorneys for Defendants
HTC CORPORATION and HTC
AMERICA, INC.***

CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of July, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule 5.1(d). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

/s/ *Michelle Stover*
Michelle Stover

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SUMMIT 6 LLC,<br><br>           Plaintiff,<br><br>    v.<br><br>HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS, INC., LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM USA, INC., MOTOROLA MOBILITY LLC, APPLE INC., and TWITTER, INC.,<br><br>           Defendants. | Case No. 7:14-cv-00014-O |

## APPENDIX TO DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

| No. | Document Description | Page No. |
|---|---|---|
| 1. | Declaration of Doulas L. Clark in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) | APPX001 - 004 |
| 2. | Texas Secretary of State Business Organizations Inquiry Web Page<br>(Exhibit A to Declaration of Douglas L. Clark) | APPX005 - 008 |
| 3. | Franchise Tax Account Status for Summit 6<br>(Exhibit B to Declaration of Douglas L. Clark) | APPX009 – 0010 |
| 4. | Dallas County Tax Office Website<br>(Exhibit C to Declaration of Douglas L. Clark) | APPX0011 - 0027 |
| 5. | Web Pages from the Dallas County Tax Office Website<br>(Exhibit D to Declaration of Douglas L. Clark) | APPX0028 - 0033 |
| 6. | Summit 6's Initial Disclosures<br>(Exhibit E to Declaration of Douglas L. Clark) | APPX0034 - 0042 |

| No. | Document Description | Page No. |
|-----|----------------------|----------|
| 7. | Apple Inc.'s Initial Disclosures<br>(Exhibit F to Declaration of Douglas L. Clark) | APPX0043 - 0054 |
| 8. | Twitter, Inc.'s Initial Disclosures<br>(Exhibit G to Declaration of Douglas L. Clark) | APPX0055 - 0066 |
| 9. | HTC Corporation and HTC America, Inc.'s Initial Disclosures<br>(Exhibit H to Declaration of Douglas L. Clark) | APPX0067 – 0077 |
| 10. | Motorola Mobility LLC's Initial Disclosures<br>(Exhibit I to Declaration of Douglas L. Clark) | APPX0078 - 0086 |
| 11. | LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics MobileComm USA, Inc.'s Initial Disclosures<br>(Exhibit J to Declaration of Douglas L. Clark) | APPX0087 – 00101 |
| 12. | Selected Web Pages from the Tarrant Appraisal District Website<br>(Exhibit K to Declaration of Douglas L. Clark) | APPX00102 – 00108 |
| 13. | Supplemental Declaration of Mark Buckley in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) | APPX00109 -00110 |

Dated: July 15, 2014

Respectfully submitted,

/s/ Hilda C. Galvan

Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

William C. Rooklidge (pro hac vice)
wrooklidge@jonesday.com
Mark A. Finkelstein (pro hac vice)
mafinkelstein@jonesday.com
Frank P. Cote (pro hac vice)
fcote@jonesday.com
Michelle Stover (pro hac vice)
mstover@jonesday.com

2

Doug L. Clark *(pro hac vice)*
dlclark@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
Telephone: (949) 851-3939
Facsimile: (949) 553-7539

**Attorneys for Defendant APPLE INC.**

By: /s/ David J. Silbert

David J. Silbert *Pro Hac Vice*
Leo L. Lam *Pro Hac Vice*
Julie A. Duncan *Pro Hac Vice*
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
dsilbert@kvn.com
llam@kvn.com
jduncan@kvn.com

Brett C. Govett
FULBRIGHT & JAWORSKI
2200 Ross Ave., Suite 2800
Dallas, TX 75201-2784
Telephone: 214.855.8118
Facsimile: 214.855.8200
brett.govett@nortonrosefulbright.com

**Attorneys for Defendant TWITTER, INC.**

/s/ Debora L. Sterling

Deborah L. Sterling
Texas Bar No. 19170950
QUILLING SELANDER LOWNDS
   WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: 214-871-2111
Facsimile: 214-871-2111
*dsterling@qslwm.com*

Steven J. Routh (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel.: (202) 339-8400
Fax: (202) 339-8500

Robert M. Isackson (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel.: (212) 506-5000
Fax: (212) 506-5151

Stacey E. Stillman (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
Fax: (650) 614-7401

Hsiwen Lo (admitted *pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP

3

2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Tel: (949) 567-6700
Fax: (949) 567-6710

***Attorneys for Defendants LG
ELECTRONICS, INC., LGE
ELECTRONICS USA, INC., AND LG
ELECTRONICS MOBILECOMM USA,
Inc.INC.***

| | |
|---|---|
| */s/ Bonnie M. Grant* | */s/ Mashhood Rassam* |
| Steven D. Moore (pro hac vice) | Yar R. Chaikovsky (admitted) |
| smoore@kilpatricktownsend.com | Bryan K. James (pro hac vice) |
| KILPATRICK TOWNSEND LLP | Philip Ou (pro hac vice) |
| Eighth Floor | Darryl J. Ong (pro hac vice) |
| Two Embarcadero Center | McDermott Will & Emery LLP |
| San Francisco, CA 94111 | 275 Middlefield Road, Suite 100 |
| (415) 576.0200 (telephone) | Menlo Park, California  94025-4004 |
| (415) 576.0300 (facsimile) | Telephone: +1 650 815 7400 |
| | Facsimile: +1 650 815 7401 |
| D. Clay Holloway (pro hac vice) | Email: ychaikovsky@mwe.com |
| dholloway@kilpatricktownsend.com | Email: bjames@mwe.com |
| Bonnie M. Grant (Tex. Bar No. 24067634) | Email: pou@mwe.com |
| bgrant@kilpatricktownsend.com | Email: djong@mwe.com |
| Akarsh P. Belagodu (pro hac vice) | |
| abelagodu@kilpatricktownsend.com | E. Leon Carter (Texas Bar No. 03914300) |
| Shayne E. O'Reilly (pro hac vice) | Linda R. Stahl (Texas Bar No. 00798525) |
| soreilly@kilpatricktownsend.com | CARTER SCHOLER ARNETT HAMADA & |
| KILPATRICK TOWNSEND LLP | MOCKLER, PLLC |
| Suite 2800 | Campbell Centre II |
| 1100 Peachtree Street | 8150 N. Central Expressway, 5th Floor |
| Atlanta, Georgia 30309-4530 | Dallas, Texas 75206 |
| (404) 815-6500 (Telephone) | Telephone: +1 214 550 8160 |
| (404) 815-6555 (Facsimile) | Facsimile: +1 214 550 8185 |
| | Email: lcarter@carterscholer.com |
| GRUBER HURST JOHANSEN HAIL | |
| SHANK | ***Attorneys for Defendants*** |
| MICHAEL K. HURST (Bar No. 10316310) | ***HTC CORPORATION and HTC*** |
| mhurst@ghjhlaw.com | ***AMERICA, INC.*** |
| JOSHUA M. SANDLER (Bar No. 24053680) | |
| jsandler@ghjhlaw.com | |
| 1445 Ross Avenue | |
| Suite 2500 | |
| Dallas, Texas 75202 | |

4

Telephone: 214 855 6800
Facsimile:  214 855 6808

**Attorneys for Defendant MOTOROLA**
**MOBILITY LLC**

5

Case 15-101 Document 12-3 Page: 305 Filed: 10/23/2014

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of July, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule 5.1(d). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

  */s/ Michelle Stover*
Michelle Stover

6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

SUMMIT 6 LLC, §
§
    Plaintiff, §
§
v. § CIVIL ACTION
§
HTC CORPORATION, §
HTC AMERICA, INC., §
LG ELECTRONICS, INC., § No. 7:14-cv-00014
LG ELECTRONICS USA, INC., §
LG ELECTRONICS MOBILECOMM §
USA, INC., §
MOTOROLA MOBILITY LLC, §
APPLE INC., and §
TWITTER, INC., §
§
    Defendants. § JURY TRIAL DEMANDED
§

## DECLARATION OF DOUGLAS L. CLARK IN SUPPORT OF
## DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

I, Douglas L. Clark, declare and state as follows:

1.    I am an attorney with the law firm of Jones Day, counsel for Apple Inc. in the above captioned matter.

2.    I am a member in good standing of the State Bar of California, have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would testify competently to such facts under oath.

3.    I make this declaration in support of Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California.

4.      Based on the Texas Secretary of State website that maintains records for "active, as well as inactive, corporations [and] limited liability companies," Summit 6 LLC ("Summit 6") has never registered to do business in Texas.  Attached hereto as Exhibit A is a true and correct copy from the Texas Secretary of State Business Organizations Inquiry web page last accessed on July 12, 2014, via the following link: https://direct.sos.state.tx.us/home/home-corp.asp.  The web page shows the instructions for searches and the search for "Summit 6."

5.      Attached hereto as Exhibit B is a true and correct copy of the Franchise Tax Account Status for Summit 6, last accessed on July 2, 2014, via the following link: https://mycpa.cpa.state.tx.us/coa/servlet/cpa.app.coa.CoaGetTp?Pg=tpid&Search_Nm=summit%206%20&Button=search&Search_ID=12059518840.  The web page shows that Summit 6 is "Not Registered" in Texas, does not have a Secretary of State File Number and does not have a registered agent on file in Texas.

6.      Attached hereto as Exhibit C is a true and correct copy from the Dallas County Tax Office website last accessed on July 2, 2014, via the following link: http://www.dallasact.com/act_webdev/dallas/showlist.jsp.  The web page lists the owners associated with the address at Suite 200, 4925 Greenville Ave., Dallas, Texas.  It lists the first 250 accounts of 453 matches to "4925 Greenville," of which 145 are listed at Suite 200.

7.      Attached hereto as Exhibit D is a true and correct copy of selected web pages from the Dallas County Tax Office website last accessed on July 12, 2014, via the following link: http://www.dallasact.com/act_webdev/dallas/index.jsp.  The Dallas County Tax Office indicates that yearly payment records for Summit 6 go back to 2012.  It further indicates that Summit 6 pays $21.04 per year in business personal property taxes.

8.      Attached hereto as Exhibit E is the true and correct copy of Summit 6's Initial Disclosures.

9.      Attached hereto as Exhibit F is the true and correct copy of Apple Inc.'s Initial Disclosures.

10.     Attached hereto as Exhibit G is the true and correct copy of Twitter, Inc.'s Initial Disclosures.

11.     Attached hereto as Exhibit H is the true and correct copy of HTC Corporation and HTC America, Inc.'s Initial Disclosures.

12.     Attached hereto as Exhibit I is the true and correct copy of Motorola Mobility LLC's ("Motorola") Initial Disclosures.

13.     Attached hereto as Exhibit J is the true and correct copy of LG Electronics, Inc., LG Electronics USA, Inc. and LG Electronics MobileComm USA, Inc.'s Initial Disclosures.

14.     Attached hereto as Exhibit K is a true and correct copy of selected web pages from the Tarrant Appraisal District website, last accessed on July 12, 2014, via the following link: http://www.tad.org/Default.aspx.

15.     During its prior litigation against Samsung, Summit 6 produced a witness list. *Summit 6 LLC v. Research in Motion Corp.*, No. 3:11-cv-367-O, D.I. 349 (N.D. Tex. Dec. 4 2012). Based on the addresses on the witness list, 17 individuals were from the Northern District of California. Only five individuals were from Texas—four were Samsung employees and one was the Summit 6's damages expert.

16.     On July 10, 2014, counsel for Plaintiff provided their list of document custodians for purposes of collection, review and production of ESI, which consisted of Sarah Pate and Scott Lewis.  As proved in Defendants' opening brief (Dkt Nos. 91-1 and 91-2), Sarah Pate resides in Northern California (APPX038, APPX040) and Scott Lewis resides in Utah (APPX156).

I declare under penalty of perjury that the foregoing is true and correct.

Date: July 14, 2014

Douglas L. Clark

# Exhibit A

APPX005

# TEXAS SECRETARY of STATE
# NANDITA BERRY

**UCC** | **Business Organizations** | **Trademarks** | **Notary** | **Account** | **Help/Fees** | **Briefcase** | **Logout**

### FIND ENTITY NAME SEARCH

Enter name and press 'Search'. There is a **$1.00** statutorily authorized fee associated with each search. This fee will not be assessed if an order request is then placed on the results of the search.

**ENTITY NAME**

[                                          ]

[ Search ]

---

Instructions:
- The statutorily authorized fee to access information will not be assessed if an order request is then placed on or a document filed on the results of the search.
- **DEFINITION**: *Find* - By performing this search, you will retrieve information on active, as well as inactive, corporations, limited liability companies, limited partnerships, registered limited liability partnerships, out-of-state financial institutions, certain Texas financial institutions, and unincorporated nonprofit associations that currently use or have used the name you searched.

https://direct.sos.state.tx.us/corp_inquiry/corp_inquiry-find.asp?:Norder_item_type_id=10          7/12/2014

# TEXAS SECRETARY of STATE
# NANDITA BERRY

### FIND ENTITY NAME SEARCH

This search was performed on with the following search parameter:
ENTITY NAME : summit 6

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|---|---|---|---|---|---|---|
| ○ | 800936353 | G&I VI SUMMIT RIDGE GP LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 800936501 | G&I VI SUMMIT RIDGE LP | Foreign Limited Partnership | In existence | Legal | In use |
| ○ | 19238200 | SMITH FURNITURE CO. #6, INC. | Domestic For-Profit Corporation | Merged | Legal | Inactive |
| ○ | 19727100 | SMITH'S SIX FLAGS, INC. | Domestic For-Profit Corporation | Forfeited existence | Legal | Inactive |
| ○ | 801584013 | SMITH ROAD LOT 6, LP | Domestic Limited Partnership (LP) | In existence | Legal | In use |
| ○ | 801584008 | SMITH ROAD LOT 6 GENERAL PARTNER, LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 801827519 | SmoothL6 LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 801785290 | 6S Smith Investments, LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 801932936 | HIGHSMITH HOMES VI, LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| ○ | 40718500 | J. M. SMITH AUTO SUPPLY, NO. 6, INC. | Domestic For-Profit Corporation | Forfeited existence | Legal | Prior |

Records 1 to 10 of 13 scroll    [ Next >> ]    **OR**    proceed to page [____] of 2 pages [ GO ]

[ Return to Order ]    [ New Search ]

Instructions:
- 🔴 To view additional information pertaining to a particular filing select the number associated with the name.
- 🔴 To place an order for additional information about a filing select the radial button listed under 'Mark' that is associated with the entity and press the 'Order' button.

**- A737 -**

APPX007

# TEXAS SECRETARY of STATE
# NANDITA BERRY

UCC | **Business Organizations** | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout

### FIND ENTITY NAME SEARCH

This search was performed on with the following search parameter:
**ENTITY NAME :** summit 6

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|------|---------------|------|-------------|---------------|-----------|-------------|
| ⊙ | 800065991 | SPJST District VI Cemetery Organization | Domestic Nonprofit Corporation | In existence | Legal | In use |
| ⊙ | 801474319 | DALLAS MOTEL6, L.L.C. | Domestic Limited Liability Company (LLC) | In existence | Legal | Prior |
| ⊙ | 800973683 | See Matthew 6 | Domestic Nonprofit Corporation | In existence | Legal | In use |

Records 11 to 13 of 13 scroll   [ << Previous ]   OR   proceed to page [        ] of 2 pages [ GO ]

[ Return to Order ]   [ New Search ]

Instructions:
- To view additional information pertaining to a particular filing select the number associated with the name.
- To place an order for additional information about a filing select the radial button listed under 'Mark' that is associated with the entity and press the 'Order' button.

**- A738 -**

APPX008

Case 15-101 Document 23 Page 314 Filed 10/23/2014

# Exhibit B

APPX009



Taxable Entity Search Results
Taxable Entity Search
Help

# Franchise Tax Account Status

As of: 07/02/2014 06:48:07 PM

**This Page is Not Sufficient for Filings with the Secretary of State**

Obtain a certification for filings with the Secretary of State.

| SUMMIT 6 LLC | |
|---|---|
| Texas Taxpayer Number | 12059518840 |
| Mailing Address | PO BOX 2603<br>ADDISON, TX 75001-2603 |
| ❓ Right to Transact Business in Texas | ACTIVE |
| State of Formation | DE |
| Effective SOS Registration Date | Not Registered |
| Texas SOS File Number | Not Registered |
| Registered Agent Name | Not on file |
| Registered Office Street Address | |

texas.gov | Statewide Search from the Texas State Library | State Link Policy | Texas Homeland Security
**Susan Combs**, Texas Comptroller • Window on State Government • Contact Us
Privacy and Security Policy | Accessibility Policy | Link Policy | Public Information Act | Compact with Texans

**- A740 -**

APPX0010

Case 15-101 Document 2-3 Page: 316 Filed: 10/23/2014

# Exhibit C

APPX0011



| Owner Search | Address Search | Account Search | Fiduciary Search |

**The following items match your Site Address search for "4925 GREENVILLE"**

*Only the first 250 accounts of 453 matches are shown. Please refine your search criteria.*

Click an account number below to see details or make a payment on that account.

Your search took 4 seconds.

| Account Number ⬍ | Owner's Name & Address ⬍ | Property Site Address ⬍ | Legal Description ⬍ |
|---|---|---|---|
| 99120207720000000 | YODH RAHUL D<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE YODH, DA | PERSONAL PROPERTY<br>RAHUL D YODH |
| 99080421220000000 | XO ONE INC<br>% TAX DEPT<br>13865 SUNRISE VALLEY DR<br>HERNDON, VA 20171-6187 | 4925 GREENVILLE AVE , 30 | PERSONAL PROPERTY<br>XO ONE INC |
| 99110322163000000 | WJ BRADLEY MORTGAGE CAPITAL GR<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200WJ, DA | PERSONAL PROPERTY<br>WJ BRADLEY MORTGAGE CAPITAL GROUP |
| 99101103860000000 | WILDCAT MIDSTREAM LLC<br>MICHAEL B DAVIS<br>SUITE 300<br>8333 DOUGLAS AVE<br>DALLAS, TX 75225-5845 | 4925 GREENVILLE AVE 550, DA | PERSONAL PROPERTY<br>WILDCAT MIDSTREAM LLC |
| 99200126700059950 | WHITTINGTON ROWDY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 200O, DA | PERSONAL PROPERTY<br>OFFICE OF ROWDY LAYNE |
| 99070417880000000 | WHEELER MAUREEN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200AB, DA | PERSONAL PROPERTY<br>ABH CAPITAL MANAGEMENT |
| 99120207680000000 | WESTERN FINANCE & LEASE INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE WESTE, DA | PERSONAL PROPERTY<br>WESTERN FINANCE & LEASE INC |
| 99100419310000000 | VERMEULEN ROGER<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200VE, DA | PERSONAL PROPERTY<br>VERMEULEN ROGER |
| 99120207670000000 | US WESTERN FINANCIAL GROUP<br>SUITE 200<br>4825 GREENVILLE AVE<br>DALLAS, TX 75206-4119 | 4925 GREENVILLE AVE USWES, DA | PERSONAL PROPERTY<br>US WESTERN FINANCIAL GROUP |
| 99100419290000000 | TURNER HIERS<br>SUITE 200<br>4978 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200TU, DA | PERSONAL PROPERTY<br>TURNER HIERS |
| 99000000216522600 | TURNER FRED E<br>SUITE 852<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 852, DA | PERSONAL PROPERTY<br>TURNER FRED E |
| 99090811152000000 | TUCKER KADRIAN<br>SUITE 200<br>4925 GREENVILLE AVE | 4925 GREENVILLE AVE 200TU | PERSONAL PROPERTY<br>TUCKER KADRIAN |

APPX0012

| 99090811149000000 | TRIDENT STEEL<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TR | PERSONAL PROPERTY<br>TRIDENT STEEL |
|---|---|---|---|
| 99070509900000000 | TRIDENT STEEL CORPORATION<br>SUITE 304<br>1000 DES PERES RD<br>SAINT LOUIS,, MO 63131-2050 | 4925 GREENVILLE, UNIT 218T, 30 | PERSONAL PROPERTY<br>TRIDENT STEEL CORPORATION |
| 99110322161000000 | TRIDENT STEEL CORPORATION<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TR, DA | PERSONAL PROPERTY<br>TRIDENT STEEL CORPORATION |
| 99060515190000000 | TRIDENT STEEL CORPORATION<br>%MARK LEWANDOWSKI<br>SUITE 304<br>1000 DES PERES RD<br>SAINT LOUIS, MO 63131-2050 | 4925 GREENVILLE AVE 218TR, DA | PERSONAL PROPERTY<br>TRIDENT STEEL CORPORATION |
| 99060515160000000 | TRICOMP MANAGEMENT INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200T, 30 | PERSONAL PROPERTY<br>TRICOMP MANAGEMENT INC |
| 99060511218000000 | TRI QUETRA ENTERPRISES LLC<br>% GONZALES CARLOS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200AM, 30 | PERSONAL PROPERTY<br>AMERI-NET MORTGAGE |
| 99120207650000000 | TRADING LIMITLESS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE TRADI, DA | PERSONAL PROPERTY<br>TRADING LIMITLESS |
| 99000000216505000 | TORO EXPLORATION CO<br>T J THOMPSON - PRES<br>P O BOX 1629<br>ROCKWALL, TX 75087-1629 | 4925 GREENVILLE, UNIT 14, DA | PERSONAL PROPERTY<br>TORO EXPLORATION CO |
| 99050504400000000 | TIME WARNER OF TEXAS LP<br>ATTN PROPERTY TAX DEPT<br>10475 PARK MEADOWS DR<br>LITTLETON,, CO 80124-5433 | 4925 GREENVILLE, 30 | PERSONAL PROPERTY<br>TIME WARNER OF TEXAS LP |
| 99090811148000000 | TIDAL RESEARCH<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TI | PERSONAL PROPERTY<br>TIDAL RESEARCH |
| 99120206600000000 | THURSTON ENERGY LLC<br>SUITE 840<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 840, DA | PERSONAL PROPERTY<br>THURSTON ENERGY LLC |
| 99100419270000000 | THREE SEAS CAPITAL<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TH, DA | PERSONAL PROPERTY<br>THREE SEAS CAPITAL |
| 99000000216494900 | THREE BROTHERS OIL CO<br>GENTRY M HUBBARD PRES<br>SUITE 1155<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE, UNIT 115, DA | PERSONAL PROPERTY<br>HUBBARD PETROLEUM |
| 99090811147000000 | THINK TECH LABS LLS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TH, DA | PERSONAL PROPERTY<br>THINK TECH LABS LLS |
| 99120207640000000 | TEX LA MANAGEMENT GROUP LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE TEXLA, DA | PERSONAL PROPERTY<br>TEX LA MANAGEMENT GROUP LLC |
| 99081030670000000 | TEMA FUND LP<br>DALTON COBB<br>PO BOX 12038<br>DALLAS, TX 75225-0038 | 4925 GREENVILLE AVE 1100, DA | PERSONAL PROPERTY<br>TEMA FUND LP |
| 99061113340000000 | TEITELBAUM WILLIAM<br>SUITE 200<br>4958 GREENVILLE AVE | 4925 GREENVILLE AVE 200TE, DA | PERSONAL PROPERTY<br>LAW OFFICE OF WILLIAM J TEITELBAUM |

APPX0013

| | | | |
|---|---|---|---|
| | DALLAS, TX 75206-4004 | | |
| 99050608102000000 | TARA ENERGY<br>SUITE 500<br>3800 BUFFALO SPEEDWAY<br>HOUSTON, TX 77098-3719 | 4925 GREENVILLE AVE 200TA, DA | PERSONAL PROPERTY<br>TARA ENERGY |
| 99081030560000000 | SYDRI ENERGY INC<br>SUITE 1200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 560, DA | PERSONAL PROPERTY<br>SYDRI OIL & GAS INC |
| 99110322158000000 | SWAIM MARK<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200MA, DA | PERSONAL PROPERTY<br>MARK SWAIM |
| 99100419260000000 | SUMMIT BUILDERS<br>SUITE 122<br>3333 E CAMELBACK RD<br>PHOENIX, AZ 85018-2322 | 4925 GREENVILLE AVE 200SU, DA | PERSONAL PROPERTY<br>SUMMIT BUILDERS |
| 99120207630000000 | SUMMIT 6<br>SUITE 200<br>4825 GREENVILLE AVE<br>DALLAS, TX 75206-4119 | 4925 GREENVILLE AVE SUMMI, DA | PERSONAL PROPERTY<br>SUMMIT 6 |
| 99110322157000000 | SUMMERS TOMMY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TO, DA | PERSONAL PROPERTY<br>TOMMY SUMMERS |
| 99050608101000000 | SUMMER RESOURCES<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200S, 30 | PERSONAL PROPERTY<br>SUMMER RESOURCES |
| 99060515130000000 | STURGIS TAMMIE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200S, 30 | PERSONAL PROPERTY<br>STURGIS TAMMIE |
| 99120125420000000 | STAUB JANICE AND HARBAUGH DEEN<br>SUITE 608<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>DALLAS EDUCATIONAL AWARENESS |
| 99080415610000000 | SR PRODUCTIONS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, 30 | PERSONAL PROPERTY<br>SR PRODUCTIONS |
| 99091118670000000 | SPECIALIZED PUBLIC FINANCE INC<br>STEVEN ADAMS<br>SUITE 465<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 465, DA | PERSONAL PROPERTY<br>SPECIALIZED PUBLIC FINANCE INC |
| 99070124150000000 | SOUTHERN CROSS PROPERTIES INC<br>SUITE 825<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>SOUTHERN CROSS PROPERTIES INC |
| 99120207610000000 | SMULAND KEN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE SMULA, DA | PERSONAL PROPERTY<br>KEN SMULAND |
| 99070417107000000 | SMITH GORDON<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200T, 30 | PERSONAL PROPERTY<br>TEMPEST TELECOM |
| 99120207530000000 | SLOUGH LAW FIRM THE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE SLOUG, DA | PERSONAL PROPERTY<br>THE SLOUGH LAW FIRM |
| 99000000216364450 | SLOCUM ROBERT E DO<br>ROBERT SLOCUM PRES<br>SUITE 1158<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1158, DA | PERSONAL PROPERTY<br>SLOCUM ROBERT E DO PA |
| 99000000216359050 | SISTRUNK CORPORATION<br>JOHN D SISTRUNK JR PRES<br>7230 BRIAR COVE DR<br>DALLAS, TX 75254-8002 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>SISTRUNK CORPORATION |

APPX0014

| 99110322156000000 | SIMR INC<br>SUITE 200<br>4972 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200ST, DA | PERSONAL PROPERTY<br>STATINMED RESEARCH |
|---|---|---|---|
| 99100419250000000 | SIMPLE SURROGACY LLC<br>SUITE 200<br>4970 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200RA, DA | PERSONAL PROPERTY<br>SIMPLE SURROGACY LLC |
| 99100419240000000 | SIMCKES ANDREW<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200SI, DA | PERSONAL PROPERTY<br>SIMCKES ANDREW |
| 99090811136000000 | SIGNTRONIX<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200SI | PERSONAL PROPERTY<br>SIGNTRONIX |
| 99200126700059850 | SIGEL MARC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 200H, DA | PERSONAL PROPERTY<br>HUNTER TECHNOLOGY |
| 99110322152000000 | SHORE FREEMAN MILES PC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200SH, DA | PERSONAL PROPERTY<br>SHORE FREEMAN MILES PC |
| 99070123440000000 | SHARPE & ASSOCIATES PLLC<br>CHARLES N SHARPE<br>SUITE 425<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 425, DA | PERSONAL PROPERTY<br>SHARPE & ASSOCIATES PLLC |
| 99070124800000000 | SEMINOLE ENERGY SERVICES LLC<br>SUITE 300<br>1323 E 71ST ST<br>TULSA, OK 74136-5045 | 4925 GREENVILLE, UNIT 1130, 30 | PERSONAL PROPERTY<br>SEMINOLE ENERGY SERVICES |
| 99050608990000000 | SCOTT SEARCH<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200, DA | PERSONAL PROPERTY<br>SCOTT SEARCH |
| 99080415570000000 | SAXON MORTGAGE INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>SAXON MORTGAGE INC |
| 99080415550000000 | SANDY COVE RANCH ON RICHALAND<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200SA, DA | PERSONAL PROPERTY<br>SANDY COVE RANCH ON RICHALAND<br>CHAM<br>BERS LAKE |
| 99070926120000000 | SANDRIDGE ONSHORE LP<br>RICH SANCHEZ<br>PO BOX 548807<br>OKLAHOMA CITY, OK 73154-8807 | 4925 GREENVILLE AVE DA | PERSONAL PROPERTY<br>SANDRIDGE ONSHORE LP |
| 99060103430000000 | SAN SABA ROYALTY COMPANY LLC<br>COON HAL<br>SUITE 500<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 500, DA | PERSONAL PROPERTY<br>SAN SABA ROYALTY COMPANY LLC |
| 99000000215116800 | SAMSON OIL CO<br>BOND W BEAMS PRES<br>410 17TH ST STE570<br>DENVER, CO 80202-4412 | 4925 GREENVILLE, UNIT 84, DA | PERSONAL PROPERTY<br>SAMSON OIL CO |
| 99101101410000000 | SAEED AFGHAHI AND ASSOCIATES I<br>SAEED AFGHAHI - PRESIDENT<br>SUITE 460<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 460, DA | PERSONAL PROPERTY<br>AVRA OIL COMPANY |
| 99120917310000000 | ROSS CAROL MED LPC<br>ATTN CAROL ROSS<br>SUITE 608<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>ROSS CAROL MED LPC |
| 99060515900000000 | ROMACK INC<br>SUITE 200 | 4925 GREENVILLE AVE 200RO, DA | PERSONAL PROPERTY<br>ROMACK INC |

APPX0015

| | | | |
|---|---|---|---|
| | 4967 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | | |
| 99081029122000000 | ROGERS HEALY AND ASSOCIATES LL<br>HEALY ROGERS<br>SUITE 360<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 360, DA | PERSONAL PROPERTY<br>ROGERS HEALY AND ASSOCIATES LLC |
| 99000000216328500 | ROC SOFTWARE<br>% DAWN FOSBURY<br>SUITE 300<br>9050 N CAPITAL OF TEXAS H<br>AUSTIN,, TX 78759-7268 | 4925 GREENVILLE, UNIT 120, 30 | PERSONAL PROPERTY<br>ROC SOFTWARE |
| 99110322148000000 | ROBINSON PC JOHN G<br>SUITE 200<br>4966 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200RO, DA | PERSONAL PROPERTY<br>ROBINSON PC JOHN G |
| 99080415520000000 | ROBERTS GENE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RO, DA | PERSONAL PROPERTY<br>ROBERTS GENE |
| 99000000183685000 | ROBERTS & HAMMACK INC<br>DIMPLE L ZEIGER PRES<br>SUITE 1140<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>ROBERTS & HAMMACK INC |
| 99080415510000000 | REFAKIS PC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RE, 30 | PERSONAL PROPERTY<br>REFAKIS PC |
| 99200126700059800 | REEDER CHRIS & BRYAN<br>SUITE 1400<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1400, DA | PERSONAL PROPERTY<br>REEDER ENERGY |
| 99100419230000000 | RDR ASSOCAITES LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RD, DA | PERSONAL PROPERTY<br>RDR ASSOCIATES LLC |
| 99120207520000000 | RB INTERNATIONAL FINANCE LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE RBINT, DA | PERSONAL PROPERTY<br>RB INTERNATIONAL FINANCE LLC |
| 99080415480000000 | RAY BRAD<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RA, DA | PERSONAL PROPERTY<br>RAY OIL COMPANY |
| 99050608980000000 | RAPTOR RESOURCES INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RA, DA | PERSONAL PROPERTY<br>RAPTOR RESOURCES INC |
| 99110322145000000 | QUARLS HARRY<br>SUITE 200<br>4965 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE AVE 200HA, DA | PERSONAL PROPERTY<br>HARRY QUARLS |
| 99080416100000000 | QUARLS HARRY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>QUARLS HARRY |
| 99090811103000000 | QUARLS HARRY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200GR, DA | PERSONAL PROPERTY<br>GREEN ROCK ENERGY |
| 99080415140000000 | PURSUIT SERVICES GROUP LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200P, 30 | PERSONAL PROPERTY<br>PURSUIT SERVICES GROUP LLC |
| 99090811134000000 | PROVIDENCE MUSIC ACADEMY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PR | PERSONAL PROPERTY<br>PROVIDENCE MUSIC ACADEMY |
| 99080415130000000 | POWELL ORLANDA<br>SUITE 200 | 4925 GREENVILLE, UNIT 200P, 30 | PERSONAL PROPERTY<br>POWELL ORLANDA |

APPX0016

| | | | |
|---|---|---|---|
| | 4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | | |
| 99100419210000000 | POWELL ORLANDA<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PO, DA | PERSONAL PROPERTY<br>POWELL ORLANDA |
| 99090811155000000 | POWELL GROUP THE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PO, DA | PERSONAL PROPERTY<br>POWELL GROUP THE |
| 99110322142000000 | POLEMENAKOS ELAINE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200EL, DA | PERSONAL PROPERTY<br>LAW OFFICES OF ELAINE POLEMENAKOS |
| 99120207490000000 | PLANNING MODE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE PLANN, DA | PERSONAL PROPERTY<br>PLANNING MODE |
| 99070417960000000 | PICCHIOTTI LARRY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200L, 30 | PERSONAL PROPERTY<br>LENDING TEAM USA |
| 99110322141000000 | PETTY TRAVIS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200TR, DA | PERSONAL PROPERTY<br>TRAVIS PETTY |
| 99080415120000000 | PELTON LANCE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200P, 30 | PERSONAL PROPERTY<br>PELTON LANCE |
| 99100419190000000 | PELTON LANCE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PE, DA | PERSONAL PROPERTY<br>PELTON LANCE |
| 99101103840000000 | PARK CITIES CHILD AND FAMILY C<br>SARAH L BALINT<br>SUITE 1100<br>4849 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>PARK CITIES CHILD AND FAMILY COUN<br>ELING PLLC |
| 99090811131000000 | PARK CITIES CHILD & FAMILY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PA | PERSONAL PROPERTY<br>PARK CITIES CHILD & FAMILY |
| 99091103150000000 | PALMER PETROLEUM INC<br>SUITE 1400<br>401 EDWARDS ST<br>SHREVEPORT, LA 71101-3289 | 4925 GREENVILLE AVE 400, DA | PERSONAL PROPERTY<br>PALMER PETROLEUM INC |
| 99060515830000000 | P T BEE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PT, 30 | PERSONAL PROPERTY<br>P T BEE |
| 99110322790000000 | P STAN KEITH<br>SUITE 200 SUITE 2<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PR, DA | PERSONAL PROPERTY<br>PROMETTRE INTERNATIONAL VENTURE |
| 99100419180000000 | OWENS BRIAN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200OW, DA | PERSONAL PROPERTY<br>OWENS BRIAN |
| 99060103380000000 | OLYMPIA ROYALTY LTD<br>SUITE 1800<br>3811 TURTLE CREEK BLVD<br>DALLAS, TX 75219-4693 | 4925 GREENVILLE AVE 500, DA | PERSONAL PROPERTY<br>OLYMPIA ROYALTY LTD |
| 99110322114000000 | ODEN MADISON LEE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200MA, DA | PERSONAL PROPERTY<br>MR BE MOTORS |
| 99100419170000000 | OCONNOR JAN<br>SUITE 200<br>4925 GREENVILLE AVE | 4925 GREENVILLE AVE 200OC, DA | PERSONAL PROPERTY<br>OCONNOR JAN |

APPX0017

| | DALLAS, TX 75206-4026 | | |
|---|---|---|---|
| 99070123190000000 | OBRIEN RESOURCES LLC<br>CTMI LLC<br>SUITE 152<br>6115 CAMP BOWIE<br>FORT WORTH, TX 76116-5512 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>OBRIEN RESOURCES LLC |
| 99060515240000000 | OBRIEN ENERGY COMPANY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200O, 30 | PERSONAL PROPERTY<br>OBRIEN ENERGY COMPANY |
| 99110322111000000 | O AND H BRAND DESIGN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200OH, DA | PERSONAL PROPERTY<br>O AND H BRAND DESIGN |
| 99050608950000000 | NXTRENDS RESEARCH<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200N, 30 | PERSONAL PROPERTY<br>NXTRENDS RESEARCH |
| 99060515500000000 | NORTH AMERICAN IMPEX INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200N, 30 | PERSONAL PROPERTY<br>NORTH AMERICAN IMPEX INC |
| 99101103850000000 | NOBLES & HARDY LLC<br>CHARLES DANE HARDY<br>SUITE 1100<br>4925 N CENTRAL EXPY<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE AVE 1100, DA | PERSONAL PROPERTY<br>NOBLES & HARDY LLC |
| 99070417940000000 | NICHOLS JAMES<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 30 | PERSONAL PROPERTY<br>BELL SUPPLY COMPANY |
| 99120207470000000 | NEWKUMET EXPLORATION INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE NEWKU, DA | PERSONAL PROPERTY<br>NEWKUMET EXPLORATION INC |
| 99090810134000000 | NEOFIRMA INC<br>% STEPHEN HAGLUND<br>SUITE 455<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 455, DA | PERSONAL PROPERTY<br>NEOFIRMA INC |
| 99000000215290300 | NEA DALLAS<br>CO BABS DIDNER<br>316 W 12TH ST<br>AUSTIN, TX 78701-1815 | 4925 GREENVILLE AVE 415, DA | PERSONAL PROPERTY<br>NEA DALLAS |
| 99060515400000000 | NATIONAL FUEL MARKETING<br>SUITE 815<br>7979 E TUFTS AVE<br>DENVER, CO 80237-2845 | 4925 GREENVILLE, DA | PERSONAL PROPERTY<br>NATIONAL FUEL MARKETING |
| 99051227410000000 | NADEL & GUSSMAN LLC<br>9631 HILLVIEW DR<br>DALLAS, TX 75231-1526 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>NADEL & GUSSMAN LLC |
| 99060515300000000 | MUSTANG DRILLING LTD<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200M, 30 | PERSONAL PROPERTY<br>MUSTANG DRILLING LTD |
| 99200126700154350 | MOSCA HERB<br>SUITE 500<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 500, 30 | PERSONAL PROPERTY<br>GLACIER EXPLORATION |
| 99120207450000000 | MORRISWEET LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE AVE MORRI, DA | PERSONAL PROPERTY<br>MORRISWEET LLC |
| 99000000216488700 | MORAN & ASSOCIATES PC<br>4315 CROWLEY DR<br>DALLAS, TX 75229-0000 | 4925 GREENVILLE, DA | PERSONAL PROPERTY<br>MORAN & ASSOCIATES PC |
| 99080415700000000 | MITSUBISHI NUCLEAR ENERGY SYST<br>500 LAS COLINAS BLVD E<br>IRVING, TX 75039-5612 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>MITSUBISHI NUCLEAR ENERGY SYSTEMS<br>NC |

APPX0018

| | | |
|---|---|---|
| 99110322830000000 | MILES ROB<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RO, DA | PERSONAL PROPERTY<br>ROB MILES |
| 99000000215170450 | MIKE BRAZIEL GEOLOGIST<br>SUITE 230<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 23, DA | PERSONAL PROPERTY<br>MIKE BRAZIEL PETROLEUM GEOLOGIST |
| 99080415400000000 | METER SMART LP<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200M, 30 | PERSONAL PROPERTY<br>METER SMART LP |
| 99120206700000000 | MED TEAM INC<br>SUITE 475<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 475, DA | PERSONAL PROPERTY<br>MED TEAM INC |
| 99091103600000000 | MCNIEL LAW FIRM PLLC<br>SUITE 1250<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1250, DA | PERSONAL PROPERTY<br>MCNIEL LAW FIRM |
| 99080415300000000 | MCCANN REALTY PARTNERS LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200M, 30 | PERSONAL PROPERTY<br>MCCANN REALTY PARTNERS LLC |
| 99200126700060050 | MASSA JAY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 210L, 30 | PERSONAL PROPERTY<br>LITE CONTROL |
| 99060306160000000 | MARTINEAU PETROLEUM INC<br>DAVID T MARTINEAU<br>SUITE 550<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 550, DA | PERSONAL PROPERTY<br>MARTINEAU PETROLEUM INC |
| 99000000216118300 | MACVAC A JOINT VENTURE<br>%JAMES HAIL JR PRES<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE, UNIT 20, DA | PERSONAL PROPERTY<br>MACVAC A JOINT VENTURE<br>ENERGY SQUARE LEASING OFFICE |
| 99091103110000000 | MACK MATHESON & MARCHESONI PLL<br>SUITE 880<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 880, DA | PERSONAL PROPERTY<br>MACK MATHESON & MARCHESONI PLLC |
| 99200126700060200 | LOUISE RITA N A<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 210O, DA | PERSONAL PROPERTY<br>LOUISE RITA OFFICE OF |
| 00000366413000000 | LOCH ENERGY SQUARE LP<br>% GREGORY COURTWRIGHT<br>2000 MCKINNEY AVE STE 1000<br>DALLAS, TX 75201-2027 | 4925 GREENVILLE AVE, 00 | ENERGY SQUARE<br>BLK C/5188 L T 1B ACS 4.757<br>INT201100303972 DD11182011 CO-DC<br>5188 00C 01B00 1005188 00C |
| 99080827330000000 | LLOYD REALTY PARTNERS LLC<br>CHRIS LLOYD<br>3616 VINTAGE PL<br>DALLAS, TX 75214-0000 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>LLOYD REALTY PARTNERS |
| 99100419140000000 | LAW OFFICES OF GREGORY GRIFFIT<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200GR, DA | PERSONAL PROPERTY<br>GRIFFITH LAW FIRM THE |
| 99090811121000000 | LAW OFFICE OF RICHARD SCIMECA<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200LA | PERSONAL PROPERTY<br>LAW OFFICE OF RICHARD SCIMECA |
| 99120207440000000 | LAW OFFICE OF ANDREW OOSTDYK P<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE OOSTD, DA | PERSONAL PROPERTY<br>LAW OFFICE OF ANDREW OOSTDYK PLLC |
| 99000000215872600 | LARSON PERRY L<br>SUITE 1015<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1015, DA | PERSONAL PROPERTY<br>LARSON PERRY OPERATING CO INC |

APPX0019

| | | |
|---|---|---|
| 99090811139000000 | LANSFORD GROUP THE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200LA<br><br>PERSONAL PROPERTY<br>LANSFORD GROUP THE |
| 99120207420000000 | LANGUAGE TRAINING CENTER<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE LANGU, DA<br><br>PERSONAL PROPERTY<br>LANGUAGE TRAINING CENTER |
| 99081030460000000 | LANDSTAR RESOURCES LLC<br>SUITE 712<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 712, DA<br><br>PERSONAL PROPERTY<br>LANDSTAR RESOURCES LLC |
| 99100419160000000 | LAMPL BRENT<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200LA, DA<br><br>PERSONAL PROPERTY<br>LAMPL BRENT |
| 99070417101000000 | LAMM JERRY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200LA, DA<br><br>PERSONAL PROPERTY<br>LAMM REAL ESTATE |
| 99200108500236300 | KINCHELOE RICHARD<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 210K, DA<br><br>PERSONAL PROPERTY<br>KINCHELOE & ASSOCIATES |
| 99200021600186350 | KIDD CHRIS M<br>9631 HILLVIEW DR<br>DALLAS, TX 75231-1526 | 4925 GREENVILLEAVEDA<br><br>PERSONAL PROPERTY<br>KIDD CHRIS M |
| 99090811117000000 | KENTTER REALTY GROUP LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200KE<br><br>PERSONAL PROPERTY<br>KENTTER REALTY GROUP LLC |
| 99100419150000000 | KENNY JEFF N<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200KE, DA<br><br>PERSONAL PROPERTY<br>KENNY JEFF N |
| 99200126700060100 | JONES DOUGLAS &<br>MCKEEVER MIKE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200LP, DA<br><br>PERSONAL PROPERTY<br>LPL FINANCIAL |
| 99200126700059700 | JOHNSON HOWARD<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 30<br><br>PERSONAL PROPERTY<br>BUILDING SERVICE |
| 99071022590000000 | JAREP COMMERCIAL CONSTRUCTION<br>PO BOX 644<br>TERRELL, TX 75160-0012 | 4925 GREENVILLE AVE 140, DA<br><br>PERSONAL PROPERTY<br>JAREP COMMERCIAL CONSTRUCTION LLC |
| 99060511225000000 | INTERSEARCH<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200I, 30<br><br>PERSONAL PROPERTY<br>INTERSEARCH |
| 99000000215755900 | INSURANCE GROUP THE<br>PHILIP GARLINGTON -PRES<br>1623 TEN MILE LN<br>DUNCANVILLE, TX 75137-4329 | 4925 GREENVILLE AVE, DA<br><br>PERSONAL PROPERTY<br>INSURANCE GROUP THE |
| 99110322820000000 | HUNT WILL<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200WI, DA<br><br>PERSONAL PROPERTY<br>WILL HUNT |
| 99091103140000000 | HUDSON STEVEN<br>SUITE 500<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 500, DA<br><br>PERSONAL PROPERTY<br>WELLBORE CAPITAL |
| 99080415200000000 | HOWLAND MARIANNE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200H, 30<br><br>PERSONAL PROPERTY<br>HOWLAND MARIANNE |
| 99090811113000000 | HOWLAND MARIANNE<br>SUITE 200<br>4925 GREENVILLE AVE | 4925 GREENVILLE AVE 200HO<br><br>PERSONAL PROPERTY<br>HOWLAND MARIANNE |

APPX0020

| | | | |
|---|---|---|---|
| | DALLAS, TX 75206-4026 | | |
| 99060511224000000 | HOUSER WILLIAM<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200H, 30 | PERSONAL PROPERTY<br>HOUSER WILLIAM |
| 99101202220000000 | HOUGH ROBERT M PETROLEUM GEOLO<br>STE 1310<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>FOUNTAINHEAD OIL & GAS LLC |
| 99060511222000000 | HOPE FOR CHILDREN FOUNDAT<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200H, 30 | PERSONAL PROPERTY<br>HOPE FOR CHILDREN FOUNDATION |
| 99120515190000000 | HERRIN DANIEL<br>SUITE 200<br>4952 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200, DA | PERSONAL PROPERTY<br>HERRIN & WRIGHT PLLC |
| 99120207410000000 | HERRIN AND WRIGHT<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE HERRI, 00 | PERSONAL PROPERTY<br>HERRIN AND WRIGHT |
| 99000000215682350 | HARPER WAYNE<br>PO BOX 400<br>GAINESVILLE, TX 76241-0000 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>HARPER WAYNE |
| 99000000215673300 | HAMMACK JOHN A<br>SUITE 1150<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1150, DA | PERSONAL PROPERTY<br>HAMMACK OIL CO |
| 99110322810000000 | HAGOOD RONALD<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RO, DA | PERSONAL PROPERTY<br>RONALD HAGOOD |
| 99080415100000000 | GULF COAST TUBULARS LP<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200GU, 30 | PERSONAL PROPERTY<br>GULF COAST TUBULARS LP |
| 99000000215647400 | GUFFEY ROY OIL CO<br>WILLIAM R GUFFEY<br>1116 ONE ENERGY SQUARE<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1116, DA | PERSONAL PROPERTY<br>GUFFEY ROY OIL CO |
| 99080414123000000 | GREYSTONE RETIREMENT & INSURAN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200G, 30 | PERSONAL PROPERTY<br>GREYSTONE RETIREMENT & INSURANCE S<br>OLUTION |
| 99090811107000000 | GREYSTONE FINANCIAL<br>SUITE 200<br>4950 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200GR, DA | PERSONAL PROPERTY<br>GREYSTONE FINANCIAL |
| 99070417104000000 | GREENWAY JENNIFER<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200PR, 30 | PERSONAL PROPERTY<br>PRINCIPLE HEALTHCARE |
| 99000000215636800 | GREENE & ASSOC INC<br>PO BOX 675<br>ADDISON, TX 75001-0675 | 4925 GREENVILLE, DA | PERSONAL PROPERTY<br>GREENE & ASSOC INC |
| 99090811137000000 | GOODENOW MARY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200GO, DA | PERSONAL PROPERTY<br>GOODENOW MARY |
| 99090811153000000 | GLENROSE PETROLEUM CORPORATION<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200GL | PERSONAL PROPERTY<br>GLENROSE PETROLEUM CORPORATION |
| 99060511215000000 | GIDDINGS VENTURES LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX, X 75206-4026 | 4925 GREENVILLE, UNIT 200G, 30 | PERSONAL PROPERTY<br>GIDDINGS VENTURES LLC |
| 99120207380000000 | GIBSON DENNIS | 4925 GREENVILLE AVE GIBSO, DA | PERSONAL PROPERTY |

APPX0021

| | SUITE 200 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | | DENNIS GIBSON |
|---|---|---|---|
| 99060511204000000 | GENTRY TERESA SUITE 200 4925 GREENVILLE AVE DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200G, 30 | PERSONAL PROPERTY GENTRY TERESA |
| 99070417102000000 | GARNER TODD SUITE 200 4925 GREENVILLE AVE DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200P, 30 | PERSONAL PROPERTY PINNICLE ROYALTIES |
| 99060511201000000 | FURMAN GREG SUITE 200 4925 GREENVILLE AVE DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200F, 30 | PERSONAL PROPERTY FURMAN GREG |
| 99090811101000000 | FRONTERRA INTEGRATED GEOSCIENC PO BOX 27909 HOUSTON, TX 77227-7909 | 4925 GREENVILLE AVE 200FR, DA | PERSONAL PROPERTY FRONTERRA INTEGRATED GEOSCIENCES L LC |
| 99120206400000000 | FREEMAN MILLS PC SUITE 1450 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1450, DA | PERSONAL PROPERTY FREEMAN MILLS PC |
| 99100419130000000 | FRANCIS JIMMY SUITE 200 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200FR, DA | PERSONAL PROPERTY FRANCIS JIMMY |
| 99091118660000000 | FOUR STONE OIL LP BROOKS PURNELL SUITE 490 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 490, DA | PERSONAL PROPERTY FOUR STONE OIL LP |
| 99000000214994400 | FOUR C OIL & GAS CORP C/O ROBERT D GERLACH PRES SUITE 1151 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY FOUR C OIL & GAS CORP |
| 99060515920000000 | FOSTER AND LONG LLC ATTN CHRIS GROFF SUITE 200 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200RE, 30 | PERSONAL PROPERTY RESTORATION |
| 99050608930000000 | FORTSON OIL SUITE 2900 301 COMMERCE ST FORT WORTH, TX 76102-0000 | 4925 GREENVILLE, DA | PERSONAL PROPERTY FORTSON OIL |
| 99060511198000000 | FLAGSHIP MARKETING SUITE 200 4925 GREENVILLE AVE DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200F, 30 | PERSONAL PROPERTY FLAGSHIP MARKETING |
| 99000000215606600 | FIVE STATES ENERGY CO LLC % STEVE COLLINS SUITE 1220 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1220, DA | PERSONAL PROPERTY FIVE STATES ENERGY CO LLC |
| 99060511197000000 | FEARS & NACHAWATI LAW FIRM C BRYAN FEARS SUITE 715 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 715, DA | PERSONAL PROPERTY FEARS & NACHAWATI LAW FIRM |
| 99200126700059900 | FARAM DEE SUITE 200 4925 GREENVILLE AVE DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 200C, DA | PERSONAL PROPERTY COMEDICA |
| 99110322780000000 | FALCON MARK CO MARK FALCON SUITE 200 4946 GREENVILLE AVE DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200MA, DA | PERSONAL PROPERTY FALCON LAW FIRM |
| 99110322770000000 | EXCEPTIONAL BRANDS LLC SUITE 200 4945 GREENVILLE AVE | 4925 GREENVILLE AVE 200EX, DA | PERSONAL PROPERTY EXCEPTIONAL BRANDS LLC |

APPX0022

| | | |
|---|---|---|
| | DALLAS, TX 75206-0000 | |
| 99120207370000000 | EXCEPTIONAL BRANDS LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE EXCEP, DA | PERSONAL PROPERTY<br>EXCEPTIONAL BRANDS LLC |
| 99071022620000000 | EUREKA GAS COMPANY<br>ROBERT L HELBING - PRES<br>PO BOX 2120<br>ALLEN, TX 75013-0038 | 4925 GREENVILLE AVE 820, DA | PERSONAL PROPERTY<br>EUREKA GAS COMPANY |
| 99100419120000000 | ENTERPRISE OF TNA INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200EN, DA | PERSONAL PROPERTY<br>ENTERPRISE OF TNA INC |
| 99070123102000000 | EB GERMANY AND SONS LLC<br>PO BOX 5198<br>JACKSON, MS 39296-5198 | 4925 GREENVILLE AVE 800, DA | PERSONAL PROPERTY<br>EB GERMANY AND SONS LLC |
| 99091103800000000 | EAGLE ENERGY EXPLORATION INC<br>JOHN NEAL<br>PO BOX 601589<br>DALLAS, TX 75360-1589 | 4925 GREENVILLE AVE 1120, DA | PERSONAL PROPERTY<br>EAGLE ENERGY EXPLORATION INC |
| 99080414122000000 | DZURIK PROPERTIES INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200D, 30 | PERSONAL PROPERTY<br>DZURIK PROPERTIES INC |
| 99060511194000000 | DREXEL SYSTEMS LTD CO<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200D, 30 | PERSONAL PROPERTY<br>DREXEL SYSTEMS LTD CO |
| 99110322740000000 | DRAPER DENNIS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200DE, DA | PERSONAL PROPERTY<br>DENNIS DRAPER |
| 99051219950000000 | DOWNEY PAUL V<br>SUITE 1250<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1250, 00 | PERSONAL PROPERTY<br>LAW OFFICE OF PAUL V DOWNEY PC |
| 99060511171000000 | DIXON STEVEN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200D, 30 | PERSONAL PROPERTY<br>DIXON STEVEN |
| 99060511168000000 | DFW PRIME REALTY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200D, 30 | PERSONAL PROPERTY<br>DFW PRIME REALTY |
| 99110322730000000 | DFW BRANDING<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200DF, DA | PERSONAL PROPERTY<br>DFW BRANDING |
| 99120207360000000 | DENTON DANIEL<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE DENTO, DA | PERSONAL PROPERTY<br>DANIEL DENTON |
| 99110322720000000 | DENKE JAMES<br>SUITE 200<br>4940 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200DE, DA | PERSONAL PROPERTY<br>JAMES DENKE |
| 99090811980000000 | DBX GEOPHYSICAL CORPORATION<br>1773 COUNTY ROAD 2540<br>MINEOLA, TX 75773-3415 | 4925 GREENVILLE AVE 200DB, DA | PERSONAL PROPERTY<br>DBX GEOPHYSICAL CORPORATION |
| 99111205740000000 | DAVID KONKER ASSOCIATES INC<br>ONE ENERGY SQUARE<br>SUITE 1110<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1110, DA | PERSONAL PROPERTY<br>KONKER & ASSOCIATES |
| 99060511165000000 | DALLAS GEOLOGICAL SOCIETY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200D, 30 | PERSONAL PROPERTY<br>DALLAS GEOLOGICAL SOCIETY |
| 99000000215378000 | DALLAS EXPLORATION INC | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY |

APPX0023

| | | |
|---|---|---|
| | SAM ALLEN PRESIDENT<br>SUITE 840<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | DALLAS EXPLORATION INC |
| 99060511163000000 | DALLAS ENERGY GROUP<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | PERSONAL PROPERTY<br>DALLAS ENERGY GROUP |
| 99091103900000000 | DALLAS COMMITTEE ON FOREIGN RE<br>SUITE 1025<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>DALLAS COMMITTEE ON FOREIGN RELATI<br>ONS |
| 99080414121000000 | CREATE WELLNESS LLC<br>LESLIE HINTON LMT CTN<br>SUITE 818<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>CREATE WELLNESS LLC |
| 99080414116000000 | COMPUTIL LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>COMPUTIL LLC |
| 99080414115000000 | COMPLETE ENERGY SERVICES<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | PERSONAL PROPERTY<br>COMPLETE ENERGY SERVICES |
| 99060511162000000 | COMPLETE ENERGY SERVICES<br>PO BOX 1299<br>GAINESVILLE,, TX 76241-1299 | PERSONAL PROPERTY<br>COMPLETE ENERGY SERVICES |
| 99081029950000000 | CLEARESULTS<br>SUITE 300<br>4301 WESTBANK DR<br>AUSTIN, TX 78746-6568 | PERSONAL PROPERTY<br>CLEARESULTS |
| 99080414113000000 | CLARKSON DAVID<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | PERSONAL PROPERTY<br>CLARKSON DAVID |
| 99060511154000000 | CLARK LAW FIRM LLP<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | PERSONAL PROPERTY<br>CLARK LAW FIRM LLP |
| 99110322690000000 | CATHEY GORDON<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>GORDON CATHEY |
| 99120207350000000 | CASTLEMAN RIVES<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>RIVES CASTLEMAN |
| 99200126700059750 | CARNEY MARK<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | PERSONAL PROPERTY<br>ROMAK |
| 99100419110000000 | CARLSON MIKE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>CARLSON MIKE |
| 99101101440000000 | CAPVIEW PARTNERS LLC<br>SUITE 1625<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>CAPVIEW PARTNERS LLC |
| 99120207340000000 | CAMPBELL DON<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | PERSONAL PROPERTY<br>DON CAMPBELL |
| 99090811970000000 | BURNS ENGINEERING<br>SUITE 200<br>4933 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | PERSONAL PROPERTY<br>BURNS ENGINEERING |
| 99080414108000000 | BURCH LAW FIRM PC<br>SUITE 200<br>4925 GREENVILLE AVE | PERSONAL PROPERTY<br>BURCH LAW FIRM PC |

Column 2 address references (middle column):

- 4925 GREENVILLE, UNIT 200D, 30
- 4925 GREENVILLE AVE 1025, DA
- 4925 GREENVILLE AVE, DA
- 4925 GREENVILLE AVE 200CO, 30
- 4925 GREENVILLE, UNIT 200C, 30
- 4925 GREENVILLE, UNIT 200C, 30
- 4925 GREENVILLE AVE 450, DA
- 4925 GREENVILLE, UNIT 200C, 30
- 4925 GREENVILLE, UNIT 200C, 30
- 4925 GREENVILLE AVE 200CA, DA
- 4925 GREENVILLE AVE CASTL, DA
- 4925 GREENVILLE, UNIT 200R, 30
- 4925 GREENVILLE AVE 200CA, DA
- 4925 GREENVILLE AVE 1625, DA
- 4925 GREENVILLE AVE CAMPB, DA
- 4925 GREENVILLE AVE 200BU, DA
- 4925 GREENVILLE AVE 200BU, 30

APPX0024

| 99000000215183800 | BRYANS LEONARD<br>SUITE 203<br>4833 W LAWTHER DR<br>DALLAS, TX 75214-1801 | 4925 GREENVILLE AVE 750, DA | PERSONAL PROPERTY<br>BRYANS LEONARD GEOLOGIST |
| 99100419900000000 | BROOKWOOD FINANCIAL CO INC<br>SUITE 200<br>4931 GREENVILLE AVE<br>DALLAS, TX 75206-0000 | 4925 GREENVILLE AVE 200BR, DA | PERSONAL PROPERTY<br>BROOKWOOD FINANCIAL CO INC |
| 99081020560000000 | BRIM BRUCE<br>SUITE 841<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 841, DA | PERSONAL PROPERTY<br>BRIM BRUCE |
| 99080414106000000 | BRIDGES KRISTINE<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 30 | PERSONAL PROPERTY<br>BRIDGES KRISTINE |
| 99200126700154400 | BRAZOS GAS COMPANY LLC<br>JOHN MORROW<br>SUITE 500<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 500, DA | PERSONAL PROPERTY<br>BRAZOS GAS COMPANY LLC |
| 99100419800000000 | BRAVO SARAH N<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200BR, DA | PERSONAL PROPERTY<br>BRAVO SARAH N |
| 99091103700000000 | BRADFORD BARRY LEE<br>SUITE 1100<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1100, DA | PERSONAL PROPERTY<br>CROSSLAND OIL & GAS |
| 99060511148000000 | BLUESTAR ENERGY<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 30 | PERSONAL PROPERTY<br>BLUESTAR ENERGY |
| 99080415800000000 | BESSNER BRIAN<br>SUITE 200<br>4962 GREENVILLE AVE<br>DALLAS, TX 75206-4004 | 4925 GREENVILLE AVE 200NE, DA | PERSONAL PROPERTY<br>NEW ENGLAND FINANCIAL |
| 99110322660000000 | BERTHOFF FERNANDES PLLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200BE, DA | PERSONAL PROPERTY<br>BERTHOFF FERNANDES PLLC |
| 99070417105000000 | BENNETT PAUL<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200SA, DA | PERSONAL PROPERTY<br>SANDSPRING OIL & GAS |
| 99120207330000000 | BELL DON<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE PENCI, DA | PERSONAL PROPERTY<br>PENCILS ETC |
| 99120207230000000 | BEGGS J COLLIN<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE BEGGS, DA | PERSONAL PROPERTY<br>J COLLIN BEGGS |
| 99060511142000000 | BEDROCK LENDING<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 30 | PERSONAL PROPERTY<br>BEDROCK LENDING |
| 99080414103000000 | BARRETT TABIUS<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 30 | PERSONAL PROPERTY<br>BARRETT TABIUS |
| 99050608910000000 | BANK OF THE WEST<br>SUITE 200BA<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE, UNIT 200B, 00 | BANK OF THE WEST |
| 99080414102000000 | BALINT SARAH<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200BA, 30 | PERSONAL PROPERTY<br>BALINT SARAH |

| 99080414101000000 | AVANT ASSESSMENT LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200AV, 30 | PERSONAL PROPERTY<br>AVANT ASSESSMENT LLC |
|---|---|---|---|
| 99200126700060000 | ARMSTRONG TOM<br>SUITE 1105<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 1105, DA | PERSONAL PROPERTY<br>ARMSTRONG OIL & GAS |
| 99100419700000000 | AREY SCOTT<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200AR, DA | PERSONAL PROPERTY<br>AREY SCOTT |
| 99080408110000000 | ARBOR COMMERCIAL MORTGAGE<br>SUITE 900<br>333 EARLE OVINGTON BLVD<br>UNIONDALE, NY 11553-3610 | 4925 GREENVILLE AVE 200AR, DA | PERSONAL PROPERTY<br>ARBOR COMMERCIAL MORTGAGE |
| 99110322620000000 | ANNE SMITH INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200AN, DA | PERSONAL PROPERTY<br>ANNE SMITH INC |
| 99051227280000000 | ANDERSON KING ENERGY ADVISORS<br>%BILL ANDERSON<br>SUITE 660<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 660, DA | PERSONAL PROPERTY<br>ANDERSON KING ENERGY ADVISORS LLC |
| 99080414990000000 | AMERICA WORLD ADOPTION<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200A, 30 | PERSONAL PROPERTY<br>AMERICA WORLD ADOPTION |
| 99091103130000000 | AMARILLO EXPLORATION INC<br>PO BOX 601539<br>DALLAS, TX 75360-1539 | 4925 GREENVILLE AVE 660, DA | PERSONAL PROPERTY<br>AMARILLO EXPLORATION INC |
| 99090811960000000 | ALTRES ENERGY LLC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200CO | PERSONAL PROPERTY<br>COST PLUS ENERGY |
| 99080414970000000 | ALPHONSO ERIC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 200A, 30 | PERSONAL PROPERTY<br>ALPHONSO ERIC |
| 99100419300000000 | ALPHONSO ERIC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE AVE 200AL, DA | PERSONAL PROPERTY<br>ALPHONSO ERIC |
| 99081030430000000 | ALEXANDER DUBOSE & TOWNSEND L<br>1844 HARVARD ST<br>HOUSTON, TX 77008-4342 | 4925 GREENVILLE AVE, DA | PERSONAL PROPERTY<br>ALEXANDER DUBOSE & TOWNSEND LLP |
| 99200001000160400 | ADVANCED COPIER<br>TECHNOLOGY INC<br>SUITE 130<br>11969 PLANO RD<br>DALLAS, TX 75243-5454 | 4925 GREENVILLE, UNIT 130, DA | PERSONAL PROPERTY<br>ADVANCED COPIER TECHNOLOGY INC |
| 99100419200000000 | ADAPT ENERGY INC<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS, TX 75206-4026 | 4925 GREENVILLE AVE 200AD, DA | PERSONAL PROPERTY<br>ADAPT ENERGY INC |
| 99070417108000000 | 3RV INC<br>% MIKE M WOOD<br>SUITE 200<br>4925 GREENVILLE AVE<br>DALLAS,, TX 75206-4026 | 4925 GREENVILLE, UNIT 2003, 30 | PERSONAL PROPERTY<br>3RV INC |

When first displayed, the results are sorted by Owner Name. To sort by another Account Number, Property Site Address or Legal Description, click the column heading having that label. (For example, to sort the results by Account Number, click that column heading.)

Go to Your Portfolio          Tax Office Home Page

Case 15-101 Document 2-3 Page 332 Filed 10/23/2014

Terms of Use

Disclaimer: The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. The Dallas County Tax Office, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

DALLAS COUNTY TAX OFFICE

500 ELM STREET

DALLAS, TEXAS 75202-3304

214-653-7811

©Appraisal & Collection Technologies.

All rights reserved.

**- A757 -**

# Exhibit D

APPX0028



| Owner Search | Address Search | Account Search | Fiduciary Search |

### Find Your Property Tax Balance

You can search for any account whose property taxes
are collected by the Dallas County Tax Office.

Owner Name Search

**\* Last Name or
Business Name:** `Summit 6`

**First Name:** 

[ Search ]

**\* Required**

| Go to Your Portfolio | Tax Office Home Page |

Terms of Use

**Disclaimer:** The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. The Dallas County Tax Office, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

DALLAS COUNTY TAX OFFICE
500 ELM STREET
DALLAS, TEXAS 75202-3304
214-653-7811

©Appraisal & Collection Technologies.
All rights reserved.



| Owner Search | Address Search | Account Search | Fiduciary Search |
|---|---|---|---|

**The following items match your Owner Name search for "SUMMIT 6"**

There is 1 match.

Click an account number below to see details or make a payment on that account.

Your search took 0 seconds.

| Account Number | Owner's Name & Address | Property Site Address | Legal Description |
|---|---|---|---|
| 99120207630000000 | SUMMIT 6<br>SUITE 200<br>4825 GREENVILLE AVE<br>DALLAS, TX 75206-4119 | 4925 GREENVILLE AVE SUMMI, DA | PERSONAL PROPERTY<br>SUMMIT 6 |

When first displayed, the results are sorted by Owner Name. To sort by another Account Number, Property Site Address or Legal Description, click the column heading having that label. (For example, to sort the results by Account Number, click that column heading.)

| Go to Your Portfolio | Tax Office Home Page |
|---|---|

Terms of Use

**Disclaimer:** The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. The Dallas County Tax Office, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

DALLAS COUNTY TAX OFFICE
500 ELM STREET
DALLAS, TEXAS 75202-3304
214-653-7811

©Appraisal & Collection Technologies.
All rights reserved.

**- A760 -**



| Owner Search | Address Search | Account Search | Fiduciary Search |
|---|---|---|---|

### Property Tax Balance

> All tax information refers to the 2013 Tax Year, unless otherwise noted, i.e. "Prior Year Amount Due". Amounts due include penalty, interest, and collection fees if applicable.

**Account Number:** 99120207630000000

**Address:**
SUMMIT 6
SUITE 200
4825 GREENVILLE AVE
DALLAS, TX 75206-4119

**Property Site Address:**
4925 GREENVILLE AVE SUMMI, DA

**Legal Description:**
PERSONAL PROPERTY
SUMMIT 6

**Current Tax Levy:** $21.04

**Current Amount Due:** $0.00

**Prior Year Amount Due:** $0.00

**Total Amount Due:** $0.00

**eStatement Enrollment**

Enroll in eStatements to receive your 2014 Current Tax Statement by email in October, 2014.

**Market Value:** $700

**Land Value:** $0

**Improvement Value:** $700

**Capped Value:** $0

**Agricultural Value:** $0

**Exemptions:** None

Taxes Due Detail by Year and Jurisdiction

Payment Information

Current Tax Statement

Account History Report

Payment History Report by Year

Payment History Report

Payment History Report (current year only)

Click Here to see your estimated amount due for a future date. You can see this information by year and by both year and jurisdiction.

Request an Address Correction

Make your check or money order payable to:
**JOHN R. AMES, TAX ASSESSOR/COLLECTOR**
**Dallas County Tax Office**
**P O BOX 139066**
**DALLAS, TEXAS 75313-9066**

| Go to Your Portfolio | Tax Office Home Page |
|---|---|

Terms of Use

**Disclaimer:** The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. The Dallas County Tax Office, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

DALLAS COUNTY TAX OFFICE
500 ELM STREET
DALLAS, TEXAS 75202-3304
214-653-7811

©Appraisal & Collection Technologies.
All rights reserved.

**- A761 -**                    APPX0031



### Payment History Report by Year

A copy of your report is available by clicking >> *here* <<. The report will open in a new window.

Begin a New Search      Go to Your Portfolio

Terms of Use

**Disclaimer:** The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. The Dallas County Tax Office, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

DALLAS COUNTY TAX OFFICE
500 ELM STREET
DALLAS, TEXAS 75202-3304
214-653-7811

©Appraisal & Collection Technologies.
All rights reserved.

**- A762 -**

APPX0032

Case 7:14-cv-00014-O Document 148 Filed 07/15/14 Page 39 of 116 PageID 2087

Case: 15-101   Document: 2-3   Page: 338   Filed: 10/23/2014

pay_history_year.rdf (v1.9)

**Run Date:** 07/12/2014
**Run Time:** 19:38:51

**Account No:** 991-202-076-30000000
**Certified Owner:** SUMMIT 6

Year: 2012

| Deposit No. | Rec Type | Remit Seq. | Validation No. | Deposit Date | Receipt Date | Paid Levy | Discount | Penalty | Interest | Collection Fees | Refund | Variance | Total Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L12112041837 | TL | 2012416704 | 90000201882780 | 11/20/2012 | 11/19/12 | 21.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.04 |

Year: 2013

| Deposit No. | Rec Type | Remit Seq. | Validation No. | Deposit Date | Receipt Date | Paid Levy | Discount | Penalty | Interest | Collection Fees | Refund | Variance | Total Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L13112737781 | TL | 2013276002 | 90000202036661 | 11/27/13 | 11/26/13 | 21.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.04 |
| **Grand Totals :** | | | | | | **42.08** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **42.08** |

### PAYMENT HISTORY BY DEPOSIT

| Deposit No. | Payer | Paid Levy | Discount | Penalty | Interest | Coll Fees | Refund | Variance | Total Paid |
|---|---|---|---|---|---|---|---|---|---|
| L12112041837 | SUMMIT 6 SUITE 200 4825 GREENVILLE AVE DALLAS, TX 75206-4119 | 21.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.04 |
| L13112737781 | SUMMIT 6 SUITE 200 4825 GREENVILLE AVE DALLAS, TX 75206-4119 | 21.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.04 |
| **Grand Totals for Deposit :** | | **42.08** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **42.08** |

**Page:** 1 of 1

APPX0033

# Exhibit E

APPX0034

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF SUMMIT 6 LLC'S INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiff Summit 6 LLC ("Summit 6") hereby serves its Initial Disclosures.

These Initial Disclosures are based on information reasonably available to Summit 6 at this time. Summit 6 may amend or supplement these disclosures based on its continuing investigations and discovery. Summit 6 reserves the right to object to the production and/or introduction into evidence of these disclosures, and/or any documents within the categories described below or testimony by any of the disclosed witnesses on the basis of competency, privilege, relevancy, materiality, hearsay, undue burden, or any other proper ground for objection.

United States Patent No. 6,895,557 is referred to herein as "the '557 Patent." United States Patent No. 7,765,482 is referred to herein as "the '482 Patent." United States Patent No.

APPX0035

8,612,515 is referred to herein as "the '515 Patent." The '482 Patent, the '557 Patent, and the '515 Patent are collectively referred to herein as the "Patents" or the "Patents in-Suit."

## I. Disclosure of Persons

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), Summit 6 discloses the following persons, reserving the right to supplement:

| Name | Address and Telephone Number, if known | Subject Matter |
|------|----------------------------------------|----------------|
| Scott Lewis | c/o McKool Smith, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Managing Director of Summit 6; Summit 6 Board of Managers Member; Co-Inventor for the Patents-in-Suit; conception and reduction to practice of the inventions claimed in the Patents; licensing and value of the Patents-in-Suit; historical and background information regarding the patented inventions and regarding digital content distribution; assignments of the Patents-in-Suit; and Summit 6's corporate structure. Knowledge relating to the formation of Summit 6 and protection of the rights provided by the Patents-in-Suit |
| Lisa Wood | c/o McKool Smith, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Co-Inventor for the Patents-in-Suit; conception and reduction to practice of the inventions claimed in the Patents; historical and background information regarding the patented inventions and regarding digital content distribution |
| Robin Fried | Prague, Czech Republic | Co-Inventor for the Patents-in-Suit; conception and reduction to practice of the inventions |

APPX0036

| | | claimed in the Patents |
|---|---|---|
| Sarah Pate | c/o McKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Managing Director of Summit 6; Summit 6 Board of Managers Member; licensing and value of the Patents-in-Suit; historical and background information regarding the patented inventions and regarding digital content distribution; assignments of the Patents-in-Suit; reduction to practice of the inventions claimed in the Patents; and Summit 6's corporate structure. Knowledge relating to the formation of Summit 6 and protection of the rights provided by the Patents-in-Suit |
| Scott Wilson | c/o McKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Summit 6 Board of Managers Member; knowledge relating to the formation of Summit 6 and protection of the rights provided by the Patents-in-Suit |
| Peter Yoakum | c/o McKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Former Summit 6 Board of Managers Member; knowledge relating to the formation of Summit 6 and protection of the rights provided by the Patents-in-Suit |
| Gordon Gardiner | c/o McKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Summit 6 Board of Managers Member; knowledge relating to the formation of Summit 6 and protection of the rights provided by the Patents-in-Suit |
| Laban P. Jackson, Jr. | c/o McKOOL SMITH, P.C. 300 Crescent Court, Suite 1500 Dallas, Texas 75201 (214) 978-4000 | Summit 6 Board of Managers Member; knowledge relating to the formation of Summit 6 and protection of the rights provided by the Patents-in-Suit |
| Corporate representative(s) | c/o | HTC's technical details, |

| and/or employee(s) of HTC entities | McDermott Will & Emery LLP<br>275 Middlefield Road, Suite 100 Menlo Park, California 94025-4004<br>Telephone: +1 650 815 7400<br>Facsimile: +1 650 815 7401 | marketing, sales, and financial information regarding the accused products. |
|---|---|---|
| Corporate representative(s) and/or employee(s) of LG entities | c/o<br>Orrick Herrington & Sutcliffe LLP<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Tel.: (202) 339-8400<br>Fax: (202) 339-8500 | LG's technical details, marketing, sales, and financial information regarding the accused products. |
| Corporate representative(s) and/or employee(s) of Motorola Mobility LLC | c/o<br>Kilpatrick Townsend & Stockton LLP<br>Eighth Floor Two Embarcadero Center San Francisco, CA 94111<br>(415) 273-4713 | Motorola Mobility LLC's technical details, marketing, sales, and financial information regarding the accused products. |
| Corporate representative(s) and/or employee(s) of Apple Inc. | c/o<br>Jones Day<br>2727 North Harwood Street<br>Dallas, TX 75201-1515<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100 | Apple Inc.'s technical details, marketing, sales, and financial information regarding the accused products. |
| Corporate representative(s) and/or employee(s) of Twitter Inc. | c/o<br>Keker & Van Nest LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: 415 391 5400<br>Facsimile: 415 397 7188 | Twitter Inc.'s technical details, marketing, sales, and financial information regarding the accused products. |

Summit 6 also reserves the right to depose, examine, and/or call to testify at trial or at any hearing any persons disclosed by any other party to this litigation and, in addition, to present testimony at trial or any hearing from any persons deposed by any party during this litigation.

APPX0038

## II. Disclosure of Documents

Pursuant to Rule 26(a)(1)(A)(ii), Summit 6 discloses that the following categories of documents (including electronically stored information (ESI)) and tangible things are believed to be in Summit 6's possession, custody or control and may be used to support its claims and defenses: (1) The Patents-in-Suit; (2) File histories for the Patents-in-Suit; (3) Documents to be produced pursuant to Miscellaneous Order No. 62, ¶ 3-2; (4) Documents and things describing and evidencing the formation of Summit 6; (5) Technical information regarding products sold by predecessor companies to Summit 6; (6) Documents pertaining to the operations of Summit 6 and predecessor companies; (7) Documents relating to the ownership of the Patents-in-Suit; and (8) Licensing documents related to the Patent-in-Suit. These documents are located primarily at the offices of Summit 6, in Dallas, TX and at the offices of Summit 6's outside counsel in Dallas, TX.

To the extent such documents exist, are in the possession of Summit 6, are not subject to any claim of privilege or work product, and are reasonably available for production, Summit 6 will make such documents available to Defendants, subject to objections pursuant to Fed. R. Civ. P. 34 and after a protective order has been entered in the case. Summit 6's document collection efforts are ongoing and Summit 6 reserves its right to produce additional documents, if any, once they are located and collected.

## III. Computation of Damages

Discovery (expert or fact) has not yet begun in this action. Summit 6 will likely rely upon its expert's testimony regarding the calculation of damages. However, Summit 6 believes that damages at law and in equity are appropriate in this matter and should be not less than a

APPX0039

reasonable royalty, along with enhanced damages pursuant to 35 U.S.C. § 284, attorneys' fees, expenses, and costs.

## IV. Insurance Agreements

Pursuant to Rule 26(a)(1)(A)(iv), Summit 6 discloses that it is not aware of any insurance agreements that pertain to issues identified in the pleadings to this action.

APPX0040

Dated:  June 9, 2014

Respectfully submitted,

**McKool Smith P.C.**

*s/ Richard A. Kamprath*
Douglas A. Cawley
Lead Attorney
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Theodore Stevenson III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Phillip M. Aurentz
Texas State Bar No. 24059404
paurentz@mckoolsmith.com
Ashley N. Moore
Texas State Bar No. 24074748
amoore@mckoolsmith.com
Mitchell R. Sibley
Texas State Bar No. 24073097
msibley@mckoolsmith.com
Richard A. Kamprath
Texas State bar No. 24078767
rkamprath@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@caldwellcc.com
Caldwell Cassady & Curry
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Telecopier: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
SUMMIT 6 LLC**

APPX0041

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record for all parties to this action have been served with a true and correct copy of the foregoing by email.

*s/ Richard A. Kamprath*
Richard A. Kamprath

APPX0042

# Exhibit F

APPX0043

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | No. 7:14-cv-00014 |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

## APPLE INC.'S INITIAL DISCLOSURES

Pursuant to the Court's Order Requiring Scheduling Conference and Fed. R. Civ. P.
26(a)(1), Defendant Apple Inc. ("Apple") makes the following Initial Disclosures based upon
information presently available to Apple. Apple notes that its investigation is ongoing, and
reserves the right to update these Initial Disclosures as its investigation progresses.

**A.     Individuals Likely to Have Discoverable Information Supporting Apple's Defenses**

1.     Justin Wood.

Justin Wood is an Engineering Manager for iMessages at Apple who has knowledge of
the design and operation of some of the accused products and services, including iMessage,
MMS messages, and related APIs. Mr. Wood can be contacted through Jones Day.

APPX0044

2.      Guy Fullerton.

Guy Fullerton is a Senior Staff Engineer in the iOS Productivity group at Apple who has knowledge of the design and operation of some of the accused products and services, including sharing options accessible without an app and related APIs. Mr. Fullerton can be contacted through Jones Day.

3.      Gokul Thirumalai.

Gokul Thirumalai is an Engineering Manager for Push Notification System and iMessage Delivery at Apple who has knowledge of the design and operation of some of the accused products and services, including iMessages. Mr. Thirumalai can be contacted through Jones Day.

4.      Mark Buckley.

Mark Buckley is a Finance Manager who has knowledge of Apple's finances as they may relate to Summit 6's claims for damages in this action. Mr. Buckley can be contacted through Jones Day.

5.      Lisa T. Wood.

Ms. Wood is listed as an inventor on U.S. Pat. Nos. 6,895,557; 7,765,482; and 8,612,515 ("Asserted Patents"). Ms. Wood may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the Asserted Patents; the preparation and prosecution of the patent applications that resulted in the Asserted Patents; any patents or patent applications related to the Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity

**- A775 -**

related to the Asserted Patents; the relationships between her and Summit 6, LLC ("Summit 6");

any knowledge of Apple's technology; PictureWorks' relationship with Apple; and any financial

interests she has in the Asserted Patents or this litigation. Ms. Wood can be contacted through

Summit 6.

      6.     Scott M. Lewis.

Mr. Lewis is listed as an inventor on the Asserted Patents. Mr. Lewis may have

knowledge concerning the conception, reduction to practice, and inventorship of the purported

invention claimed in the Asserted Patents; the preparation and prosecution of the patent

applications that resulted in the Asserted Patents; any patents or patent applications related to the

Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the

Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents;

products or programs allegedly embodying the purported invention disclosed in the Asserted

Patents; any licensing or other commercial activity related to the Asserted Patents; the decision

to sue Apple; the relationships between him and Summit 6; any knowledge of Apple's

technology; PictureWorks' relationship with Apple; and any financial interests he has in the

Asserted Patents or this litigation. Mr. Lewis can be contacted through Summit 6.

      7.     Robin T. Fried.

Ms. Fried is listed as an inventor on the Asserted Patents. Ms. Fried may have

knowledge concerning the conception, reduction to practice, and inventorship of the purported

invention claimed in the Asserted Patents; the preparation and prosecution of the patent

applications that resulted in the Asserted Patents; any patents or patent applications related to the

Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the

Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents;

APPX0046

products or programs allegedly embodying the purported invention disclosed in the Asserted

Patents; any licensing or other commercial activity related to the Asserted Patents; the

relationships between her and Summit 6; any knowledge of Apple's technology; PictureWorks'

relationship with Apple; and any financial interests she has in the Asserted Patents or this

litigation. Ms. Fried can be contacted through Summit 6.

       8.     Scott F. Wilson.

      Mr. Wilson is a Managing Director of Summit 6 and founder of Swiftsure Capital. Mr.

Wilson was part of the team that performed due diligence on Point2 Technologies, Inc.

("Point2")'s photo upload facility, a piece of prior art. Mr. Wilson may have knowledge

concerning the alleged invention and patenting of the Asserted Patents; ownership of the

Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception, reduction

to practice, inventorship, commercialization, or disclosure of any alleged invention in the

Asserted Patents or any embodiments thereof; analyses of or concerning the Asserted Patents;

prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the

accused devices; the chain of ownership interest in the Asserted Patents; products or programs

allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or

other commercial activity related to the Asserted Patents; factual basis of Summit 6's claims and

defenses; the location of any documents relevant to any of Apple's claims or defenses; the

decision to sue Apple; the relationships between him and Summit 6; any knowledge of Apple's

technology; PictureWorks' relationship with Apple; and any financial interests he has in the

Asserted Patents or this litigation. Mr. Wilson can be contacted through McKool Smith.

APPX0047

9.      Sarah Pate.

Ms. Pate is a Managing director of Summit 6, former CEO of AdMission Corporation

("AdMission"), and former COO/CFO of PictureWorks Technology, Inc. ("PictureWorks").  Ms.

Pate may have knowledge concerning the alleged invention and patenting of the Asserted Patents;

ownership of the Asserted Patents; the operation of Summit 6 and its affiliated entities; the

conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged

invention in the Asserted Patents or any embodiments thereof; analyses of or concerning the

Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the

Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents;

products or programs allegedly embodying the purported invention disclosed in the Asserted

Patents; any licensing or other commercial activity related to the Asserted Patents; factual basis

of Summit 6's claims and defenses; the location of any documents relevant to any of Apple's

claims or defenses; the decision to sue Apple; the relationships between her and Summit 6; any

knowledge of Apple's technology; PictureWorks' relationship with Apple; and any financial

interests she has in the Asserted Patents or this litigation.  Ms. Pate can be contacted through

McKool Smith.

10.      Peter Yoakum.

Mr. Yoakum is a former AdMission board member and former managing partner at

Swiftsure Capital.  Mr. Yoakum also performed due diligence on Point2's photo upload facility

and concluded that its public disclosure had endangered the '557 patent.  Mr. Yoakum may have

knowledge concerning the alleged invention and patenting of the Asserted Patents; ownership of

the Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception,

reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in

APPX0048

Case 15-101 Document 23 Pages 354 Filed 10/23/2014

the Asserted Patents or any embodiments thereof; analyses of or concerning Asserted Patents;

prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the

accused devices; the chain of ownership interest in the Asserted Patents; products or programs

allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or

other commercial activity related to the Asserted Patents; factual basis of Summit 6's claims and

defenses; the location of any documents relevant to any of Apple's claims or defenses; the

relationships between him and Summit 6; and any financial interests he has in the Asserted

Patents or this litigation. Mr. Yoakum can be contacted through McKool Smith.

     11.      ==Terrell Anderson.==

     ==Mr. Anderson was a Vice President of PictureWorks in or about November, 1998.== Mr.

Anderson may have knowledge concerning prior art relevant to the Asserted Patents; the alleged

infringement of the Asserted Patents by the accused devices; the chain of ownership interest in

the Asserted Patents; products or programs allegedly embodying the purported invention

disclosed in the Asserted Patents; any licensing or other commercial activity related to the

Asserted Patents; the relationships between him and PictureWorks, AdMission or Summit 6; any

knowledge of Apple's technology; PictureWorks' relationship with Apple; and any financial

interests he has in the Asserted Patents or this litigation. Mr. Anderson, on information and

belief, can be contacted at Kabongo, Inc. 5801 Christie Avenue Suite 470 Emeryville, CA 94608.

     12.      Point2.

     Persons within Point2 may have knowledge concerning prior art relevant to the Asserted

Patents; products or programs allegedly embodying the purported invention disclosed in the

Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the

relationships between it and Summit 6; and any financial interests it has in the Asserted Patents

APPX0049

or this litigation.  Point2 is believed to be located at 500-3301 8th Street East Saskatoon, SK S7H 5K5, Canada.

      13.      Internet Pictures Corp. ("iPIX").

      Persons within iPIX may have knowledge concerning prior art relevant to the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the relationships between it and Summit 6; and any financial interests it has in the Asserted Patents or this litigation.  On information and belief, iPIX can be contacted at: Reston Executive Center 12120 Sunset Hills Road Reston, VA 20190.

      14.      Summit 6.

      Persons within Summit 6 may have knowledge concerning the alleged invention and patenting of the Asserted Patents; ownership of the Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the Asserted Patents or any embodiments thereof; analyses of or concerning Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; licensing of the Asserted Patents and any related or comparable patents; factual basis of Summit 6's claims and defenses; the location of any documents relevant to any of Apple's claims or defenses; the decision to sue Apple; any knowledge of Apple's technology; PictureWorks' relationship with Apple; and any financial interests it has in the Asserted Patents or this litigation.  Summit 6 can be contacted through McKool Smith.

**- A780 -**

APPX0050

15.     Persons involved in the preparation and prosecution of the patent applications related to the Asserted Patents.

16.     Persons from Twitter that Apple has yet to identify that have knowledge as to specific Twitter-related features and functionality of the accused instrumentalities that Summit 6 contends infringes the Asserted Patents.

17.     Persons from wireless carriers that Apple has yet to identify that have knowledge as to the transmission restrictions and requirements related to specific features and functionality of the accused instrumentalities that Summit 6 contends infringes the Asserted Patents.

18.     Persons identified in, or otherwise involved in, prior litigation on certain of the Asserted Patents, namely *Summit 6 LLC v. Research in Motion Corporation, et al.*, Case No. 3:11-cv-00367-O (N.D. Tex. Feb. 23, 2011) that have relevant information regarding Apples' claims and defenses in the present matter.

In addition to the individuals identified above, the following individuals may have discoverable information:  (i) persons identified in Summit 6's initial disclosures or any supplementations or amendments thereto; (ii) persons identified in the initial disclosures or any supplementations or amendments thereto of any co-defendant in this matter; and (iii) other individuals with relevant knowledge currently or previously at Summit 6.

**B.      Description of Category and Location of Documents**

Though its investigation remains ongoing, Apple identifies the following categories and locations of documents, data compilations and tangible things in its possession, custody or control that Apple may use to support its defenses, unless solely for impeachment:

1.      U.S. Patent No. 6,895,557 ('557 Patent) and its file history;

2.      Prior art to the '557 Patent;

APPX0051

3.      U.S. Patent No. 7,765,482 ('482 Patent) and its file history;

4.      Prior art to the '482 Patent;

5.      U.S. Patent No. 8,612,515 ('515 Patent) and its file history;

6.      Prior art to the '515 Patent;

7.      Ex Parte Reexamination 90/012,987 for Claims 38, 40, 44-46 and 49 of the '482 Patent;

8.      Documents relating to the structure and operation of the specific features and functionality of the accused instrumentalities that Summit 6 contends infringes the Asserted Patents;

9.      Financial, sales and marketing information relating to the instrumentalities accused of infringement;

10.      Additional documents relating to the instrumentalities accused of infringement that will become apparent after plaintiff provides it infringement contentions.

The foregoing documents are located in Apple's offices or in the offices of Apple's counsel in this case. Such documents may also be in the possession, custody or control of third parties. Apple's search for documents and things that it may use to support its claims and defenses is ongoing, and Apple reserves it right to supplement this disclosure pursuant to Fed. R. Civ. P. 26(e).

APPX0052

**C.     Damages**

Apple has not asserted a claim for damages.

**D.     Insurance Policy**

All applicable insurance policies, if any, will be made available for inspection and

copying upon request at a mutually agreed time and place.

Dated:  June 9, 2014                                Respectfully submitted,

                                                    JONES DAY


                                                    _/s/ Hilda C. Galvan_
                                                    ─────────────────────────
                                                    Hilda C. Galvan
                                                    State Bar No. 00787512
                                                    hcgalvan@jonesday.com
                                                    JONES DAY
                                                    2727 North Harwood Street
                                                    Dallas, TX 75201-1515
                                                    Telephone:  (214) 220-3939
                                                    Facsimile:  (214) 969-5100

                                                    William C. Rooklidge *(pro hac vice)*
                                                    wrooklidge@jonesday.com
                                                    Mark A. Finkelstein *(pro hac vice)*
                                                    mafinkelstein@jonesday.com
                                                    Frank P. Cote *(pro hac vice)*
                                                    fcote@jonesday.com
                                                    Michelle Stover *(pro hac vice)*
                                                    mstover@jonesday.com
                                                    Douglas L. Clark *(pro hac vice)*
                                                    dlclark@jonesday.com
                                                    JONES DAY
                                                    3161 Michelson Drive, Suite 800
                                                    Irvine, CA 92612-4408
                                                    Telephone:  (949) 851-3939
                                                    Facsimile:  (949) 553-7539

                                                    **Attorneys for Defendant APPLE INC.**

APPX0053

Case 15-101 Document 23 Page 359 Filed 10/23/2014

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned hereby certifies that the counsels of record are being served this 9th day of June, 2014, with a copy of this document via electronic mail.

<div align="right">

<u>/s/ Douglas L. Clark</u>
Douglas L. Clark

</div>

APPX0054

# Exhibit G

APPX0055

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | |
|---|---|
| SUMMIT 6 LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM USA, INC., MOTOROLA MOBILITY LLC, APPLE INC., and TWITTER, INC.,<br><br>     Defendants. | Case Action No. 7:14-cv-00014-O |

## TWITTER, INC.'S INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Twitter, Inc. ("Twitter") makes the following Initial Disclosures. These disclosures represent an initial account of the information currently available, and Twitter reserves the right to supplement as additional information becomes available. By making these disclosures, Twitter does not represent that it is identifying every document, tangible thing, or witness possibly relevant to this lawsuit. Moreover, because Twitter has not completed its investigation of the case, it is likely that some individuals listed herein may not in fact possess significant information regarding the issues involved in this litigation, or may have knowledge that is duplicative of knowledge possessed by others. Twitter makes these initial disclosures without prejudice to its right to supplement, amend, or modify these disclosures as discovery continues, and to produce, during discovery or at trial, additional information, documents, data compilations, or tangible things that are subsequently (a) discovered; (b) determined to be relevant; or (c) discovered to have been omitted from these disclosures. Twitter does not waive its right to object to the production of any document or tangible thing disclosed herein on the basis of any privilege, the work-product doctrine, relevance, undue burden, or any other valid objection.

**- A786 -**

APPX0056

### A.     Individuals

In accordance with Federal Rule of Civil Procedure 26(a)(1)(A)(i), Twitter identifies the individuals it presently has reason to believe are likely to have discoverable information that Twitter may use to support its claims and defenses.  To the extent that Twitter intends to rely on expert witnesses, those individuals will be identified prior to trial in accordance with the schedule set by the Court.  All current and former Twitter employees should be contacted only through Twitter's counsel of record in this matter.

### 1.  Terrell Anderson.

Mr. Anderson was a Vice President of PictureWorks Technology, Inc. ("PictureWorks") in or about November 1998.  Mr. Anderson may have knowledge concerning prior art relevant to U.S. Patents Nos. 6,895,557; 7,765,482; and 8,612,515 (the "patents-in-suit"); the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the relationships between himself and PictureWorks, AdMission Corporation ("AdMission"), or Summit 6 LLC ("Summit 6"); and any financial interests he has in the patents-in-suit or this litigation.  Mr. Anderson, on information and belief, can be contacted at Kabongo, Inc., 5801 Christie Avenue, Suite 470, Emeryville, CA 94608.

### 2.  Robin T. Fried

Ms. Fried is listed as an inventor on the patents-in-suit.  Ms. Fried may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the patents-in-suit; the preparation and prosecution of the patent applications that resulted in the patents-in-suit; any patents or patent applications related to the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the relationships between

832809

APPX0057

herself and Summit 6; and any financial interests she has in the patents-in-suit or this litigation.
Ms. Fried may be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500,
Dallas, Texas 75201; (214) 978-4000.

 3.  Gordon Gardiner

 Mr. Gardiner is a member of Summit 6's Board of Managers and may have knowledge
concerning the alleged invention and patenting of the patents-in-suit; ownership of the patents-
in-suit; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice,
inventorship, commercialization, or disclosure of any alleged invention in the patents-in-suit or
any embodiments thereof; analyses of or concerning the patents-in-suit; prior art relevant to the
patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and
services; the chain of ownership interest in the patents-in-suit; products or programs allegedly
embodying the purported invention disclosed in the patents-in-suit; any licensing or other
commercial activity related to the patents-in-suit; the factual basis for Summit 6's claims and
defenses; the location of any documents relevant to any of Twitter's claims or defenses; the
decision to sue Twitter; the relationships between himself and Summit 6; and any financial
interests he has in the patents-in-suit or this litigation.  Mr. Gardiner can be contacted through
McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, TX 75201; (214) 978-4000.

 4.  Marcus Hanson

 Marcus Hanson is a Manager, Software Engineering, in Twitter's Mobile Messaging
Team who has knowledge of the design and operation of Twitter's mobile messaging features.
Mr. Hanson may be contacted through Keker & Van Nest LLP, 633 Battery St., San Francisco,
CA 94111; (415) 391-5400.

 5.  Laban Jackson

 Mr. Jackson is a member of Summit 6's Board of Managers and may have knowledge
concerning the alleged invention and patenting of the patents-in-suit; ownership of the patents-
in-suit; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice,
inventorship, commercialization, or disclosure of any alleged invention in the patents-in-suit or

APPX0058

any embodiments thereof; analyses of or concerning the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the factual basis for Summit 6's claims and defenses; the location of any documents relevant to any of Twitter's claims or defenses; the decision to sue Twitter; the relationships between himself and Summit 6; and any financial interests he has in the patents-in-suit or this litigation. Mr. Jackson can be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

### 6. Matt Lewis

Matt Lewis is a Manager, Software Engineering, in Twitter's Photos Team who has knowledge of the design and operation of Twitter's photo features. Mr. Lewis may be contacted through Keker & Van Nest LLP, 633 Battery St., San Francisco, CA 94111; (415) 391-5400.

### 7. Scott M. Lewis

Mr. Lewis is a Managing Director of Summit 6 and is listed as an inventor on the patents-in-suit. Mr. Lewis may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the patents-in-suit; the preparation and prosecution of the patent applications that resulted in the patents-in-suit; any patents or patent applications related to the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the relationship between himself and Summit 6; and any financial interests he has in the patents-in-suit or this litigation. Mr. Lewis may be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

APPX0059

### 8.  Sarah Pate

Ms. Pate is a Managing Director of Summit 6, a member of Summit 6's Board of Managers, former CEO of AdMission, and former COO/CFO of PictureWorks.  Ms. Pate may have knowledge concerning the alleged invention and patenting of the patents-in-suit; ownership of the patents-in-suit; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the patents-in-suit or any embodiments thereof; analyses of or concerning the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; factual basis for Summit 6's claims and defenses; the location of any documents relevant to any of Twitter's claims or defenses; the decision to sue Twitter; the relationships between herself and Summit 6; and any financial interests she has in the patents-in-suit or this litigation.  Ms. Pate can be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

### 9.  Point2 Technologies, Inc. ("Point2")

Persons within Point2 may have knowledge concerning prior art relevant to the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the relationships between Point2 and Summit 6; and any financial interests it has in the patents-in-suit or this litigation.  Point2 is believed to be located at 500-3301 8th Street East, Saskatoon, SK S7H 5K5, Canada.

### 10.  Summit 6 LLC

Persons within Summit 6 may have knowledge concerning the alleged invention and patenting of the patents-in-suit; ownership of the patents-in-suit; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or

832809

APPX0060

disclosure of any alleged invention in the patents-in-suit or any embodiments thereof; analyses of or concerning the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; licensing of the patents-in-suit and any related or comparable patents; the factual basis for Summit 6's claims and defenses; the location of any documents relevant to any of Twitter's claims or defenses; the decision to sue Twitter; and any financial interests it has in the patents-in-suit or this litigation.  Summit 6 can be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

11.  Scott F. Wilson

Mr. Wilson is a Managing Director of Summit 6 and founder of Swiftsure Capital.  Mr. Wilson was part of a team that performed due diligence on Point2's photo upload facility, a piece of prior art.  Mr. Wilson may have knowledge concerning the alleged invention and patenting of the patents-in-suit; ownership of the patents-in-suit; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the patents-in-suit or any embodiments thereof; analyses of or concerning the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the factual basis for Summit 6's claims and defenses; the location of any documents relevant to any of Twitter's claims or defenses; the decision to sue Twitter; the relationships between himself and Summit 6; and any financial interests he has in the patents-in-suit or this litigation.  Mr. Wilson can be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

APPX0061

## 12. Lisa T. Wood

Ms. Wood is listed as an inventor on the patents-in-suit. Ms. Wood may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the patents-in-suit; the preparation and prosecution of the patent applications that resulted in the patents-in-suit; any patents or patent applications related to the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the relationships between herself and Summit 6; and any financial interests she has in the patents-in-suit or this litigation. Ms. Wood may be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

## 13. Peter Yoakum

Mr. Yoakum is a former member of Summit 6's Board of Managers and a former managing partner at Swiftsure Capital. Mr. Yoakum also performed due diligence on Point2's photo upload facility, a piece of prior art. Mr. Yoakum may have knowledge concerning the alleged invention and patenting of the patents-in-suit; ownership of the patents-in-suit; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the patents-in-suit or any embodiments thereof; analyses of or concerning the patents-in-suit; prior art relevant to the patents-in-suit; the alleged infringement of the patents-in-suit by the accused products and services; the chain of ownership interest in the patents-in-suit; products or programs allegedly embodying the purported invention disclosed in the patents-in-suit; any licensing or other commercial activity related to the patents-in-suit; the factual basis for Summit 6's claims and defenses; the location of any documents relevant to any of Twitter's claims or defenses; the decision to sue Twitter; the relationships between himself and Summit 6; and any financial

832809

APPX0062

interests he has in the patents-in-suit or this litigation. Mr. Yoakum can be contacted through McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201; (214) 978-4000.

14. Persons involved in the preparation and prosecution of the patent applications related to the patents-in-suit.

15. Persons from wireless carriers Twitter has yet to identify who have knowledge of the transmission restrictions and requirements related to specific features and functionality of the accused instrumentalities that Summit 6 contends infringe the patents-in-suit.

16. Persons identified in, or otherwise involved in, prior litigation regarding certain of the patents-in-suit, namely *Summit 6 LLC v. Research in Motion Corporation, et al*, Case No. 3:11-cv-00367-O (N.D. Tex. Feb. 23, 2011), who have relevant information regarding Twitter's claims and defenses in the present matter.

In addition to the individuals identified above, the following individuals may have discoverable information: (i) persons identified in any supplementations or amendments to Summit 6's initial disclosures; (ii) persons identified in the initial disclosures of any co-defendant in this matter or in any supplementations or amendments thereto; (iii) persons identified in prior-art references and in documents regarding the prior art; (iv) other individuals with relevant knowledge currently or previously at Summit 6; and (v) other individuals not specifically known to Twitter at this time who may possess relevant information, particularly information related to the non-infringement and/or invalidity of the patents-in-suit.

## B. Category and Location of Documents

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), Twitter identifies categories of documents, electronically stored information, and tangible things in its possession, custody, or control that it may use to support its claims and defenses based on information now known by Twitter (unless such use likely would be solely for impeachment). The following categories constitute Twitter's good-faith effort to identify documents that may support its claims or defenses to the extent that such documents can be or have been identified at this early stage in

**- A793 -**

APPX0063

the litigation.  Twitter reserves the right to identify additional documents and to object to the

production of any documents described herein on any basis permitted under the Federal Rules of

Civil Procedure and any other applicable law or privilege.

1.  U.S. Patent No. 6,895,557 ("the '557 Patent") and its file history.

2.  Prior art to the '557 Patent.

3.  U.S. Patent No. 7,765,482 ("the '482 Patent") and its file history.

4.  Prior art to the '482 Patent.

5.  U.S. Patent No. 8,612,515 ("the '515 Patent") and its file history.

6.  Prior art to the '515 Patent.

7.  Documents relating to Ex Parte Reexamination 90/012,987 for claims 38, 40, 44-46

and 49 of the '482 Patent.

8.  Documents relating to the structure and operation of the specific features and

functionality of the accused products and services Summit 6 contends infringe the patents-in-

suit.

9.  Twitter's business records regarding the accused products and services.

The foregoing documents are located in Twitter's offices or in the offices of Twitter's

counsel in this case.  Such documents may also be in the possession, custody, or control of third

parties.  Twitter's search for documents and things it may use to support its claims and defenses

is ongoing, and Twitter reserves its right to supplement this disclosure pursuant to Federal Rule

of Civil Procedure 26(e).

**C.  Computation of Damages**

Twitter is not seeking any damages based on its counterclaims at this time, but may seek

to recover its reasonable attorneys' fees and costs to the extent allowable by applicable law.

**D.  Insurance Policies**

Pursuant to Rule 26(a)(1)(A)(iv), Twitter discloses that it is not aware of any insurance

policies that pertain to the issues identified in the pleadings to this action.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated: June 20, 2014

By:      /s/ David J. Silbert
        David J. Silbert *Pro Hac Vice*
        Leo L. Lam *Pro Hac Vice*
        Julie A. Duncan *Pro Hac Vice*
        KEKER & VAN NEST LLP
        633 Battery Street
        San Francisco, CA 94111-1809
        Telephone:  415 391 5400
        Facsimile:  415 397 7188
        dsilbert@kvn.com
        llam@kvn.com
        jduncan@kvn.com

        Brett C. Govett
        FULBRIGHT & JAWORSKI
        2200 Ross Ave., Suite 2800
        Dallas, TX 75201-2784
        Telephone:  214.855.8118
        Facsimile:  214.855.8200
        brett.govett@nortonrosefulbright.com

        Attorneys for Defendant TWITTER, INC.

Case 15-101 Document 23 Page 371 Filed 10/23/2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of June, 2014, counsel of record for all parties to this action have been served with a copy of the foregoing by email.


/s/  Julie A. Duncan
 [Signature]

APPX0066

Case 15-101   Document 23   Page: 372   Filed: 10/23/2014

# Exhibit H

APPX0067

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION No. 7:14-cv-00014-O** |
| | § | |
| **HTC CORPORATION,** | § | |
| **HTC AMERICA, INC.,** | § | |
| **LG ELECTRONICS, INC.,** | § | **JURY TRIAL DEMANDED** |
| **LG ELECTRONICS USA, INC.,** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | |
| **USA, INC.,** | § | |
| **MOTOROLA MOBILITY LLC,** | § | |
| **APPLE INC., and** | § | |
| **TWITTER INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## INITIAL DISCLOSURES OF HTC CORPORATION AND HTC AMERICA, INC.

APPX0068

Defendants HTC Corporation and HTC America, Inc. (collectively, "HTC") hereby submit the following disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) and the Local Rules of the United States District Court for the Northern District of Texas.  HTC submits these disclosures based upon current knowledge and information that is reasonably known and available to HTC.  HTC reserves all rights, consistent with Rule 26(e), to modify or amend these disclosures, and/or to supplement these disclosures by providing discovery, as additional evidence and information becomes available.

HTC makes these disclosures without waiving in any manner the right to object on any basis permitted by law to any discovery request or proceeding involving or related to the subject matter of these disclosures.  These disclosures are not intended to, and do not, constitute admissions as to relevance or admissibility of the information disclosed, and are made without any waiver of attorney-client privilege, work-product protection, or any other applicable protection or immunity.

## A.   Rule 26(a)(1)(A)(i)

HTC's investigation is ongoing, and HTC reserves the right to identify additional individuals at a later date.  In making these disclosures, HTC does not waive their right to object, pursuant to the applicable Local and Federal Rules, to the deposition testimony of any of the individuals listed below.  After conducting such inquiry and investigation as is reasonable under the circumstances, HTC believes that the following individuals are likely to have discoverable information relevant to disputed facts.  All current and former employees of HTC should be contacted only through HTC's counsel at McDermott Will and Emery LLP.

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A799 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0069

| Name | Title and Contact Information | Subject |
|---|---|---|
| Stephanie Bariault | Vice President of Operations HTC America, Inc.<br><br>Ms. Bariault is to be contacted solely through HTC's counsel of record. | Knowledgeable about HTC's supply chain planning and customer support for HTC products in the United States.  Also generally knowledgeable about the design, marketing, distribution, and sales of HTC products in the United States. |
| Hsiu-Fen Lai | Director, Cost Analysis HTC Corporation<br><br>Ms. Lai is to be contacted solely through HTC's counsel of record. | Knowledgeable about the sales and finance of the accused products. |
| Minfeng Hong | Manager, HTC<br><br>Mr. Hong is to be contacted solely through HTC's counsel of record. | Knowledgeable about the operation of the accused products. |
| Google, Inc. | 1600 Amphitheatre Parkway, Mountain View, CA 94043 | May have information regarding operation of the products accused of infringing the patents-in-suit. |
| Twitter, Inc. | 1355 Market Street, Suite 900, San Francisco, CA 94103 | May have information regarding operation of the products accused of infringing the patents-in-suit. |
| Lisa T. Wood | Named Inventor of the patents-in-suit.<br><br>1 Woodside Ct., Danville, CA 94506-1139 (925) 736-0152 | May have information regarding the alleged invention(s) claimed in the patents-in-suit, including but not limited to invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, prosecution of the patent, research, development, manufacture and testing of embodiments of the alleged invention(s). |
| Scott M. Lewis | Named Inventor of the patents-in-suit.<br><br>24 Diamond Dr., Danville, CA 94526-2425 | May have information regarding the alleged invention(s) claimed in the patents-in-suit, including but not limited to invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, |

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A800 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0070

| Name | Title and Contact Information | Subject |
|------|------------------------------|---------|
| | | prosecution of the patent, research, development, manufacture and testing of embodiments of the alleged invention(s). |
| Robin T. Fried | Named Inventor of the patents-in-suit.<br><br>69 Niagara Falls Blvd, Buffalo, NY 14214-1216<br>(716) 832-1882 | May have information regarding the alleged invention(s) claimed in the patents-in-suit, including but not limited to invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, prosecution of the patent, research, development, manufacture and testing of embodiments of the alleged invention(s). |
| Minds-Eye-View, Inc. | Successor-in-Interest to the original Assignee of the '557 patent, IPIX Corporation.<br><br>48 Western Avenue<br>Cohoes, NY 12047 | May have information regarding the alleged invention(s) claimed in '557 patent, including but not limited to valuation, invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, prosecution of the patent, research, development, manufacture and testing of embodiments of the alleged invention(s). |
| Don Strickland | President and CEO of PictureWorks Technology (predecessor-in-interest to IPIX Corporation) | May have information regarding the alleged invention(s) claimed in '557 patent, including but not limited to valuation, invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, prosecution of the patent, research, development, manufacture and testing of embodiments of the alleged invention(s). |
| Duane S. Kobayashi | Patent Attorney involved in the prosecution of the patents-in-suit.<br><br>1325 Murray Downs Way, Reston, Virginia 20194<br>(703) 437-8000 | May have information regarding the prosecution of one or more of the patents-in-suit, including but not limited to invalidity, unenforceability, and prior art. |

*Summit 6 LLC v. HTC Corp., et al.*,
Case No. 7:14-cv-00014-O

**- A801 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0071

| Name | Title and Contact Information | Subject |
|------|------------------------------|---------|
|  |  |  |
| Victor C. Moreno | Patent attorney involved in the prosecution of the '557 patent.<br><br>Johnson & Johnson<br>Ethicon Endo-Surgery, Inc.,<br>4545 Creek Road<br>Cincinnati, OH 45242<br>(513) 337-7158 | May have information regarding the prosecution of one or more of the patents-in-suit, including but not limited to invalidity, unenforceability, and prior art. |
| Joseph P. O'Malley | Patent attorney involved in the prosecution of the '557 patent.<br><br>319 Kensington Way<br>San Francisco, CA 94127<br>(415) 350-6823 | May have information regarding the prosecution of one or more of the patents-in-suit, including but not limited to invalidity, unenforceability, and prior art. |
| Susan Heminger | Patent agent involved in the prosecution of the '557 patent.<br><br>Apple Inc.<br>1 Infinite Loop, MS 40-Pat<br>Cupertino, CA 95014<br>(408) 862-5906 | May have information regarding the prosecution of one or more of the patents-in-suit, including but not limited to invalidity, unenforceability, and prior art. |
| Sarah Pate | Summit 6 Board Member<br><br>Contact Information presumably known to Plaintiff. | May have information regarding the alleged invention(s) claimed in the Patents-in-Suit, including but not limited to valuation, invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, prosecution of the patent, research, development, manufacture and testing of embodiments of the alleged invention(s). |
| Peter Yoakum | Summit 6 Board Member<br><br>Contact Information presumably known to Plaintiff. | May have information regarding the alleged invention(s) claimed in the Patents-in-Suit, including but not limited to valuation, invalidity, unenforceability, prior art, licensing, conception and reduction to practice, effective filing date, prosecution of the patent, research, development, manufacture and testing of embodiments of the |

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A802 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0072

| Name | Title and Contact Information | Subject |
|------|-------------------------------|---------|
| | | alleged invention(s). |
| Minotaur Media Management LLC | Presumably known to Plaintiff. | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Point2 Technologies, Inc. | #500 - 3301 8th Street E. Saskatoon, Saskatchewan Canada S7H 5K5 | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Eron Wright | Formerly Chief Architect at Point2 Technologies, Inc., and Named Inventor of U.S. Patent No. 6,721,802. | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Barry Willick | Formerly President at Point2 Technologies, Inc., and Named Inventor of U.S. Patent No. 6,721,802. | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Wendell Willick | Named Inventor of U.S. Patent No. 6,721,802. | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Gordon K. Arnold | Named Inventor of U.S. Patent No. 6,275,848. | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Shuang Ji | Named Inventor of U.S. Patent No. 5,889,943 | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Eva Chen | Named Inventor of U.S. Patent No. 5,889,943 | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |
| Yung-Chang Liang | Named Inventor of U.S. Patent No. 5,889,943 | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |

| Name | Title and Contact Information | Subject |
|------|-------------------------------|---------|
| | | |
| Warren Tsai | Named Inventor of U.S. Patent No. 5,889,943 | May have information regarding potential invalidating prior art relating to one or more of the patents-in-suit. |

In addition, HTC incorporates by reference all Initial Disclosures pursuant to Fed. R. Civ. P. 26(e), including all supplemental or amended disclosures, served by any of the parties in this case. HTC also incorporates by reference all persons, including third parties, deposed in this case by Plaintiff or any Defendant.

**B. Rule 26(a)(1)(A)(ii)**

The following are categories of documents and things that HTC has in its possession, custody, or control that it may use to support its claims and defenses, unless such use would be solely for impeachment. HTC may amend or supplement the disclosures below based upon its continuing investigations and discovery.

1. Documents relating to the identity, structure, function, operation, design, and/or development of the Accused Products, including feature sheets, product requirement documents, source code, advertising, sales, and marketing documents;

2. Documents relating to the Patents-in-Suit, which may include:

   a. applications related to the Patents-in-Suit (including any continuations, continuations-in-part, divisional applications, or related foreign counterparts) and the prosecution histories for the Patents-in-Suit;

   b. documents related to the conception and reduction to practice of the subject matter disclosed and claimed in the Patents-in-Suit;

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A804 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0074

    c.   commercial embodiments of the alleged invention(s) claimed in the

        Patents-in-Suit; and

    d.   prior use of the inventions covered by the Patents-in-Suit;

  3.  Documents relating to the prior art cited during the prosecution of the Patents-in-

     Suit, and other prior art related to the Patents-in-Suit;

  4.  Documents relating to the chain of title and encumbrances or prior licenses to the

     Patents-in-Suit;

Documents may be located in HTC's offices, including but not limited to offices in

Taoyuan, Taiwan and Bellevue, Washington, and the offices of McDermott, Will & Emery.

Other documents relevant to the action may be found in the possession of third-party suppliers.

## C.  Rule 26(a) (1)(A)(iii)

HTC claims that it is entitled to its attorney's fees and costs, which cannot be calculated

until the conclusion of this litigation.

## D.  Rule 26(a)(1)(A)(iv)

HTC identifies suppliers to HTC who may provide some or all components accused of

infringement.

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A805 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0075

Dated: June 20, 2014

Respectfully submitted,

/s/ Philip Ou

Yar R. Chaikovsky (*admitted*)
Mashhood Rassam (*pro hac vice*)
Bryan K. James (*pro hac vice*)
Philip Ou (*pro hac vice*)
Darryl J. Ong (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, California  94025-4004
Telephone: +1 650 815 7400
Facsimile: +1 650 815 7401
Email: ychaikovsky@mwe.com
Email: mrassam@mwe.com
Email: bjames@mwe.com
Email: pou@mwe.com
Email: djong@mwe.com


E. Leon Carter (Texas Bar No. 03914300)
Linda R. Stahl (Texas Bar No. 00798525)
CARTER SCHOLER ARNETT HAMADA &
MOCKLER, PLLC
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
Telephone: +1 214 550 8160
Facsimile: +1 214 550 8185
Email: lcarter@carterscholer.com
Email: lstahl@carterscholer.com

*Attorneys for Defendants*
*HTC Corporation and HTC America, Inc.*

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A806 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0076

# CERTIFICATE OF SERVICE

I, C. Daniel Treviño, hereby certify that on June 20, 2014, I caused a true and correct copy of the foregoing document to be served on the following counsel in the manner indicated:

**BY EMAIL:**

Douglas A. Cawley
dcawley@mckoolsmith.com
Theodore Stevenson III
tstevenson@mckoolsmith.com
Phillip M. Aurentz
paurentz@mckoolsmith.com
Ashley N. Moore
amoore@mckoolsmith.com
Mitchell R. Sibley
msibley@mckoolsmith.com
Richard A. Kamprath
rkamprath@mckoolsmith.com
McKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

Bradley W. Caldwell
bcaldwell@caldwellcc.com
CALDWELL CASSADY & CURRY
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201

*Attorneys for Plaintiff Summit 6 LLC*

*/s/ C. Daniel Treviño*
C. Daniel Trevino

*Summit 6 LLC v. HTC Corp., et al.,*
Case No. 7:14-cv-00014-O

**- A807 -**

Initial Disclosures of HTC Corp.
and HTC America, Inc.

APPX0077

# Exhibit I

APPX0078

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:14-CV-00014-O |
| | § | |
| HTC CORPORATION, HTC AMERICA, | § | |
| INC., LG ELECTRONICS, INC., LG | § | |
| ELECTRONICS USA, INC., LG | § | |
| ELECTRONICS MOBILECOMM USA, | § | |
| INC., MOTOROLA MOBILITY LLC, | § | |
| APPLE, INC. AND TWITTER, INC., | § | |
| | § | |
| Defendant. | § | |

## INITIAL DISCLOSURES OF DEFENDANT MOTOROLA MOBILITY LLC

Pursuant to Fed. R. Civ. P. 26(a)(1), Defendant MOTOROLA MOBILITY LLC ("Motorola") provides the following initial disclosures to Plaintiff SUMMIT 6 LLC ("Summit 6"). These initial disclosures are made based on information that is reasonably available to Motorola at this time and at this stage of the proceedings. As additional information becomes available, Motorola reserves the right to supplement these initial disclosures and/or to use documents not described herein.

United States Patent No. 7,765,482 is referred to herein as "the '482 Patent." United States Patent No. 8,612,515 is referred to herein as "the '515 Patent." United States Patent No. 6,895,557 – which is not currently asserted against Motorola -- is referred to herein as "the '557 Patent." The '482 Patent, the '557 Patent, and the '515 Patent are collectively referred to herein as the "Patents" or the "Patents in-Suit."

As used herein, "Accused Functionality" refers to the functionality identified in Summit 6's complaint, including the Motorola MMS Application, including its MMS functionality;

Motorola's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.

As used herein, "Motorola Accused Products" refers to the products identified in Summit 6's complaint as allegedly infringing the '482 and '515 patents, including: Moto X, Moto G, Droid Maxx, Droid Ultra, Droid Mini, Moto X Developer Edition (GSM Networks), Moto X Developer Edition Verizon, Droid Maxx Developer Edition, Droid Razr M, Droid Razr Maxx HD, Motorola Photon Q 4G LTE (the "Accused Products").

## I.    Individuals Likely To Have Discoverable Information (Fed. R. Civ. P. 26(a)(1)(A)(i))

Motorola provides the following list of individuals likely to have discoverable information that Motorola may use to support its claims or defenses, identifies the subjects of the information, and provides, when possible, the last known address of the individuals.

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| Naveen Aerrabotu | c/o Bonnie M. Grant<br>Kilpatrick Townsend LLP<br>1100 Peachtree Street; Suite 2800<br>Atlanta, Georgia 30309<br>(404) 815-6500<br>bgrant@kilpatricktownsend.com | Motorola employee;<br><br>Design/operation of the Accused Functionality within the Motorola Accused Products |
| Jason Tsuyemura | c/o Bonnie M. Grant<br>Kilpatrick Townsend LLP<br>1100 Peachtree Street; Suite 2800<br>Atlanta, Georgia 30309<br>(404) 815-6500<br>bgrant@kilpatricktownsend.com | Motorola employee;<br><br>Knowledge regarding the dissemination and loading of Android source code on the Accused Products. |
| Andy Koziol | c/o Bonnie M. Grant<br>Kilpatrick Townsend LLP<br>1100 Peachtree Street; Suite 2800<br>Atlanta, Georgia 30309<br>(404) 815-6500<br>bgrant@kilpatricktownsend.com | Motorola employee;<br><br>Design/operation of the Accused Functionality within the Motorola Accused Products |
| Ben Sherwin | c/o Bonnie M. Grant | Motorola employee; |

- 2 -

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| | Kilpatrick Townsend LLP<br>1100 Peachtree Street; Suite 2800<br>Atlanta, Georgia 30309<br>(404) 815-6500<br>bgrant@kilpatricktownsend.com | Sales and finance for the Motorola Accused Products |
| Lisa M. Wood | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Co-Inventor for the Patents-in-Suit;<br><br>Conception and reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Scott M. Lewis | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Co-Inventor for the Patents-in-Suit, Managing Director of Summit 6, Summit 6 Board of Managers Member;<br><br>Conception and reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct; licensing of the Patents-in-Suit; assignments of the Patents-in-Suit; Summit 6's corporate structure and formation. |
| Robin T. Fried | Prague, Czech Republic | Co-Inventor for the Patents-in-Suit;<br><br>Conception and reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Sarah Pate | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court, | Former CEO of AdMission Corporation ("AdMission"), and former COO/CFO |

- 3 -

**- A811 -**

| Name | Contact Information | Connection to Case & Knowledge |
|---|---|---|
| | Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | of PictureWorks Technology, Inc. ("PictureWorks"); Managing Director of Summit 6, Summit 6 Board of Managers Member;<br><br>Knowledge relating to licensing of the Patents-in-Suit; assignments of the Patents-in-Suit; reduction to practice of the alleged inventions claimed in the Patents; the preparation and prosecution of the applications that issued as the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct; Summit 6's corporate structure and formation. |
| Scott Wilson | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Summit 6 Board of Managers Member; founder of Swiftsure Capital.<br><br>Knowledge relating to the formation of Summit 6; the preparation and prosecution of the applications that issued as the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct |
| Peter Yoakum | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Former Summit 6 Board of Managers Member; Former AdMission board member and former managing partner at Swiftsure Capital.<br><br>Knowledge relating to the formation of Summit 6; prosecution of the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Gordon Gardiner | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000 | Summit 6 Board of Managers Member;<br><br>Knowledge relating to the formation of Summit 6. |
| Laban P. Jackson, Jr. | c/o MCKOOL SMITH, P.C.<br>300 Crescent Court,<br>Suite 1500<br>Dallas, Texas 75201 | Summit 6 Board of Managers Member;<br><br>Knowledge relating to the formation of Summit 6. |

- 4 -

**- A812 -**

| Name | Contact Information | Connection to Case & Knowledge |
|------|---------------------|-------------------------------|
| | (214) 978-4000 | |
| Terrell Anderson | Kabongo, Inc.<br>5801 Christie Avenue<br>Suite 470<br>Emeryville, CA 94608 | Vice President of PictureWorks in or about November, 1998.<br><br>Knowledge concerning prior art relevant to the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Point 2 | 500-3301 8th Street East<br>Saskatoon,<br>SK S7H 5K5, Canada. | Knowledge concerning prior art relevant to the Patents-in-Suit; products or programs allegedly embodying the purported invention disclosed in the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Duane S. Kobayashi | Law Office of Duane S. Kobayashi<br>1325 Murray Downs Way<br>Reston, VA 20194<br>Office: 703-437-8000 | Prosecuting Attorney;<br><br>Knowledge of the prosecution of the applications that resulted in the issuance of the Patents-in-Suit; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Attorneys at the law firm Frost Brown Todd LLC | 3300 Great American Tower,<br>301 East Fourth Street<br>Cincinnati, Ohio 45202 | Prosecuting Attorney;<br><br>Knowledge of the prosecution of the applications that resulted in the issuance of the '557 Patent; facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |
| Individuals at the law firm of Fenwick & West | Fenwick & West<br>555 California Street<br>San Francisco GA 94104 | Admission's outside counsel relating to due diligence relating to Point 2;<br><br>Knowledge relating to the facts and circumstances related to Motorola's affirmative defense of inequitable conduct. |

Motorola reserves the right to disclose additional individuals whom Motorola may use to support its claims or defenses based on information learned during the source of this litigation.

- 5 -

## II.     Documents In Motorola's Possession, Custody Or Control That Motorola May Use To Support Its Claims Or Defenses (Fed. R. Civ. P. 26(a)(1)(A)(ii))

Motorola is in possession of the following categories of documents that Motorola may use to support its claims or defenses:

- Information relating to the structure, characteristics, and operation of the Accused Functionalities of the Motorola Accused Products;
- Information relating to the invalidity of the Asserted Patents; and
- Information relating to Motorola and its products and services.

Motorola reserves the right to assert a claim of privilege or immunity and withhold from production any documents, whether or not included above, that are protected from discovery by the attorney-client privilege, work product immunity or any other privilege or immunity. Motorola further reserves the right to disclose additional documents that Motorola may use to support its claims or defenses based on information learned during the course of this litigation.

## III.    Computation Of Any Category Of Damages Claimed By The Disclosing Party (Fed. R. Civ. P. 26(a)(1)(A)(iii))

At this time, Motorola only seeks to recover its reasonable attorneys' fees and costs and a declaration that this case is exceptional.  Motorola is not yet certain as to the amount of fees and costs it will seek.

## IV.    Applicable Insurance Agreement (Fed. R. Civ. P. 26(a)(1)(A)(iv))

Motorola's parent corporation, Google, Inc. has insurance through Imi Assurance Inc. that may by applicable to this matter.  Relevant portions of this agreement will be produced.

In providing these initial disclosures, Motorola does not waive any objections, defenses or applicable privileges.  Motorola will supplement these disclosures to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Court.

US2008 5650224 2                                      **- A814 -**                                      APPX0084

DATED: June 20, 2014     Respectfully submitted,
                         By:


                         /s/ Bonnie M. Grant
                         ─────────────────────────────
                         Steven D. Moore (*pro hac vice*)
                         smoore@kilpatricktownsend.com
                         KILPATRICK TOWNSEND LLP
                         Eighth Floor
                         Two Embarcadero Center
                         San Francisco, CA 94111
                         (415) 576.0200 (telephone)
                         (415) 576.0300 (facsimile)

                         D. Clay Holloway (*pro hac vice*)
                         dholloway@kilpatricktownsend.com
                         Bonnie M. Grant (Bar No. 24067634)
                         bgrant@kilpatricktownsend.com
                         Akarsh P. Belagodu (*pro hac vice*)
                         abelagodu@kilpatricktownsend.com
                         Shayne E. O'Reilly (*pro hac vice*)
                         soreilly@kilpatricktownsend.com
                         KILPATRICK TOWNSEND LLP
                         Suite 2800
                         1100 Peachtree Street
                         Atlanta, Georgia 30309-4530
                         (404) 815-6500 (Telephone)
                         (404) 815-6555 (Facsimile)

                         GRUBER HURST JOHANSEN HAIL SHANK
                         MICHAEL K. HURST (Bar No. 10316310)
                         mhurst@ghjhlaw.com
                         JOSHUA M. SANDLER (Bar No. 24053680)
                         jsandler@ghjhlaw.com
                         1445 Ross Avenue
                         Suite 2500
                         Dallas, Texas 75202
                         Telephone: 214 855 6800
                         Facsimile:  214 855 6808

                         *ATTORNEYS FOR DEFENDANT*
                         *MOTOROLA MOBILITY LLC*

US2008 5650224 2
APPX0085

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of foregoing has been served upon counsel of record this 20th day of June, 2014.

Douglas A. Cawley
dcawley@mckoolsmith.com
Theodore Stevenson III
tstevenson@mckoolsmith.com
Phillip M. Aurentz
paurentz@mckoolsmith.com
Ashley N. Moore
amoore@mckoolsmith.com
Mitchell R. Sibley
msibley@mckoolsmith.com
Richard A. Kamprath
rkamprath@mckoolsmith.com

MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

Bradley W. Caldwell
bcaldwell@caldwellcc.com

CALDWELL CASSADY & CURRY
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201

*/s/ Bonnie M. Grant*
Bonnie M. Grant

- 8 -

# Exhibit J

APPX0087

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | JURY TRIAL DEMANDED |
| | § | |
| **Plaintiff,** | § | CASE NO. 7:14-cv-00014 |
| | § | |
| **v.** | § | |
| | § | |
| **HTC CORPORATION,** *et al.* | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

### INITIAL DISCLOSURE STATEMENT OF DEFENDANTS LG ELECTRONICS, INC., LG ELECTRONICS USA, INC., AND LG ELECTRONICS MOBILECOMM USA, INC.

Pursuant to Fed. R. Civ. P. 26(a)(1) and Amended Miscellaneous Order No. 62 (November 17, 2009), Defendants LG Electronics, Inc. ("LGE Inc."), LG Electronics USA, Inc. ("LGE USA"), and LG Electronics Mobilecomm USA, Inc. ("LGE MobileComm") (collectively, "LGE") hereby makes the following initial disclosure to Plaintiff Summit 6 LLC ("Summit 6") and all co-defendants.

LGE's investigation concerning this case is ongoing, and LGE reserves the right to supplement and/or amend these disclosures upon further investigation and discovery of additional information. In making these disclosures, LGE does not waive its right to object, pursuant to applicable federal and local rules, to the deposition or trial testimony of any of the individuals listed below. LGE also reserves all rights to object to the admissibility, materiality, or relevance of the information disclosed herein. LGE also reserves its right to object to any subsequent discovery request by Summit 6, even if directed to subject matter herein. Nothing herein shall be deemed to constitute the waiver of any privilege or immunity, including the attorney-client privilege, the work-product doctrine, the joint defense privilege, the common interest privilege, or any other privilege or protection from disclosure provided by law.

In making these disclosures, LGE does not represent that it has identified every document,

APPX0088

information, fact, person, witness, or entity required relevant to the above-captioned case.
Rather, LGE's disclosures herein are based on their current knowledge, information, and beliefs,
which are significantly limited at least because discovery in this case, including from Summit 6
and third parties, has not started.

## I.   FED. R. CIV. P. 26(a)(1) DISCLOSURES

### A.   The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment

LGE has thousands of employees, and at the time of these disclosures, it is not clear the
identities of all LGE employees who may have knowledge of the subject matter of this litigation,
including about products that Summit 6 has not accused but may attempt to accuse in the future
as infringing the Patents-in-Suit.  Based on LGE's investigation thus far, LGE presently believes
that the following persons may potentially have knowledge of facts relevant to the claims or
defenses in the above named action.  Any individuals who are identified as being associated with
LGE should not be contacted directly but should only be contacted through LGE's counsel of
record in these actions.

#### 1.   Cecilia Son

Ms. Cecilia Son is a Director in the Partner Engineering team at LG Mobile Research
U.S.A., LLC, a wholly-owned subsidiary of LGE Electronics Mobilecomm U.S.A., Inc.  Ms. Son
may have knowledge of information regarding the Android OS certification, interactions
between LGE and Google, and interactions between LGE and Twitter, related to one or more of
the accused products.  Ms. Son can be contacted through Orrick.

#### 2.   Steven Howard

Mr. Steven Howard is an employee in the Partner Engineering team at LG Mobile
Research U.S.A., LLC.  Mr. Howard may have knowledge of information regarding the Android
OS certification, interactions between LGE and Google, and interactions between LGE and

APPX0089

Twitter, related to one or more of the accused products.  Mr. Howard can be contacted through Orrick.

### 3.    **<u>Bum Suk Bae</u>**

Mr. Bum Suk Bae is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC.  Mr. Bae may have knowledge of information regarding the Android OS certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products.  Mr. Bae can be contacted through Orrick.

### 4.    **<u>Joonhyun Baek</u>**

Mr. Joonhyun Baek is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC.  Mr. Baek may have knowledge of information regarding the Android OS certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products.  Mr. Baek can be contacted through Orrick.

### 5.    **<u>Jae Wook Cho</u>**

Mr. Jae Wook Cho is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC.  Mr. Cho may have knowledge of information regarding the Android OS certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products.  Mr. Cho can be contacted through Orrick.

### 6.    **<u>Dong Ho Han</u>**

Mr. Dong Ho Han is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC.  Mr. Han may have knowledge of information regarding the Android OS certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products.  Mr. Han can be contacted through Orrick.

### 7.    **<u>Jeong Rae Kim</u>**

Mr. Jeong Rae Kim is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC.  Mr. Kim may have knowledge of information regarding the Android OS

APPX0090

certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products. Mr. Kim can be contacted through Orrick.

### 8. **Kush Shrivastava**

Mr. Kush Shrivastava is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC. Mr. Shrivastava may have knowledge of information regarding the Android OS certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products. Mr. Shrivastava can be contacted through Orrick.

### 9. **Namrata Suryvanshi**

Namrata Suryvanshi is an employee in the Partner Engineering team at LG Mobile Research U.S.A., LLC. Ms. Suryvanshi may have knowledge of information regarding the Android OS certification, interactions between LGE and Google, and interactions between LGE and Twitter, related to one or more of the accused products. Ms. Suryvanshi can be contacted through Orrick.

### 10. **Eric Ley**

Mr. Eric Ley is a Vice President and Director of National Retail Accounts for the United States at LGE Electronics Mobilecomm U.S.A., Inc. Mr. Ley may have sales and financial information regarding one or more of the accused products. Mr. Ley can be contacted through Orrick.

### 11. **Yong-Beom Lee**

Mr. Yong-Beom Lee is a Chief Engineer at LG Electronics, Inc. Mr. Lee may have knowledge of technical information regarding one or more of the accused products as to U.S. Patent 7,765,482, including contents uploading technologies using MMS and SMS. Mr. Lee can be contacted through Orrick.

### 12. **Hye Jin Jang**

Mr. Hye Jin Jang is a Chief Engineer at LG Electronics, Inc. Mr. Jang may have knowledge of technical information regarding one or more of the accused products as to U.S.

APPX0091

Patent 8,612,515, including contents uploading technologies using applications such as Twitter and Facebook. Mr. Jang can be contacted through Orrick.

### 13.   **Jongyeong Lee**

Mr. Jongyeong Lee is an employee of Google, Inc., who may have knowledge regarding communication and interactions between LGE and Google regarding one or more of the accused products. Mr. Lee can be contacted through Google.

### 14.   **Joseph Hwang**

Mr. Joseph Hwang is an employee of Google, Inc., who may have knowledge regarding communication and interactions between LGE and Google regarding one or more of the accused products. Mr. Hwang can be contacted through Google.

### 15.   **Lisa T. Wood**

Ms. Wood is listed as an inventor on U.S. Pat. Nos. 6,895,557; 7,765,482; and 8,612,515 ("Asserted Patents"). Ms. Wood may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the Asserted Patents; the preparation and prosecution of the patent applications that resulted in the Asserted Patents; any patents or patent applications related to the Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the relationships between her and Summit 6, LLC ("Summit 6"); any knowledge of LGE's technology; and any financial interests she has in the Asserted Patents or this litigation. Ms. Wood can be contacted through Summit 6.

### 16.   **Scott M. Lewis**

Mr. Lewis is listed as an inventor on the Asserted Patents. Mr. Lewis may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the Asserted Patents; the preparation and prosecution of the patent applications that resulted in the Asserted Patents; any patents or patent applications related to the

APPX0092

Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the decision to sue LGE; the relationships between him and Summit 6; any knowledge of LGE's technology; and any financial interests he has in the Asserted Patents or this litigation. Mr. Lewis can be contacted through Summit 6.

### 17. Robin T. Fried

Ms. Fried is listed as an inventor on the Asserted Patents. Ms. Fried may have knowledge concerning the conception, reduction to practice, and inventorship of the purported invention claimed in the Asserted Patents; the preparation and prosecution of the patent applications that resulted in the Asserted Patents; any patents or patent applications related to the Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the relationships between her and Summit 6; any knowledge of LGE's technology; and any financial interests she has in the Asserted Patents or this litigation. Ms. Fried can be contacted through Summit 6.

### 18. Scott F. Wilson.

Mr. Wilson is a Managing Director of Summit 6 and founder of Swiftsure Capital. Mr. Wilson was part of the team that performed due diligence on Point2 Technologies, Inc. ("Point2")'s photo upload facility, a piece of prior art. Mr. Wilson may have knowledge concerning the alleged invention and patenting of the Asserted Patents; ownership of the Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the Asserted Patents or any embodiments thereof; analyses of or concerning the Asserted Patents;

APPX0093

prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; factual basis of Summit 6's claims and defenses; the location of any documents relevant to any of LGE's claims or defenses; the decision to sue LGE; the relationships between him and Summit 6; any knowledge of LGE's technology; and any financial interests he has in the Asserted Patents or this litigation. Mr. Wilson can be contacted through McKool Smith.

### 19. **Sarah Pate**

Ms. Pate is a Managing director of Summit 6, former CEO of AdMission Corporation ("AdMission"), and former COO/CFO of PictureWorks Technology, Inc. ("PictureWorks"). Ms. Pate may have knowledge concerning the alleged invention and patenting of the Asserted Patents; ownership of the Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the Asserted Patents or any embodiments thereof; analyses of or concerning the Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; factual basis of Summit 6's claims and defenses; the location of any documents relevant to any of LGE's claims or defenses; the decision to sue LGE; the relationships between her and Summit 6; any knowledge of LGE's technology; and any financial interests she has in the Asserted Patents or this litigation. Ms. Pate can be contacted through McKool Smith.

### 20. **Peter Yoakum**

Mr. Yoakum is a former AdMission board member and former managing partner at Swiftsure Capital. Mr. Yoakum also performed due diligence on Point2's photo upload facility and concluded that its public disclosure had endangered the '557 patent. Mr. Yoakum may have

knowledge concerning the alleged invention and patenting of the Asserted Patents; ownership of the Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the Asserted Patents or any embodiments thereof; analyses of or concerning Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; factual basis of Summit 6's claims and defenses; the location of any documents relevant to any of LGE's claims or defenses; the relationships between him and Summit 6; and any financial interests he has in the Asserted Patents or this litigation.  Mr. Yoakum can be contacted through McKool Smith.

21.     **Terrell Anderson**

Mr. Anderson was a Vice President of PictureWorks in or about November, 1998.  Mr. Anderson may have knowledge concerning prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the relationships between him and PictureWorks, AdMission or Summit 6; any knowledge of LGE's technology; and any financial interests he has in the Asserted Patents or this litigation. Mr. Anderson, on information and belief, can be contacted at Kabongo, Inc. 5801 Christie Avenue Suite 470 Emeryville, CA 94608.

22.     **Point2**

Persons within Point2 may have knowledge concerning prior art relevant to the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the relationships between it and Summit 6; and any financial interests it has in the Asserted Patents

APPX0095

or this litigation.  Point2 is believed to be located at 500-3301 8th Street East Saskatoon, SK S7H 5K5, Canada.

### 23.    Internet Pictures Corp. ("iPIX")

Persons within iPIX may have knowledge concerning prior art relevant to the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; any licensing or other commercial activity related to the Asserted Patents; the relationships between it and Summit 6; and any financial interests it has in the Asserted Patents or this litigation.  On information and belief, iPIX can be contacted at: Reston Executive Center 12120 Sunset Hills Road Reston, VA 20190.

### 24.    Summit 6

Persons within Summit 6 may have knowledge concerning the alleged invention and patenting of the Asserted Patents; ownership of the Asserted Patents; the operation of Summit 6 and its affiliated entities; the conception, reduction to practice, inventorship, commercialization, or disclosure of any alleged invention in the Asserted Patents or any embodiments thereof; analyses of or concerning Asserted Patents; prior art relevant to the Asserted Patents; the alleged infringement of the Asserted Patents by the accused devices; the chain of ownership interest in the Asserted Patents; products or programs allegedly embodying the purported invention disclosed in the Asserted Patents; licensing of the Asserted Patents and any related or comparable patents; factual basis of Summit 6's claims and defenses; the location of any documents relevant to any of LGE's claims or defenses; the decision to sue LGE; any knowledge of LGE's technology; and any financial interests it has in the Asserted Patents or this litigation. Summit 6 can be contacted through McKool Smith.

### 25.    Prosecution of the Asserted Patents

Persons involved in the preparation and prosecution of the patent applications related to the Asserted Patents.

APPX0096

26. **Twitter**

Persons from Twitter that LGE has yet to identify that have knowledge as to specific Twitter-related features and functionality of the accused instrumentalities that Summit 6 contends infringes the Asserted Patents.

27. **Wireless Carriers**

Persons from wireless carriers that LGE has yet to identify that have knowledge as to the transmission restrictions and requirements related to specific features and functionality of the accused instrumentalities that Summit 6 contends infringes the Asserted Patents.

28. **Prior Litigation**

Persons identified in, or otherwise involved in, prior litigation on certain of the Asserted Patents, namely *Summit 6 LLC v. Research in Motion Corporation, et al.*, Case No. 3:11-cv-00367-O (N.D. Tex. Feb. 23, 2011) that have relevant information regarding LGE's claims and defenses in the present matter.

In addition to the individuals identified above, the following individuals may have discoverable information: (i) persons identified in Summit 6's initial disclosures or any supplementations or amendments thereto; (ii) persons identified in the initial disclosures or any supplementations or amendments thereto of any co-defendant in this matter; and (iii) other individuals with relevant knowledge currently or previously at Summit 6.

LGE reserves to the right to amend and/or supplement this disclosure.

B. **A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment**

Though its investigation remains ongoing, LGE identifies the following categories and locations of documents, data compilations and tangible things in its possession, custody or control that LGE may use to support its defenses, unless solely for impeachment:

1. U.S. Patent No. 6,895,557 ('557 Patent) and its file history;

2. Prior art to the '557 Patent;

APPX0097

3. U.S. Patent No. 7,765,482 ('482 Patent) and its file history;

4. Prior art to the '482 Patent;

5. U.S. Patent No. 8,612,515 ('515 Patent) and its file history;

6. Prior art to the '515 Patent;

7. Ex Parte Reexamination 90/012,987 for Claims 38, 40, 44-46 and 49 of the '482 Patent;

8. Documents relating to the structure and operation of the specific features and functionality of the accused instrumentalities that Summit 6 contends infringes the Asserted Patents;

9. Financial, sales and marketing information relating to the instrumentalities accused of infringement;

10. Additional documents relating to the instrumentalities accused of infringement that will become apparent after plaintiff provides it infringement contentions.

The foregoing documents are located in LGE's offices including in San Diego, California, San Jose, California and Seoul, Korea, or in the offices of LGE's counsel in this case. Such documents may also be in the possession, custody or control of third parties. LGE's search for documents and things that it may use to support its claims and defenses is ongoing, and LGE reserves it right to amend and/or supplement this disclosure.

**C. A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered**

At this time, LGE does not seek damages and LGE denies Summit 6 is entitled to recover any damages from LGE. LGE reserves the right to amend and/or supplement this disclosure.

APPX0098

**D. For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment**

All applicable insurance agreements, if any, will be made available for inspection and copying upon request at a mutually agreed time and place.

## II. AMENDED MISCELLANEOUS ORDER NO. 62 DISCLOSURES

In light of the timetable provided by Amended Miscellaneous Order No. 62 and the case schedule, it is premature for LGE to make disclosures required by § 3 (Patent Initial Disclosures) of Amended Miscellaneous Order No. 62. Accordingly, pursuant to § 2-5 of Amended Miscellaneous Order No. 62, LGE declines to make such disclosures. LGE reserves its right to make, supplement and/or amend disclosures in compliance with Amended Miscellaneous Order No. 62.

APPX0099

Dated: June 20, 2014                    Respectfully submitted,

                                        By: /s/ Hsiwen Lo

**OF COUNSEL:**

                                        Deborah L. Sterling
                                        Texas Bar No. 19170950
                                        QUILLING SELANDER LOWNDS
                                        WINSLETT & MOSER, P.C.
                                        2001 Bryan Street, Suite 1800
                                        Dallas, Texas 75201
                                        Telephone: 214-871-2100
                                        dsterling@qslwm.com

                                        Steven J. Routh (*pro hac vice*)
                                        ORRICK HERRINGTON & SUTCLIFFE LLP
                                        Columbia Center
                                        1152 15th Street, N.W.
                                        Washington, D.C. 20005-1706
                                        Tel.: (202) 339-8400

                                        Robert M. Isackson (*pro hac vice*)
                                        ORRICK HERRINGTON & SUTCLIFFE LLP
                                        51 West 52nd Street
                                        New York, NY 10019-6142
                                        United States
                                        Tel.: (212) 506-5000

                                        Stacey E. Stillman (*pro hac vice*)
                                        ORRICK HERRINGTON & SUTCLIFFE LLP
                                        1000 Marsh Road
                                        Menlo Park, CA 94025-1015
                                        Tel: (650) 614-7400

                                        Hsiwen Lo (*pro hac vice*)
                                        ORRICK HERRINGTON & SUTCLIFFE LLP
                                        2050 Main Street
                                        Suite 1100
                                        Irvine, CA 92614-8255
                                        Tel: (949)567-6700

                                        **Attorneys for LG ELECTRONICS, INC.,
                                        LGE ELECTRONICS USA, INC., AND
                                        LG ELECTRONICS MOBILECOMM
                                        USA, INC.**

APPX00100

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the foregoing document was served electronically on June 20, 2014 in compliance with Local Rules LR 5.1.  As such, this document was served on all counsel deemed to have consented to electronic service per Local Rule LR 5.1 (d).

<div align="right">

*/s/ Hsiwen Lo*
Hsiwen Lo

</div>

APPX00101

# Exhibit K

APPX00102

 Menu  🏠 | 🔍 | My eAccess Account | **Value Notice**    Printable PDF Version | MapQuest Maps

# Tarrant Appraisal District

## ==Real Estate==

### **07/06/2014**

**Account Number:** 06795404

==**Georeference:** 414H-1-3R==

**Property Location:** 5650 Alliance Gateway Fwy, Fort Worth

**Owner Information:** At Industrial Owner 7 LLC

13600 Heritage Pkwy Ste 200

Fort Worth Tx 76177-5398

==**3 Prior Owners**==

==**Legal Description:** Alliance Gateway Addition==

==Blk 1 Lot 3R==

**Taxing Jurisdictions:** 026 City of Fort Worth

099 Regional Water District

220 Tarrant County

224 Tarrant County Hospital Dist

225 Tarrant County College Dist

911 Northwest ISD

[Show Bing Maps]

[Show Tax Rates]

[Pay Your Taxes - Ad Valorem Tax Offices]

This information is intended for reference only and is subject to change. It may not accurately reflect the complete status of the account as actually carried in TAD's database.

## Proposed Values for Tax Year 2014

|  | **Land** | **Impr** | **2014 Total ††** |
|---|---|---|---|
| **Market Value** | $3,884,594 | $10,383,246 | ==**$14,267,840**== |
| **Appraised Value †** | $3,884,594 | $10,383,246 | $14,267,840 |
| **Approximate Size †††** |  |  | 445,870 |
| **Land Acres** |  |  | 29.7260 |
| **Land SqFt** |  |  | 1,294,865 |

† Appraised value may be less than market value due to state-mandated limitations on value increases

†† A zero value indicates that the property record has not yet been completed for the indicated tax year

††† Rounded

## Tax Year 2013 - 2009  Five-Year Value History

| Tax Year | XMPT | Appraised Land | Appraised Impr | Appraised Total | Market Land | Market Impr | Market Total |
|---|---|---|---|---|---|---|---|
| 2013 | 000 | $3,884,594 | $9,491,506 | $13,376,100 | $3,884,594 | $9,491,506 | $13,376,100 |
| 2012 | 000 | $3,884,594 | $10,160,311 | $14,044,905 | $3,884,594 | $10,160,311 | $14,044,905 |
| 2011 | 000 | $3,884,594 | $10,405,540 | $14,290,134 | $3,884,594 | $10,405,540 | $14,290,134 |
| 2010 | 000 | $3,884,594 | $8,774,406 | $12,659,000 | $3,884,594 | $8,774,406 | $12,659,000 |
| 2009 | 000 | $3,884,594 | $8,855,345 | $12,739,939 | $3,884,594 | $8,855,345 | $12,739,939 |

**2014 Notice Sent:** 04/30/2014              **Protest Deadline:** 06/02/2014   Protest Final

**Exemptions:** None

==**Property Data**==

==**Deed Date:** 09/29/2010==              **Class:** 103

==**Instrument:** D210248614==              **State Code:** F1 Commercial

**Garage Bays:** 00

==**Year Built:** 1994==              **Central Air:**

**Central Heat:**

**TAD Map:** 2078 476              **Pool:** N

**MAPSCO:** 009L

- A833 -

APPX00103

**Agent:** 00320 Ryan LLC

**Link to Business Personal Property**

TAD Home   Report Questions and Comments   Website Updated: 05/20/2014   Property Data Updated: 07/06/2014
**Tarrant Appraisal District © 2014**   All rights reserved.

**- A834 -**

## Tarrant Appraisal District
### Real Estate
Data current as of  07/09/2014

**Account Number:** 06795404
**Property Location:** 5650 Alliance Gateway Fwy, Fort Worth
**Owner Information:** At Industrial Owner 7 LLC
13600 Heritage Pkwy Ste 200
Fort Worth Tx 76177-5398

### Prior Owners

| Name | Date | Instrument | Deed Vol | Deed Page |
|------|------|-----------|----------|-----------|
| ALLIANCE 170 BLDG PRTNS LLP | 2007-09-28 | D207348893 | 0000000 | 0000000 |
| NOKIA MOBIL PHONES INC | 2000-06-20 | | 0014404 | 0000113 |
| FINLAND PARTNERS I, LTD | 1995-01-01 | | 0000000 | 0000000 |

If there is no deed date, Tarrant Appraisal District records do not contain the actual deed date.

TAD Home » Property Data Search

# Tarrant Appraisal District
## Business Personal Property
### Search Result-Business Name
### Year 2014 Values

There were 2 matches.

| Business Name | Location | City | Proposed Value |
|---|---|---|---|
| Flextronics Intl USA Inc | 5650 Alliance Gateway Fwy | Fort Worth | $226,743,565 |
| Motorola Distribution Ctr | 5650 Alliance Gateway Fwy | Fort Worth | $26,185,240 |

TAD Home   Report Questions and Comments   Website Updated: 05/20/2014   Property Data Updated: 07/09/2014

**Tarrant Appraisal District © 2014**   All rights reserved.

 Menu     🏠 | 🔍 | 📄 | My eAccess Account   |   Value Notice       Printable PDF Version   | Locate on MapQuest Maps

# Tarrant Appraisal District

## Business Personal Property

### 07/09/2014

**Account Number:** 13847333    View RE Account

**Business Name:** Flextronics Intl USA Inc

**Property Location:** 5650 Alliance Gateway Fwy, Fort Worth

**Owner Information:** Flextronics Intl USA Inc

Attn Tax Dept

1000 Technology Dr

West Columbia Sc 29170-2263

**Property Type:** Business Personal Property

**Taxing Jurisdictions:** 026 City of Fort Worth

099 Regional Water District

220 Tarrant County

224 Tarrant County Hospital Dist

225 Tarrant County College Dist

911 Northwest ISD

[Show Bing Maps]

[Show Tax Rates]

[Pay Your Taxes - Ad Valorem Tax Offices]

This information is intended for reference only and is subject to change. It may not accurately reflect the complete status of the account as actually carried in TAD's database.

## Proposed Values for Tax Year 2014

| 2014 Market Value | $226,743,565 |
|---|---|

## Tax Year 2013 - 2009  Five-Year Value History

| Tax Year | Appraised Total | Market Total |
|---|---|---|

**2014 Rendition Received?** Y      **Worked?** Y      **Extension Filing Code:** 11

**2014 Notice Sent:** 05/30/2014      **Protest Deadline:** 06/30/2014

**Exemptions:** Freeport

**Property Data**

**State Code:** L1 Commercial BPP

**SIC:** 5065 Electronic Parts & Equipment

**Real Estate Account:** 06795404

**Agent:** None

TAD Home    Report Questions and Comments    Website Updated: 05/20/2014    Property Data Updated: 07/09/2014

**Tarrant Appraisal District © 2014**    All rights reserved.

Menu | My eAccess Account | Value Notice | Printable PDF Version | Locate on MapQuest Maps



# Tarrant Appraisal District

## Business Personal Property

### 07/09/2014

**Account Number:** 12679941   View RE Account

**Business Name:** Motorola Distribution Ctr

**Property Location:** 5650 Alliance Gateway Fwy, Fort Worth

**Owner Information:** Motorola Mobility LLC

Attn Tax Dept

600 N US Highway 45

Libertyville Il 60048-5343

**Property Type:** Business Personal Property

**Taxing Jurisdictions:** 026 City of Fort Worth

099 Regional Water District

220 Tarrant County

224 Tarrant County Hospital Dist

225 Tarrant County College Dist

911 Northwest ISD

This information is intended for reference only and is subject to change. It may not accurately reflect the complete status of the account as actually carried in TAD's database.

### Proposed Values for Tax Year 2014

| 2014 Market Value | $26,185,240 |
|---|---|

### Tax Year 2013 - 2009 Five-Year Value History

| Tax Year | Appraised Total | Market Total |
|---|---|---|
| 2013 | $49,781,908 | $49,781,908 |
| 2012 | $155,170,194 | $155,170,194 |
| 2011 | $115,348,404 | $115,348,404 |
| 2010 | $122,266,377 | $122,266,377 |
| 2009 | $38,244,506 | $38,244,506 |

**2014 Rendition Received?** Y    **Worked?** Y   **Extension Filing Code:** NP

**2014 Notice Sent:** 05/30/2014    **Protest Deadline:** 06/30/2014   Protest Resolved

**Exemptions:** None

**Property Data**

**State Code:** L1 Commercial BPP

**SIC:** 5065 Electronic Parts & Equipment

**Real Estate Account:** 06795404

**Agent:** 00320C Ryan LLC

TAD Home   Report Questions and Comments   Website Updated: 05/20/2014   Property Data Updated: 07/09/2014
Tarrant Appraisal District © 2014   All rights reserved.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | No. 7:14-cv-00014 |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS | § | |
| MOBILECOMM USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER, INC., | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |
| | § | |

**SUPPLEMENTAL DECLARATION OF MARK BUCKLEY IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

I, Mark Buckley, declare and state as follows:

1.      I have personal knowledge of the facts stated in this declaration and, if called to do so, would testify competently thereto.

2.      I am employed as a Finance Manager at Apple Inc. ("Apple") in Sunnyvale, California. I have been employed by Apple since October 2002. Unless otherwise indicated below, the statements in this declaration are based upon my personal knowledge, corporate records, or information maintained by Apple in the ordinary course of business.

APPX00109

3.      This declaration supplements my previous Declaration filed on June 10, 2014 in support of Defendants' Motion to Transfer, Dkt. No. 91-5, APPX240 – 244 (the "Original Declaration").

4.      Apple has two campuses in the Western District of Texas, both in the Austin area. These facilities are largely dedicated to customer service and support, sales, and accounting functions.  There are no documents or employees at the two Austin campuses that are relevant to the development, implementation, or operation of the Accused Instrumentality (as defined in my previous Declaration, at ¶ 4).

5.      After I executed the Original Declaration, I learned that Apple leases a less than 1000 square foot serviced office in the Northern District of Texas, where a small team executes voice and data performance tests and field certifications tests as required by the operator for product approval.  There are no documents or employees at this serviced office that are relevant to the development, implementation, or operation of the Accused Instrumentality.

I declare under penalty of perjury that the foregoing is true and correct.


Date: July 14, 2014

_____
Mark Buckley

APPX00110

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | CIVIL ACTION NO. 7:14-cv-00014 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HTC CORPORATION, | § | JURY TRIAL DEMANDED |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |

PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANT
APPLE INC.'S MOTION TO SEVER

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD FOR JOINDER ............................................................................2

III.    APPLE IS PROPERLY JOINED IN THIS CASE ..............................................................4

        A.      Apple's Accused Products are the Same as the Other Defendants.........................5

        B.      Summit 6's Claims Share Common Underlying Facts Across All
                Defendants, Thus Meeting the Same Transaction or Occurrence Test...................7

        C.      The Court Should Not Refuse Joinder on Prudential Grounds.............................10

IV.     CONSOLIDATION IS REQUESTED AND APPROPRIATE IF SUMMIT 6'S
        CLAIMS AGAINST APPLE ARE SEVERED..................................................................11

V.      IF SEVERED, THE CLAIMS AGAINST APPLE SHOULD NOT BE
        TRANSFERRED TO CALIFORNIA................................................................................12

VI.     CONCLUSION....................................................................................................12

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008)................................................................................3

*ContentGuard Holdings, Inc. v. Google, Inc.*,
   No. 2:14-CV-61, 2014 U.S. Dist. LEXIS 51676 (E.D. Tex. Apr. 15, 2014)..................3, 4, 10

*Imperium Holdings, Inc. v. Apple Inc.*,
   No. 4:11-CV-163, 2012 U.S. Dist. LEXIS 10333 (E.D. Tex. Jan. 20, 2012)...............4, 10, 11

*In re EMC Corporation*,
   677 F.3d 1359 (Fed. Cir. 2012)..............................................................3, 5, 11, 12

*Motorola Mobility, Inc. v. Tivo, Inc.*,
   No. 5:11-CV-53, 2012 U.S. Dist. LEXIS 99804 (E.D. Tex. July 18, 2012) ...........................5

*Negotiated Data Sol'ns, Inc. v. Apple, Inc.*,
   No. 2:11-CV-390, 2012 U.S. Dist. LEXIS 174839 (E.D. Tex. Dec. 11, 2012)............4, 6, 8, 9

*Oasis Research, LLC v. Carbonite, Inc.*,
   No. 4:10-CV-435, 2012 U.S. Dist. LEXIS 115718 (E.D. Tex. Aug. 15, 2012) ......................12

*Smartflash LLC et al. v. Apple, Inc. et al.*,
   No. 6:13-cv-00447, Doc. 122 (E.D. Tex. April 4, 2014)............................................... passim

*Tivo, Inc. v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011) (en banc)..................................................................3

*Vertical Computer Sys. v. LG Elecs. Mobilecomm U.S.A., Inc.*,
   No. 2:10-CV-490, 2013 U.S. Dist. LEXIS 71561 (E.D. Tex. May 21, 2013).........................4

*Wi-Lan Inc. v. HTC Corp.*,
   No. 2:11-CV-68, 2013 U.S. Dist. LEXIS 99635 (E.D. Tex. July 17, 2013) .............3, 5, 6, 10

Statutes

35 U.S.C. § 299(a) ...........................................................................................2, 6

35 U.S.C. § 299(a)(1)............................................................................................4

**– A843 –**

## I.    INTRODUCTION

Apple, Inc. ("Apple") filed its motion to sever ("Motion") one day before Summit 6 served its infringement contentions, providing almost 1600 pages of detail regarding how Apple infringes Summit 6's patents.    Perhaps now that Apple has these contentions, it better understands that this case does meet the joinder requirements.  It involves (1) the same accused products/processes and (2) many of the same underlying facts common to all Defendants in this case.  First, this case involves the same accused products and processes because both the accused MMS functionality and the Twitter functionality (called the "Twitter integration") are common across multiple Defendants.  The multimedia messaging or "MMS" functionality is common across all Handset Defendants (*i.e.,* Apple, HTC Corporation, HTC America, LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics MobileComm USA, and Motorola Mobility LLC) and allows users to text or message photos to their friends through the MMS applications on the accused mobile devices.    The Twitter integration is common across all Handset Defendants and Twitter.  The Twitter integration is technology "built directly into" the Handset Defendants' operating systems that allows users to send photos to Twitter without having to separately open the Twitter application.    That the MMS applications and Twitter integration operate on different platforms is irrelevant to the joinder analysis.

Second, because of this commonality of accused products, many underlying facts are common to all Defendants as well.  As the Court may recall from the previous *Summit 6 LLC v. Research in Motion et al.* case, No. 3:11-CV-367-O,[1] carriers like AT&T and Verizon place restrictions on the size of MMS messages.  These size restrictions are sent to and used by all Handset Defendants' MMS applications to pre-process photos sent via MMS, thus infringing U.S. Patent Nos. 7,765,482 (the "'482 patent") and 8,612,515 (the "'515 patent").  But even

_____
[1] hereinafter "the previous Summit 6 case."

1

more, all Handset Defendants appear to work with Twitter to place the infringing Twitter integration onto the Handset Defendants' accused mobile devices.  Information related to the Twitter integration is yet another set of underlying facts common across all Defendants.  As a result, carrier information related to pre-processing photos in MMS messages and Twitter information related to pre-processing photos in the Twitter integration create a whole host of common underlying facts, proof, and evidence that justify joinder of all Defendants in this case. Summit 6 therefore asks the Court to deny Apple's Motion.

Apple also devotes a few lines to transfer, asking the Court to transfer Apple's portion of the case to the Northern District of California after its case is severed from the remaining Defendants.  As noted in Summit 6's Response to the Motion to Transfer, none of the Defendants—including Apple—have made a sufficient showing that this case should be transferred.  Apple has strong ties to Texas and previously admitted that it is convenient for Apple to try patent cases in Texas.  Further, the public and private interest factors also do not favor transfer.  Regardless of the outcome of the present Motion, the Court should not transfer any portion of this case to the Northern District of California.

## II.    LEGAL STANDARD FOR JOINDER

The AIA provides a two-part test to determine whether joinder is proper in patent cases. The test requires the Court to decide:

> (1) whether allegations of infringement arise out of the same transaction or occurrence relating to the same accused product or process; and
>
> (2) whether the case involves questions of fact common to all defendants.

35 U.S.C. § 299(a).

2

The Federal Circuit also analyzed joinder under Rule 20 in a pre-AIA case called *In re EMC Corporation*.  677 F.3d 1359 (Fed. Cir. 2012).  Because the *EMC* case contains a similar analysis to that adopted by the AIA, courts regularly look to this decision for guidance on how to interpret the AIA.  *See, e.g.,* Order, *Smartflash LLC et al. v. Apple, Inc. et al.*, No. 6:13-cv-447, Doc. 122 at 3, (E.D. Tex. April 4, 2014), APPX0004 (the "*Smartflash* Order").

To determine whether infringement claims arise out of the same transaction or occurrence, the *EMC* court listed six non-exclusive factors to consider:

(1) whether the alleged acts of infringement occurred during the same time period;

(2) the existence of some relationship among defendants;

(3) the use of identically-sourced components in the accused products;

(4) licensing or technology agreements between defendants;

(5) overlap of the products' or processes' development and manufacture; and

(6) whether the damages sought are based on lost profits.

*In re EMC*, 677 F.3d at 1359-60.  Further, different products or processes are part of the same transaction or occurrence when there is an "actual link between the facts underlying each claim of infringement." *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-CV-61, 2014 U.S. Dist. LEXIS 51676, at *19 (E.D. Tex. Apr. 15, 2014); *see also Wi-Lan Inc. v. HTC Corp.*, No. 2:11-CV-68, 2013 U.S. Dist. LEXIS 99635, at *16 (E.D. Tex. July 17, 2013).

The *EMC* court then explained that to determine whether products or processes were "the same," the products need only be the same "in respects relevant to the patent."[2] *In re EMC*, 677

---

[2] This "sameness" test is consistent with other patent doctrines that turn on whether two products are the same.  For example, a party is precluded from bringing a subsequent suit against the same party for infringement by a device that is "essentially the same," which means that the devices do not differ in ways "related to the limitations in a claim in the patent." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323-24 (Fed. Cir. 2008).  And a party may be held in contempt for violating an injunction by selling devices that are "not more than colorably different" from the device adjudicated as infringing.  *See Tivo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (en banc).

3

McKool 1005144v2

**– A846 –**

F.3d at 1359. Thus, two literally different products or processes with an identical component are still "the same" where that component is relevant in some way to an asserted patent. For example, otherwise-unique products that conform to a common industry standard are the "same" for purposes of joinder. *See Negotiated Data Sol'ns, Inc. v. Apple, Inc.*, No. 2:11-CV-390, 2012 U.S. Dist. LEXIS 174839, at *8 (E.D. Tex. Dec. 11, 2012) ("Since each of the products are tied to the same [USB] standard, the allegations against them are therefore the same in respects relevant to the patent.") (internal citations omitted). Devices or processes that either incorporate common software or hardware components are the "same" for purposes of joinder. *See ContentGuard*, 2014 U.S. Dist. LEXIS 51676 at *18–19 (suggesting proper joinder if otherwise-unique products shared a common software application); *Vertical Computer Sys. v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 2:10-CV-490, 2013 U.S. Dist. LEXIS 71561, *17–18 (E.D. Tex. May 21, 2013) (finding proper joinder where accused cell phones used similar operating systems); *Imperium Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 U.S. Dist. LEXIS 10333, *11–12, n.3 (E.D. Tex. Jan. 20, 2012) (finding proper joinder under Rule 20 or AIA where digital cameras relied on the same imaging technology).

## III.   APPLE IS PROPERLY JOINED IN THIS CASE

Apple does not contest that this case involves questions of fact common to all Defendants as required by part 2 of the AIA's joinder test.[3] Thus, the Court need only determine whether Summit 6's claims arise out of the same transaction or occurrence relating to the same accused product or process. 35 U.S.C. § 299(a)(1). Apple raises three main arguments to support its Motion: (1) its products are not the same as other Defendants because it uses iOS instead of the

---

Under both tests, two devices may still be "the same" even if literally different. There is no indication in either the text of the statute, or in the AIA's legislative history, that Congress intended to enact a sameness test in the AIA that was different from those already existing in patent law.

[3] This is likely due to Apple's recognition that "overlapping issues of invalidity and claim construction [create] . . . common questions of fact." *Smartflash* Order at 8, APPX0009.

4

Android operating system; (2) there are no common underlying facts between Apple and other Defendants that satisfy the six "same transaction or occurrence" factors; and (3) the equities weigh in favor of severance. Each of these arguments is either irrelevant or incorrect. Even if the Court finds severance proper, Summit 6's claims against Apple should be consolidated with the claims against the remaining Defendants pursuant to Rule 42(a).

### A. Apple's Accused Products are the Same as the Other Defendants.

Apple's accused products are "the same" as other Defendants, even those that operate on the Android rather than the iOS platform.[4] First, accused products or processes need not be identical to meet the "sameness" requirement of joinder. Rather, they need only operate in the same way "in respects relevant to the patent[s]." *In re EMC*, 677 F.3d at 1359. With respect to infringement of the '482 and '515 patents, at least Apple's MMS application operates "the same" as co-Defendants LG, HTC, and Motorola's MMS applications.[5] All Handset Defendants (Apple and others) receive carrier size limits on the accused mobile devices and use those limits to pre-process photos sent via MMS. Both of these actions are relevant to infringement of the '482 and '515 patents, and thus are "the same" for purposes of joinder. *See id.*

For example, numerous cases hold that joinder of multiple defendants with "different" products is proper when infringement relies on a common industry standard. *See Wi-Lan*, 2013 U.S. Dist. LEXIS 99635 at *39 (holding joinder proper where different accused wireless devices complied with common transmission standards on cell networks.). Courts recognize that "[s]ince adhering to [certain] standards was an 'underlying theme' of the infringement claims,

---

[4] iOS and Android are merely the software platforms that carry out both the MMS and the Twitter integration functions. Any difference across platforms is irrelevant as it has no effect on the receipt and use of carrier parameters for MMS or receipt and use of code related to the Twitter integration. Thus, there is no effect on operations that are relevant to infringement.
[5] Summit 6 may uncover different or additional theories of infringement or separately accuse iMessage or other functionalities of infringement, but that does not affect the Court's joinder analysis. *See Motorola Mobility, Inc. v. Tivo, Inc.*, No. 5:11-CV-53, 2012 U.S. Dist. LEXIS 99804, at *8 (E.D. Tex. July 18, 2012).

5

defendants' common compliance formed a 'piece' of the 'same transaction or occurrence' necessary for joinder." *Id*. at 39–40; *see also Negotiated Data*, 2012 U.S. Dist. LEXIS 174839 at *9–10 (finding joinder proper where accused products all conformed to the USB standard). Here, carriers like AT&T and Verizon set size restrictions on MMS messages. Apple '482 Infringement Contentions at 13–14, 23-25 APPX0035-36, 45-47 ("Apple '482 Inf. Cont."). Like the industry standards in *Wi-Lan* and *Negotiated Data*, a carrier's MMS size limits are communicated to Handset Defendants, who conform their MMS applications to operate in compliance with the carriers' requirements. *Id*. The Handset Defendants' adherence to these requirements is "an 'underlying theme' of the infringement claims." *Wi-Lan*, 2013 U.S. Dist. LEXIS 99635 at *39-40. Handset Defendants' common compliance thus "form[s] a 'piece' of the 'same transaction or occurrence' necessary for joinder." *Id*.

Second, the infringing Twitter integration also constitutes the "same" product for purposes of joinder. "[A]lthough the [Twitter integrations] may not be identical to each other in their entirety," Handset Defendants infringe "in the same way through their use" of the Twitter integration. *Smartflash* Order at 6, APPX0007. Defendants have not yet produced source code, but it appears highly likely that the Twitter integrations for both Apple and other Handset Defendants use the same processes to infringe the '482 and '515 patents. For example, it appears that all Handset Defendants may use the same code and/or APIs from co-Defendant Twitter to effectuate the Twitter integration—regardless of operating system. *See* Twitter Developer webpage titled "GET help/configuration" and associated source code, APPX0080-82. Thus, "the processes are the same in 'respects relevant to the patent.'" *Smartflash* Order at 6, APPX0007.

Third, the Twitter integration is the same transaction or occurrence for which Summit 6 asserts a right to relief "jointly, severally, or in the alternative" against Apple and Twitter. 35

6

U.S.C. § 299(a).  Twitter's website below[6] explains that the Twitter integration is "built directly into" Apple's mobile devices to allow users to share photos by posting them to Twitter's website.

# About the Twitter for iOS integration

Twitter's integration with iOS 5 makes it easy to tweet from your iPhone, iPad, or iPod touch. Twitter features are built directly into iOS 5, allowing you to share what you are doing from a number of different apps and locations on your iOS-powered device.

Apple's website and user guides also boast its co-development efforts with Twitter for the iOS Twitter integration:[7]

iOS: Using Facebook, Twitter, and other social network accounts

Languages English

Learn more about the built-in support for popular social network services.

With iOS, you can connect directly to your social network accounts, allowing you to post and share content from nearly anywhere. iOS provides integrated support for:

- Twitter

Apple and Twitter clearly worked together on the iOS Twitter integration and may be liable jointly, severally, or in the alternative for its infringement.  Such encouragement of Apple's users to use Twitter and vice versa also means that both of these parties may induce the other's users to infringe the '482 and '515 patents.  Contrary to Apple's allegations, proof of intent for indirect infringement by Apple and Twitter may have commonality between these two parties.

B.    **Summit 6's Claims Share Common Underlying Facts Across All Defendants, Thus Meeting the Same Transaction or Occurrence Test.**

As Apple correctly notes, joinder is proper if there is a link between the facts underlying Summit 6's infringement claims against Apple and its claims against LG, HTC, Motorola, and Twitter.  Apple's Motion, Doc. 112 at 5.  This is precisely the case here.  At least the following facts are common to all Handset Defendants in this case: (1) information related to limits on

---

[6] Twitter Help Center webpage titled "About the Twitter for iOS Integration," APPX0084 (the "Twitter Integration webpage"), previously located at https://support.twitter.com/articles/20169494#, and since been removed.
[7] Apple's support webpage titled "iOS: Using Facebook, Twitter, and other social network accounts" at http://support.apple.com/kb/HT5500, APPX0089.

7

MMS message size, (2) carrier requirements related to MMS messages, and (3) any other third-party requirements related to sending photos via MMS. *See, e.g.*, Apple '482 Inf. Cont. at 13-14, 23–25, APPX0035-36, 45-47. In addition, at least the following facts are common to all Defendants: (1) code related to the Twitter integration, (2) technical documents describing how to incorporate the Twitter integration into each Handset Defendant's accused mobile devices, (3) information describing why Handset Defendants should incorporate the Twitter integration into the accused mobile devices, and (4) any restrictions on photo size acceptable to Twitter. *See, e.g.,* Apple '482 Inf. Cont. at 7-9, 25, APPX0029-31, 47. These are "precisely the sort of 'actual links' that the Federal Circuit had in mind when it discussed the propriety of joinder in patent cases." *Negotiated Data*, 2012 U.S. Dist. LEXIS 174839 at *9.

Five of the six "sufficient aggregate facts" factors outlined by the Federal Circuit also support joinder.[8] The first factor is whether the alleged acts of infringement occurred during the same time period. In Summit 6's case, all Defendants' infringement is ongoing and thus occurs during the same time period. *See Negotiated Data*, 2012 U.S. Dist. LEXIS 174839 at *10 (finding ongoing infringement satisfies first factor).

The second factor is whether there is a relationship among the Defendants. Although Apple appears to deny any such relationship, it clearly has one with Twitter as noted above. Apple and Twitter worked to integrate Twitter into the iOS operating system on Apple's accused devices. Twitter and Apple Integration webpages, APPX0080-84. Twitter also acts as a supplier to the Handset Defendants, providing Twitter code and/or APIs that are incorporated into the accused products. Apple Inf. Cont. at 7-9, 25, APPX0029-31, 47.

The third factor is whether Defendants use identically sourced components. They do in

---

[8] The sixth "lost profits" factor is inapplicable in this case, but does not detract from a finding that Apple is properly joined in this case. *See Negotiated Data*, 2012 U.S. Dist. LEXIS 174839 at *10 (affirming joinder where no lost profits factor applied).

8

this case. Handset Defendants (and possibly Twitter) receive common carrier size limits for use in their messaging applications.[9] Apple '482 Inf. Cont. at 13–14, 23–25 APPX0035-36, 45-47. Handset Defendants also incorporate common software from Twitter (for any or all of the Twitter integration, Twitter applications, Twitter APIs, or Twitter mobile website).

The fourth factor is whether licensing or technology agreements exist between Defendants. Summit 6 has not yet received any technical documents from Defendants; however it believes such agreements exist at least between Twitter and Handset Defendants in connection with the use and/or distribution of the Twitter integration, Twitter APIs, or Twitter applications. This type of agreement is sufficient to meet the fourth factor. *See Negotiated Data*, 2012 U.S. Dist. LEXIS 174839 at *10 (assuming the manufacturing relationship between defendants was governed by a "supplier agreement").

And lastly, the fifth factor is whether there is an overlap of the products' or processes' development and manufacture. According to the Twitter and Apple Integration webpages, it collaborates with Apple for the Twitter integration. APPX0080-84. This is likely to be true for the other co-Defendants as well. Such collaboration meets this fifth factor. *See Negotiated Data*, 2012 U.S. Dist. LEXIS 174839 at *10 (holding fifth factor satisfied where defendants collaborate to develop infringing processor). Defendants are therefore not "independent actors" who infringe Summit 6's patents "by coincidence." *Smartflash* Order at 8, APPX0009. Instead, they commonly rely on carrier-mandated MMS size limits, the Twitter integration, and the source code and/or APIs provided by co-Defendant Twitter to deliver the same functionality on the accused devices. This commonality is sufficient for joinder. *See id.*

---

[9] Defendants have not yet produced source code or other technical documents, and therefore it is possible that Twitter may also use carrier-set message limits. All Defendants may also use commonly-sourced parameters from other parties as well for the MMS applications, iMessage functionality, Twitter integration, Twitter APIs, Twitter applications, or Twitter mobile website.

9

Apple fails to address these connections, arguing instead that it shares no "common management or ownership" with any co-Defendant and has "long been considered" a competitor of the Handset Defendants.  Apple's Motion, Doc. 112 at 5–6.  Yet market competition is irrelevant when the sameness test is otherwise satisfied.  *See Wi-Lan Inc.*, 2013 U.S. Dist. LEXIS 99635 at *38–39 (finding joinder appropriate despite the defendants being market competitors); *Imperium*, 2012 U.S. Dist. LEXIS 10333 at *11–12, n.3 (approving joinder of Apple and market competitors under both pre-and post-AIA standards).  Similar overlapping facts exist here, and Apple's market competition with its co-Defendants is irrelevant.

### C.    The Court Should Not Refuse Joinder on Prudential Grounds.

Apple's arguments center on whether it would confuse a jury for Apple's case to be tried with the other co-Defendants.  Apple does not raise a single argument that it is prejudicial or confusing to proceed with co-Defendants through pre-trial proceedings.  At best, Apple's arguments support the Court granting Apple a separate trial—not severing Apple into a separate case.  However, even a request for separate trials is premature at this point, as are Apple's arguments for jury confusion.  *See ContentGuard*, 2014 U.S. Dist. LEXIS 51676 at *21–22 (carrying joinder issue where case was in "its early stages" and discovery had "barely started.").

By granting Apple's Motion, Summit 6's case would be converted into two different lawsuits, one in the Northern District of Texas and another in the Northern District of California. As noted by another Texas court, "the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication." *Imperium*, 2012 U.S. Dist. LEXIS 10333 at *12-13.  That is particularly true here where the Court has already taken two of the three Patents-in-Suit through claim construction, motions for summary judgment on validity, and pre-trial motions.  And the Court took the '482 patent through trial and post-trial proceedings against Samsung just last year.  Severance in this case is "a duplicative use

10

of scarce judicial resources." *Id.*  It also "impede[s] the administration of justice" by risking claim construction inconsistencies and greater uncertainty regarding patent scope. *See id.*  As in *Imperium*, severance here "would create significant inefficiencies because the lawsuit would be divided into two parallel actions involving the same patents, claims, and third-parties common to the Defendants." *Id.*  Unlike some other cases on which Apple relies, "[t]his is not a situation where wholly unrelated defendants have been joined through six degrees of separation. . . .  It is not fundamentally unfair or prejudicial for these [] defendants to be joined together in one action." *Smartflash* Order at 9, APPX0010.

Apple makes much of the Court's decision to sever Summit 6's claims against Facebook and Samsung for trial in the prior suit, and Summit 6's decision to not contest severance at that time.  Apple's Motion, Doc. 112 at 1, 7.  Yet Apple's Motion is dramatically different from Facebook's prior motion.  In Facebook's motion, severance was requested shortly before trial. *See* the previous Summit 6 case, Doc. 508, APPX0093.  In contrast, Apple's current motion is requested while discovery is ongoing and trial is more than a year away.  Further, the severed claims in the previous Summit 6 case involved only two defendants and Facebook and Samsung shared a single infringement claim between them.  *Id.*  In this case, all Defendants remain and they each share several common infringement claims.  Many proceedings have yet to take place, including claim construction, motions for summary judgment, and expert discovery.  Severance at this stage would only cause delay and increase costs for the parties and the Court.

## IV.    CONSOLIDATION IS REQUESTED AND APPROPRIATE IF SUMMIT 6'S CLAIMS AGAINST APPLE ARE SEVERED.

If the Court grants Apple's Motion, Summit 6 requests pre-trial consolidation of its case against Apple and the case against the remaining Defendants.  Even where joinder fails under Rule 20, courts have "considerable discretion to consolidate cases for discovery and trial." *In re*

11

*EMC*, 677 F.3d at 1360.  This case is sufficiently underway[10] and consolidation will ease the significant burden of claim construction, expert discovery, and other motion practice. *See id.*; *Oasis Research, LLC v. Carbonite, Inc.*, No. 4:10-CV-435, 2012 U.S. Dist. LEXIS 115718, *19–21 (E.D. Tex. Aug. 15, 2012) (noting consolidation of infringement claims ensures efficient use of judicial resources under the AIA).  Further, Apple never disputed the appropriateness of consolidation, and other courts approve of its use in a case such as this. *See id*.  Summit 6 also urges the Court to consolidate the cases for trial for the same reasons noted above in Section III.

## V.    IF SEVERED, THE CLAIMS AGAINST APPLE SHOULD NOT BE TRANSFERRED TO CALIFORNIA.

As explained above, Apple's Motion is without merit and should be denied.  This denial should also operate as a denial of Apple's renewed request for transfer, which is contingent on the Court granting severance.  Apple's Motion, Doc. 112 at 9.  Even if the Court grants Apple's Motion, it should not transfer Summit 6's claims against Apple to the Northern District of California ("NDCA").  For the reasons Summit 6 set forth in its Response to Defendants' Joint Motion to Transfer, Defendants fail to show that the NDCA is a "clearly more convenient" venue.  *See* Summit 6's Response, Doc. 118.  Apple has significant ties to Texas and has admitted under oath that it is just as convenient for Apple to try patent cases in Texas as it is in any other district.  Further, the public and private interest factors either are neutral or favor keeping this case in the Northern District of Texas.

## VI.    CONCLUSION

Summit 6 requests that the Court deny Apple's Motion.  If the Court finds severance appropriate, Summit 6 requests consolidation of its case against Apple and the remaining Defendants for purposes of pre-trial proceedings.

---

[10] Summit 6 has already served its infringement contentions, accompanying document production, and will be responding to Requests for Production with yet another document production this week.  The Court has also entered a Scheduling Order, Discovery Order, ESI Order, and Protective Order.

12

Dated:  July 16, 2014                     Respectfully submitted,

                                          **MCKOOL SMITH, P.C.**

                                          By:  /s/ Douglas A. Cawley
                                          Douglas A. Cawley
                                          Lead Attorney
                                          Texas State Bar No. 04035500
                                          dcawley@mckoolsmith.com
                                          Theodore Stevenson III
                                          Texas State Bar No. 19196650
                                          tstevenson@mckoolsmith.com
                                          Phillip M. Aurentz
                                          Texas State Bar No. 24059404
                                          paurentz@mckoolsmith.com
                                          Ashley N. Moore
                                          Texas State Bar No. 24074748
                                          amoore@mckoolsmith.com
                                          Mitchell R. Sibley
                                          Texas State Bar No. 24073097
                                          msibley@mckoolsmith.com
                                          Richard A. Kamprath
                                          Texas State bar No. 24078767
                                          rkamprath@mckoolsmith.com
                                          McKool Smith, P.C.
                                          300 Crescent Court, Suite 1500
                                          Dallas, Texas 75201
                                          Telephone: (214) 978-4000
                                          Telecopier: (214) 978-4044

                                          Bradley W. Caldwell
                                          Texas State Bar No. 24040630
                                          bcaldwell@caldwellcc.com
                                          Caldwell Cassady & Curry
                                          2101 Cedar Springs Road, Suite 1000
                                          Dallas, Texas 75201
                                          Telephone: (214) 888-4848
                                          Telecopier: (214) 888-4849

                                          **ATTORNEYS FOR PLAINTIFF
                                          SUMMIT 6 LLC**

13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 16, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

<div align="right">

*s/ Ashley N. Moore*
Ashley N. Moore

</div>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 7:14-cv-00014** |
| | § | |
| **HTC CORPORATION,** | § | |
| **HTC AMERICA, INC.,** | § | |
| **LG ELECTRONICS, INC.,** | § | |
| **LG ELECTRONICS USA, INC.,** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | **JURY TRIAL DEMANDED** |
| **USA, INC.,** | § | |
| **MOTOROLA MOBILITY LLC,** | § | |
| **APPLE INC., and** | § | |
| **TWITTER INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## APPENDIX IN SUPPORT OF PLAINTIFF SUMMIT 6 LLC'S
## RESPONSE TO DEFENDANT APPLE INC.'S MOTION TO SEVER

## TABLE OF CONTENTS

**DESCRIPTION**                                                              **APPENDIX PAGES**


Declaration of Ashley Moore

Exhibit 1 –   Memorandum and Opinion Order, *Smartflash LLC v.*
              *Apple, Inc.,* No. 6:13-cv-447, United
              States District Court, Eastern District of Texas,
              Doc. 122, dated Apr. 4, 2014                                2-21

Exhibit 2 –   Summit 6, LLC's Infringement Contentions to Apple,
              Inc. for U.S. Patent 7,765,482 (Claim 1 only)              23-78

Exhibit 3 –   Twitter Developers website page,
              *"Get Help/Configuration,"* dated Aug. 25, 2012            80-82

Exhibit 4 –   Twitter Help Center website article, *"About the*
              *Twitter for iOS Integration,"* dated 2014                 84-87

Exhibit 5 –   Apple Support website article, *"iOS: Using Facebook,*
              *Twitter, and Other Social Network Accounts,"*
              dated July 15, 2014                                        89-91

Exhibit 6 -   Order (Granting Facebook, Inc.'s Opposed Motion
              to Sever), *Summit 6, LLC v. Research in Motion,*
              No. 6:11-cv-367-O, United States District Court,
              Eastern District of Texas, Doc. 508, dated Feb. 6, 2013    93-95

**– A859 –**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF ASHLEY MOORE IN SUPPORT OF
PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO
DEFENDANT APPLE INC.'S MOTION TO SEVER**

I, Ashley Moore, do state and declare as follows:

I am an attorney with the law firm of McKool Smith PC ("McKool Smith"), counsel for

Plaintiff Summit 6 LLC ("Summit 6") in this action.  I make this declaration in support of

Plaintiff Summit 6 LLC's Response to Defendant Apple Inc.'s Motion to Sever, filed herewith.

Unless otherwise stated, the matters contained in this declaration are of my own personal

knowledge and, if called as a witness, I could and would testify competently to the matters set

forth herein.

1.      Attached hereto as Exhibit 1 is a true and correct copy of the Memorandum and Opinion Order, filed in *Smartflash LLC v. Apple, Inc.,* No. 6:13-cv-447, In the United States District Court for the Eastern District of Texas, Doc. 122, dated April 4, 2014.

2.      Attached hereto as Exhibit 2 is a true and correct copy of Summit 6's Infringement Contentions to Apple, Inc. for U.S. Patent 7,765,482 (Claim 1 only).

3.      Attached hereto as Exhibit 3 is a true and correct copy of the Twitter Developers website page, titled *"Get Help/Configuration,"* at https://dev.twitter.com/docs/api/1/get/help/configuration, dated August 25, 2012.

4.      Attached hereto as Exhibit 4 is a true and correct copy of the Twitter Help Center website article, titled *"About the Twitter for iOS Integration,"* previously located at dated 2014.

5.      Attached hereto as Exhibit 5 is a true and correct copy of Apple Support website article, *"iOS: Using Facebook, Twitter, and Other Social Network Accounts,"* previously located at https://support.twitter.com/articles/20169494#, dated July 15, 2014.

6.      Attached hereto as Exhibit 6 is a true and correct copy of the Order Granting Facebook, Inc.'s Opposed Motion to Sever, filed in *Summit 6, LLC v. Research in Motion et al,* No. 6:11-cv-367-O, In the United States District Court for the Eastern District of Texas, Doc. 508, dated February 6, 2013

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 16, 2014 in Dallas, Texas.

*s/ Ashley Moore*
Ashley Moore

**DECLARATION OF ASHLEY MOORE IN SUPPORT OF PLAINTIFF SUMMIT 6 LLC'S RESPONSE TO DEFENDANT APPLE, INC.'s MOTION TO SEVER**

2

**– A861 –**

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:13-cv-447 |
| | § | |
| APPLE, INC., et al., | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

<u>**MEMORANDUM AND OPINION ORDER**</u>

Before the Court are defendant Apple, Inc.'s Motions to Sever and Transfer Venue (Doc. Nos. 45 & 46). The matter has been fully briefed (Doc. Nos. 45, 46, 52, 55, 61, 62, 74 & 75). For the reasons set forth below, the motions are **DENIED**.

**BACKGROUND**

Plaintiffs Smartflash LLC and Smartflash Technologies Limited filed this action against Apple, Inc., Robot Entertainment, Inc., KingIsle Entertainment, Inc., and Game Circus LLC alleging infringement of the following patents: U.S. Patent No. 7,334,720; U.S. Patent No. 7,942,317; U.S. Patent No. 8,033,458; U.S. Patent No. 8,061,598; U.S. Patent No. 8,118,221; and U.S. Patent No. 8,336,772. Doc. No. 1 at 8–15. Plaintiffs accuse Apple of infringement, arguing that it "makes, uses, offers to sell, sells, and/or imports Apple's Accused Instrumentalities within the United States or into the United States." *Id.* at 8. Apple is also accused of indirectly infringing the patents-in-suit by inducing the infringement of "resellers, app developers and publishers, digital content publishers, and end-user customers." *Id.* This includes the three other defendants who all develop apps for Apple products.

1

On October 18, 2013, Apple filed its Motion to Sever (Doc. No. 45) and its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 46). Apple contends that the joinder of Robot Entertainment, Inc., KingIsle Entertainment, Inc., and Game Circus LLC is improper, and that the case should be severed into four separate actions. Apple also contends that the Northern District of California is a more convenient forum than the Eastern District of Texas and seeks to transfer venue pursuant to 28 U.S.C. § 1404(a).

## APPLICABLE LAW

Joinder is normally governed by Federal Rule of Civil Procedure 20. However, in actions involving patents, joinder is governed by the Leahy–Smith America Invents Act (AIA). 35 U.S.C. § 299. Under the AIA, accused infringers cannot be joined in one action based solely on allegations that they each have infringed the patent or patents in suit. 35 U.S.C. § 299(b). Instead, patent defendants may be joined only if:

(1) Any right to relief is asserted against the parties jointly, severally, or in the alterative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

(2) Questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a).

"While transfer motions are governed by regional circuit law, motions to sever are governed by Federal Circuit law because joinder in patent cases is based on an analysis of the accused acts of infringement, and this issue involves substantive issues unique to patent law." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). If parties are misjoined in violation of the

2

AIA, Federal Rule of Civil Procedure 21 provides the remedy of severance.  Fᴇᴅ. R. Cɪᴠ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.").

The case law analyzing Section 299 of the AIA is still relatively limited.  But in *In re EMC 1*, the Federal Circuit did clarify the test for joinder in patent cases under Rule 20.  Courts have looked to *In re EMC* for guidance on how the Federal Circuit might address the AIA.  *See Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 2:12-cv-4014-ODW, 2012 WL 3999854, at *2 (C.D. Cal. Sept. 11, 2012); *Digitech Image Technologies, LLC v. Agfaphoto Holding GmbH*, No. 8:12-cv-1153-ODW, 2012 WL 4513805, at *2 (C.D. Cal. Oct. 1, 2012); *MGT Gaming, Inc., v. WMS Gaming, Inc.*, 3:12-cv-741, 2013 WL 5755247 (S.D. Miss. Oct. 23, 2013).

In *In re EMC 1*, the Federal Circuit held that joinder is only appropriate when the accused products or processes are the same in respects relevant to the patent.  *In re EMC Corp.*, 677 F.3d at 1359.  The fact that the products are the same is not sufficient though.  *Id.*  The claims against each independent defendant must share an aggregate of operative facts.  *Id.*  This requires "shared, overlapping facts that give rise to each cause of action."  *Id.*  "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical."  *Id.*  This two part test is very similar to the first two prongs of the AIA. *See* 35 U.S.C. § 299(a).

Even if these requirements are met, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."  *In re EMC,* 677 F.3d at 1360 (citing *Acevedo*, 600 F.3d 516, 521 (5th Cir. 2010)).  In reaching a conclusion, a court should "examine whether permissive

joinder would 'comport with principles of fundamental fairness' or would result in prejudice to either side." *In re Nintendo Co., Ltd.*, 2013 WL 5345899 at *5 (Fed. Cir. Sept. 25, 2013) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)).

## DISCUSSION

Apple does not dispute that it is properly joined with each of the app developer defendants. Doc. No. 45 at 9. Instead, Apple argues that the three app-developer defendants are improperly joined with each other and should be severed.[1] *Id.* at 1. Apple contends that once the three developers are severed from each other, the prohibition on claim splitting prevents Smartflash from maintaining three separate actions against Apple. *Id.* Thus, Apple's argument hinges on the joinder of the three developer defendants.

### I.     AIA Joinder Requirements

The AIA establishes a three part test for joinder of patent defendants that are not jointly or severally liable. The right to relief must: (1) relate to the same accused product or process; (2) arise out of the same series of transactions or occurrences; and (3) there must be questions of fact common to all defendants. 35 U.S.C. § 299(a).

#### 1.     *Same Product or Process*

The first element of section 299 requires that the alleged acts of infringement relate to the same accused product or process. 35 U.S.C. § 299(a)(1).

Apple argues that the developer defendants are misjoined because they each developed different apps that perform different processes. Doc. No. 45 at 3. Apple contends that while there are similarities between the apps, they are insufficient to establish proper joinder under the AIA. *Id.* at 4–5.

---

[1] The app-developer defendants have not alleged improper joinder. Robot Entertainment, Inc. has consented to Apple's motion and the other two defendants do not oppose it. Doc. No. 45 at 1 n.1.

4

Smartflash argues that joinder is proper because it sued the Defendants based on their use of the same in-application payment process.  Doc. No. 52 at 5.  According to Smartflash, this payment functionality, meets crucial limitations for a number of claims in the patents-in-suit.  *Id.* at 6.  The payment functionality is provided through Apple's Store Kit, which developers are required to use.  *Id.*  Smartflash argues that Apple's involvement ensures that the in-application payment functionality is consistent across all apps.  *Id.* at 7.  Since this functionality is integral to Smartflash's infringement claims, they contend the claims involve the same accused product or process.

Case law analyzing the "*same* product or process" requirement is still relatively scarce.  Although not interpreting section 299, *In re EMC* stated that joinder is only proper "where the accused products or processes are the same in respects relevant to the patent."  *In re EMC*, 677 F.3d at 1359.  Apple contends that all relevant portions of the product or process must be identical.  Doc. No. 61 at 2.  According to Apple, the accused Apps have additional functionality that the developers themselves must provide.  *Id.* at 3.  Smartflash responds that the 'sameness test' should be consistent with how the term is used in other aspects of patent law.  Doc. No. 52 at 4 n.3.  Smartflash proposes that if a component or step in the process meets a limitation in the claim of the asserted patent, and the process is identical across devices, the devices relate to the same product or process.  *Id.* at 5.  Additionally, Smartflash argues that even if Apple's interpretation is correct, joinder is still proper because the Defendants use Apple's Store Kit framework to infringe all elements of several claims.  *Id.* at 1–2.

It is clear that the three apps in question have additional functionality added by the developers.  It is not the entire app that is allegedly infringing though.  Smartflash alleges infringement by the in-app payment functionality that is present in each of the developer's apps.

<div align="center">5</div>

Doc. No. 1 at ¶ 74, 86, 91.  The payment process is a component of the app software and allegedly infringes entire claims of the patents-in-suit.  Although the apps may not be identical to each other in their entirety, infringement allegations are directed to the software implementation of the in-app purchasing functionality.  The developer defendants allegedly infringe this functionality in the same way through their use the Apple Store Kit framework.  Therefore the processes are the same in "respects relevant to the patent."  *In re EMC*, 677 F.3d at 1359.  Since section 299 only requires "*any* right to relief" to be the same, there is not misjoinder if joinder is proper for one or more claims.  *See Omega Patents, LLC v. Skypatrol, LLC*, 2012 WL 2339320 (S.D. Fla. June 19, 2012).

###    2.   *Same Series of Transactions or Occurrences*

In addition to using the same process, the alleged infringement must also arise out of the same series of transactions or occurrences.  Apple argues that each sale of the accused apps is independent and therefore not part of the same transaction or occurrence.  Doc. No. 45 at 8.  Smartflash contends that the infringements do arise out of the same transaction or occurrence because they meet several of the factual considerations that the Federal Circuit outlined in *In re EMC 1*.  Doc. No. 52 at 9–10.

While the AIA added a "same product or process" requirement for joinder, the "same transaction or occurrence" requirement was always part of the Rule 20 analysis.  35 U.S.C. § 299(a); FED. R. CIV. P. 20(a)(2)(A).  To satisfy the "same transaction or occurrence" test, there must be an actual link between the facts underlying each claim of infringement.  *In re EMC*, 677 F.3d at 1359.  Patent-infringement claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the claims of infringement asserted against each defendant share an

aggregate of operative facts. *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012).  Even if they are coincidentally identical, independently developed products using differently sourced parts are not part of the same series of transactions or occurrences.  *In re EMC*, 677 F.3d at 1350.

The language of the AIA states that defendants may be joined if a right to relief is "asserted jointly, severally, or *in the alternative* with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . ."   35 U.S.C. § 299(a) (emphasis added).   The statutory language makes it clear that the requirements for 'same transaction or occurrence' must be less stringent than what would be required for joint liability.  *TRW Inc., v. Andrews*, 534 U.S.19, 31 (2001) ("it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted).   Thus the "logical relationship" between the parties does not need to be so entwined that they are working in concert.  *In re EMC,* 677 F.3d at 1356.

The Federal Circuit provided a non-exhaustive list of factors to consider when determining whether defendants share an aggregate of operative facts.  *See In re EMC*, 677 F.3d at 1359–60.  These factors include: (1) "whether the alleged acts of infringement occurred during the same time period; (2) the existence of some relationship among the defendants; (3) the use of identically sourced components; (4) licensing or technology agreements between the defendants; (5) overlap of the products' or processes' development and manufacture; (6) and whether the case involves a claim for lost profits."  *Id.* at 1359–1360.

Here the "logical relationship" between the three developers is that they are all accused of using the Store Kit framework to develop their allegedly infringing in-app payment functionality.  The developer defendants are alleged to have infringed during the same time period using

7

commonly sourced components. Since this case is software centric, the identically sourced component is the framework that was provided by Apple's Store Kit. In using the Apple Store Kit, the three developers share an aggregate of operative facts that link them beyond just allegedly infringing the same patent. <mark>These are not independent actors who allegedly infringe the same patents by coincidence. The three developers did not independently create their payment verification system. Smartflash asserts it was done using the framework provided by Apple's Store Kit, with cooperation from Apple, to meet Apple's compatibility and standard requirements. The common usage of Apple's Store Kit is the "actual link" between the facts underlying each claim of infringement.</mark> *See Vertical Computer Systems, Inc. v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 2:10–cv–490 JRG, 2013 WL 2241947 at *6 (finding proper joinder between independent hardware manufacturers when relevant software was sourced from the same company to meet the same compatibility requirements).

One clear requirement for the AIA's joinder analysis is that defendants should not be joined merely for infringing the same patent. 35 U.S.C. § 299(b). Here, the Defendants share a logical relationship that distinguishes them from what Congress sought to prevent; a multitude of completely unrelated defendants joined together in one action.

### 3. *Questions of Fact Common to All Defendants*

<mark>The parties do not appear to dispute that there will be questions of fact common to all defendants in this case. Indeed, due to the logical relationship between the Defendants, and the overlapping issues of invalidity and claim construction, there will be common questions of fact.</mark>

## II. Fairness Analysis

Even if the requirements for joinder are met, a court must still consider whether joining the defendants would be convenient and fair. *In re Nintendo Co., Ltd.*, 2013 WL 5345899 at *5.

8

Apple contends that severance would be more efficient for each of the developer defendants since the allegations against them are much narrower than those against Apple. Doc. No. 45 at 12. Apple argues that joinder is not necessary for the indirect infringement claims since each defendant can be independently liable in their respective cases. *Id.*

The rules for joinder attempt to strike a balance between efficiency and fairness to the parties. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1996). Here, keeping the four defendants joined is the most efficient outcome and does not unfairly prejudice any of the parties. While each defendant can be held independently liable for acts of indirect infringement, this outcome would only increase the chance of inconsistent results if all parties were severed. Furthermore, while the claims against Apple might be broader, they are inherently tied to the cases against each developer through Apple's Store Kit. Therefore discovery in the Apple case will likely be relevant to all of the developer defendants.

One fairness concern is that the joinder of a large number of claims and defendants could "deprive defendants of 'a meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages because each defendant will have limited opportunities to present its own defense to the jury.'" *In re Nintendo*, 2013 WL 5345899 at *5 (citing *In re EMC*, 677 F.3d at 1355). This is not a situation where wholly unrelated defendants have been joined through six degrees of separation. Instead, there are four defendants who are linked through their allegedly infringing use of the same software framework. It is not fundamentally unfair or prejudicial for these four defendants to be joined together in one action. Therefore Apple, Inc.'s Motion to Sever (Doc. No. 51) is **DENIED**.

9

## MOTION TO TRANSFER VENUE

The Court now turns to Apple's motion to transfer venue. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue under 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *In re TS Tech USA Corp.*, 551 F.3d 1320. The moving party must show that the transfer is "clearly more convenient." Otherwise, a plaintiff's choice of venue must be respected. *In re TS Tech USA Corp.* 551 F.3d at 1320.

When deciding whether to transfer venue, a district court balances two categories of interests: the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice. *Id.* at 1319. The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the

10

familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law." *Id.* None of the factors are dispositive on their own. *Id.*

## DISCUSSION

Smartflash does not dispute that this case could have been brought in the Northern District of California. Since the initial threshold has been met the Court turns to the public and private interest factors.

### A. Private Factors

#### 1. Relative Ease of Access to Sources of Proof

Physical accessibility to sources of proof is an important private interest factor. *In re Volkswagen II*, 545 F.3d 304 at 316. This factor turns on which party will have the greater volume of documents relevant to the litigation and their presumed location in relation to the current and proposed venues. *See In re Nintendo*, 589 F.3d at 1199; *In re Genetech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re Volkswagen II*, 545 F.3d at 314–15. Documents that have been moved to a particular venue in anticipation of litigation should not be considered in the analysis. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336–73 (Fed. Cir. 2009). The bulk of discovery material related to a party is presumed to be located at the company headquarters. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed Cir. 2010).

Apple argues that the relevant documents related to the research, design, development, marketing, and sales of the accused products are located in the Northern District of California. Doc. No. 46 at 7. Apple also contends that any documents related to the prosecution of the patents-in-suit are likely located in San Francisco along with the attorneys who prosecuted them. *Id.* Additionally, Apple argues that any documents located in this district were brought here by

11

Smartflash LLC for the sole purpose of litigation and should not be considered in the venue analysis. *Id.* at 7–8.

Smartflash responds that this case is not California centric, but instead one with international scope. Doc. No. 55 at 4. Smartflash argues that since the technology was developed in the United Kingdom and marketed abroad, relevant documents and witnesses will come from Europe. *Id.* Smartflash also contends that potential relevant documents and witnesses are located in Texas and fifteen other states. *Id.* at 5. Lastly, Smartflash contends that there are relevant witnesses and evidence located in this district. *Id.*

Significant sources of proof are located in both this district and the Northern District of California. Apple is headquartered in the Northern District of California. It possesses information relevant to the research, design, marketing, and sales of its products. But this is not the only relevant evidence in this case. Smartflash also alleges that Apple has induced the infringement of others, including the app developer defendants. Doc. No. 1 at ¶ 56, 59. Two of these defendants are headquartered in this district and the third is headquartered in Dallas which is in the Northern District of Texas. Additionally, Smartflash LLC's principal place of business is in the Eastern District of Texas. While the bulk of the documents for Apple might be in the Northern District of California, the other parties' documents are located in and near the Eastern District of Texas. *See In re Acer Am. Corp.*, 626 F.3d at 1256 (Finding that primary offices are likely to house potential sources of proof). Thus, this factor is neutral.

### 2.  Availability of Compulsory Process

The second private interest factor for a Court to consider is the availability of compulsory process to secure the attendance of third-party witnesses. *In re Volkswagen II*, 545 F.3d at 316. This factor weighs heavily in favor of transfer if a transferee venue has "absolute subpoena

power." *Id.* A court has "absolute subpoena power" if it has subpoena power for both depositions and for trial. *In re Hoffman-La Roche, Inc.*, 587 F.3d at 1338.

As a court in this district has recently noted, Federal Rule of Civil Procedure 45 was amended in 2013. *Virtualagility, Inc., v. Salesforce.com, Inc., et al.*, Civ. Action No. 2:13-cv-011, Doc. No. 140 at 8 (E.D. Tex. January 31, 2014). Regardless of the trial venue, parties can now secure the depositions of non-party witnesses. Under amended Rule 45(a)(2), a court can issue nationwide deposition subpoenas as long as the deposition is to be taken within 100 miles of the witness's residence or regular place of business. FED. RULE CIV. P. 45(a)(2), 45(c)(1)(A). This gives parties the option to depose non-party witnesses near their residence or place of business and then present the deposition testimony at trial. FED. R. CIV. P. 32(a)(4) (allowing a party to use the deposition of a witness if the witness is more than 100 miles from the location of the hearing or trial).

Apple identifies five relevant witnesses subject to compulsory process in the Northern District of California. Doc. No. 46 at 8. All five are attorneys who prosecuted the patents-in-suit. *Id.* Smartflash responds that these attorneys served only as local U.S. counsel and do not possess any information that is not contained in the prosecution history documents. Doc. No. 55 at 6–7. Additionally, Smartflash argues that subpoenaing these attorney witnesses is unlikely to be necessary since their firm currently represents Apple. *Id.* Smartflash also believes that employees from Gemalto S.A. will be relevant to its willfulness allegations. *Id.* at 7. Since Gemalto's headquarters is located in Austin, Texas, Smartflash contends its employees are likely within the trial subpoena power for this Court. *Id.* at 7–8. Smartflash also references former employees of the developer defendants who might live or work in the district and be relevant unwilling witnesses. *Id.* at 8.

Neither this Court nor the Northern District of California has absolute subpoena power under Rule 45(c)(1)(A) over all the identified non-party witnesses. The Northern District of California does have subpoena power over five prosecuting attorneys who worked on the patents-in-suit. But, as Apple admits, at least four of these attorneys[2] work for a firm that currently represents Apple. Doc. No. 62 at 2. This reduces the likelihood that these witnesses will be unwilling and that compulsory process will be necessary. Furthermore, under amended Rule 45, this Court can subpoena these witnesses for depositions. Defendants need only arrange a location that is within 100 miles of the witnesses' work or residences. Since the witnesses are located in the Northern District of California, along with Apple's headquarters, it should not be inconvenient for Apple to depose them. Thus, the only difference between the two venues is whether Apple can secure live testimony from these witnesses.

Apple has not addressed how it would be prejudiced by presenting depositions instead of live testimony for these witnesses. Any such prejudice would likely be minimal if the subject matter of their testimony is also publicly available in the prosecution history documents. If necessary, video depositions could always be offered into evidence as an acceptable substitute. *See Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000) (finding that video depositions allow jurors to gauge a witness's attitude based on motions, facial expressions, demeanor, and voice inflections). While there are intangible benefits to live testimony, the use of deposition testimony for these witnesses would not seriously inconvenience or prejudice Apple.

Conversely, any third party witnesses located in Austin, Texas cannot be compelled to attend trial in the Northern District of California. While either district can subpoena these

---

[2] Smartflash contends that the fifth attorney, Jason Lohr, also works for a firm that represents Apple. Doc. No. 75 at 3.

14

witnesses for depositions, this district can potentially subpoena these witnesses for trial. FED. R. CIV. P. 45(c)(1)(B)(ii) (stating that a subpoena can command a person to attend trial in the state where they reside, are employed, or regularly transact business in person, if the person would not incur substantial expense). Plaintiff has also referenced potential former employees of the developer defendants who may be located in the Eastern District of Texas. Since this identification is vague, it is afforded less weight in the analysis. *See Novelpoint Learning v. Leapfrog Enter.*, No. 6:10-cv-229, 2010 WL5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses). Therefore, considering the convenience of both parties, this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in the transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. When analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. The Fifth Circuit has adopted a "100 mile rule" to assist with analyzing this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. However, the "100 mile rule" should not be rigidly applied. *See in re Genentech*, 566 F.3d at 1344. When a witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *See id.* (discounting European witnesses in the convenience analysis between Texas and California). Additionally, in cases where no potential witnesses are residents of the court's state, favoring the court's centrality is improper. *Id.* at 1344. Thus, this factor favors transfer when a "substantial number of material

15

witnesses reside in the transferee venue" and no witnesses reside in the transferor venue, even if the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

According to Apple, the vast majority of relevant engineers and employees work or reside in the Northern District of California. Doc. No. 46 at 9. Apple specifically identifies seven witnesses who have factual knowledge of the sales, design, and operations of the accused products. *Id.* Apple contends that travel for these witnesses would impose a significant burden since Tyler, Texas is roughly 1500 miles from the Northern District of California. *Id.* at 10.

Smartflash also identifies several relevant witnesses. First, Smartflash names Smartflash LLC's Chief Technical Officer, Patrick Racz. Doc. No. 55 at 9. Smartflash argues that the Eastern District of Texas is more convenient for Mr. Racz since he regularly conducts business here. *Id.* Smartflash also contends that the Eastern District is less costly for the local party and non-party witnesses. *Id.* Additionally, Smartflash argues that this district is more convenient for international witnesses like the inventors of the patents-in-suit. *Id.* Smartflash contends that these witnesses are closer to Tyler and that flights and lodging expenses for Tyler would be cheaper than the San Francisco alternatives. *Id.* at 9–10.

Apple has shown that the Northern District of California would be more convenient for at least seven relevant witnesses. In contrast, Smartflash has shown that this district would be more convenient for one witness, CTO Patrick Racz. Since the international witnesses will have to travel a significant distance regardless of the venue, they are discounted for the "100 mile" rule analysis. *See in re Genentech*, 566 F.3d at 1344. Smartflash has also made reference to local party and non-party witnesses. It is very likely that there are relevant local witnesses in this district working for the three app-developer defendants. But, without knowing how many there

16

are, it is difficult to properly account for them in the analysis. Based on the witnesses identified, this factor weighs in favor of transfer.

### 4. Other Practical Problems

Other practical problems include those that are rationally based on judicial economy. The existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in the transfer analysis. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Furthermore, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" *In re Vicor Corp.*, 493 Fed. App'x 59, 61 (Fed. Cir. 2012) (quoting *In re Volkswagen III*, 566 F.3d at 1351).

Defendant Apple is currently joined with three app developer co-defendants. Two of these developer defendants are located in this district and the third is located in Dallas, Texas. Even if Apple were severed and transferred, this district would be more convenient for the developer defendants. These claims would involve the same plaintiffs, patents, and many overlapping issues since they are accused of indirect infringement along with Apple. Transferring Apple would lead to two separate cases addressing the same issues in two different courts.

Further, there is a related case against Samsung and HTC entities. *See Smartflash LLC v. Samsung Electronics Co., Ltd. et al*, Cause No. 6:13-cv-448 MHS-KNM. The case against Samsung and HTC involves the same plaintiffs and patents as Apple's case. Keeping these two cases together will preserve time and resources for the parties and promote judicial economy. *In re EMC Corp.*, 501 Fed. App'x 973, 976 (Fed. Cir. 2013) (citing *In re Vistaprint*, 628 F.3d 1342, 1346–47; *Volkswagen III*, 566 F.3d at 1351 ("judicial economy is served by having the same

17

**– A879 –**

district court try the cases involving the same patents"). Accordingly, this factor weighs against transfer.

## B. Public Interest Factors

### 1. The Administrative Difficulties Flowing From Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. This factor is the most speculative and should not alone outweigh the other factors. *In re Genentech*, 566 F.3d at 1347.

Apple offers 2011 and 2012 statistics comparing the average time to trial for patent cases in this district and the Northern District of California. Doc. No. 46 at 12. Apple argues that this factor should not weigh against transfer since these statistics are unpredictable. *Id.* Smartflash responds by citing statistics showing that the average time to trial is a little over six months faster in this district than the Northern District of California. Doc. No. 55 at 13–14.

Both parties have offered competing statistics. The differences between the parties' statistics and the potential for year to year fluctuations highlight the speculative nature of this factor. Thus, this factor is neutral.

### 2. Local Interest

"[J]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Id.* Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *In re Volkswagen II*, 545 F.3d at 318

18

(disregarding local interest of citizens who use the widely sold product within the transferor venue in a products liability suit).

Apple argues that the Northern District of California has a strong interest in this case since it is the center of gravity for the case.  Doc. No. 46 at 12.  Apple contends that this factor should weigh in favor of transfer since Smartflash's allegations call into question the work and reputation of Apple and its employees.  *Id.* at 13.

Smartflash responds that it has sued three local defendants along with Apple.  Doc. No. 55 at 14.  Smartflash argues that this case calls these defendants' work into question as much as Apple's.  *Id.* at 14–15.

Both districts have a specific local interest in this case.  While Apple's headquarters is in the Northern District of California, two of the developer defendants are located in this district.  Smartflash alleges claims of infringement against both defendants.  Furthermore, the indirect infringement claims against Apple are centered on its conduct with these developer defendants.  Since there are defendant headquarters and employees in both districts, this factor is neutral.

### 3.  Remaining Public Factors

The remaining two public factors, familiarity of the forum with governing law and conflicts of law, are not disputed by the parties.  Accordingly, these factors are neutral.

### CONCLUSION

For the reasons stated above, Apple's Motion to Sever (Doc. No. 45) is **DENIED**.  Additionally, Apple has failed to show that transfer of this case to the Northern District of California is clearly more convenient for the parties and witnesses.  One factor weighs in favor of transfer, one factor weighs against transfer, and the rest are neutral.  Severing and transferring Apple would result in serious inefficiencies in judicial economy.  Alternatively, transferring all

four defendants in this case would be convenient for Apple, but would result in the three co-defendants being transferred from a more convenient venue.  Thus, the Northern District of California is not clearly more convenient for all parties.  Therefore, Apple's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 46) is **DENIED**.  Apple's Motion to Stay (Doc. No. 98) and Motion for Hearing on Motion to Stay (Doc. No. 115) are **DENIED** as **MOOT**.

So ORDERED and SIGNED this 4th day of April, 2014.


K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

20

# Exhibit 2

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 27 of 101   PageID 2243

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

| Claim 1 | Accused Products[1] |
|---|---|
| 1. A computer implemented method of pre-processing digital content in a client device for subsequent electronic publishing, comprising: | The Accused Products perform a computer implemented method of pre-processing digital content in a client device for subsequent electronic publishing.<br><br>For example:<br><br>The Accused Products perform a computer implemented method of pre-processing (*e.g.*, resizing, compressing, reformatting, etc.) digital content (*e.g.*, photos, video, audio) in a client device (*e.g.*, the iPhones, iPads, and other products listed in Exhibit A) for subsequent electronic publishing (*e.g.*, using at least iMessage, MMS, and native Twitter functionality).<br><br>For example, the Accused Products perform pre-processing of photos, video, and/or audio, and those pre-processed photos are later electronically published through iMessage and/or MMS[2] as illustrated by Apple's website below: |

---

[1] The Accused Products include all of the devices listed in the attached Accused Products List in Exhibit A and any other product uncovered during discovery capable of pre-processing audio, video, or image content before transmission. This includes, but is not limited to, smartphones, tablets, and mobile phones. This includes but is not limited to Apple's servers and infrastructure. Although these infringement contentions depict photo upload capabilities, it should be understood that the claims are equally applicable to video and audio upload capabilities. Although these infringement contentions include screenshots of, for example, specific iOS versions, it should be understood that the claims are equally applicable to other iOS versions and devices. Summit 6 reserves the right to add additional information and infringement theories once discovery begins in this case, particularly once the defendants produce their technical documents and source code.

[2] Note that for infringement involving MMS, Summit 6 is not accusing products incapable of supporting MMS, such as the iPad (first generation) and the iPod Touch (third generation). Similarly, for infringement involving iMessage, Summit 6 is not accusing products incapable of supporting iMessage, such as the iPhone 3G. To the extent Summit 6 learns, through discovery, that such products are capable of supporting such functionality, Summit 6 reserves the right to accuse such products at that time.

1

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iOS 7 – Messages, Apple website, October 2013

2

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

## Exchange words.
## Or photos. Or videos.

iMessage lets you send messages back and
forth with anyone on iPad, iPhone, iPod touch,
or a Mac running Mountain Lion or later. Send
photos, videos, locations, and contacts, too. If
you have more than one Apple device,
iMessage keeps the conversation going across

iOS 7 – Messages, Apple website, October 2013

all of them. And you can text and send photos
and videos via MMS to other mobile phones
over cellular networks. Even ask Siri to text for
you. Just say "Tell Peter I'm on my way" and
Siri writes your message and fires it off.

iOS 7 – Messages, Apple website, October 2013

3

Case 7:14-cv-00014-O    Document 122-1    Filed 07/16/14    Page 30 of 101    PageID 2246

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



## iMessages are blue.
## So you're not.

On iPhone, when your text bubble is blue instead of green, you'll know you're using iMessage instead of SMS. You'll know that you can get a quicker response. You'll know that the text session is free. You'll know it's been sent to all your recipients' Apple devices. And you'll know they received the text. SMS texters will be green with envy.

iOS 7 – Messages, Apple website, October 2013

- On iPhone, if iMessage is unavailable, the message may be sent as SMS or MMS, depending on content. Carrier messaging rates may apply. You can adjust this behavior in iPhone at Settings > Messages > Send As SMS. Messages sent using iMessage appear in a light blue bubble, while messages sent using SMS or MMS appear in a green bubble.

iOS: Using Messages, Apple website, October 2013

4

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

Messages lets you exchange text messages with anyone using an SMS-capable phone or other device. Messages also supports MMS, so you can send photos, video clips, contact information, and voice memos to other MMS-capable devices. You can enter multiple addressees to send one message to several people.

iPhone iOS 4.2 and 4.3 User Guide, at 106

### SMS, MMS, and iMessages

Messages lets you exchange text messages with other SMS and MMS devices using your cellular connection, and with other iOS devices using iMessage.

iPhone iOS 7 User Guide, at 65

The following table shows the requirements and capabilities of Messages on iOS.

|  | Device Required | iOS Required | Connectivity Required | Recipient Types Allowed | Content Types Allowed |
|---|---|---|---|---|---|
| SMS | iPhone | 1.0 and later | Cellular | Phone number | Text only |
| MMS | iPhone 3G and later | 3.1 and later | Cellular data | Phone number | Text, audio[1], photos, and video |
| iMessage | iPhone, iPad, or iPod touch | 5.0 and later | Cellular data or Wi-Fi | Phone number or email address | Text, audio[1], photos, and video |

iOS: Troubleshooting Messages, Apple website, October 2013

5

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 32 of 101   PageID 2248

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

Messages lets you exchange text messages with other SMS/MMS devices using your cellular connection, and with other iOS devices using iMessage.

iMessage is an Apple service that lets you send unlimited messages over an active Wi-Fi (or cellular data*) connection to other iOS devices using iOS 5 or later or Macs using OS X Mountain Lion or later. With iMessage you can see when other people are typing and let them know when you've read their messages. iMessages are displayed on all your iOS devices logged in to the same account, so you can start a conversation on one of your devices, and continue it on another device. For security, iMessages are encrypted before they're sent

**Which Apple products support Messages using SMS and MMS?**

To use Messages with SMS and MMS, you need an iPhone.

**Which Apple products support Messages using iMessage?**

To use Messages with iMessage, you need one of the following Apple products:

- iPhone
- iPad
- iPad Mini
- iPod touch
- Mac with Mac OS X v10.8.x

You need a valid Apple ID to use iMessage on iPad, iPod touch, and Messages for Mac. You need a valid phone number or Apple ID to use iMessage on iPhone.

**How do I enable SMS/MMS for use with Messages?**

SMS and MMS messaging requires an appropriate plan from your carrier for use on iPhone. Contact your carrier for more information.

6

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 33 of 101   PageID 2249

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

iOS: Using Messages, Apple website, March 2014

As another example, the Accused Products perform pre-processing of photo, video, and/or audio content for subsequent electronic publishing through the native Twitter integration as shown in Apple and Twitter's websites below:



Twitter support pages, Twitter website, January 2014

7

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



Apple WWDC developer pages, Apple Developer website, January 2014

8

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



```
88.  }
89.    "max_media_per_upload": 1,
90.    "photo_size_limit": 3145728,
91.    "photo_sizes": {
92.      "large": {
93.        "w": 1024,
94.        "resize": "fit",
95.        "h": 2048
96.      },
97.      "medium": {
98.        "w": 600,
99.        "resize": "fit",
100.       "h": 1200
101.     },
102.     "small": {
103.       "w": 340,
104.       "resize": "fit",
105.       "h": 480
106.     },
107.     "thumb": {
108.       "w": 150,
109.       "resize": "crop",
110.       "h": 150
111.     }
112.   },
113.   "short_url_length": 20,
114.   "short_url_length_https": 21
115. }
```

GET help_configuration_Twitter Developers 1.1, Twitter Developer website, June 2014

9

Case 7:14-cv-00014-O    Document 122-1    Filed 07/16/14    Page 36 of 101    PageID 2252

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

| Claim 1 | Accused Products |
|---|---|
| a. receiving pre-processing parameters from a remote device, said pre-processing parameters including a specification of an amount of digital content, said digital content including one or more of image content, video content, and audio content; | The Accused Products receive pre-processing parameters from a remote device, said pre-processing parameters including a specification of an amount of digital content, said digital content including one or more of image content, video content, and audio content.<br><br>For example:<br><br>The Accused Products receive pre-processing parameters (*e.g.*, carrier size limits, Apple size limits, and/or other parameters that control resizing, compressing, etc.) from a remote device (*e.g.*, a server). The pre-processing parameters include a specification of an amount of digital content (*e.g.*, a specification of size limits or other specifications of an amount of digital content). The digital content includes one or more of image content, video content, and audio content.<br><br>For example, the Accused Products receive pre-processing parameters, including a specification of an amount of digital content, from a remote device at least: (1) during manufacture of the Accused Products and/or (2) when the Accused Products' software, including iOS software, apps, and other files, is updated:<br><br>You can send and receive text messages using the Messages app included with iOS. Messages supports SMS and MMS on iPhone, and iMessage on iPhone, iPad, and iPod touch. You can also send iMessages using Messages in OS X Mountain Lion.<br><br>iOS: Using Message, Apple website, October 2013 |

10

– A893 –

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

**Update your device wirelessly (available in iOS 5 and later)**

1. Ensure your device is connected to a power source. To avoid potential data costs connect your device to a Wi-Fi network.

2. Go to Settings > General > Software Update. iOS will automatically check for available updates. Available updates download automatically if your device is connected to Wi-Fi and a power source.




3. If an update is available ' you can tap Download to download the update.

4. After the download has completed tap Install to update your iOS.

5. If you leave the update to download in the background, once the download has finished you will receive a notification saying an update is available for your device. Tapping Details will take you to Settings > General > Software Update. Tap Install Now to install the iOS update. If you decide to leave the installation for later Settings will display notification badge until the update has been installed.

iOS: How to update your iPhone, iPad, and iPod touch, Apple website, October 2013

As another example, the Accused Products receive pre-processing parameters from a remote device (*e.g.*, an Apple server) when the operating system is updated over the air:

11

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS version 7, April 2014

³ All screenshots herein are for the exemplary purpose of showing infringement by the Accused Products.

12

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

As another example, the pre-processing parameters used in the Accused Products specify an amount of digital content as illustrated by Apple's user guides, cellular carrier websites, and Twitter website:

The size limit of attachments is determined by your carrier. If necessary, iPhone may compress the photo or video. To learn about taking photos and videos, see Chapter 12, "Camera," on page 125.

iPhone iOS 4.2 and 4.3 User Guide, at 109

### Share photos, videos, and more

With iMessage or MMS, you can send and receive photos and videos, and send locations, contact info, and voice memos. The size limit of attachments is determined by your service provider—iPhone may compress photo and video attachments when necessary.

iPhone iOS 7 User Guide, at 67

The AT&T mobile broadband network will deliver MMS (picture, video or audio) messages of up to 600 kilobytes (KB). Media file attachments will be compressed on the device prior to being sent in order to keep the message size below 600 KB. The maximum size for sending and receiving MMS messages is also dependent upon the recipient's device and the limitations of other carriers' networks (e.g., other carriers may have a lower MMS size limit than AT&T).

Support for Apple iPhone 5: Picture/Video Messaging, AT&T support website, October 2013

### How large can a picture message be?

- The size of a picture message depends on the make and model of the phone.
- Most phones are configured to resize images to 30 kilobytes, but size can vary.
- The maximum size our network supports is 1MB.

  **Note:** Sending and receiving picture messages from AT&T customers can only be 450 kilobyte.

About picture messaging, T-Mobile support website, October 2013

13

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

2. **Do you see an error message that says the media file is too large?**
Try reducing the size of the file with a compatible editing program available in Apple App Store. You can also try to send the file via email. Email providers usually have a higher file size limit

Troubleshoot issues related to multimedia messages on your Apple iPhone 5, Sprint support website, October 2013

**What is the message size limit for MMS?**

MMS message size must be less than 1.2MB. This includes text, picture and video messages.

MMS, Verizon Developer Community website, October 2013

```
88.    }
89.    "max_media_per_upload": 1
90.    "photo_size_limit": 3145728,
91.    "photo_sizes": {
92.      "large": {
93.        "w": 1024,
94.        "resize": "fit",
95.        "h": 2048
96.      }
97.      "medium": {
98.        "w": 600,
99.        "resize": "fit",
100.       "h": 1200
101.     }
102.     "small": {
103.       "w": 340,
104.       "resize": "fit",
105.       "h": 480
106.     }
107.     "thumb": {
108.       "w": 150,
109.       "resize": "crop",
110.       "h": 150
111.     }
112.   }
113.   "short_url_length": 20,
114.   "short_url_length_https": 21
115. }
```

GET help_configuration_Twitter Developers 1.1, Twitter Developer website, June 2014

14

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

| Claim 1 | Accused Products |
|---|---|
| b. receiving an identification of a group of one or more items of digital content for transmission, a collective digital content of said group of one or more items of digital content being limited by said received pre-processing parameters; | The Accused Products receive an identification of a group of one or more items of digital content for transmission, a collective digital content of said group of one or more items of digital content being limited by said received pre-processing parameters.<br><br>For example:<br><br>The Accused Products receive an identification of a group of one or more items of digital content (*e.g.*, photos, video, and/or audio) for transmission (*e.g.*, via iMessage, MMS, or Twitter integration). A collective digital content of the group of one or more items of digital content is limited by the received pre-processing parameters (*e.g.*, carrier size limits, Apple size limits, and/or other parameters that control resizing, compressing, etc.).<br><br>For example, the Accused Products, by (a) iMessage and MMS Messages functionality and/or (b) the native Twitter integration functionality, allow a user to identify an image(s) stored on the Accused Products for transmission.<br><br>As one example, the Accused Products display a camera icon located at the bottom left of the Messages Application as shown in Apple's user guides:<br><br>Send a photo or video: Tap ⊙. Then tap "Take Photo or Video," or tap "Choose Existing" and then select an item from a photo album and tap Choose.<br><br>iPhone iOS 4.2 and 4.3 User Guide, at 108<br><br>Send a photo or video. Tap ▭ You can choose an existing photo or video on iPhone, or take a new one.<br><br>iPhone iOS 7 User Guide, at 67 |

15

**– A898 –**

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

### Send and receive messages



Blue indicates an
iMessage
conversation.

Tap the attach media button to
include a photo or video.

Tap to enter text.

iPhone iOS 7 User Guide, at 65

<u>iMessage and MMS Messages</u>

As another example, the Accused Products allow a user to identify a group of one or more photos through both iMessage and MMS functionality of the Messages Application. A user can access the Messages functionality through the Photos Application or directly through the Message Application.

For example, in the Messages Application using iMessage, the Accused Products show a screen with a selection of either "Take Photo or Video" or "Choose Existing." Upon selecting "Choose Existing," the Accused Products direct a user to images stored on the Accused Products. The user can then select one or more pictures that are stored on the Accused Product. When the User selects "Choose," the Accused Products attach the chosen picture(s) to the message. The collective photo(s) of the group is limited by the received parameters.

16

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



– A900 –

17

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iOS 7, iMessage functionality, March 2014

For example, in the Messages Application using MMS, the Accused Products show a screen with a selection of either "Take Photo or Video" or "Choose Existing." Upon selecting "Choose Existing," the Accused Products direct a user to images stored on the Accused Products. The user can then select one or more pictures that are stored on the Accused Product. When the User selects "Choose," the Accused Products attach the chosen picture(s) to the message. The collective photo(s) of the group is limited by the received parameters.

18

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



19

**– A902 –**

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 46 of 101   PageID 2262

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iOS 7, MMS functionality, March 2014

Twitter Integration

As another example, a user can select a group of one or more photos using the native Twitter integration of the Accused Products. On the Accused Products, a user can select "Photos," then "Camera Roll," and then select a picture. The collective photo(s) of the group is limited by the received parameters.

20

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 47 of 101   PageID 2263

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, Twitter integration, March 2014

The user can then select "Twitter" on the Accused Products and select "Post" to transmit and post the image to Twitter:

21

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, Twitter integration, March 2014

22

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 49 of 101   PageID 2265

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

| Claim 1 | Accused Products |
|---|---|
| c. pre-processing said identified group of one or more items of digital content using said received pre-processing parameters, said received pre-processing parameters controlling said client device in a placement of said identified group of one or more items of digital content into a specified form in preparation for publication to one or more devices that are remote from a server device and said client device; and | The Accused Products pre-process said identified group of one or more items of digital content using said received pre-processing parameters, said received pre-processing parameters controlling said client device in a placement of said identified group of one or more items of digital content into a specified form in preparation for publication to one or more devices that are remote from a server device and said client device. <br><br> For example: <br><br> The Accused Products pre-process (*e.g.*, resize, compress, rotate, encode, reformat, enhance, and/or otherwise alter) the identified group of one or more items of digital content (*e.g.*, photos, videos, and/or audio) using the received pre-processing parameters (*e.g.*, carrier size limits, Apple size limits, and/or other parameters that control resizing, compressing, etc.). The received pre-processing parameters control the client device (*e.g.*, the iPhones, iPads, and other products listed in Exhibit A) in a placement of said identified group of one or more items of digital content into a specified form (*e.g.*, height, width, size, aspect ratio, etc.) in preparation for publication to one or more devices that are remote from a server device and said client device. (for example, one or more devices that are remote from the client device and the server device include a server, a user's phone, a computer, a laptop, and/or a website, etc.). <br><br> For example, the Accused Products, by (a) iMessage and MMS Messages functionality and (b) the native Twitter integration functionality, compress and/or resize photos on the Accused Product using pre-processing parameters that limit the size of the photo that can be sent: <br><br> The size limit of attachments is determined by your carrier. If necessary, iPhone may compress the photo or video. To learn about taking photos and videos, see Chapter 12, "Camera," on page 125. <br> iPhone iOS 4.2 and 4.3 User Guide, at 109 <br><br> **Share photos, videos, and more** <br> With iMessage or MMS, you can send and receive photos and videos, and send locations, contact info, and voice memos. The size limit of attachments is determined by your service provider—iPhone may compress photo and video attachments when necessary. <br> iPhone iOS 7 User Guide, at 67 |

23

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

The AT&T mobile broadband network will deliver MMS (picture, video or audio) messages of up to 600 kilobytes (KB). Media file attachments will be compressed on the device prior to being sent in order to keep the message size below 600 KB. The maximum size for sending and receiving MMS messages is also dependent upon the recipient's device and the limitations of other carriers' networks (e.g., other carriers may have a lower MMS size limit than AT&T).

Support for Apple iPhone 5: Picture/Video Messaging, AT&T support website, October 2013

**How large can a picture message be?**

- The size of a picture message depends on the make and model of the phone.
- Most phones are configured to resize images to 30 kilobytes, but size can vary.
- The maximum size our network supports is 1MB.
- **Note:** Sending and receiving picture messages from AT&T customers can only be 450 kilobyte.

About picture messaging, T-Mobile support website, October 2013

2.  Do you see an error message that says the media file is too large?
    Try reducing the size of the file with a compatible editing program available in Apple App Store.
    You can also try to send the file via email. Email providers usually have a higher file size limit

Troubleshoot issues related to multimedia messages on your Apple iPhone 5, Sprint support website, October 2013

**What is the message size limit for MMS?**

MMS message size must be less than 1.2MB. This includes text, picture and video messages.

MMS, Verizon Developer Community website, October 2013

24

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



```
88.        },
89.        "max_media_per_upload": 1
90.        "photo_size_limit": 3145728,
91.        "photo_sizes": {
92.          "large": {
93.            "w": 1024,
94.            "resize": "fit",
95.            "h": 2048
96.          },
97.          "medium": {
98.            "w": 600,
99.            "resize": "fit",
100.           "h": 1200
101.         },
102.         "small": {
103.           "w": 340,
104.           "resize": "fit",
105.           "h": 480
106.         },
107.         "thumb": {
108.           "w": 150,
109.           "resize": "crop",
110.           "h": 150
111.         },
112.        },
113.        "short_url_length": 20,
114.        "short_url_length_https": 21
115.      }
```

GET help_configuration_Twitter Developers 1.1, Twitter Developer website, June 2014

iMessage and MMS Messages

As another example, when using iMessage, the Accused Products pre-process photos on the Accused Product so that the photos are below a certain size and/or resolution in preparation for publication to another device. An image on an Accused Product has dimensions of 10800x2404, aspect ratio of 9:2, and a size of 10.3 MB:

25

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iMessage functionality, March 2014

26

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



| Photo | Metadata |
| --- | --- |

**TIFF**

**Color Model**
RGB
**Depth**
8
**DPIHeight**
72
**DPIWidth**
72
**File Creation Date**
March 27, 2014 at 11:37:38 AM CDT
**File Size**
10.375 MB
**Filename**
IMG_1929.JPG
**Orientation**
1
**Pixel Height**
2404
**Pixel Width**
10800

iPhone 5S, iMessage functionality, June 2014

This image is pre-processed from its original size using the pre-processing parameters. The parameters control the Accused Product, which puts the image in a specified form in preparation for publication:

27

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



28

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iOS 7, iMessage functionality, March 2014

The image now has dimensions of 6000x1336, aspect ratio of 9:2, and a size of 3.52 MB:

29

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iMessage functionality, March 2014

30

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

●●●○ AT&T  4G        5:44 PM        ⚡ 65% ▸

**❮ Photo    Metadata**

Depth
8

**DPIHeight**
72

**DPIWidth**
72

**File Creation Date**
March 27, 2014 at 11:37:38 AM CDT

**File Size**
3.524 MB

**Filename**
IMG_1081.JPG

**Orientation**
1

**Pixel Height**
1336

**Pixel Width**
6000

iPhone 4S, iMessage functionality, June 2014

As another example, when using MMS, the Accused Products pre-process photos on the Accused Product so that the photo(s) are below a certain size and/or resolution in preparation for publication to another device. An image on an Accused Product has dimensions of 10800x2404, aspect ratio of 9:2, and a size of 10.3 MB:

31

**– A914 –**

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, MMS functionality, March 2014

32

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



●○○○○ AT&T ⚡    3:15 PM

**Photo    Metadata**

TIFF

Color Model
RGB

Depth
8

DPIHeight
72

DPIWidth
72

File Creation Date
March 27, 2014 at 11:37:38 AM CDT

File Size
10.375 MB

Filename
IMG_1929.JPG

Orientation
1

Pixel Height
2404

Pixel Width
10800

iPhone 5S, MMS functionality, June 2014

This image is pre-processed from its original size using the pre-processing parameters. The parameters control the Accused Product, which puts the image in a specified form in preparation for publication:

33

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



34

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iOS 7, MMS functionality, March 2014

The image now has dimensions of 2592x576, aspect ratio of 9:2, and a size of 276 kB:

35

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, MMS functionality, March 2014

36

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

●●●○ AT&T  4G      9:13 AM      ⚡ 74% ▭▸✦

‹ Photo    **Metadata**

Color Model
RGB
Depth
8
DPIHeight
72
DPIWidth
72
File Creation Date
June 17, 2014 at 9:12:55 AM CDT
File Size
276.456 KB
Filename
IMG_1088.JPG
Pixel Height
576
Pixel Width
2592

iPhone 4S, MMS functionality, June 2014

## Twitter Integration

As another example, when using the Twitter integration, the Accused Products pre-process photos on the Accused Product so that the photo(s) are below a certain size and/or resolution in preparation for publication to Twitter's website. An image on an Accused Product has dimensions of 3264x2448, aspect ratio of 4:3, and a size of 1.7 MB:

37

Case: 15-101    Document: 2-3    Page: 496    Filed: 10/23/2014

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, Twitter functionality, March 2014

38

– A921 –

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

●●○○○ AT&T 🗘          3:19 PM

❮ Photo    **Metadata**

TIFF                                              ⟩

**Color Model**
RGB

**Depth**
8

**DPIHeight**
72

**DPIWidth**
72

**File Creation Date**
March 26, 2014 at 11:45:02 AM CDT

**File Size**
1.702 MB

**Filename**
IMG_1404.JPG

**Orientation**
6

**Pixel Height**
2448

**Pixel Width**
3264

iPhone 5S, June 2014

This image is pre-processed from its original size using the pre-processing parameters. The parameters control the Accused Product, which puts the image in a specified form in preparation for publication:

39

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, Twitter integration, March 2014

40

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

The image now has dimensions of 600x800, aspect ratio of 5:4, and a size of 67.3 kB:



Images from Twitter Website, March 2014

41

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

| Claim 1 | Accused Products |
|---|---|
| d. transmitting said pre-processed group of one or more items of digital content to said server device for subsequent publishing to said one or more devices that are remote from said server device and said client device. | The Accused Products transmit said pre-processed group of one or more items of digital content to said server device for subsequent publishing to said one or more devices that are remote from said server device and said client device.<br><br>For example:<br><br>The Accused Products, upon the user's selection of "Send" or "Post," transmit the pre-processed items of digital content (e.g., images, videos, audio) to the server device for subsequent publishing to one or more devices that are remote from the client device and the server device (for example, one or more devices that are remote from the client device and the server device include a server, a user's phone, a computer, a laptop, and/or a website, etc.).<br><br>For example, the Accused Products, by (a) iMessage and MMS Messages functionality and/or (b) the native Twitter integration functionality, allow a user to transmit messages containing pre-processed photos, videos, and audio content to a server device for subsequent publishing on an iPad, iPhone, or iPod touch as illustrated by Apple's website:<br><br>Exchange words.<br>Or photos. Or videos.<br><br>iMessage lets you send messages back and forth with anyone on iPad, iPhone, iPod touch, or a Mac running Mountain Lion or later. Send photos, videos, locations, and contacts, too. If you have more than one Apple device, iMessage keeps the conversation going across<br><br>iOS 7 – Messages, Apple website, October 2013 |

42

– A925 –

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

all of them. And you can text and send photos and videos via MMS to other mobile phones over cellular networks. Even ask Siri to text for you. Just say "Tell Peter I'm on my way" and Siri writes your message and fires it off.

iOS 7 – Messages, Apple website, October 2013

The following table shows the requirements and capabilities of Messages on iOS.

|  | Device Required | iOS Required | Connectivity Required | Recipient Types Allowed | Content Types Allowed |
|---|---|---|---|---|---|
| SMS | iPhone | 1.0 and later | Cellular | Phone number | Text only |
| MMS | iPhone 3G and later | 3.1 and later | Cellular data | Phone number | Text, audio[1], photos, and video |
| iMessage | iPhone, iPad, or iPod touch | 5.0 and later | Cellular data or Wi-Fi | Phone number or email address | Text, audio[1], photos, and video |

iOS: Troubleshooting Messages, Apple website, October 2013

As another example, the Accused Products allow a user to transmit messages containing pre-processed photos, videos, and audio content to a server device for subsequent publishing on Twitter's website:

43

Case 7:14-cv-00014-O    Document 122-1    Filed 07/16/14    Page 70 of 101    PageID 2286

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

**To post a photo with your Tweet:**

You can take a photo in the moment or choose an existing image from your phone's gallery.

To take a photo, tap the **camera** icon when you are composing a Tweet. To choose an existing image from your phone's gallery, tap the **landscape** icon.
Once you have taken or selected your photo, you will have the option to apply a filter and crop the image.

When you are finished, select **Done**; the photo will be attached to the Tweet. You can select up to four photos for a single Tweet.

You can tag people in your photo(s) by tapping **Who's in this photo?** Type in the full name or @ username and then tap **Done**.

**Tip:** For more information about tweeting photos, including instructions for changing your photo tagging privacy settings, click here (https://support.twitter.com/articles/20156423).

Twitter's website, https://support.twitter.com/groups/54-mobile-apps/topics/222-ios/articles/20169500-getting-started-with-twitter-for-iphone#, April 2014

iMessage and MMS Messages

As another example, when using iMessage, the Accused Products transmit a group of one or more pre-processed photos to a server for subsequent publishing to another device:

44

– A927 –

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iOS 7, iMessage functionality, March 2014

When the User selects "Choose," the Accused Products attach the chosen picture to the message. When the User selects "Send," the Accused Product sends the picture to the receipient.

45

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, iOS 7, iMessage functionality, March 2014

After the image has been pre-processed, it is transmitted to a server and subsequently published to another device:

46

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 73 of 101   PageID 2289

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, iMessage functionality, March 2014

Once the image is made available to third party recipients without restriction on further distribution, the image can be further published via Airdrop, Twitter, or any other device.

47

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, MMS-to-Twitter Functionality, May 2014

48

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

As another example, when using MMS, the Accused Products transmit a group of one or more pre-processed photos to a server for subsequent publishing to another device:



49

Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 76 of 101   PageID 2292

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, MMS iMessage functionality, March 2014

When the User selects "Choose," the Accused Products attach the chosen picture to the message.    When the User
selects "Send," the Accused Product sends the picture to the receipient.

50

Case 7:14-cv-00014-O    Document 122-1    Filed 07/16/14    Page 77 of 101    PageID 2293

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 5S, MMS functionality, March 2014

After the image has been pre-processed, it is transmitted to a server and subsequently published to another device:

51

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, MMS functionality, March 2014

Once the image is made available to third party recipients without restriction on further distribution, the image can be further published via Airdrop, Twitter, or any other device.

52

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, MMS-to-Twitter Functionality, May 2014

53

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.

## Twitter Integration

As another example, when using the Twitter integration, the Accused Products transmit pre-processed groups of one or more photos to a server for subsequent publishing to Twitter's website:



54

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



iPhone 4S, iOS 7, Twitter integration, March 2014

After the photo has been pre-processed and transmitted to a server, it is subsequently published to Twitter's webpage:

55

Summit 6, LLC
Infringement Contentions re: 7,765,482
to Apple Inc.



Twitter Website, March 2014

56

# Exhibit 3

Case: 15-101     Document: 2-3     Page: 516     Filed: 10/23/2014

GET help/configuration | Twitter Developers                                    Page 1 of 3
Case 7:14-cv-00014-O   Document 122-1   Filed 07/16/14   Page 84 of 101   PageID 2300

Developers          API Health    Blog    Discussions    Documentation          [Search]

Home → Documentation → API Resources                                          [Tweet]

# GET help/configuration

View | What links here

*Updated on Sat, 2012-08-25 11:05*

Returns the current configuration used by Twitter including twitter.com slugs which are not usernames, maximum photo resolutions, and t.co URL lengths.

It is recommended applications request this endpoint when they are loaded, but no more than once a day.

## Resource URL

http://api.twitter.com/1/help/configuration.format

## Example Request

GET      https://api.twitter.com/1/help/configuration.json

```
 1.  {
 2.    "characters_reserved_per_media": 21,
 3.    "non_username_paths": [
 4.      "about",
 5.      "account",
 6.      "accounts",
 7.      "activity",
 8.      "all",
 9.      "announcements",
10.      "anywhere",
11.      "api_rules",
12.      "api_terms",
13.      "apirules",
14.      "apps",
15.      "auth",
16.      "badges",
17.      "blog",
18.      "business",
19.      "buttons",
20.      "contacts",
21.      "devices",
22.      "direct_messages",
23.      "download",
24.      "downloads",
25.      "edit_announcements",
26.      "faq",
27.      "favorites",
28.      "find_sources",
29.      "find_users",
30.      "followers",
31.      "following",
32.      "friend_request",
33.      "friendrequest",
34.      "friends",
35.      "goodies",
36.      "help",
37.      "home",
38.      "im_account",
39.      "inbox",
40.      "invitations",
41.      "invite",
42.      "jobs",
43.      "list",
44.      "login",
45.      "logout",
46.      "me",
47.      "mentions",
```

### Deprecation notice!

Version 1 of the API is now deprecated. This document may describe an outdated version of the API. Please move to Version 1.1 of the API as soon as possible.

### Related open issues

twitter.com/500 and twiter.com/503 are not valid "user" paths but aren't listed in the non_username_paths section

### Resource Information

| | |
|---|---|
| Rate Limited? | Yes |
| Requires Authentication? | No |
| Response Formats | json xml |
| HTTP Methods | GET |
| API Version | v1 |

### OAuth tool

Please Sign in with your Twitter account in order to use the OAuth tool.

### Related Documentation

- Entities in Twitter Objects
- GET help/test
- POST statuses/update

### Tags

- t.co (43)

Developers      API Health    Blog    Discussions    Documentation          Search

```
48.          "messages",
49.          "new_dm_view",
50.          "newtwitter",
51.          "notifications",
52.          "nudge",
53.          "oauth",
54.          "phoenix_search",
55.          "positions",
56.          "privacy",
57.          "public_timeline",
58.          "related_tweets",
59.          "replies",
60.          "retweeted_of_mine",
61.          "retweets",
62.          "retweets_by_others",
63.          "rules",
64.          "saved_searches",
65.          "search",
66.          "sent",
67.          "settings",
68.          "share",
69.          "signup",
70.          "signin",
71.          "similar_to",
72.          "statistics",
73.          "terms",
74.          "tos",
75.          "translate",
76.          "trends",
77.          "tweetbutton",
78.          "twttr",
79.          "update_discoverability",
80.          "users",
81.          "welcome",
82.          "who_to_follow",
83.          "widgets",
84.          "zendesk_auth",
85.          "media_signup",
86.          "t1_qunit_tests",
87.          "phoenix_qunit_tests"
88.        ],
89.        "max_media_per_upload": 1,
90.        "photo_size_limit": 3145728,
91.        "photo_sizes": {
92.          "large": {
93.            "w": 1024,
94.            "resize": "fit",
95.            "h": 2048
96.          },
97.          "medium": {
98.            "w": 600,
99.            "resize": "fit",
100.           "h": 1200
101.         },
102.         "small": {
103.           "w": 340,
104.           "resize": "fit",
105.           "h": 480
106.         },
107.         "thumb": {
108.           "w": 150,
109.           "resize": "crop",
110.           "h": 150
111.         }
112.       },
113.       "short_url_length": 20,
114.       "short_url_length_https": 21
115.     }
```

Follow @twitterapi                          API Terms  API Status  Blog  Discussions  Documentation  A Drupal community site supported by Acquia

Developers        API Health   Blog   Discussions   Documentation        Search                    Sign in

# Exhibit 4

Help Center (/)

iOS (/groups/54-mobile-apps#topic_222)

Android (/groups/54-mobile-apps#topic_223)

Mobile web (/groups/54-mobile-apps#topic_224)

SMS (/groups/54-mobile-apps#topic_225)

TweetDeck (/groups/54-mobile-apps#topic_226)

Vine (/groups/54-mobile-apps#topic_269)

Other applications (/groups/54-mobile-apps#topic_227)

← Back to Mobile & Apps (/groups/54-mobile-apps)

# About the Twitter for iOS integration

Twitter's integration with iOS 5 makes it easy to tweet from your iPhone, iPad, or iPod touch. Twitter features are built directly into iOS 5, allowing you to share what you are doing from a number of different apps and locations on your iOS-powered device.

About the Twitter for iPhone integration with iOS 5 (/articles/20169494#about)
How to sign up for an account on iOS 5
How to remove your account on iOS 5
How to revoke access to the iOS 5 integration from the web
Features

## About the Twitter for iPhone integration with iOS 5

Sign in once to your Twitter account through settings.
Once logged in, you can immediately tweet from apps like Safari, Photos, Camera, YouTube, Maps, or any app that uses single sign on.
**Contacts**

It's never been easier to send a Tweet to a friend. Just find their name in your Contacts list, and select **Tweet**. From here, you can also view their Twitter timeline to read their most recent Tweets. And when you're tweeting from an app, your phone's contacts will autocomplete your friends' Twitter usernames.

**Sharing's now simpler**

– A945 –

iOS 5 lets you tweet directly from your apps. To share from an app, tap the list of options. Then just start typing. Share photos, maps, web pages, and videos. You can also use your iPhone, iPod, or iPad's GPS to share your location in a Tweet.

**Discover more with apps**

The integration goes beyond tweeting. With Apple and Twitter handling all API requests, apps can now easily get all public Twitter information and instantly personalize your experience within the app. When you add a new app to your phone or iPad, your Twitter identity helps the app know who you are. Discover new interests, see what's happening in the world, read and respond to Tweets, follow new accounts, and share straight from your apps.



## How to sign up for a Twitter account using iOS 5:

On your iOS 5-powered device, you will now have a Twitter option in your iPhone, iPod, or iPad's **Settings**. Selecting this option will allow you to do four things:

Create a new account on Twitter
Install the official Twitter application
Sign in with your Twitter credentials to enable the integration across the iOS
Synchronize Twitter handles with contacts on your phone
Once you have enabled your device to access your Twitter account, you will see a few options in your mobile device's settings:

The **Find Me by Email** option allows people to follow you by searching for your email.
With the **Tweet Location** slider, you can tag your Tweets with geo-location data when you tweet from your iPhone.

## How to remove your Twitter account from iOS 5:

Go to your phone's **System Settings**.
Tap on **Twitter**.
Tap on the account that needs to be removed.
Select **Delete Account**.
**Note:** This does not delete or deactivate your Twitter account, rather just removes it from your iPhone. To

Case 7:14-cv-00014-O Document 122-1 Filed 07/16/14 Page 90 of 101 PageID 2306



## How to revoke access to the iOS 5 integration from the web:

What do you do if you lose your phone or it gets stolen and you need to revoke your phone's access to your Twitter account? Don't sweat it. You can easily revoke the iOS 5 integration's access to your account from your **Application settings** on the web.

Go to your settings (https://twitter.com/settings).
Click on the **Apps** tab.
Locate the **iOS by Apple** application and click **Revoke access**.
**Note:** Though you will see other specific apps like Twitter for iPhone or Camera for iOS listed in your active connections, you cannot revoke access to these individual apps; **you have to revoke the entire iOS integration**.

## Features

By default, Twitter is enabled in Safari, Photos, Camera, YouTube, or Maps — you won't need a separate client if you want to tweet your location, share a photo, video, or a web page.
In each of these applications, hitting the share button will instantly reveal a **Tweet** button, which will load the Tweet editor.
When you are finished editing the Tweet, tap **Send**. You will hear an audible ping letting you know that your message was sent successfully.

Case: 7:14-cv-00004-O   Document: 122-1   Filed: 07/16/14   Page 21 of 101   PageID 2307

If you tweet a photo from iOS 6, your photo will be posted in your Tweet automatically using Twitter's own photo sharing service (../../articles/20156423) (pic.twitter.com).



## Having trouble?

Check out our Twitter for iPhone troubleshooting and known issues (/articles/20169906) article for answers to common problems.



## Was this article helpful?

| Yes | No | Submitting... |
|-----|-----|-----|

Tweet

© 2014 Twitter, Inc.()

English ⌄

# Exhibit 5



iOS: Using Facebook, Twitter, and other social network accounts

Languages  Englis

Learn more about the built-in support for popular social network services.

With iOS, you can connect directly to your social network accounts, allowing you to post and share content from nearly anywhere. iOS provides integrated support for:

- Twitter
- Flickr
- Vimeo
- Sina Weibo
- Tencent Weibo

You can also access social networks through Safari and relevant iOS apps.

## Add your accounts

You can add your account in Settings:



After adding your account, you can configure additional settings or download the official iOS app for that service.

## Available features

Once you've connected to your account in Settings, you can do the following:

| | Post and Share | Shared links in Safari | Update Contacts | Sync Calendars | Like Apps and Songs | Notes |
|---|---|---|---|---|---|---|
| Facebook | ✓ | | ✓ | ✓ | ✓ | Requires iOS 6 or later |
| Twitter | ✓ | ✓ | ✓ | | | Requires iOS 5 or later |
| Flickr | ✓ | | | | | Requires iOS 7 or later |
| Vimeo | ✓ | | | | | Requires iOS 7 or later |
| Sina Weibo | ✓ | ✓ | ✓ | | | Requires iOS 6 or later |
| Tencent Weibo | ✓ | | | | | Requires iOS 7 or later |

Sina Weibo and Tencent Weibo are available when you enable a Chinese-language keyboard in Settings > General > Keyboards.

**– A950 –**

### Post and share

You can post directly from within Safari, Photos, and other apps by tapping the  icon.

### Update contacts

You can update your existing contacts with Facebook, Twitter, and Sina Weibo information and photos, by selecting the account in Settings and tapping Update All Contacts. Contacts are matched using email addresses, and contact cards are updated with user names and photos.

Update All Contacts

Photos and user names are automatically updated for Facebook friends. Choose "Update All Contacts" to temporarily provide Facebook with email addresses and phone numbers from your contacts to update photos and user names for all matching contacts.

### Sync contacts and calendars

iOS can sync your Facebook contacts and calendars with your device. This feature is off by default, but you can enable it in Settings > Facebook after adding your account.



Important: Information about products not manufactured by Apple is provided for information purposes only and does not constitute Apple's recommendation or endorsement. Please contact the vendor for additional information.

Last Modified: May 7, 2014

Helpful?　　Yes　　No

### Related

OS X Mavericks: Set up iCloud, Twitter, Facebook, and other Internet accounts
You can also add another iCloud account in Internet Accounts preferences and use it for Mail, Contacts, Calendars, Reminders, and Notes. Only your primary iCloud account can use iCloud...

iPhoto for iOS (iPhone): Ways to share photos
Share photos on the web Post photos to your Twitter , Flickr, or Facebook accounts directly from iPhoto. You can add comments when you post photos using iPhoto.

iPhoto for iOS (iPad): Ways to share photos
Share photos on the web Post photos to your Twitter , Flickr, or Facebook accounts directly from iPhoto. You can add comments when you post photos using iPhoto.

How will I transfer everything from an android phone to an iPhone 5c?

How will I transfer everything from an android phone to an iPhone 5c? For Twitter just download the iOS Twitter app from the AppStore and sign in to your existing Twitter account . You can also...

unlock ipad

unlock ipad iOS : Device disabled after entering wrong passcode ... I reached out to my PLN on Twitter and had some help from a few people through retweets and a couple of clarification...

I can't access to iCloud,messages, facetime, twitter, and facebook settings

I can't access to iCloud,messages, facetime, twitter, and facebook settings Is there a Restriction set that prevents using those apps or changing accounts :...

---

### Additional Product Support Information

 iPhone

 iPad

 iPod touch

---

Contact Apple Support

Need more help? Save time by starting your support request online and we'll connect you to an expert.
Get started



---

**– A952 –**

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-367-O |
| | § | |
| RESEARCH IN MOTION | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ORDER

Before the Court are Defendant Facebook, Inc.'s ("Defendant Facebook") Opposed Motion to Sever and Appendix in Support (ECF Nos. 374–75); Plaintiff Summit 6 LLC's ("Summit 6") Notice of Non-Opposition to Facebook's Motion to Sever (ECF No. 385); Defendants Samsung Electronics Co. Ltd. and Samsung Telecommunications America LLC's (collectively, "Defendant Samsung") Response (ECF No. 413); and Defendant Facebook's Reply (ECF No. 466). Having reviewed the motion, the Court finds it is well-taken and should be and is hereby **GRANTED.**

Defendant Facebook argues that this Court should sever Summit 6's cases against Defendant Facebook and Defendant Samsung for trial. *See* Def. Facebook's Mot. Sever 5, ECF No. 374. Defendant Facebook argues that the two defendants are "unrelated parties who are not accused of joint infringement and whose accused products are completely different," thus failure to sever "would unfairly prejudice [Defendant] Facebook and run afoul of the Federal Circuit's *In re EMC* decision." *Id.*; *see also In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012). Summit 6 agrees that Defendant Samsung should be severed for trial and that Defendant Facebook should proceed to trial

first.  Pl.'s Not. Non-Opposition 1, ECF No. 385.

Defendant Samsung argues the Federal Circuit's holding in *In re EMC* allows the Court considerable discretion to consolidate cases for trial under Rule 42.  Def. Samsung's Br. Supp. Resp. 2, ECF No. 413-1.  Samsung asserts the trial should not be severed because both defendants assert "the claims of the '482 patent are invalid in light of prior art and are unenforceable in light of Summit 6's inequitable conduct," and these common factual and legal questions warrant proceeding with a single trial under Rule 42(a).  *Id.*  Samsung also argues for a single trial because there are common third party fact witnesses and a single trial would conserve judicial resources and serve judicial economy.  Defendant Facebook argues that requiring it to try the case alongside Samsung would be both highly prejudicial to Defendant Facebook and confusing to the jury.  Def. Facebook's Reply 2–3, ECF No. 466.  Defendant Facebook further argues "any judicial economy that could come from consolidating these cases for trial would be minimal" given the parties have jointly conducted discovery and other pretrial matters.  *Id.*

In *In re EMC*, the Federal Circuit addressed the proper standard to evaluate whether joinder of a defendant is proper under Rule 20.  *In re EMC*, 677 F.3d at 1359. It clarified that in patent cases "joinder is not appropriate where different products or processes are involved."  *Id.*  "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently source parts are not part of the same transaction, even if they are coincidentally identical."  *Id.*  "[T]he mere fact that infringement of the same claims of the same patent alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity."  *Id.* at 1357.  However, the Federal Circuit made clear that *In re EMC* is not an absolute bar to joinder, and the Court must assess whether their actions are part

2

of the "same transaction, occurrence, or series of transactions or occurrences." *Id.* (using the "transaction or occurrence" test).

While explaining the test for proper joinder in a patent case the Federal Circuit also made clear that "even if joinder is not permitted under Rule 20, the district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42." *Id.* at 1360. Rule 42 states: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Further, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC*, 677 F.3d at 1360 (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). "In a complicated patent litigation a large number of defendants might prove unwieldy, and a district court would be justified in exercising its discretion to deny joinder 'when different witnesses and documentary proof would be required.'" *Id.* (quoting *Acevdeo*, 600 F.3d at 522).

Here, the Court finds that trial with two independent defendants each involving different accused products or processes would be prejudicial and potentially confusing to the jury. Accordingly, it is **ORDERED** that Defendant Facebook's motion to sever should be and is hereby **GRANTED**. The February 19, 2013 trial setting for Defendant Samsung is cancelled and a new trial date will be set by separate order.

SO ORDERED on this 6th day of February, 2013.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

3

Dated:  July 16, 2014                    Respectfully submitted,

                                         **MCKOOL SMITH, P.C.**

                                         By:  /s/ Douglas A. Cawley
                                         Douglas A. Cawley
                                         Lead Attorney
                                         Texas State Bar No. 04035500
                                         dcawley@mckoolsmith.com
                                         Theodore Stevenson III
                                         Texas State Bar No. 19196650
                                         tstevenson@mckoolsmith.com
                                         Phillip M. Aurentz
                                         Texas State Bar No. 24059404
                                         paurentz@mckoolsmith.com
                                         Ashley N. Moore
                                         Texas State Bar No. 24074748
                                         amoore@mckoolsmith.com
                                         Mitchell R. Sibley
                                         Texas State Bar No. 24073097
                                         msibley@mckoolsmith.com
                                         Richard A. Kamprath
                                         Texas State bar No. 24078767
                                         rkamprath@mckoolsmith.com
                                         McKool Smith, P.C.
                                         300 Crescent Court, Suite 1500
                                         Dallas, Texas 75201
                                         Telephone: (214) 978-4000
                                         Telecopier: (214) 978-4044

                                         Bradley W. Caldwell
                                         Texas State Bar No. 24040630
                                         bcaldwell@caldwellcc.com
                                         Caldwell Cassady & Curry
                                         2101 Cedar Springs Road, Suite 1000
                                         Dallas, Texas 75201
                                         Telephone: (214) 888-4848
                                         Telecopier: (214) 888-4849

                                         **ATTORNEYS FOR PLAINTIFF**
                                         **SUMMIT 6 LLC**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 16, 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Ashley Moore*
Ashley Moore

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **HTC CORPORATION,** | § | |
| **HTC AMERICA, INC.,** | § | |
| **LG ELECTRONICS, INC.,** | § | **CIVIL ACTION No. 7:14-CV-00014** |
| **LG ELECTRONICS USA, INC.,** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | **JURY TRIAL DEMANDED** |
| **USA, INC.,** | § | |
| **MOTOROLA MOBILITY LLC,** | § | |
| **APPLE INC., and** | § | |
| **TWITTER, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**DEFENDANT APPLE INC.'S REPLY BRIEF
SUPPORTING ITS MOTION TO SEVER**

# TABLE OF CONTENTS

**Page**

I.      LEGAL STANDARD ............................................................................................... 1

II.     ARGUMENT ........................................................................................................... 2

        A.      Defendants' Products Are Independently Developed and Different ..................... 2

                1.      "MMS Functionality" Does Not Permit Joinder ........................................ 3

                2.      "Twitter Integration" Does Not Permit Joinder ......................................... 6

        B.      The *In re EMC* Factors Weigh Against Joinder .................................................... 7

        C.      The Claims Against Apple Should be Severed For Prudential Reasons ............... 9

III.    CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**Page**

### Cases

*Body Science LLC v. Boston Scientific Corp.*,
   846 F. Supp. 2d 980 (N.D. Ill. 2012) ....................................................................6, 10

*Digitech Image Techs., LLC v. Agfaphoto Holding Gmbh*,
   No. 8:12-CV-1153, 2012 U.S. Dist. LEXIS 142034 (C.D. Cal. Aug. 10, 2012).....................5

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012)..................................................................2, 3, 6, 7

*Infinity Computer Prods., Inc. v. Brother Int'l Corp.*,
   909 F. Supp. 2d 415 (E.D. Pa. 2012) .............................................................2

*MGT Gaming, Inc. v. WMS Gaming, Inc.*,
   978 F. Supp. 2d 647 (S.D. Miss. 2013).............................................................8

*Motorola Mobility, Inc. v. Apple Inc.*,
   No. 1:12-CV-20271, 2012 U.S. Dist. LEXIS 106398 (S.D. Fla. Jul. 31, 2012).....................2

*Motorola Mobility, Inc. v. Tivo, Inc.*,
   No. 5:11-CV-53, 2012 U.S. Dist. LEXIS 99804 (E.D. Tex. July 18, 2012) ...........................2

*MyMail, Ltd. v. America Online, Inc.*,
   223 F.R.D. 455 (E.D. Tex. 2004).............................................................5

*Norman IP Holdings, LLC. v. Lexmark Int'l, Inc.*,
   No. 6:11-CV-495, 2012 U.S. Dist. LEXIS 112757 (E.D. Tex. Aug. 10, 2012) ..................4, 6

*Oasis Research, LLC v. Carbonite, Inc.*,
   No. 4:10-CV-435, 2012 U.S. Dist. LEXIS 115718 (E.D. Tex. Aug. 15, 2012) .....................8

*Optimum Power Solutions, LLC v. Apple, Inc.*,
   No. 11-1509, 2011 U.S. Dist. 106436 (N.D. Cal. Sept. 20, 2011) .........................................4

*Richmond v. Lumisol Elec., Ltd.*,
   No. 13-1944, 2014 U.S. Dist. LEXIS 59939 (D.N.J. Apr. 30, 2014).......................................8

*Rudd v. Lux Prods. Corp.*,
   2011 WL 148052 (N.D. Ill. Jan. 12, 2011) ..............................................................5

### Other

H.R. Rep. No. 112-98, Part 1 (June 6, 2011) ...................................................................5

Summit 6's ("S6") opposition confirms that it has no legitimate basis for joining together a social media company (Twitter), several Android handset and tablet makers (HTC, LG, and Motorola), and an iOS handset and tablet maker (Apple) into a single case. The AIA permits joinder "only if" S6's causes of action arise out of the "same" transaction or occurrence of "the same product or process." S6 has not met, and indeed cannot meet, this test.

S6's argument that "MMS functionality" and "Twitter integration" links the defendants together to permit joinder is misguided on multiple levels. To begin, S6 ignores the AIA legal standard, which focuses on the accused products and processes in view of the asserted patent claims, in favor of a much more lenient and improper test of its own creation. S6 also ignores the many indisputable facts clearly showing that the accused products and processes are not the same. For example, S6 does not dispute that Apple's proprietary iOS operating system was independently developed by Apple and is fundamentally different from the Android operating system. Similarly, S6 cannot dispute that it has asserted the '557 Patent and thirty of its claims against only Twitter, and it cannot dispute that it has asserted fourteen claims against Apple that it has not asserted against any Android defendant. And, S6 does not and cannot dispute that HTC, LG, Motorola, and Apple directly compete in the marketplace and that the iOS-based Apple products are different from the Android-based products.

Applying the correct legal standard to the indisputable facts illustrates that S6's attempted joinder is improper, unfair, unwieldy, and confusing.

## I.    <u>LEGAL STANDARD</u>

Having no legitimate argument that the Apple iOS products are the "same" as the Android products, S6 relies on the proposition that "two literally different products or processes with an identical component are still the 'same' where that component is relevant in some way to an asserted patent." (Resp. at 4.) But that is not, and indeed cannot be the proper standard.

1

Taken to its logical conclusion, this S6-created standard would allow, for example, direct competitors Apple and HTC to be joined in a lawsuit involving infringement of a patent claim that recites a "screen" as one of many limitations simply because the Apple and HTC products both have screens.  The AIA does not permit such cases to be joined.

Under the correct legal standard, joining of defendants is permissible (but not necessarily appropriate) only when "at least one claim overlaps among all of the defendants," *Motorola Mobility, Inc. v. Tivo, Inc.*, No. 5:11-CV-53, 2012 U.S. Dist. LEXIS 99804, at *9 (E.D. Tex. July 18, 2012); overlap does ***not*** occur where "different products or processes are involved." *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012).   Independent defendants may be joined only when there is "substantial evidentiary overlap in the facts giving rise to the cause of action ***against each defendant***." *Id.* at 1358 (emphasis added).  And, "[e]ven where the accused products or processes are the same in ***all respects relevant to the patent***, claims against independent defendants cannot be joined . . . unless 'shared, overlapping facts [] give rise to each cause of action, and not just distinct, albeit coincidentally identical facts.'" *Infinity Computer Prods., Inc. v. Brother Int'l Corp.*, 909 F. Supp. 2d 415, 419 (E.D. Pa. 2012) (emphasis added).

The legislative history of the AIA confirms that joinder under § 299 requires more than product similarity.  *Motorola Mobility, Inc. v. Apple Inc.*, No. 1:12-CV-20271, 2012 U.S. Dist. LEXIS 106398, at *26-27 (S.D. Fla. Jul. 31, 2012) (allegation of "similar" products insufficient; "the accused HTC and Motorola products are not sufficiently the 'same.' . . . HTC and Motorola are competitors in the smartphone industry and produce different smartphones . . . The mere use of the Android platform . . . does not satisfy the joinder standards of the AIA.").

## II.    <u>ARGUMENT</u>

### A.    **Defendants' Products Are Independently Developed and Different**

S6's attempt to join together the defendants based on the existence of two purported

"facts"—"MMS functionality" and "Twitter integration,"—that allegedly "link" the defendants, rings hollow.  (*E.g.*, Resp. at 1.)  Neither of these "facts" establishes that the accused products are "the same," nor do they constitute a "substantial evidentiary overlap in the facts" that give rise to S6's claims against each defendant."  *See In re EMC*, 677 F.3d at 1358-59.[1]

### 1.    "MMS Functionality" Does Not Permit Joinder

The foundation for S6's "MMS functionality" argument—that cellular carriers like Verizon may restrict MMS message size—does not show that "MMS functionality" included by Apple in its iOS products is "the same" as "MMS functionality" included by LG, HTC, or Motorola in their Android products.  The allegedly-infringing "MMS functionality" is embodied in software, and there is no dispute that the accused Apple products run Apple's proprietary iOS operating system while the Android products run the indisputably different and independently-created Android operating system.  There is also no dispute that only iOS compatible software runs on Apple iOS products and only Android compatible software runs on Android products.

S6's contention that carrier MMS size limits make the Apple iOS messaging software the same as the Android messaging software with respect to the asserted patents is wrong.  Such an argument ignores, for example, that S6 alleges infringement against the Apple iPod, which does not even operate on a cellular connection, and is correspondingly not subject to a wireless carrier limitation.  Moreover, the asserted claims mandate a series of specific processing steps, and the existence of cellular carrier MMS size limits cannot establish "sameness."  Claim 1 of the '482 patent (shown below), contains a number of specific requirements regarding, *e.g.*, the location from which pre-processing parameters must be received, contents of the pre-preprocessing

---

[1] S6 argues that "sameness" under the AIA is analogous to contempt or subsequent infringement proceedings that employ the "no more than colorably different" or "essentially the same" standards.  S6 provides no authority for this proposition; in any event, the Apple iPhone, for example, is clearly more than colorably different from the Motorola Droid Maxx, and the Apple iPhone is also not essentially the same as the Motorola Droid Maxx.

parameters, the type of information pre-processed, how and to what end the pre-processing

parameters are applied, and the location to which pre-processed content is transmitted.

What is claimed is:
1. A computer implemented method of pre-processing digital content in a client device for subsequent electronic publishing, comprising:
   a. receiving pre-processing parameters from a remote device, said pre-processing parameters including a specification of an amount of digital content, said digital content including one or more of image content, video content, and audio content;
   b. receiving an identification of a group of one or more items of digital content for transmission, a collective digital content of said group of one or more items of digital content being limited by said received pre-processing parameters;
   c. pre-processing said identified group of one or more items of digital content using said received pre-processing parameters, said received pre-processing parameters controlling said client device in a placement of said identified group of one or more items of digital content into a specified form in preparation for publication to one or more devices that are remote from a server device and said client device; and
   d. transmitting said pre-processed group of one or more items of digital content to said server device for subsequent publishing to said one or more devices that are remote from said server device and said client device.

Other claims contain additional limitations relating to similar issues, as well as limitations

directed to, *e.g.,* account access, information to be retrieved or transmitted, the manner in which

parameters are stored, and when certain information is available to client devices.  *See, e.g.*,

'515 Patent at 6:57-59, 7:63-64; '482 Patent at 11:26-29, 11:4-6.  Thus, "sameness" of the

accused products with respect to this claim depends on the implementation of processing steps

contained inside the alleged "MMS functionality"—***how*** the alleged "MMS functionality" works.

Saying that carrier MMS size limits or "MMS functionality" makes the accused products

the "same" is little different than saying infringement of the same patent makes the accused

products the same.  And, to the extent that carrier MMS size limits are common "facts" across

defendants, (Resp. at 7-8.), and show any similarity in "MMS functionality," it is only with

respect to a very small part of a single claim limitation.  It is not a shared "aggregate of operative

facts" or "substantial evidentiary overlap" sufficient for joinder.  *E.g., Norman IP Holdings, LLC.*

*v. Lexmark Int'l, Inc.*, No. 6:11-CV-495, 2012 U.S. Dist. LEXIS 112757, at *14 (E.D. Tex. Aug.

10, 2012) (use of similar ARM processor designs by defendants not enough for joinder);

*Optimum Power Solutions, LLC v. Apple, Inc.*, No. 11-1509, 2011 U.S. Dist. 106436, at *5, 10-

11 (N.D. Cal. Sept. 20, 2011) (joinder impermissible despite allegations that each accused

product contained similar functionality that infringed in "exactly the same fashion"); *Digitech Image Techs., LLC v. Agfaphoto Holding Gmbh*, No. 8:12-CV-1153, 2012 U.S. Dist. LEXIS 142034, at *11 (C.D. Cal. Aug. 10, 2012) ("It is insufficient for Digitech to rely on the alleged similarities between the infringing digital cameras to satisfy the "same transaction" requirement for joinder.") (citing *In re EMC*, 677 F.3d at 1359).[2]

Further, the accused "MMS functionality" in Apple's products is indisputably specific to Apple's iOS operating system and is not related to any MMS functionality included in the Android products. S6 does not allege that Apple's iOS-specific MMS application and the Android-specific MMS applications are the same. To the contrary, S6 separately alleges that each individual defendant's "MMS functionality" infringes. (*See, e.g.*, Compl. ¶¶ 23, 35, 47, 59, 71, 83, 95). Furthermore, S6 alleges that Apple infringes fourteen claims that it does not assert against any Android defendant. (*Compare, e.g.*, Compl. ¶¶ 23, 121 *with* Compl. ¶ 95, 193.) Recognizing that iOS and Android are completely different platforms (Resp. at 5), S6 argues that the differences are "irrelevant" (Resp. at 5 n.5.). But S6's infringement claims, and its demand for Apple's proprietary source code (and that of the Android defendants), belie this argument.

S6's additional argument that joinder is proper because carrier MMS size limits are "a common industry standard" is flawed. First, S6 does not allege that carrier MMS size restrictions are an industry standard. (*See generally*, Compl., Resp.) Indeed, S6 indicates that each carrier can separately and independently specify a different MMS size limit, precisely the

---

[2] S6 relies extensively on *SmartFlash LLC v. Apple, Inc.*, No. 6:13-CV-447, ECF No. 122 (E.D. Tex. Apr. 4, 2014) (APPX0004 to Resp.). That reliance is misplaced. First, the "Apple Store Kit" was an identically-sourced component that itself infringed. *SmartFlash*, ECF No. 122, at 5 ("Defendants use Apple's Store Kit framework to infringe *all elements of several claims*.") (emphasis added). No such situation exists here. Second, the *SmartFlash* Court's interpretation of the AIA appears to be in the minority and similar to the one expressed in *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004), which was rejected by the codification in the AIA of the majority rule expressed in *Rudd v. Lux Prods. Corp.*, 2011 WL 148052 (N.D. Ill. Jan. 12, 2011). *Motorola*, 2012 U.S. Dist. LEXIS 106398, at *25-26 (citing H.R. Rep. No. 112-98, pt. 1, at 55 n.61).

opposite of an industry standard.  Second, S6 does not allege in its complaint that reliance on an industry standard is common among Defendants or that it forms the basis for infringement; nor does S6 even allege that its patents relate to an industry standard.  Third, even if carrier MMS size restrictions were considered an industry standard, that would not permit joinder under the AIA, just as common adherence to the Bluetooth standard does not permit joinder.  *Body Science LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 989-90 (N.D. Ill. 2012).

S6 conspicuously fails to acknowledge that its infringement allegations against each defendant include operation of the accused products on non-cellular networks—e.g., Wi-Fi and Apple's proprietary iMessage platform—that have nothing to do with carrier-limited "MMS functionality." (*See* Compl. ¶¶ 29, 41, 53, 65, 77, 89, 95, 101, 114, 127, 139, 151, 163, 175, 187, 193, 199, 212, 225.)  Thus, the accused "MMS functionality" is not an "aggregate of operative facts" or "substantial evidentiary overlap in the facts" underlying S6's infringement claims against all defendants.  *See Norman*, 2012 U.S. Dist. LEXIS 112757, at *11; *In re EMC Corp.*, 677 F.3d at 1358.[3]  As explained, S6's claims encompass far more than just MMS functionality.

### 2.    "Twitter Integration" Does Not Permit Joinder

Similar to its "MMS functionality" argument, S6's contention that the existence of functionality natively integrated into the operating systems of the accused products allowing them to access the Twitter service does not make those products the "same."  Indeed, any Twitter functionality natively integrated by Apple into its proprietary iOS platform as S6 contends (e.g., Compl.¶¶ 95, 107, 193) is necessarily dependent upon and specific to iOS, just as any software applications executing on Apple's iOS products must use the features, operations, and system

---

[3] S6 alleges in its complaint a separate and distinct claim of infringement against each defendant based on its own products/services.  Each claim of infringement against each defendant stands on its own—there is no allegation of concerted action or joint and several liability; the word "joint" never even appears in the complaint.

libraries provided by iOS and conform to the iOS execution constraints.  Similarly, any Twitter

functionality integrated into the Android operating system is specific to the Android platform

and necessarily relies on its features, operations, system libraries, and operating constraints.

That Apple iOS and Android both have native functionality allowing them to access the

Twitter service does not make the Apple and Android products the "same" with respect to the

asserted patents.  Once again, "sameness" with respect to the claims is determined by analyzing

*how* the alleged "Twitter integration" works.  As the native operating environments of iOS and

Android are different, *how* they work is also different, including any functionality that provides

access to Twitter.  As is true for its "MMS functionality" argument, S6's request for source code

from Apple and the Android defendants (*See, e.g.,* Plaintiff Summit 6 LLC's First Set of

Common Requests for Production to be Separately Answered by Each Defendant at Req. Nos. 7-

8, APPX005), and its assertion of different claims against different defendants, illustrates that S6

knows that the iOS and Android software are materially different.[4]

**B.     The *In re EMC* Factors Weigh Against Joinder**

Even if accused products of multiple defendants are found to be the "same" with respect

to the asserted patents, a court must consider additional factors that may make joinder of the

defendants nonetheless inappropriate.  *In re EMC*, 677 F.3d at 1359-60.  Because the Apple

products are not the "same" as the Android products, joinder is improper and the Court need not

reach these factors.  Regardless, each factor further illustrates that joinder here is inappropriate.

The first factor, whether the alleged acts of infringement occurred during the same time

period, weighs against joinder.  S6 has accused over 100 different products and services from

---

[4] S6 enumerates a set of "facts" it alleges are common across defendants.  (Resp. at 8.)  However, these "facts" are based on nothing more than speculation.  Further, due to the marked differences between iOS and Android, information about how Twitter functionality is integrated into iOS is necessarily different from how Twitter functionality is integrated into Android; these "facts" simply are not common.

eight different defendants. These products have different release dates, different versions of software, and different life spans in the marketplace. Thus, the period of infringement varies with each individual product based at least on its release date and software version.

The second factor, relationship among defendants, weighs strongly against joinder. Although S6 speculates that a relationship exists between Apple and Twitter, S6 does not allege that any relationship exists between Apple and any of the Android defendants. (Resp. at 6.) Further, S6 admits that Apple and the Android defendants are direct competitors but argues this competition is "irrelevant," (Resp. at 10). A majority of courts disagree, concluding that direct competitors cannot be joined. *Richmond v. Lumisol Elec., Ltd.*, No. 13-1944, 2014 U.S. Dist. LEXIS 59939, at *30-31 (D.N.J. Apr. 30, 2014) ("[D]irect competitors may not be joined in a patent infringement action pursuant to § 299 . . . . Logically, competitors, absent a conspiracy, are not part of the same transaction."); *Oasis Research, LLC v. Carbonite, Inc.*, No. 4:10-CV-435, 2012 U.S. Dist. LEXIS 115718, at *18 (E.D. Tex. Aug. 15, 2012) (joinder improper because, *inter alia*, "Defendants are competitors of each other" and "Defendants worked independently to create their accused products"); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 659 (S.D. Miss. 2013) ("While MGT argues that they have sued WMS and Aruze jointly, it does not allege that they sell the same products or processes. . . . WMS and Aruze's status as direct competitors also indicates that joinder would be inappropriate.").

The third factor, whether defendants use identically-sourced components, weighs against joinder. S6 can point to no identically-sourced components. Differing carrier MMS size limits are not a "component" that is part of any of the accused products S6 does not contend otherwise. (Resp. at 6-7.) Further, any Twitter functionality natively incorporated into the accused products is necessarily different between the Apple iOS products and the Android products. Any such

8

"integration" is platform specific and not an identically-sourced component.

The fourth factor is whether licensing or technology agreements exist between Defendants. Once again, S6 focuses exclusively on its "belief" that agreements exist between Twitter and Apple, implicitly conceding that no agreements exist between Apple and the Android defendants. Thus, even if S6 is correct in its belief, there are no agreements between Apple and the Android defendants, weighing against their joinder.

The fifth factor, whether there is an overlap of the accused products' development and manufacture, weighs strongly against joinder. S6 does not allege that Apple's products are jointly developed or manufactured with the Android products.[5] Instead, S6 speculates about Apple-Twitter collaboration. The evidence S6 cites shows neither collaboration nor joint development; it shows only that iOS includes Twitter functionality. (*E.g.*, Resp. at 7.) Regardless, S6 fails to show any overlap between the development and manufacture of the Apple products and the Android products, thus weighing against joinder.

The sixth factor also weighs against joinder as S6 does not seek lost profits.

### C.     The Claims Against Apple Should be Severed For Prudential Reasons

S6 attempts to join disparate defendants who independently develop hundreds of different products that directly compete in the market. S6 alleges infringement of more than 100 claims from three patents, with certain claims asserted only against certain defendants. (*See generally* Compl.) S6's infringement contentions against Apple alone span almost 1600 pages. (Resp. at 1.) Each defendant will have a large number of different technical documents, source code, witnesses, and other sources of proof. Keeping Apple, Twitter, and the Android defendants in

---

[5] S6 argues (Resp. at 6) that it has alleged joint or concerted action by the defendants, but its complaint contains only distinct and independent allegations of infringement against each defendant that stand alone. (*See generally* Compl.) The complaint nowhere even contains the word "joint" or alleges joint or divided infringement.

the same lawsuit will not only be unwieldy, but also confusing for a jury and prejudicial to Apple's effective defense.  These prudential reasons weigh against joinder and, for these same reasons, courts granting severance have also refused to consolidate under Rule 42.  *See Body Science*, 846 F. Supp. 2d at 990-91 ("[C]onsolidation will not promote judicial economy or efficiency.  Defendants are entirely different companies that are accused of infringing the patents-in-suit with over seventy-six Accused Products. . . . There will undoubtedly be different documents, technical drawings, and witnesses solicited from each Defendant.").

S6 wrongly contends that judicial economy would be hampered by transfer.  That is only potentially true if the Court does not grant Defendants' pending motion to transfer.  And, although this Court has some experience with two of the asserted patents in the *Samsung* matter, this case is vastly different, involving an additional patent and numerous additional asserted claims, products, defenses, and counterclaims.  S6 significantly overestimates the overlap between this case and *Samsung*, and the *Imperium* case upon which S6 principally relies was decided prior to enactment of the AIA.  Further, because *Samsung* is on appeal, affirmed rulings by the Court relating to this case can be applied by whichever court hears S6's claims.

Further, this Court's severance in *Samsung* illustrates why it should occur here.  As S6 points out, *Samsung* involved only two defendants and one infringement claim between them. (Resp. at 11.)  In contrast, this case involves hundreds of products and hundreds of patent claims, some of which are asserted against only certain defendants.  Jury confusion, practical unwieldiness, and the potential for prejudice are much more likely here than in *Samsung*.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the claims against Apple should be severed into a separate case.  And, for the reasons discussed in Defendants' pending motion to transfer, the case (and any severed action against Apple) should be transferred to the Northern District of California.

Dated:  July 30, 2014                    Respectfully submitted,

                                         JONES DAY


                                          */s/ Hilda C. Galvan*
                                         Hilda C. Galvan
                                         State Bar No. 00787512
                                         hcgalvan@jonesday.com
                                         JONES DAY
                                         2727 North Harwood Street
                                         Dallas, TX 75201-1515
                                         Telephone:  (214) 220-3939
                                         Facsimile:  (214) 969-5100

                                         William C. Rooklidge *(pro hac vice)*
                                         wrooklidge@jonesday.com
                                         Mark A. Finkelstein *(pro hac vice)*
                                         mafinkelstein@jonesday.com
                                         Frank P. Cote *(pro hac vice)*
                                         fcote@jonesday.com
                                         Michelle Stover *(pro hac vice)*
                                         mstover@jonesday.com
                                         Douglas L. Clark *(pro hac vice)*
                                         dlclark@jonesday.com
                                         JONES DAY
                                         3161 Michelson Drive, Suite 800
                                         Irvine, CA 92612-4408
                                         Telephone:  (949) 851-3939
                                         Facsimile:  (949) 553-7539

                                         ***Attorneys for Defendant* APPLE INC.**

11

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule 5.1(d) this 30th day of July, 2014.

<div align="right">

 _/s/ Hilda C. Galvan_____
Hilda C. Galvan

</div>

IRI-65082v6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **HTC CORPORATION,** | § | |
| **HTC AMERICA, INC.,** | § | |
| **LG ELECTRONICS, INC.,** | § | **CIVIL ACTION No. 7:14-CV-00014** |
| **LG ELECTRONICS USA, INC.,** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | **JURY TRIAL DEMANDED** |
| **USA, INC.,** | § | |
| **MOTOROLA MOBILITY LLC,** | § | |
| **APPLE INC., and** | § | |
| **TWITTER, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

<u>**APPENDIX TO DEFENDANT APPLE INC.'S REPLY BRIEF**</u>
<u>**SUPPORTING ITS MOTION TO SEVER**</u>

| No. | Document Description | Page No. |
|-----|----------------------|----------|
| 1. | Declaration of Lon Outland in Support of Defendant Apple Inc.'s Reply Supporting its Motion to Sever | APPX001 – 002 |
| 2. | Excerpts of Plaintiff Summit 6 LLC's First Set Of Common Requests For Production to be Separately Answered by Each Defendant | APPX003 – 006 |

**– A974 –**

Dated:  July 30, 2014                    Respectfully submitted,

                                         JONES DAY


                                         */s/ Hilda C. Galvan*
                                         Hilda C. Galvan
                                         State Bar No. 00787512
                                         hcgalvan@jonesday.com
                                         JONES DAY
                                         2727 North Harwood Street
                                         Dallas, TX 75201-1515
                                         Telephone:  (214) 220-3939
                                         Facsimile:  (214) 969-5100

                                         William C. Rooklidge *(pro hac vice)*
                                         wrooklidge@jonesday.com
                                         Mark A. Finkelstein *(pro hac vice)*
                                         mafinkelstein@jonesday.com
                                         Frank P. Cote *(pro hac vice)*
                                         fcote@jonesday.com
                                         Michelle Stover *(pro hac vice)*
                                         mstover@jonesday.com
                                         Douglas L. Clark *(pro hac vice)*
                                         dlclark@jonesday.com
                                         JONES DAY
                                         3161 Michelson Drive, Suite 800
                                         Irvine, CA 92612-4408
                                         Telephone:  (949) 851-3939
                                         Facsimile:  (949) 553-7539

                                         ***Attorneys for Defendant* APPLE INC.**

Case 7:14-cv-00014-O   Document 125   Filed 07/30/14   Page 3 of 9   PageID 2387

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule 5.1(d) this 30th day of July, 2014.

    */s/ Hilda C. Galvan*
Hilda C. Galvan

DLI-6489452

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **SUMMIT 6 LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **HTC CORPORATION,** | § | |
| **HTC AMERICA, INC.,** | § | |
| **LG ELECTRONICS, INC.,** | § | **CIVIL ACTION No. 7:14-CV-00014** |
| **LG ELECTRONICS USA, INC.,** | § | |
| **LG ELECTRONICS MOBILECOMM** | § | **JURY TRIAL DEMANDED** |
| **USA, INC.,** | § | |
| **MOTOROLA MOBILITY LLC,** | § | |
| **APPLE INC., and** | § | |
| **TWITTER, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

<u>**DECLARATION OF LON OUTLAND IN SUPPORT OF DEFENDANT APPLE INC.'S**</u>
<u>**REPLY SUPPORTING ITS MOTION TO SEVER**</u>

I, Lon Outland, declare and state as follows:

1.      I am an attorney with the law firm of Jones Day, counsel for Apple Inc. in the above captioned matter.

2.      I am a member in good standing of the State Bar of Texas, have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would testify competently to such facts under oath.

3.      I make this declaration in support of Defendant Apple Inc.'s Reply Supporting its Motion to Sever.

4.      Exhibit A, attached hereto, contains excerpted pages from Plaintiff Summit 6

LLC's First Set of Common Requests for Production to be Separately Answered by Each

Defendant, which was served by Summit 6 on July 23, 2014.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated:  July 30, 2014

_____
Lon Outland

DLI-6489517

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| SUMMIT 6 LLC, §<br>§<br>**Plaintiff,** §<br>§<br>v. §<br>§<br>HTC CORPORATION, §<br>HTC AMERICA, INC., §<br>LG ELECTRONICS, INC., §<br>LG ELECTRONICS USA, INC., §<br>LG ELECTRONICS MOBILECOMM §<br>USA, INC., §<br>MOTOROLA MOBILITY LLC, §<br>APPLE INC., and §<br>TWITTER INC., §<br>§<br>**Defendants.** § | CIVIL ACTION NO.  7:14-cv-00014<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF SUMMIT 6 LLC'S FIRST SET OF COMMON REQUESTS FOR
PRODUCTION TO BE SEPARATELY ANSWERED BY EACH DEFENDANT**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Summit 6 LLC ("Plaintiff" or "Summit 6") request that Defendants HTC Corporation and HTC America, Inc. ("HTC"), LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Mobilecomm USA, Inc. ("LG"), Motorola Mobility LLC, ("Motorola"), Apple, Inc., ("Apple"), and Twitter, Inc. ("Twitter") (collectively "Defendants") produce copies of documents and things requested below at the law offices of McKool Smith, P.C., 300 Crescent Court, Suite 1500, Dallas, Texas 75201, within 30 days after service hereof.  Summit 6 also requests that, within 30 days after service hereof, Defendants serve Summit 6 with its written responses to these requests for production of documents and things in accordance with Fed. R. Civ. P. 34.

Rimfire, Prepare & Post), the previous Summit 6 litigation (*Summit 6 LLC v. RIM et al.*, 3:11-cv-367-O), or otherwise concerning this litigation.

**REQUEST NO. 6:**

All documents including, without limitation, communications with customers, prospective customers, or other users, concerning the structure, function, operation, and performance of each of Your Accused Products and Accused Functionalities and all components and features thereof.

**REQUEST NO. 7:**

All documents concerning the conception, research, design, development, and commercialization of each of Your Accused Products and Accused Functionalities, including, without limitation, specifications, design drawings, schematics, flow diagrams, process diagrams, software flow charts, source code, pseudo code, and instructions.

**REQUEST NO. 8:**

All documents concerning change over time of each of Your Accused Products and Accused Functionalities, including, without limitation, revision history, specifications, design drawings, schematics, flow diagrams, process diagrams, software flow charts, source code, pseudo code, instructions, and other documents showing all differences between each version (or revision) of Your Accused Products and Accused Functionalities.

**REQUEST NO. 9:**

All documents concerning the evaluation, testing, or experimentation of each of Your Accused Products and Accused Functionalities, and all components and features thereof, whether performed by Your or by a third party, including (but not limited to) methods, guidelines, and models for such testing or analysis.

**PLAINTIFF SUMMIT 6 LLC'S FIRST SET OF REQUESTS FOR PRODUCTION**    **Page 10**
**TO BE SEPARATELY ANSWERED BY EACH DEFENDANT**

APPX005

**– A981 –**

Dated:  July 23, 2014                    Respectfully submitted,


                                         **MCKOOL SMITH, P.C.**

                                         By:  /s/ Douglas A. Cawley
                                         Douglas A. Cawley
                                         Lead Attorney
                                         Texas State Bar No. 04035500
                                         dcawley@mckoolsmith.com
                                         Theodore Stevenson III
                                         Texas State Bar No. 19196650
                                         tstevenson@mckoolsmith.com
                                         Phillip M. Aurentz
                                         Texas State Bar No. 24059404
                                         paurentz@mckoolsmith.com
                                         Ashley N. Moore
                                         Texas State Bar No. 24074748
                                         amoore@mckoolsmith.com
                                         Mitchell R. Sibley
                                         Texas State Bar No. 24073097
                                         msibley@mckoolsmith.com
                                         Richard A. Kamprath
                                         Texas State bar No. 24078767
                                         rkamprath@mckoolsmith.com
                                         McKool Smith, P.C.
                                         300 Crescent Court, Suite 1500
                                         Dallas, Texas 75201
                                         Telephone: (214) 978-4000
                                         Telecopier: (214) 978-4044


                                         Bradley W. Caldwell
                                         Texas State Bar No. 24040630
                                         bcaldwell@caldwellcc.com
                                         Caldwell Cassady & Curry
                                         2101 Cedar Springs Road, Suite 1000
                                         Dallas, Texas 75201
                                         Telephone: (214) 888-4848
                                         Telecopier: (214) 888-4849

                                         **ATTORNEYS FOR PLAINTIFF**
                                         **SUMMIT 6 LLC**


                                 **– A982 –**

# CERTIFICATE OF SERVICE

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
Misc. No. _____
-----------------------------------------------------------------------------

IN RE TWITTER, INC., APPLE INC., MOTOROLA
MOBILITY LLC, HTC CORPORATION, HTC AMERICA, INC.,
LG ELECTRONICS, INC., LG ELECTRONICS USA, INC.,
and LG ELECTRONICS MOBILECOMM USA, INC.,
-----------------------------------------------------------------------------

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Keker & Van Nest LLP, attorneys for Petitioner Twitter, Inc., to print this document. I am an employee of Counsel Press.

On the **22nd Day of October, 2014**, I served the within **Appendix in Support of Petition for Writ of Mandamus** upon:

Mike McKool *(via FedEx)*
Ashley N. Moore
Mitchell R. Sibley
Phillip M. Aurentz
Richard A. Kamprath
Theodore Stevenson, III
McKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
mmckool@McKoolSmith.com
amoore@McKoolSmith.com
msibley@@McKoolSmith.com
paurentz@McKoolSmith.com
rkamprath@McKoolSmith.com
tstevenson@McKoolSmith.com

Bradley W. Caldwell
Caldwell Cassady Curry, P.C.
2101 Cedar Springs Road
Suite 1000
Dallas, TX 75201
Telephone: 214-888-4848
Facsimile: 214-888-4849
bcaldwell@caldwellcc.com

Attorneys for Summit 6 LLC

via E-mail and also via Overnight Delivery to the lead counsel indicated above.

Additionally, a copy will be sent to this U.S. District Judge:

Hon. Reed O'Connor
United States District Court Judge
United States District Court for the
Northern District of Texas
501 W. 10th Street
Room 201
Fort Worth, Texas 76102-3673
Telephone: (817) 850-6788

**via Express Mail,** by causing a true copy of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 4 copies and a pdf copy on disk, along with the required filing fee, have been hand-delivered to the Court on the same date as above.

October 22, 2014

John C. Kruesi, Jr.
Counsel Press